IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Durham Division

**THOMAS H. KRAKAUER,**
on behalf of a class of persons,

    Plaintiff,

v.                                                                                                   No. 14-cv-333

**DISH NETWORK, L.L.C.,**

    Defendant.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.     This action arises under the federal Telephone Consumer Protection Act, or TCPA, a remedial statute enacted in 1991 in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the national Do Not Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement.

2.     Plaintiff Thomas H. Krakauer is one of the millions of consumers who have listed telephone numbers on the Do Not Call Registry. Nonetheless, he has received numerous telemarketing sales calls from an authorized dealer of Defendant Dish Network, L.L.C.

3.     At the time of these calls, Defendant Dish Network, LLC knew that many of its authorized dealers were flagrantly violating the TCPA in their efforts to sell Dish satellite

700578

television subscriptions. However, Dish failed to take effective action to stop the violations, and instead gratefully accepted the new business its dealers generated through illegal means. Dish took the view that compliance was the dealers' responsibility, and fell back on self-serving contractual provisions to attempt to shield itself from liability for the illegal telemarketing conducted on its behalf.

4. Under the TCPA, Dish's efforts to avoid responsibility fail. The statute imposes liability for violations not only on businesses that *place* unlawful calls, but also on businesses *on whose behalf, and for whose benefit* the calls are made.

5. Vicarious liability is a critical feature of the TCPA. According to the Federal Communications Commission, the agency charged with interpreting the statute, sellers like Dish are not exempt from liability simply because *others* violate the law on their behalves and for their benefit. This is so because the dealers that place illegal calls often are judgment proof and difficult to identify, and sellers are best positioned to monitor and control their activities. Under these circumstances, and in service of protecting consumers from the nuisance of unwanted telemarketing, liability is imputed to the more reputable and more financially solvent sellers such as Dish.

6. Plaintiff brings this action on behalf of a proposed class defined below, and seeks statutory damages of $500-$1500 per illegal call, plus injunctive relief requiring Dish to comply with the law.

**Parties**

7. Plaintiff Thomas H. Krakauer is a resident of this District.

8. Defendant Dish Network, L.L.C. is a Colorado limited liability company organized for profit, with its principal place of business in that state.

## Jurisdiction and Venue

9. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5 million, as each member of the proposed class is entitled to up to $1500 in statutory damages for each unlawful call. Further, at least one class member resides in a state other than Colorado, where Dish is located.

10. The Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action involves violation of a federal statute, the TCPA.

11. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Plaintiff resides here, a substantial part of the events giving rise to the claim occurred here, and because the Defendant's contacts with the District are sufficient to subject it to personal jurisdiction.

## Applicable Law

12. The TCPA was enacted more than twenty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

13. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). According to the Federal Trade Commission, the Registry, which was established in 2003, currently has over 223 million active registrations. During 2013 alone, approximately 5.8 million numbers were added.

14. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

15. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id*. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id*.

16. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

17. Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

18. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

19. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

20. The provision that establishes a private right of action against an entity that violates the DNC Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period ***by or on behalf of*** the same entity in violation of the

regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

21. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The agency reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

23. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).

### Facts Supporting the Claims

24. Between May 2009 and September 2011, Dr. Krakauer received numerous telemarketing calls on his residential telephone line, (XXX) XXX-9459, a number he had listed on the Do Not Call Registry since 2003.

25. These calls, which included at least two calls in a twelve-month period, were placed by authorized Dish dealer Satellite Systems Network, or SSN, in an effort to sell Dr. Krakauer a Dish satellite television subscription.

26. Because Dr. Krakauer did not provide SSN with a signed, written agreement to receive Dish telemarketing calls from SSN, the calls violated the TCPA.

27. Dish is liable for the calls because:

    a. SSN placed the calls on behalf of, and for the benefit of, Dish, because the calls were placed to sell Dish satellite television subscriptions;

    b. SSN placed the calls under Dish's actual or apparent authority because SSN was authorized to market and sell Dish subscriptions, and to hold itself out as an authorized Dish dealer; and

    c. Dish ratified SSN's illegal conduct by accepting the illegal business it generated and rewarding it with payments for that business.

28. Dish sells its satellite television services through a network of dealers, including SSN.

29. Dish authorized these dealers to market on its behalf, and to use the Dish trade name, trademark, or service mark.

30. Dish provided these dealers with access to confidential, proprietary information regarding pricing and products, and also provided them with access to Dish's internal information systems.

31. Because of scores of consumer telemarketing complaints, private TCPA lawsuits, and government enforcement actions, Dish has known for years that its dealers violated the TCPA in marketing and selling Dish subscriptions.

32. For example, in July of 2009, Dish entered into an Assurance of Voluntary Compliance with the attorneys general of 48 states (the "AG settlement agreement").

33. The AG settlement agreement included allegations of unlawful telemarketing being conducted on Dish's behalf.

34. As stated in the AG settlement agreement, Dish can control the conduct, practices and procedures of its dealers:

    a. through its Dish Network Retailer Agreement;

    b. through "Business Rules" that are established by Dish Network and must be followed by retailers;

    c. through training that Dish Network provides to its retailers;

    d. by requiring retailers to take all actions and refrain from taking any action reasonably requested by Dish Network in connection with marketing, advertising, promotion, solicitation, and orders;

    e. by requiring retailers to market, promote and describe Dish products and services in a manner approved by Dish;

    f. by setting all processes for its programming and related promotions, and limiting its retailers' ability to offer and sell other goods and services to Dish customers; and

    g. by requiring retailers to use Dish's trademarks, logos and service marks in connection with the retail sale of Dish services, and by otherwise controlling their appearance and conduct when interacting with consumers.

35. Also in 2009, the Federal Trade Commission and the States of California, Illinois, Ohio and North Carolina filed suit against Dish for telemarketing to consumers whose phone numbers were listed on the Do Not Call Registry, and for telemarketing via pre-recorded message. *United States v. Dish Network, LLC,* 667 F. Supp. 2d. 952 (C.D. Ill. 2009) (denying Dish's motion to dismiss, and holding that Dish may be liable under the TCPA for the actions of its telemarketers).

36. This litigation was pending when the calls were placed to Dr. Krakauer.

37. Dish knew or should have known that its dealers, including SSN, were engaging in telemarketing in violation of the TCPA.

38. Because Dish failed to take effective action to end the violations, the Plaintiff and putative class members received telemarketing calls from SSN.

## Class Action Allegations

39. Plaintiff brings this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All persons throughout the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time within the applicable limitations period, more than one call within any twelve-month period was placed by or at the direction of Satellite Systems Network, to promote the sale of Dish satellite television subscriptions.

40. Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.

41. The proposed class can be identified through telephone records and databases used in transmitting the telemarketing calls.

42. The number of class members is believed to be in the thousands, rendering the class so numerous that individual joinder of all class members is impracticable.

43. Plaintiff is a member of the proposed class.

44. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Did SSN place telemarketing calls to Plaintiff and class members?

    b. Is Dish liable under TCPA § 227(c) for telemarketing calls placed by SSN?

    c. Did SSN place the calls under Dish's actual authority?

    d. Did SSN place the calls under Dish's apparent authority?

    e. Did Dish ratify SSN's illegal conduct by accepting the benefit of its illegally-generated business and failing to exercise its authority to end the violations?

    f. Were the SSN calls placed for Dish's benefit, or on its behalf?

    g. Do Dish's dealer agreements shield it from liability for SSN's TCPA violations?

45. Plaintiff's claims are typical of the claims of the class. Like all class members, he received SSN telemarketing calls on a number listed on the national Do Not Call Registry.

46. Plaintiff is an adequate class representative because his interests do not conflict with class members' interests, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in TCPA and other class actions.

47. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

48. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to pursue individual litigation; the low dollar-value of individual claims; the lack of an attorney fee-shifting provision in the TCPA; the fact that class members are unlikely to know that their rights have been violated; and the fact that few if any recipients of SSN telemarketing calls have brought private TCPA enforcement actions against Dish or SSN.

## Legal Claim

## Violation of 47 U.S.C. 227(c)—
## Telemarketing in violation of the TCPA's Do Not Call provisions

49. In violation of 47 U.S.C. § 227(c), Plaintiff and all class members received telemarketing calls promoting the sale of Dish services from Dish's authorized dealer Satellite Service Network on residential telephone lines listed on the national Do Not Call Registry.

50. Plaintiff and class members received more than one such call in a twelve-month period.

51. Dish is liable for those violations under principles of actual authority, apparent authority, and ratification, and because the calls were placed on Dish's behalf and for its benefit.

## Relief Sought

On behalf of himself and all class members, Plaintiff requests:

1. That the Court grant class certification as proposed above or in a motion for class certification after discovery; that the Court appoint the Plaintiff as class representative; and that the Court appoint Plaintiff's counsel as class counsel;

2. That Plaintiff and all class members be awarded $500 in statutory damages for each violation of the TCPA;

3. That Plaintiff be awarded $1500 for each willful or knowing violation of the TCPA;

4. That the Court enjoin Dish from violating the TCPA; and

5. That the Plaintiff and class members be granted such other relief as is just and equitable under the circumstances.

Plaintiff respectfully requests a jury trial.

THOMAS H. KRAKAUER<br>
By Counsel.

*s/ J. Matthew Norris*
J. Matthew Norris
Norris Law Firm, PLLC
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4475
(919) 926-1676 *facsimile*
jmn@ncconsumerlaw.com

John W. Barrett – *Visiting Attorney*
Jonathan R. Marshall - *Visiting Attorney*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Edward A. Broderick - *Visiting Attorney*
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com

Matthew P. McCue - *Visiting Attorney*
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor

700578                                  11

Case 1:14-cv-00333-CCE-JEP   Document 1   Filed 04/18/14   Page 11 of 12

Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mccue@massattorneys.net