# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, | ) | |
| On behalf of a class of persons, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 1:14-cv-00333-CCE-JEP |
| | ) | |
| v. | ) | JUDGE CATHERINE C. EAGLES |
| | ) | |
| DISH NETWORK, L.L.C., | ) | MAGISTRATE JUDGE JOI E. PEAKE |
| | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO "PRIOR EXPRESS CONSENT" AND
"ESTABLISHED BUSINESS RELATIONSHIP"**

TABLE OF CONTENTS

**STATEMENT OF THE MATTER BEFORE THE COURT** ....................................... 1
**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** ..................................... 1
**SUMMARY JUDGMENT STANDARD** ...................................................... 4
**ARGUMENT** ............................................................................. 5
    1.    The Consent And EBR Issues In This Case Are Identical To Those Previously Litigated In *United States v. Dish* ............................................. 6
    2.    The Consent And EBR Issues Were Actually Determined In And Necessary To The Decision In *United States v. Dish* ................................ 7
    3.    The *United States v. Dish* Decision Was Final And Valid. ........................ 8
    4.    Dish Had A Full And Fair Opportunity To Litigate The Consent And EBR Issues ........................................................................... 9
**CONCLUSION** ........................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Authors Guild, Inc. v. Google Inc.*,
 721 F.3d 132 (2d Cir. 2013) ................................................................................... 5

*Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*,
 402 U.S. 313 (1971) ............................................................................................. 10

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ............................................................................................... 4

*Cmty. State Bank v. Knox*,
 850 F. Supp. 2d 586 (M.D.N.C. 2012) .................................................................. 6

*London v. Wal-Mart Stores, Inc.*,
 340 F.3d 1246 (11th Cir. 2003) ............................................................................. 5

*Pagidipati Enters., Inc. v. Lab. Corp. of Am. Holdings*,
 520 Fed. App'x 160 (4th Cir. 2013) ...................................................................... 4

*Parklane Hosiery Co., Inc. v. Shore*,
 439 U.S. 322 (1979) ............................................................................................. 10

*Ross ex rel. Ross v. Bd. of Educ. of Tp. High School Dist. 211*,
 486 F.3d 279 (7th Cir. 2007) ................................................................................. 9

*S.E.C. v. Resnick*,
 604 F. Supp. 2d 773 (D. Md. 2009) ..................................................................... 10

*Sandberg v. Va. Bankshares, Inc.*,
 979 F.2d 332 (4th Cir. 1992) ................................................................................. 8

*Steen v. John Hancock Mut. Life Ins. Co.*,
 106 F.3d 904 (9th Cir. 1997) ................................................................................. 7

*Tattoo Art Inc. v. TAT Intern. LLC*,
 498 Fed. App'x 341 (4th Cir. 2012) ...................................................................... 4

*United States v. Dish Network*,
 2015 WL 682875 (C.D. Ill. Feb 13, 2015) ............................................................ 9

*United States v. Dish Network, L.L.C.*,
 --- F. Supp. 3d ---, 2014 WL 7013223 (C.D. Ill. Dec. 11, 2014) ................... passim

*United States v. Maxwell*,
 189 F. Supp. 2d 395 (E.D. Va. 2002) .................................................................. 10

*United States v. Modanlo*,
 493 B.R. 469 (D. Md. 2013) .................................................................................. 7

**Statutes**

15 U.S.C. § 6102(a)(1) ................................................................................................. 3, 5
28 U.S.C. § 1291 ............................................................................................................. 8
47 U.S.C. § 227(a)(4) ...................................................................................................... 6
47 U.S.C. § 227(c)(5) ...................................................................................................... 6

**Other Authorities**

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane and Richard L. Marcus, Federal
    Practice and Procedure, § 2737 (3d ed. 1998) ................................................................. 4
Restatement (Second) of Judgments (1982) ........................................................................ 8

**Rules**

16 C.F.R. § 310.4(b)(1)(iii) .............................................................................................. 6

**STATEMENT OF THE MATTER BEFORE THE COURT**

Collateral estoppel prevents a litigant from revisiting the same issues that a court has previously decided in a final and valid judgment. In *United States v. Dish Network*,[1] the government alleged that SSN made more than 380,000 Dish telemarketing calls to numbers listed on National Do Not Call Registry — including thousands of the very same calls at issue here. As here, Dish asserted that it had an established business relationship with the call recipients, and denied that it called any numbers on the Registry without prior express written consent. In a thorough opinion, the district court concluded that Dish had presented no evidence of either affirmative defense. Accordingly, Dish is collaterally estopped from asking this Court to reconsider and contradict that final and valid judgment, and Dr. Krakauer is entitled to summary judgment on those defenses.

**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

1. In 2003, Dr. Krakauer placed his residential telephone number on the NDNC Registry. (*See* First Amended Complaint ("FAC") ¶ 25; Exhibit 2, Krakauer Dep. 72:25-73:2-9).

2. Nonetheless, beginning in May 2009, Dr. Krakauer received numerous telephone solicitations from Satellite Systems Network, Inc. ("SSN"), a long-time authorized dealer of Dish's goods and services. (*See* Exhibit 1 at \*\*30-32; FAC ¶ 32).

3. During the time that SSN was telemarketing to Dr. Krakauer, it made similar calls to tens of thousands of other individuals whose numbers were also listed on

---

[1] *United States v. Dish Network, L.L.C.,* --- F. Supp. 3d ---, 2014 WL 7013223 (C.D. Ill. Dec. 11, 2014), attached as Exhibit 1.

the NDNC Registry. (*See* Exhibit 3, Expert Report of Anya Verkhovskaya, A.B. Data, Ltd., at 10-11 ("Verkhovskaya Report")). A list of putative class members is attached to the Verkhovskaya Report ("Class List"). *Id.*

4. SSN's telemarketing calls to Dr. Krakauer and putative class members are reflected in records provided by a company called Five9, which provided outbound dialing services for SSN. *Id.*

5. In its answer to Dr. Krakauer's First Amended Complaint, Dish asserted the affirmative defense that "Plaintiff's claims and the claims of the putative class are barred to the extent that Plaintiff and some or all of the members of the putative class gave consent for any acts alleged in the Amended Complaint." (*See* Answer of Dish Network, LLC (ECF No. 34) at 11).

6. In its answer to Dr. Krakauer's First Amended Complaint, Dish also asserted the affirmative defense that Dr. Krakauer's claims and the claims of the putative class are barred or limited based on the doctrine of "established business relationship." (*See id.* at 10).

7. The call records produced by Five9 in this case are the same call records it produced in *United States v. Dish*. (*See* Exhibit 4, Declaration of David Hill, Five9, Inc., ¶ 12).

8. In *United States v. Dish,* the government did not include calls in the Five9 records that were part of SSN's "Charter" campaign, because at that time the government did not know whether those calls were made on behalf of Dish. (*See* Exhibit 5, Expert Report of John Taylor at 13).

2

9. In *United States v. Dish,* Dish's expert, John Taylor, identified 381,811 SSN telemarketing calls[2] that he conceded were "issue calls." *See* Exhibit 1 at *43.

10. Mr. Taylor explained that "issue calls" meant "telemarketing calls to telephone numbers on the Registry" for which he could find *no basis to exclude or exempt* the calls from violating the Do Not Call statutes. *Id.* at *39 (referring to May 21, 2008 letter of Mr. Taylor). In other words "issue calls" meant calls for which Mr. Taylor found no evidence supporting a prior express consent or established business relationship defense.

11. Mr. Taylor's concession encompasses every SSN call at issue here, with the exception of "Charter" calls.

12. On this record the Court awarded summary judgment in favor of the government in regards to the 381,811 SSN calls identified by Mr. Taylor, pursuant to the Telemarketing Sales Rule ("TSR"), 15 U.S.C. § 6102(a)(1). The court noted that Mr. Taylor had admitted that Dish had no evidence that would exempt the 381,811 SSN calls identified in Mr. Taylor's report from the scope of Do Not Call telemarketing laws. Exhibit 1 at *39 (referring to May 21, 2008 letter of Mr. Taylor).

13. In this case, Dr. Krakauer alleges that the "Charter" calls were made for the purpose of marketing Dish products and services. (*See* Exhibit 6, Declaration of Sophie Tehranchi). However, since these calls were not analyzed in *United States v. Dish*, Dr. Krakauer does not seek partial summary judgment with respect to the "Charter" calls.

---

[2] Mr. Taylor's report refers to the Five9 records as relating to "NNS." There is no dispute that these records relate to SSN and the reference to "NNS" in the Taylor report as it relates to the Five9 records was in error.

3

## SUMMARY JUDGMENT STANDARD

Summary judgment "is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court may grant a partial summary judgment on an affirmative defense. *See* Charles Allen Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure, § 2737 (3d ed. 1998); *Pagidipati Enters., Inc. v. Lab. Corp. of Am. Holdings*, 520 Fed. App'x 160, 162 (4th Cir. 2013) (affirming summary judgment in plaintiff's favor after district court rejected affirmative defense); *Tattoo Art Inc. v. TAT Intern. LLC,* 498 Fed. App'x 341, 347 (4th Cir. 2012) (affirming partial summary judgment for plaintiff and rejecting defendant's argument that it should have been permitted to pursue its affirmative defense at trial).[3]

Because Dr. Krakauer seeks partial summary judgment only as to Defendants' affirmative defenses rather than the merits of his claims, an award of partial summary judgment in this case would not invoke the rule against "one-way intervention," which prevents class members from "await[ing] . . . final judgment on the merits" before deciding whether to participate in the class. *See London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1252-53 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S.

---

[3] *See also Buslepp v. B&B Entm't, LLC*, No. 12-60089, 2012 WL 4761509, at *5 (S.D. Fla. Oct. 5, 2012) (granting partial summary judgment to plaintiff on defendant's affirmative defense of prior express consent in TCPA case); *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-04473, 2012 WL 3835089, at *6 (N.D. Ill. Sept. 4, 2012) (same).

538, 547 (1974)); *see also Authors Guild, Inc. v. Google Inc.,* 721 F.3d 132, 134 (2d Cir. 2013) (endorsing resolution of affirmative defenses prior to deciding class certification).

## ARGUMENT

When an issue has been conclusively determined in one forum, the doctrine of issue preclusion, or collateral estoppel, prevents a party from re-litigating the same issue in another court. In *United States v. Dish*, a joint enforcement action brought by the Department of Justice and the Attorneys General of several states, the government alleged that Dish violated both the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Telemarketing Sales Rule ("TSR"), 15 U.S.C. § 6102(a)(1), by making telemarketing calls to numbers listed on the NDNC. Among the calls at issue were more than 380,000 calls made by SSN — *including thousands of calls at issue in this case*. In a careful and detailed opinion, the Court rejected Dish's affirmative defenses and granted summary judgment to the government on the SSN calls. This is textbook collateral estoppel: with respect to the thousands of calls at issue in this case that were also analyzed in *United States v. Dish*, another federal court has found that Dish has no evidence of prior express written consent or an existing business relationship.

As a result, Dish should be barred from re-asserting those rejected defenses here. In the Fourth Circuit, a court may apply the doctrine of non-mutual offensive collateral estoppel if five requirements are met:

> (1) the issue sought to be precluded is identical to one previously litigated;
> (2) the issue was actually determined in the prior proceeding;
> (3) the issue's determination was "a critical and necessary part of the decision in the prior proceeding";

5

(4) the prior judgment is final and valid; and

(5) the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum."

*See Cmty. State Bank v. Knox*, 850 F. Supp. 2d 586, 597 (M.D.N.C. 2012) (quoting *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006)). Here, each of these prerequisites is satisfied.

### 1. The Consent And EBR Issues In This Case Are Identical To Those Previously Litigated In *United States v. Dish*

Both federal statutes at issue in *United States v. Dish* — the TCPA and the TSR — contain exemptions for calls made to consumers who have provided their express written consent, or with whom the caller has an "established business relationship." Ultimately, in that case, the court granted summary judgment under the TSR, rather than the TCPA.[4] There is no material difference, however, between the consent and EBR exemptions created under the TSR and the TCPA. *Compare* 16 C.F.R. § 310.4(b)(1)(iii) (sellers may not call a number listed on the DNC Registry unless the seller or telemarketer has an Established Business Relationship or prior written consent from the recipient)) *with* 47 U.S.C. § 227(a)(4) (exempting "prior express invitation or permission" and persons with whom caller has an "established business relationship" from definition of telephone solicitation).

Likewise, the *United States v. Dish* court analyzed the same Five9 calling records relied upon by the plaintiff's expert in this case. The only difference is that Dish's expert

---

[4] The court concluded that it could not grant summary judgment under the TCPA because material issues of fact existed as to whether Dish was vicariously liable for calls made by third parties like SSN.

6

in *United States v. Dish* did not review the entirety of the SSN telemarketing calls and omitted from his review the telemarketing records called "Charter." These additional records have been analyzed by plaintiff's expert, who will testify that the "Charter" calls were also made to those on the NDNC or IDNC lists. Thus, while Dr. Krakauer concedes that Dish is not collaterally estopped from asserting affirmative defenses to the "Charter" calls, the thousands of calls common to both cases are perfectly identical.

### 2. The Consent And EBR Issues Were Actually Determined In And Necessary To The Decision In *United States v. Dish*

"Although the 'actual determination' and 'necessity' prongs are commonly discussed as discrete elements, in practice they are sufficiently intertwined such that the Court may address them together." *United States v. Modanlo*, 493 B.R. 469, 474 (D. Md. 2013) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2d ed. 2002)). The "actually determined" requirement ensures that collateral estoppel is not based on an ambiguous ruling that does not clearly indicate the issues that were resolved. *See, e.g., Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 912 (9th Cir. 1997) ("Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding."). Relatedly, the "necessity" requirement ensures that issues are not precluded based on mere dicta or other irrelevant findings or conclusions.

In *United States v. Dish,* Dish's expert, John Taylor, identified 381,811 SSN telemarketing calls that he characterized as "issue calls." *See* Exhibit 1 at *43. Mr. Taylor explained that "issue calls" meant "telemarketing calls to telephone numbers on the

7

Registry" for which he could find *no basis to exclude or exempt* the calls from violating the Do Not Call statutes. *Id.* at *39 (referring to May 21, 2008 letter of Mr. Taylor).

On this record, or lack thereof, Judge Myerscough determined that there was no evidence of consent or EBR as to the 381,811 SSN calls identified by Mr. Taylor. And this finding was logically necessary to the court's decision; it could not have granted the government summary judgment on the SSN calls analyzed by Mr. Taylor if there was evidence to support either affirmative defense.

### 3. The *United States v. Dish* Decision Was Final And Valid.

The finality required for collateral estoppel is more "flexible" than finality for other purposes, such as 28 U.S.C. § 1291 "final order" appealability. "[F]or purposes of issue preclusion ..., [a] 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *See Restatement (Second) of Judgments* § 13 (1982). Indeed, finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *See Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 347 (4th Cir. 1992) (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *vacated on other grounds*, 1993 WL 524680 (4th Cir. Apr. 7, 1993)). Even an appeal would not automatically strip the district court's decision of "finality" for the purposes of collateral estoppel. *See, e.g., Ross ex rel. Ross v. Bd. of Educ. of Tp. High School Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007).

8

Judge Myerscough's thorough decision in *United States v. Dish* was issued on December 12, 2014, after more than five years of litigation. Dish moved for reconsideration. The court granted Dish's motion in part, and entered a second opinion revisiting certain aspects of the original order — but stood fast in its conclusion that Dish was liable for SSN's unlawful calls and had no EBR or consent defense. *See United States v. Dish Network,* 2015 WL 682875 (C.D. Ill. Feb 13, 2015) (Myerscough, J.) (vacating prior decision in part). As the district court twice determined that Dish could not establish a material question of fact with respect to consent or EBR, its decision is sufficiently firm to be accorded preclusive effect, and there is "no good reason" for allowing the same issues to be litigated again.

### 4. Dish Had A Full And Fair Opportunity To Litigate The Consent And EBR Issues

This final factor considers "the objective fullness and fairness of the opportunity to litigate" in the previous forum. *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 780 (D. Md. 2009). Collateral estoppel is inappropriate where a party had no meaningful chance to litigate a particular issue, or where the opportunity to litigate was impeded by adjudicatory procedures that were cursory, poor in quality, or otherwise unfair. *Id.* (citing *Montana v. United States*, 440 U.S. 147, 164 n.11 (1978); *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971); and *United States v. Maxwell*, 189 F. Supp. 2d 395, 405 (E.D. Va. 2002)). On the other hand, where the party had the incentive to litigate vigorously in the prior proceeding, was able to examine the evidence against it, present its own evidence, cross-examine witnesses, be represented by

competent counsel, and otherwise enjoy the protections of due process, he will generally be considered to have had a full and fair opportunity to litigate that issue for purposes of collateral estoppel. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 332–33 (1979).

In *United States v. Dish*, Dish had every opportunity to fully litigate its consent and EBR defenses as to the 381,811 "issue calls" identified in Mr. Taylor's expert report. The case was vigorously litigated for more than five years prior to summary judgment; the summary judgment opinion was number 445 on the docket. Dish presented its own experts, deposed the government's experts, and was represented by competent counsel experienced in TCPA litigation. Nothing about the adjudicatory procedure could be considered cursory, poor in quality, or unfair — rather, the court treated the matter with extraordinary care, culminating in a detailed, 238-page opinion.

In sum, there is no reason for this Court to even consider the merits of Dish's consent and EBR affirmative defenses — because another court already has. The requirements of the collateral estoppel doctrine are easily satisfied, and Dish should be precluded from relitigating the same defenses to those calls identified in the report of its own expert to which it admitted in *United States v. Dish* that no consent based exemptions applied.

## CONCLUSION

Dish's affirmative defenses to the SSN calls identified by Dish's own expert in *United States v. Dish* have already been rejected by another federal district court under identical circumstances, and there is no reason to allow re-litigation of those defenses in this forum. Dr. Krakauer respectfully requests that the Court grant his motion for partial summary judgment as to Dish's consent and EBR defenses relating to the SSN calls identified in the report of Mr. Taylor.

Dated: May 7, 2015

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett – *Visiting Attorney*
Jonathan R. Marshall - *Visiting Attorney*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
Norris Law Firm, PLLC
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4475
(919) 926-1676 *facsimile*
jmn@ncconsumerlaw.com

Edward A. Broderick - *Visiting Attorney*
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com

Matthew P. McCue - *Visiting Attorney*
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

12

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 6, 2015 the foregoing was electronically filed with the Clerk of Courts via the CM/ECF System, which will send notification of such filing to the following:

> Eric L. Zalud
> David M. Krueger
> Laura E. Kogan
> Benesch, Friedlander, Coplan & Aronoff, LLP
> 200 Public Square, Suite 2300
> Cleveland, OH 44114
> ezalud@beneschlaw.com
> dkrueger@beneschlaw.com
> lkogan@beneschlaw.com
>
> Benjamen E. Kern
> Benesch, Friedlander, Coplan & Aronoff, LLP
> 241 S. High St., Suite 2600
> Columbus, OH 43215
> bkern@beneschlaw.com
>
> Richard J. Keshian
> Kilpatrick Townsend & Stockton, LLP
> 1001 W. Fourth St.
> Winston-Salem, NC 27101
> rkeshian@kilpatricktownsend.com
>
>     Counsel for Dish Network, L.L.C.

                                             */s/ John W. Barrett*
                                             John W. Barrett