IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| THOMAS KRAKAUER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | CASE NO. 1:14-CV-00333-CCE-JEP |
| -vs- | ) ) | |
| DISH NETWORK L.L.C., | ) ) | **HEARING REQUESTED** |
| Defendant. | ) ) ) | |

### DEFENDANT DISH NETWORK L.L.C.'S RESPONSE TO PLAINTIFF'S SUBMISSION OF REVISED NOTICE PLAN [DOC. 146[

Defendant DISH Network L.L.C. ("DISH") submits this Response to Plaintiff's Submission of Revised Notice Plan ("Revised Plan") (Doc. 146), pursuant to the Court's Minute Entry dated January 6, 2016.

### I.  INTRODUCTION

Designing and implementing a class notice plan is neither a mere formality nor a hollow gesture. The purpose of the class notice process is to structure a mechanism that will effectively reach *actual members* of the certified class and do so in a manner that will preserve DISH's due process right to contest the evidence submitted by individuals claiming to be class members. Plaintiff's Revised Plan fails to achieve this goal for three reasons:

*First*, DISH contends that individuals who receive class notice must submit call-records evidence to the parties *now*, before trial, verifying their class membership, rather than delay that process until after trial, as Plaintiff would have them do. Individuals who

receive class notice would submit records to the class administrator, who would then be required to promptly make them available in full to the parties.  As demonstrated below, delaying this necessary and inevitable verification process until after trial will result in a class notice protocol that is grounded in guesswork, arbitrary assumptions and speculation, and render the Court unable to assess whether notice has reached a high percentage of actual class members.

*Second*, delaying that process as Plaintiff requests also runs afoul of the Fourth Circuit's guidance in *EQT Prod. Co. v. Adair ("EQT")*, 764 F.3d 347 (4th Cir. 2014), where the court stressed that the class-membership verification process should not be deferred to the "back-end" of the case, after determining liability issues.

*Third*, Plaintiff's Revised Plan improperly requires DISH to post the class action notice on its website, even though the Court rejected that concept during the January 6, 2016 status conference.  Plaintiff also proposes posting additional online notice through PR Newswire, TopClassActions.com and Facebook, but fails to explain how these online notices would materially improve the chances of being received by actual class members.

The Court should deny Plaintiff's Revised Plan.  It should require supposed class members to submit evidence *now* verifying that they are the subscribers to the telephone numbers and the actual recipients of the calls at issue, and it should also approve DISH's proposed long form notice (attached as Exhibit A) and postcard notice (attached as Exhibit B).  DISH'S proposed order to this effect accompanies this filing.

## II. LAW & ARGUMENT

### A. Standard.

To avoid duplication, DISH incorporates by reference the standard for evaluating the sufficiency of Plaintiff's Revised Plan set forth in DISH's Response to Plaintiff's original class notice plan. (*See* Doc. 129 at 6-8.) Neither party disputes that "[t]he lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage," that is at least 70%, of the class. (*See* Doc. 126 at 3, Doc. 129 at 7, citing *Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, pg. 3.)

Likewise, neither party disputes that DISH has a due process right to contest the evidence submitted by individuals claiming membership in the class. (*See* Doc. 129 at 10-11, Doc. 133 at 4, citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664, 667 (7th Cir. 2015).) But the issue remains as to *when* and *how* this identification will occur.

### B. Plaintiff's Revised Plan Is Not Likely To Reach A High Percentage Of the Class.

DISH previously set forth specific evidence detailing thousands of instances where *different* people are associated with the *exact same telephone number* during the class period. For example:

| Record | Number | Name | Address |
|---|---|---|---|
| LexisNexis | ▆▆▆▆ | ▆▆▆▆ | ▆▆▆▆ |
| Five9/ Mailing List | ▆▆▆▆ | ▆▆▆▆ | ▆▆▆▆ |

3

(*See* Doc. 129 at 3-5, 8-10, citing Exhibits B, C, D, and E.)[1]

This is only one of many examples where *different* persons are associated with the *same* telephone number during the class period. No evidence exists that all of these persons fall within the scope of the class certified by this Court, and it would be improper to send all of them notices of this class action – just as it would be fundamentally unfair to DISH for the Court to presume that all these people are indeed members of the certified class.

How does Plaintiff propose to address this situation in his Revised Plan? In a manner that is arbitrary, grounded in guesswork, and unsupported by case law. Specifically, Plaintiff proposes sending notice only to *one* person associated with the phone number, but not to the others.

And how did Plaintiff choose the person to whom to send this notice? That is a mystery. No rationale is offered in Plaintiff's Revised Plan. Apparently, Plaintiff self-selected one person purportedly associated with that phone number who, in his unfettered judgment (or perhaps it was a flip of the coin), qualifies as the "class member" associated with that phone number, and plans to notify solely that chosen person. He posits, without proof, that a "majority" of the instances where different people are associated with the same telephone number are typos, "likely" name changes, or instances where a spouse or family member is living at the same residence.

---

[1] DISH previously submitted this evidence in its Opposition to Plaintiff's Motion for Approval of Class Notice.

Such a whimsical approach to class notification has never been judicially approved, and for good reason: it is haphazard at its core and fundamentally unfair to class action defendants. Haphazard, because it is the epitome of speculation. Unfair, because it presumes – in fact, guesses – that a person has an actionable claim against a defendant when there might be none at all. A proposed notice mechanism as slipshod as Plaintiff's should not be approved by this Court.

Indeed, DISH is unaware of any authority – and Plaintiff has cited none – supporting the premise that notice to a purported class member's "spouse" or "family member" constitutes effective notice to an actual class member, or that assumed family members are somehow qualified to "fill in" for actual class members.

Beyond that, Plaintiff's speculation about the relationships between the different individuals who are associated with the same telephone number is rebutted by the evidence. The few typos that Plaintiff identified are far outnumbered by the thousands of instances where completely different people are identified at completely different addresses, yet are *still* associated with the exact same telephone number, as in the above example. The most egregious example is where Plaintiff claims that there is only one class member associated with the telephone number ending in x0000, yet Plaintiff's own evidence shows 30 other individuals, with radically different names and at completely different addresses, associated with that same number. (*See* Doc. 129-5 at 47-48.) These examples are real, not typos or last-name changes; they are based on *Plaintiff's own evidence*; they are unexplained and unrebutted by Plaintiff; and are simply not dealt with in Plaintiff's Revised Plan.

5

Plaintiff's Revised Plan also fails to remedy other flaws in his original class notice plan. Specifically, Plaintiff's "update" to his Mailing List merely proposes to send the class notice to an individual identified on the Five9 Log, but at the *address of a completely different person* identified on the third-party data. Note this example:

| Source | Telephone number | Name | Address |
|---|---|---|---|
| Five9 | ██████ | ██████ | [NULL] |
| Microbilt | ██████ | ██████ | ██████ |
| Mailing List | ██████ | ██████ | ██████ |

(*See* Doc. 129 at 5, citing Exhibit E.)

In this example, Plaintiff claims that ██████ is the "class member" for ██████ based upon his listing as the intended recipient on the Five9 records, but there is no address listed for him. Microbilt, on the other hand, identifies ██████, a completely different person, as being associated with that same phone number at an address in Washington D.C. Plaintiff circumvents these discrepancies by simply "updating" his Mailing List so that a notice is being sent to ██████ at the wrong address, *i.e.,* ██████ address. Plaintiff's Reply in support of his original class notice plan ignored this flaw. And Plaintiff's Revised Plan again ignores it.

Providing notice under Rule 23(c)(2) is not an empty formality. Rather, it must be undertaken with a view to optimizing its efficacy, integrity and fairness – to *all* parties. The entire structure of Plaintiff's Revised Notice Plan is compromised by its shaky foundation, and the Court should not approve it. People should not be presumed to be class members based on arbitrary assumptions and sheer guesswork.

6

An easier and fairer solution exists: the Court should require individuals who are to receive class notice to submit evidence *now* – before trial – verifying their membership in the class. This approach eliminates the randomness inherent in Plaintiff's approach, and prevents the class notice process from devolving into a guessing game. Requiring the recipients of class notice to submit records showing that they are the subscriber to the telephone number and the actual recipient of the calls at issue will enable this Court to objectively determine that notice is likely to reach at least seventy percent of the class. Indeed, class members will be required to provide this information at *some* point in this litigation. They should be required to do so now, because *now* is when the Court is addressing the class notice issue.

### C. *EQT* Disfavor "Back-End" Identification of Class Members.

Plaintiff cites *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), for the proposition that individuals who receive notice can submit their evidence after trial and as part of the claims administration process. (*See* Doc. 133 at 4-5.) *Mullins* does not control here. Instead, the Court should consider the Fourth Circuit's opinion in *EQT*, which is controlling and instructive.

In that case, plaintiffs alleged that defendant EQT failed to pay royalties from the production of methane gas to the proper royalty owners (i.e., the putative class members). *Id*. at 355-56. For some class members, class membership would be "easy to identify" because the class was defined in accordance with ownership schedules. *Id*. at 359. Complications arose, however, because ownership had changed over time, resulting in ownership schedules that did not necessarily identify the current gas estate owners. *Id*.

7

Plaintiffs argued that a court can "identify current gas estate owners at the back-end" after determining liability and as part of the claims administration process, just as Plaintiff is proposing here. *Id.* The Fourth Circuit rejected that argument, stating that class member verification should not be deferred to the back-end. *Id.* ("The fact that verifying ownership will be necessary for the class members to receive royalties does not mean it is not also a prerequisite to identifying the class.").

The same administrative challenges that existed in *EQT* exist here. Plaintiff has a list of telephone numbers akin to the "gas estate owners" in *EQT*. The Five9 records (and other records relied upon by Plaintiff) may or may not identify the subscriber to the telephone numbers and actual recipient of the calls, just as the "ownership schedules" in *EQT* may or may not have identified the "gas estate owners." Indeed, the situation in this case is further exacerbated because there are multiple sources identifying different people as being associated with the same telephone number in the class; *i.e.*, there are contradictory "ownership schedules" for each individual "gas estate."

Like the plaintiffs in *EQT*, Plaintiff here proposes to delay the task of identification until "the back end," after trial, as part of the claims administration process. Upon rejecting this approach in *EQT*, the Fourth Circuit held that on remand, the district court "should also give greater consideration to the administrative challenges it will face when using land records to determine current ownership, and assess whether any trial management tools are available to ease this process." *Id*. at 360.

The administrative and trial management tools currently available to *this* Court to manage the efficacy of the class notice process include requiring individuals who receive

8

notice to submit evidence before trial verifying that they are, in fact, actual members of the class. *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 410 (3d Cir. 2015) ("Rule 23(d) vests in the Court substantial discretion to enter orders, subsequent to the Order Certifying the Class that will follow, to manage the class."); *see also* Wright, Miller, Kane, Federal Practice & Proc. § 1787 (2005) (noting that, based upon the particular facts of a case, courts may require affirmative action by absent class members as part of notice under Rule 23(c)(2)). Pushing this inevitable process until after trial will prolong uncertainties regarding the identities of actual class members that can, and should, be addressed now. There is no benefit, although there are material detriments, to "kicking that can down the road."

### D. Other Issues in Plaintiff's Notice.

Plaintiff's Revised Plan requests that DISH include a link on its website to the class notice. (Doc. 146-5 at 4.) The Court properly rejected that concept during the January 6, 2016 status conference, and should reject it again.

Plaintiff also proposes that the class notice be disseminated by posting on PR Newswire and on TopClassActions.com and Facebook. (Doc. 146-5 at 3.) Yet, Plaintiff fails to explain how any class member is likely to peruse these sites for class notice, or how an individual who received a brief phone call *six years ago* (in which DISH was often not even mentioned) is likely to recognize that they are a member of this class. In fact, it is difficult to fathom what Plaintiff even means when he says he will post a release "via Facebook." How will he do so? By updating his personal status? On the class administrator's "fan" page? By posting to individuals' personal Facebook accounts?

9

Plaintiff's internet-notice proposals are both vague and empty gestures. Plaintiff offers no explanation of how these processes will work or how they are likely to improve the chances of being reached by actual class members. His internet notice plan should be rejected. *Cf. Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214, 2010 U.S. Dist. LEXIS 130682, at *15-16 (S.D.N.Y. Dec. 6, 2010) ("[T]here is no way to assure that notice via Twitter will result in notice to even a single class member, let alone a substantial number of class members . . . [plaintiff] has offered no evidence that class members use Twitter . . . Individual notice to an overinclusive list of individuals is not required by Rule 23.").

## III. CONCLUSION

Plaintiff's Revised Plan is fundamentally flawed and should be rejected. DISH, instead, requests that this Court enter its proposed order accompanying this filing. That proposed order would require each purported class member to submit evidence now verifying that they were the subscribers to the telephone numbers and actual recipients of the calls during the class period. DISH further requests that the Court approve DISH's proposed long form notice (attached as Exhibit A) and postcard notice (attached as Exhibit B).

                            Respectfully submitted,

                            /s/ *Eric Larson Zalud*
                            ERIC LARSON ZALUD (Admitted Pro Hac Vice)
                            JEREMY GILMAN (Admitted Pro Hac Vice)
                            DAVID M. KRUEGER (Admitted Pro Hac Vice)
                            LAURA E. KOGAN (Admitted Pro Hac Vice)
                            Benesch, Friedlander, Coplan & Aronoff LLP
                            200 Public Square, Suite 2300

Cleveland, Ohio 44114
T: 216-363-4178 F: 216-363-4588
ezalud@beneschlaw.com
jgilman@beneschlaw.com
dkrueger@beneschlaw.com
lkogan@beneschlaw.com

BENJAMEN E. KERN (Admitted Pro Hac Vice)
Benesch, Friedlander, Coplan & Aronoff LLP
41 South High Street, Suite 2600
Columbus, Ohio 43215
T: 614-223-9300 F: 614-223-9330
bkern@beneschlaw.com

RICHARD J. KESHIAN
Kilpatrick Townsend & Stockton Llp
1001 W. Fourth St.
Winston-Salem, NC 27101
T: 336-607-7322 F: 336-734-2645
rkeshian@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

      The foregoing Memorandum was filed electronically on February 2, 2016. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

                                        /s/ *Eric Larson Zalud*
                                        Eric L. Zalud