IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

                                Civil Action No. 1:14-cv-00333-CCE-JEP

v.

DISH NETWORK, L.L.C.,

    Defendant.

## PLAINTIFF'S REVISED PROPOSED JURY INSTRUCTIONS

### General Instructions

[As the Court directed, the parties have conferred on instructions. Plaintiff does not object to Dish's general instructions, or its instructions on "Evidence," "Cautions," "Deliberations and Verdict," except to the extent those instructions depart from those given by the Court in the *Honeycutt* case. For example, Dish's general instructions insert an instruction on expert testimony that Plaintiff contests as an inaccurate statement of the law. Generally speaking, however, Plaintiff does not object to the majority of Dish's proposed general instructions.]

### Issue One: National Do Not Call Claim

**(Elements)**

The first issue on the verdict sheet reads: "Has Dr. Krakauer proven, by a preponderance of the evidence, that he received more than one telephone solicitation in

any 12-month period, by or on behalf of Dish, when his telephone number was listed on the National Do Not Call Registry?"

As you know, Dr. Krakauer alleges that he received certain telephone solicitations from SSN at telephone numbers that were on the National Do Not Call Registry. Specifically, he alleges violations of a federal law that says that "no person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . . Such do not call registrations must be honored indefinitely, or until the telephone number is cancelled by the consumer or removed by the database administrator."[1] Wireless customers may register their wireless telephone numbers on the Registry.[2]

Under the law, "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [national do-not-call registry] regulations . . . may . . . bring . . . an action . . . to receive up to $500 in damages for each violation[.]"[3]

On issue one, Dr. Krakauer must prove by a preponderance of the evidence (1) that he received more than one telephone solicitation in any 12-month period, (2) by or on behalf of Dish Network, and (3) when his telephone number was on the National Do Not Call Registry.

---

[1] 47 C.F.R. § 64.1200(c)(2).
[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, FCC 03-153 (July 3, 2003), 34-36; *United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 961-62 (C.D. Ill. 2014); 47 C.F.R. § 64.1200(e).
[3] 47 U.S.C. § 227(c)(5)(B).

2

Case 1:14-cv-00333-CCE-JEP   Document 174   Filed 05/12/16   Page 2 of 15

On the first element, Dr. Krakauer must prove that he received more than one telephone solicitation in *any* twelve month period. A telephone solicitation is "a telephone call or message for the purpose of encouraging the purchase . . . of . . . goods or services which is transmitted to any person."[4]

Second, Dr. Krakauer must prove that the calls he received were "by or on behalf of the same entity." Dr. Krakauer alleges that he received telephone solicitations from SSN, on behalf of Dish.

Third, Dr. Krakauer must prove that when he received these calls, his telephone number was on the National Do Not Call Registry. There is no dispute that Dr. Krakauer's telephone number was on the Registry continuously since 2003. As I instructed, a do not call registration must be honored indefinitely, or until cancelled by the consumer or removed by the Registry database administrator.[5] In other words, a telephone subscriber who registers his or her number never needs to renew his registration; one time is enough.

**(Summary)**

In summary on issue one, if you find by a preponderance of the evidence that Dr. Krakauer received more than one telephone solicitation in any 12-month period by or on behalf of Dish when his number was listed on the National Do Not Call Registry, then you should mark "Yes" under the first issue on the verdict sheet.

---

[4] 47 C.F.R. § 64.1200(f)(12); 47 U.S.C. § 227(a)(4).
[5] 47 C.F.R. § 64.1200(c)(2).

If, on the other hand, you find that a preponderance of the evidence does not show that Dr. Krakauer received more than one telephone solicitation in any 12-month period by or on behalf of Dish when his number was listed on the National Do Not Call Registry, then you should mark "No" under the first issue on the verdict sheet.

### Issue Two:  Internal Do Not Call Registry

**(Elements)**

The second issue on the verdict sheet reads, "Has Dr. Krakauer proven, by a preponderance of the evidence, that he received more than one telephone solicitation in any 12-month period, by or on behalf of Dish, when his telephone number was listed on Dish's or SSN's internal Do Not Call list?"

As you know, Dr. Krakauer also alleges that he received certain telephone solicitations from SSN, acting as Dish's agent or on behalf of Dish, at a telephone number on SSN's or Dish's internal Do Not Call list.

The law requires SSN and Dish to maintain an internal do-not-call list, which is "a list of persons who request not to receive telemarketing calls made by or on behalf of" the telemarketer.[6] "If [an] entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. [An] entity making calls for telemarketing purposes (or on whose behalf such calls were made) must honor a . . . do-not-call request . . . [within]

---
[6] 47 C.F.R. § 64.1200(d).

4

thirty days from the date of such request."[7] "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [that regulation] may . . . bring . . . an action . . . to receive up to $500 in damages for each violation[.]"[8]

On this issue, Dr. Krakauer must prove by a preponderance of the evidence (1) that he received more than one telephone solicitation in any 12-month period, (2) by or on behalf of Dish Network, and (3) when his telephone number was listed on SSN's or Dish's internal Do Not Call list.

The first and seconds elements of the internal Do Not Call claim are the same as with the National Do Not Call claim, and I have instructed you on those matters.

The third element is different. To prove his internal Do Not Call claim, Dr. Krakauer must prove that his telephone number was on Dish's or SSN's internal Do Not Call list for at least thirty days at the time of the calls.

**(Summary of Issue Two)**

In summary on issue two, if you find by a preponderance of the evidence that Dr. Krakauer received more than one telephone solicitation in any 12-month period, by or on behalf of Dish, when his number was listed on SSN's or Dish's internal Do Not Call list, then you should mark "Yes" under the second issue on the verdict sheet.

If, on the other hand, you find that a preponderance of the evidence does not show that Dr. Krakauer received more than one telephone solicitation in any 12-month period,

---

[7] *Id.* § 64.1200(d)(3).
[8] 47 U.S.C. § 227(c)(5)(B).

by or on behalf of Dish, when his number was listed on SSN's or Dish's internal Do Not Call list, then you should mark "No" on the second issue on the verdict sheet.

### Issue Three: Agency

### (General Instruction from N.C. Pattern Instr. Civil 516.05)[9]

The third issue reads, "Was SSN authorized to telemarket on behalf of Dish?"

The burden of proof on this issue is on the plaintiff. This means that the plaintiff must prove that in telemarketing for Dish SSN was acting within the scope of its actual authority. This type of relationship is called an "agency." An agency is a relationship where one person or company empowers another person or company to take act on its behalf. In these situations the person granting the authority to another to act on his behalf is called the "principal." And the person who is authorized to act on behalf of such principal is called the "agent." When an agent acts on behalf of its principal, and within the scope of its authority, then the principal is responsible for the act, so long as the agent has not exceeded his authority. The act of the agent is treated in law as the act of the principal. However, a principal is not bound by the act of an agent unless that act falls within the scope of actual authority granted by the principal to the agent. In order to determine the authority of an agent, it is necessary to look to the conduct and declarations of the principal. An agent may not extend his authority by his own conduct standing alone and in the absence of conduct or acquiescence on the part of the principal.

---

[9] This instruction, including the statement of the issue, is adopted almost verbatim from the North Carolina Pattern Instruction, https://www.sog.unc.edu/sites/www.sog.unc.edu/files/pji-master/civil/c516.05.pdf (last visited Mary 12, 2016).

6

Case 1:14-cv-00333-CCE-JEP   Document 174   Filed 05/12/16   Page 6 of 15

"Actual authority" exists where the principal has expressly or impliedly authorized the agent to act on the principal's behalf with respect to a particular matter. It is that authority which the agent reasonably thinks it possesses, conferred either intentionally or by want of ordinary care by the principal. It may be granted by the principal by word of mouth, or by writing, or it may be implied by conduct of the principal amounting to consent or acquiescence, or by the nature of the work that the principal has entrusted to the agent.

Finally, I instruct you on this third issue on which the plaintiff has the burden of proof, that if you find by the greater weight of the evidence that Dish, by its actions granted SSN actual authority that included the authority to telemarket, then it would be your duty to answer this issue, "Yes," in favor of the plaintiff.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue, "No," in favor of the defendant.

### (Additional Agency Instructions)

**Written limits.** "Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling."[10] In other words, written limits on a party's authority are not effective if the

---

[10] *Restatement (Third) of Agency* § 1.02; *see also Wynn's Extended Care, Inc. v. Bradley,* 619 F. App'x 216, 219 (4th Cir. 2015) ("[P]arties' disclaimer of an agency relationship, even in a contract, is not dispositive."); *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 737-38 (D. Md. 2008) (parties cannot "simply disclaim an agency relationship generally to avoid liability to third parties while agreeing to specific provisions that in fact bind each other to an arrangement that is the equivalent of principal and agent."); *United States v. Rapoca Energy Co.*, 613 F. Supp. 1161, 1163 (W.D. Va. 1985) ("What the parties call themselves is immaterial; the law looks to the

7

parties' conduct is not consistent with the written limits. So, even if a written agreement between Dish and SSN generally prohibits illegal conduct, you may find Dish liable for SSN's telemarketing based on Dish's conduct. And even if the agreement says SSN is not Dish's agent, you may find Dish liable based on its conduct.

**Right to control.** "A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of the right varies. Thus, a [company] may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment. A principal's failure to exercise the right of control does not eliminate it."[11] In other words, if you find that Dish had the *authority or right* to control the manner and means of SSN's telemarketing, whether or not that control was ever exercised, then Dish may be vicariously liable.[12]

### Issue Four: Number of Calls in violation of the National Do Not Call law

The fourth issue is, "From May 11, 2010 to August 1, 2011, how many calls to the class were made in violation of the National Do Not Call law?"

---

actual relationship between the parties."); *Sky Cable, LLC v. Coley*, No. 11-00048, 2013 WL 3517337, at *28 (W.D. Va. July 11, 2013) ("While the agreement expressly disclaims any agency relationship . . .that fact alone is not determinative."); *Washington v. Kass Mgmt. Servs.*, No. 10-4409, 2011 WL 1465581, at *3 (N.D. Ill. Apr. 18, 2011) (paraphrasing President Lincoln: "calling a relationship a non-agency don't make it a non-agency.").

[11] *Restatement (Third) of Agency,* § 1.01 cmt. c.
[12] *Lushe v. Verengo Inc.,* No. 13-07632, 2014 WL 5794627, at *4 (C.D. Cal. Oct. 22, 2014); *McCraw v. Calvine Mills*, 233 N.C. 524, 527, 64 S.E.2d 658, 660 (Sup. Ct. N.C. 1951) ("The test is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work . . . . If the employer has right of control, it is immaterial whether he actually exercises it.").

As you know, Dr. Krakauer alleges claims on his own behalf, and on behalf of a class, for violations of the national Do Not Call laws. This class is "all persons who were on the National Do Not Call list for at least 30 days, but who received telemarketing calls from SSN to promote Dish between May 1, 2010 and August 1, 2011."[13] The Court has admitted into evidence telephone calling records and expert testimony that Dr. Krakauer alleges show violations of the National Do Not Call laws. Dish contests that these records show violations, and has introduced its own evidence.

You must decide how many, if any, of those calls violated the National Do Not Call laws as I have instructed you. The same instructions that I gave you regarding the elements of Dr. Krakauer's National Do Not Call claim also apply to the calls to class members. In summary, as I instructed you earlier, it is a violation of the Do Not Call law if (1) a class member received more than one telephone solicitation in any 12-month period, (2) by or on behalf of Dish Network, and (3) when the class member's telephone number was registered on the National Do Not Call Registry.

Dish asserts an affirmative defense to this claim, and alleges that some of the calls are not "telephone solicitations" because, at the time they were made, Dish had an "established business relationship" with the call recipient.[14] An established business relationship is "a prior or existing relationship formed by a voluntary, two-way communication between a person or entity and a residential [telephone] subscriber with or without an exchange of consideration, [1] on the basis of the subscriber's purchase or

---

[13] Class Cert. Order (ECF No. 111), Sept. 9, 2015, at 4.
[14] 47 U.S.C. § 227(a)(4).

9

transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call, or [2] on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party."[15]

Dish has the burden of proving the established business relationship not merely by a "preponderance of the evidence," but through clear and convincing evidence.[16] That evidence must be so strong as to produce in your mind the firm belief or conviction, without hesitation, that Dish had an established business relationship with the recipient of the call.[17]

### Issue Five: Number of Calls in Violation of Internal Do Not Call Law

The fifth issue is, "From May 11, 2010 to August 1, 2011, how many calls to the class were made in violation of the internal Do Not Call law?"

Again, Dr. Krakauer alleges claims on his own behalf, and on behalf of a class, for violations of the internal Do Not Call laws. This class is "all persons whose telephone numbers were on the IDNC list of Dish or SSN, but who received telemarketing calls from SSN to promote Dish between May 1, 2010 and August 1, 2011."[18] The Court has

---

[15] 47 C.F.R. § 64.1200(f)(4).
[16] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 ¶ 112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (A telemarketer claiming an EBR exemption "must be prepared to provide clear and convincing evidence of the existence of such a relationship.")
[17] *United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015).
[18] Class Cert. Order (ECF No. 111), Sept. 9, 2015, at 4.

10

admitted into evidence telephone calling records and expert testimony that Dr. Krakauer alleges show violations of the National Do Not Call laws. Again, Dish contests that these records show violations, and has introduced its own evidence.

You must decide how many, if any, of those calls violated the National Do Not Call laws as I have instructed you. The same instructions that I gave you regarding the elements of Dr. Krakauer's National Do Not Call claim also apply to the calls to class members. In summary, as I instructed you earlier, it is a violation of the Do Not Call law if (1) a class member received more than one telephone solicitation in any 12-month period, (2) by or on behalf of Dish Network, and (3) when the class member's telephone number was registered on Dish's or SSN's internal do not call list.

However, Dish does not and cannot defend against the internal do-not-call claim based on an existing business relationship with the call recipient, because "[t]he EBR defense does not apply to an individual's internal do-not-call request."[19]

### Issue Six: Award

Issue six asks, "What amount, up to $500, do you award for each unlawful call?"

In assessing damages, you are to set an award that serves the purpose of the statute. The statute was passed in 1991 after Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and that "[m]any consumers were outraged over the proliferation of intrusive, nuisance calls to their homes from

---

[19] Class Cert. Order (ECF No. 111), Sept. 9, 2015, at 3 n.1 (citing 47 C.F.R. § 64.1200(f)(5)(i) ("The subscriber's seller-specific do-not-call request . . . terminates an [EBR] for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")).

11

telemarketers."[20] More specifically, the purpose of awarding damages under the statute "is to prevent repeated unwanted telemarketing calls by punishing those telemarketers who fail to honor do-not-call requests," whether those requests are made directly to the telemarketer or by registering a number on the National Do Not Call Registry.[21]

### Issue 7: Willful or knowing violation

Finally, issue 7 reads, "Has Dr. Krakauer proven, by a preponderance of the evidence, that Dish Network or SSN violated the Do Not Call laws willfully or knowingly?"

To find that Dish or SSN violated the laws willfully or knowingly, you do not need to find that they acted in bad faith, but only that they had reason to know, or should have known, that their conduct would violate the statute.[22]

---

[20] *See Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 745 (2012) ("Voluminous consumer complaints about abuses of telephone technology ... prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

[21] *Charvat v. ATW, Inc.,* 712 N.E.2d 805, 807 (Ct. App. Oh. 2008) ("The purpose of [47 U.S.C. § 227(c)(5) is to prevent repeated telemarketing calls to someone who has told the telemarketer not to call."; internal DNC claim only); *Charvat v. GVN Michigan, Inc.,* 531 F.Supp.2d 922, 926 (S.D. Ohio 2008) (same).

[22] *Maryland v. Universal Elections, Inc*., 862 F. Supp. 2d 457, 463 (D. Md. 2008) ("The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute."; finding willfulness established where defendants knew of TCPA requirements "month, if not years, before" the calls in question) (quoting *Texas v. Am. Blastfax, Inc*., 164 F. Supp. 2d 892, 899 (D. Tex. 2001); *see also In re: Intercambio, Inc.*, 3 FCC Rcd. 7247 (1988), 1988 WL 486783 (FCC 1988)).

### Other Instructions

### Expert Witnesses

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experiences, the reasons given for the opinion, and all the other evidence in the case.[23]

 

Respectfully submitted.

*/s/ John W. Barrett*
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

*/s/ J. Matthew Norris*
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 *facsimile*
jmn@ncconsumerlaw.com

---

[23] Fed. R. Evid. 602, 701-05; *Smith v. Morgan Drive Away, Inc.*, 985 F.2d 553 (4th Cir. 1993) (unpublished).

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
Telephone: (508) 655-1415
mmcue@massattorneys.net

Edward A. Broderick
Anthony Paronich
**Broderick & Paronich, P.C.**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

*Counsel for Plaintiff Thomas H. Krakauer*

14

## CERTIFICATE OF SERVICE

   I, John W. Barrett, hereby certify that on May 12, 2016, I caused to be filed the foregoing with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

               */s/ John Barrett*
               John Barrett