IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| THOMAS KRAKAUER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | CASE NO. 1:14-CV-00333-CCE-JEP |
| v. | ) ) ) | |
| DISH NETWORK LLC, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT DISH NETWORK L.L.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, DECERTIFY THE NDNC AND IDNC CLASSES BASED UPON *SPOKEO, INC. V. ROBINS* AND INSUFFICIENT CLASS NOTICE**

DISH Network L.L.C. ("DISH") brings this motion to dismiss Plaintiff's claims or, in the alternative, decertify the National Do Not Call ("NDNC") and Internal Do Not Call ("IDNC") classes based upon legal and factual developments subsequent to the Court's class certification Order.

Specifically, the United States Supreme Court's May 16, 2016 decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which clarified the standard for Article III standing for private claims seeking redress for statutory violations, provides cause for this Court to dismiss this case or to revisit its class certification Order and decertify the classes. Plaintiff's alleged basis for standing, as well as this Court's Order granting class certification, are directly at odds with the *Spokeo* standard. In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1543. According to the Supreme Court, a private plaintiff must have an actual concrete injury to bring a claim; a technical statutory violation is not

sufficient.  In contrast, when this Court certified the two classes in this case, it rejected DISH's objections to standing, holding that "where the statutory language provides a clear answer [as to standing], [the] analysis begins and ends with that language."  Doc. 111 at 13.  The Supreme Court has now clarified that statutory language alone is insufficient to convey standing.

This clarification of the law provides grounds for dismissal or, in the alternative, decertification.  Plaintiff has no proof of actual concrete injury to the approximately 24,000 alleged members of the NDNC and IDNC classes.  This warrants immediate dismissal.  *See United States v. Beasley*, 495 F.3d 142, 147 (2007); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Furthermore, this Court has specifically acknowledged that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."  Doc. 111 at 24 (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)).  Because "injury" means more than bare statutory violation, the NDNC and IDNC classes necessarily contain "a great many" such persons.  Plaintiff cannot show that the classes include anything other than individuals who:  (i) did not personally pick up the phone for a call from SSN; (ii) have not elected to obtain the TCPA's protections by personally adding their phone numbers to the National Registry or an internal do-not-call list; or (iii) have no memory of receiving a phone call. Indeed, class opt-out notices that Plaintiff produced to DISH demonstrate that several of Plaintiff's alleged class members do not wish to be a part of the NDNC or IDNC classes

because they suffered no injury from any calls by SSN. Because class standing is not automatic solely on the basis of an alleged TCPA violation, Plaintiff may only proceed if he proves that he and the class members suffered a common concrete injury. Since he has not and cannot do this, the Court is "duty bound" to decertify the classes. *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 544 (E.D. Va. 2000).

In addition, documents produced by the class administrator demonstrate that Plaintiff's class notice plan failed to reach the minimum percentage of the class, which provides additional grounds for decertification. Nearly 5,000 postcards to alleged class members were returned by the post office as undeliverable, and Plaintiff lacks any name or address information for another 4,000 alleged class members. As a result, Plaintiff failed to notify approximately 37.5% of the alleged class members, putting class notification at 62.5% or less, well-below the 70% threshold for a reasonable class notice plan enunciated by this Court.

## BACKGROUND

### A. Plaintiff Has Not Alleged or Offered Evidence of Concrete Injury

Plaintiff's pleadings and other submissions have consistently assumed that he has standing to sue based solely on alleged procedural violations of the TCPA and not based on any alleged concrete injury. In his amended complaint, Plaintiff alleges that he and the class members "received more than one [call in violation of the TCPA] in a twelve-month period." Doc. 32 ¶ 58. He does not allege that he or any class member suffered an actual or imminent concrete injury as a result of receiving any telephone calls allegedly attributable to DISH.

3

Plaintiff's motion for class certification reinforced the fact that he has not alleged and will not prove that he or the putative class members sustained any concrete injury as a result of receiving the calls attributed to DISH. Instead, Plaintiff stated that "there are only three main questions for the Court [in this action]: did SSN call DNC registrants or those who told it not to call them again, did those calls violate the TCPA, and is Dish is [sic] vicariously liable for SSN's misconduct?" *Id.* at 3. None of those questions addresses the "irreducible constitutional minimum" issue of whether Plaintiff or the class members suffered injuries-in-fact sufficient to confer Article III standing. *Spokeo*, 136 S. Ct. at 1547.

B.  **The Court's Class Certification Order**

On September 9, 2015, this Court granted Plaintiff's motion to certify the NDNC and IDNC classes, and rejected DISH's argument that standing issues precluded Plaintiff's request for certification. Doc. 111. In holding that Plaintiff had standing to sue, the Court relied exclusively on the standing provision of the TCPA, *see id.* at 12 (citing 47 U.S.C. § 227(c)(5)), and the proposition that "where the statutory language provides a clear answer, [the] analysis begins and ends with that language." *Id.* at 13 (citation omitted). In this Court's view at that time, the "plain language" of the TCPA conferred standing. *Id.* at 13-14.

The Court also rejected DISH's argument that certification was improper because many individual class members suffered no harm. While the Court acknowledged that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant," *id* at 24 (quoting *Kohen v. Pac.*

4

*Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)), it found, "[b]ased on the record before the Court," that there were only "a few dozen possible" class members who were not entitled to relief. *Id*.

**C.    The Supreme Court's Decision in *Spokeo***

In *Spokeo*, the plaintiff sought recovery under the Fair Credit Reporting Act ("FCRA") on the basis of the defendant's alleged violation of that statute. The FCRA imposes requirements concerning the creation and use of consumer reports. *Spokeo*, 136 S. Ct. at 1545. Of particular relevance, the FCRA requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy. *Id.* The statute provides that "'[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]' for, among other things, either 'actual damages' or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages." *Id.* (quoting 15 U.S.C. § 1681n(a)).[1]

At some point, the defendant, Spokeo, ran a search and generated a consumer report regarding the plaintiff, Robins. *Id.* at 1546. Robins became aware of the contents of that profile, and discovered that it contained inaccurate information. *Id.* Robins filed a class action complaint claiming that Spokeo willfully failed to comply with FCRA requirements. *Id.* After the district court dismissed the complaint with prejudice for lack

---

[1] The FCRA's standing provision uses language similar to the TCPA's standing provision, which states that a person who has received phone calls "in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State— . . . an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5). The effect of both statutes is to purportedly confer standing regardless of whether the consumer has suffered an injury-in-fact.

5

of standing, the Ninth Circuit reversed, holding that the plaintiff had standing to sue based on the proposition that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Id.*

Reversing the Ninth Circuit, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. In light of that principle, the Court held that Robins could not demonstrate standing merely by alleging a "bare procedural violation, divorced from any concrete harm." *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist"; it must be "real," and not 'abstract.'" *Id.* at 1548 (citations omitted). The Court remanded the case for a determination of "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1549.

### D. Plaintiff's Fatally Flawed Class Notice Efforts

Combined, the certified NDNC and IDNC classes consist of 24,577 individuals. *See* Doc. 129-1 ¶ 7. In his motion for class certification, Plaintiff assured the Court that he had "eliminated the potential logistical and manageability issues inherent in identifying all" of the class members. Doc. 48 at 6. Plaintiff stated that "virtually all class members have been identified." *Id.* at 10-11. Yet later, in the motion for approval of his class notice plan, Plaintiff acknowledged that there are 4,053 telephone numbers for which there is no name or address information, Doc. 126.[2] The Court approved

---

[2] DISH's expert, Debra Aron, calculated that there were 4,296 telephone numbers for which there was no name and/or address information. Doc. 129. For purposes of this motion, DISH will use the lower number offered by Plaintiff.

6

Plaintiff's class notice plan on the basis of his assurances that it would "reach at least the seventy percent threshold for a reasonable notice plan."  Doc. 153 at 2.

Recent factual developments have revealed that Plaintiff has not come close to identifying all class members, and indeed, he has fallen below the acceptable threshold for providing class notice.  On May 12, 2016, DISH received a CD containing copies of undeliverable class notice postcards that were returned to sender by the post office.  The total number of undeliverable postcards was 4,994.  When added to the 4,053 telephone numbers for which Plaintiff admitted there is no name and/or address information, this means that there is a total of 9,047 class members whom Plaintiff is indisputably unable to locate.  The remaining 15,530 alleged class members whom Plaintiff was potentially able to contact constitute less than 63% of alleged class members—falling far short of the threshold percentage that this Court relied upon in approving the class notice plan.

## ARGUMENT

**A.     The Court Should Dismiss Plaintiff's Claims**

A motion to dismiss for lack of subject matter jurisdiction may be brought at any time.  *See Beasley*, 495 F.3d at 147; Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Amzura Enterprises, Inc. v. Ratcher*, 18 Fed. App'x 95, 108 n.13 (4th Cir. 2001) ("[S]tanding is a jurisdictional issue that [a court] may raise at any time.").

Here, Plaintiff has never alleged that he sustained any real injury as a result of receiving the alleged calls for which he seeks to hold DISH liable, nor has he ever adduced any evidence to that effect.  Plaintiff premised his lawsuit solely on his

7

contention that he and the putative class members allegedly received the calls from SSN that he ascribes to DISH, and nothing more. *Spokeo* teaches that this is insufficient as a matter of law to qualify as injury in fact. Just like the plaintiff in *Spokeo* could not "satisfy the demands of Article III by alleging a bare procedural violation" of the FCRA, Dr. Krakauer cannot do so by alleging and demonstrating nothing more than a bare procedural violation of the TCPA. The mere fact that Congress enacted the TCPA "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement" by simply alleging that he or she was on the receiving end of a prohibited telephone call. *Id.* at 645.

  Throughout the course of this litigation, Dr. Krakauer has introduced evidence that, at most, he was "annoyed" by a call from an individual named "Ken" who did not work for DISH, and that he later called DISH to complain. Doc. 111 at 6. This evidence does not suggest that Dr. Krakauer sustained concrete injury as a result of the alleged calls he attributed to DISH. The mere fact that Krakauer claimed to have been "annoyed" by his call does not qualify as the sort of "concrete injury" sufficient to confer upon him Article III standing. *Cf. Kushner v. Ill. State Toll Highway Auth.*, 575 F. Supp. 2d 919, 923 (N.D. Ill. 2008) (noting that an "annoying" and "limited inconvenience" did not "constitute a concrete injury in fact"). In any event, Dr. Krakauer explained during his deposition that he was primarily annoyed because he believed (inaccurately) that Ken had stolen his identity, not because of any alleged TCPA violation. Doc. 102 at 14-16 ("The fact that he was able to impersonate me and go on to my Direct TV account to find detailed information about my business relationship with DirectTV is what really set me off.").

Because Dr. Krakauer commenced and maintained this action without having Article III standing, this Court lacks subject matter jurisdiction over this action, and it must be dismissed.

**B.     In the Alternative, the Court Should Decertify the NDNC and IDNC Classes**

   1.   Legal Standard

Federal Rule of Civil Procedure 23 provides that an order granting class certification may later be altered or amended at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C). Once a court certifies a class, it "has an affirmative obligation to ensure that the class membership remains at all times consistent with the underlying facts and procedural posture of the case." *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 162-63 (D. Md. 2008); *see also General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Chisolm*, 194 F.R.D. at 544 ("[T]he Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification.").

Reasons that may justify the decertification of a class "include an intervening change of controlling law [or] the availability of new evidence." *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015); *see also, e.g.*, *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) (decertifying in light of intervening appellate court decision); *Doe v. Karadzic*, 192 F.R.D. 133, 136 (S.D.N.Y. 2000) (decertifying in light of intervening United States Supreme Court decision).

Furthermore, Rule 23 "must be interpreted in keeping with Article III constraints" on standing, *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 831 (1999), and therefore, "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). "[S]tanding is a jurisdictional issue that [a court] may raise at any time." *Amzura*, 18 Fed. App'x at 108 n.13.

2. The United States Supreme Court's Decision in *Spokeo* Warrants Decertification of the NDNC and IDNC Classes

As a result of *Spokeo*, it is now apparent that Plaintiff cannot prove that there has been a concrete legal injury to any of the absent NDNC and IDNC class members. As an initial matter, *Spokeo* definitively states that "a plaintiff [does not] automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. As defined, the NDNC and IDNC classes consist of persons whose sole qualification for class membership is that they allegedly received telephone calls in violation of the TCPA. Because this does not, on its own, confer standing on those individuals, the Court must now consider whether Plaintiff can prove injury-in-fact on a class-wide basis.[3]

For absent members of both classes, Plaintiff cannot prove anything more than a bare procedural violation of the TCPA. At most, Plaintiff offers a name and address supposedly associated with a phone number that appears on the National Do-Not-Call

---

[3] DISH does not ask this Court to find that the Supreme Court's holding in *Spokeo* categorically prohibits plaintiffs from recovering on the basis of TCPA violations. However, as with the FCRA, a violation of the TCPA "may result in no harm." *Spokeo*, 136 S. Ct. at 1549. Because a procedural violation of the TCPA alone is not sufficient to confer standing, it is necessary for the Court to consider whether such harm exists.

10

Registry or an internal do-not-call list. He has no evidence of concrete harm to class members, let alone that any particular alleged class member affirmatively added his or her own phone number to the National Registry or an internal do-not-call list or received an unwanted call.[4] This case cannot proceed as a class action without class-wide proof of concrete harm.

For any given class member, Plaintiff has no way to prove whether the individual actually suffered a concrete injury from the call or whether, for example, the class member is among:

- individuals who were not bothered by the calls;
- individuals who have no memory of any call;
- individuals who welcomed the call and may have signed up for DISH; or
- individuals who answered calls from SSN, but who had not signed up for any do-not-call list (i.e., someone else signed up that telephone line).[5]

These categories are not hypothetical. Class opt-out notices that Plaintiff produced to DISH demonstrate that several of Plaintiff's alleged class members do not wish to be a part of the NDNC or IDNC classes because they suffered no injury from any

---

[4] While Plaintiff's expert attempted to exclude calls that did not actually connect, this does not mean that remaining class members suffered any injury. An individual suffers no injury in situations where, for example, a call connected to answering machine but SSN hung up rather than leaving a message, or in any other number of instances where individuals are completely unaware that SSN ever called them. (Deposition of Anya Verkhovskaya, 85:19-15.) ("Q. ... Is there any way you can tell from this – these call logs whether some of these calls were answered but were answered by an answering machine and the calling party hung up while the answer machine was playing? A. No."); *see Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 U.S. Dist. LEXIS 166243, *20 n.8 (M.D. Fla. Nov. 3, 2014) ("It is difficult to conceive of an injury based on the prerecorded nature of the message when no one hears that message.").

[5] The Court specifically addressed the category of individuals who were actual recipients of calls, but not subscribers to the telephone line. Doc. 111 at 12-14. In concluding that such individuals had standing, the Court relied exclusively on the language of the TCPA, and did not consider whether those individuals suffered concrete injury. *Id.* Following *Spokeo*, it is necessary for the Court to reconsider whether standing may be conferred on call recipients who never put themselves on any do-not-call list.

calls by SSN. These individuals not only opted out of the class, they took the time to send detailed notes to the class administrator explaining exactly why they did not wish to participate in seeking redress from DISH. One individual opted out of the class because he "has no memory of any telephone calls being made in connection with" this case. *See* DX-78 at 9. Another individual opted out of the class because she did not put herself on any list nor did he want to do so. *Id.* at 1. Yet another individual opted out of the class because she "does not recall ever being on the registry." *Id.* at 5. A DISH customer opted out of the class for the stated reason that she "ha[d] not received any telephone solicitations from Dish Network and [had] been a customer of their[s] for [a] very long time." *Id.* at 7. These are just the individuals who took the time and effort to opt-out and articulated their reasons for doing so—that they suffered no injury and merit no compensation. Plaintiff has not offered any reason to believe that a single alleged class member has suffered any injury.

Rule 23 "must be interpreted in keeping with Article III constraints" on standing. *Ortiz*, 527 U.S. at 831. In light of this proposition, several circuit courts have correctly held that "no class may be certified that contains members lacking Article III standing." *Denney*, 443 F.3d at 264. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013).[6] While other circuit courts have held that not all class members need to have standing, those courts have nonetheless held that "a class should not be certified if it is

---

[6] The Fourth Circuit has not yet weighed in on this question.

apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen*, 571 F.3d at 677 (citing authorities); *see also, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 25 (1st Cir. 2015) (affirming class certification where only 2.4% of the class likely had no injury).[7] Indeed, the Seventh Circuit specifically noted in *Kohen* that the defendant was free to "urge the district court to revisit its decision to certify the class" if subsequent discovery revealed that a "high percentage" of class members were not injured. *Id.* at 179.

Since a statutory violation is no longer sufficient to confer standing, the Court must "address the question framed by [the] discussion" in *Spokeo*. 136 S. Ct. at 1550. In light of the Rule 23 case law discussed above, the Court must consider the question of standing with respect to the entire class, not just Dr. Krakauer himself. "Based on the record before the Court" at the time it decided class certification, the Court determined that there were only "a few dozen possible" class members who were not entitled to relief. Doc. 111 at 24. On the current record, and in light of *Spokeo*, Plaintiff cannot assure the Court that *any* class member is entitled to relief. Thus, the number of persons who have not suffered any injury is certainly "a great many," and this fact fundamentally undermines the Court's prior class certification Order. The Court's decision to grant class

---

[7] The petitioner in *Tyson Foods* presented this circuit split in his petition for certiorari to the Supreme Court, but reframed the question before it reached the Court. Thus, the Court did not address the question of whether a class may be certified if it contains members who were not injured and have no legal right to any damages. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049, (2016).

13

certification is now inconsistent with binding Supreme Court authority, and the Court is "duty bound . . . to decertify." *Chisolm*, 194 F.R.D.at 544.[8]

    3.    <u>Plaintiff's Inability to Locate More than 9,000 Class Members Warrants Decertification of the NDNC and IDNC Classes</u>

Plaintiff's inability to identify more than 9,000 class members—constituting approximately thirty-seven percent of the combined NDNC and IDNC classes—is indicative of the futility of any effort to prove concrete injury for the class, and necessitates decertification for lack of standing. In addition, Plaintiff's inability to identify such a large percentage of the NDNC and IDNC class members, by itself, is grounds for decertification because it shows that the classes are not ascertainable. In its motion for class certification, Plaintiff assured the Court that he had "eliminated the potential logistical and manageability issues inherent in identifying all" of the class members and that "virtually all class members have been identified." Doc. 48 at 6. Now, however, it is apparent that Plaintiff cannot identify the class members—indeed, Plaintiff has fallen far short of the seventy percent threshold for reasonable notice that the Court relied upon in approving the class notice plan. Since Plaintiff cannot prove that the NDNC or IDNC classes are ascertainable, decertification is warranted. *See Pierce v. Cty.*

---

[8] Even if Plaintiff can show that Dr. Krakauer has standing on the basis of the evidence that he was "annoyed" by one of the calls he received, Plaintiff could not satisfy the Rule 23 requirements of commonality, predominance, and ascertainability. As to commonality, Plaintiff has not offered any evidence to show that the annoyance that Dr. Krakauer experienced was common to all class members. "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered *the same injury*." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis added). And even if he were to make such an allegation, he could not prove that each class member was sufficiently annoyed without offering evidence of their annoyance, which would necessarily require individual assessments of each class member. Finally, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Annoyed people cannot be "readily identified" through "objective criteria."

14

*of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008); *Thomas v. Baca*, No. CV 04-08448 DDP SHX, 2012 WL 994090, at *2-3 (C.D. Cal. Mar. 22, 2012).

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court grant DISH's motion to dismiss Plaintiff's claims or, in the alternative, decertify the NDNC and IDNC classes.

Dated: June 2, 2016

Respectfully submitted,

By: /s/ Peter A. Bicks
Peter A. Bicks
Elyse D. Echtman
John L. Ewald
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

/s/ Eric Larson Zalud
Eric Larson Zalud
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114
Telephone: (216) 363-4588
ezalud@beneschlaw.com

/s/ Richard J. Keshian
Richard J. Keshian
North Carolina Bar No. 10681
Kilpatrick, Townsend & Stockton, LLP.
1001 West 4th Street
Winston-Salem, NC 27101
Telephone: (336) 607-7322
rkeshian@kilpatricktownsend.com

15

*Attorneys for Defendant DISH Network L.L.C.*

## CERTIFICATE OF SERVICE

The foregoing Memorandum was filed electronically on June 2, 2016. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

/s/ *Peter A. Bicks*
Peter A. Bicks