# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**THOMAS H. KRAKAUER,**
on behalf of a class of persons,

      **Plaintiff,**

                                  **Civil Action No. 1:14-cv-00333-CCE-JEP**

**v.**

**DISH NETWORK, L.L.C.,**

      **Defendant.**

---

**Plaintiff's Memorandum in Opposition to Defendant Dish Network, L.L.C.'s
Motion to Dismiss or, in the Alternative, Decertify the NDNC and IDNC Classes
Based Upon _Spokeo, Inc. v. Robins_ and Insufficient Class Notice**

885600

# Table of Contents

Argument Summary ..........................................................................................1

Argument ......................................................................................................2

I.    *Spokeo* provides no basis for dismissal ............................................2

     A.   Standing after *Spokeo*...........................................................2

     B.   Dr. Krakauer suffered particular and concrete harms sufficient for
          Article III standing under *Spokeo*..........................................4

          1.   Dr. Krakauer suffered "particularized" injuries. ............4

          2.   Dr. Krakauer suffered "concrete" injuries. ....................5

               a.   Dish's invasion of Dr. Krakauer's privacy gives rise to standing. ..........6

               b.   Dish's intrusion on and occupation of Dr. Krakauer's telephone
                    line is sufficient for Article III standing. ................8

               c.   The nuisance, interruption, and waste of time caused by Dish's
                    calls gives Dr. Krakauer Article III standing.......................................11

               d.   Dr. Krakauer also suffered tangible harms. ...........13

     C.   Dish's claim that a violation of the TCPA is not a concrete
          injury is inconsistent with the Supreme Court's opinion in
          *Campbell-Ewald Co. v. Gomez*..........................................13

II.   *Spokeo* provides no basis for decertification. ...........................15

III.  The class notice campaign supplies no basis for decertification.............17

Conclusion ...................................................................................................20

# Table of Authorities

## Cases

*Am. States Ins. Co. v. Capital Assocs.*,
  392 F.3d 939 (7th Cir. 2004) ...................................................................................... 10

*America Online, Inc. v. IMS*,
  24 F. Supp. 2d 548 (E.D. Va. 1998) ............................................................................. 9

*Amos Fin., L.L.C. v. H & B & T Corp.*,
  2015 WL 3953325 (N.Y. Sup. Ct. June 29, 2015) ....................................................... 9

*Bates v. United Parcel Service, Inc.*,
  511 F.3d 974 (9th Cir. 2007) (en banc) ....................................................................... 6

*Booth v. Appstack, Inc.*,
  No. 13-1533, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ................................. 11

*Charvat v. NMP, L.L.C.*,
  656 F.3d 440 (6th Cir. 2011) ....................................................................................... 6

*Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*,
  957 F. Supp. 2d 1272 (D. Colo. 2013) ...................................................................... 16

*CompuServe, Inc. v. CyberPromotions, Inc.*,
  962 F. Supp. 1015 (S.D. Ohio 1997) ........................................................................... 9

*Czech v. Wall St. on Demand*,
  674 F. Supp. 2d 1102 (D. Minn. 2009) ........................................................................ 9

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ..................................................................................... 15

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ....................................................................................... 15

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y.2014) ................................................................................. 18

*Eisenstadt v. Baird*,
  405 U.S. 438 (1972) ...................................................................................................... 6

885600

*Fini v. DISH Network L.L.C.*,
 955 F. Supp. 2d 1288 (M.D. Fla. 2013) ................................................. 13

*Kohen v. Pacific Inv. Management Co. LLC*,
 571 F.3d 672 (7th Cir. 2009) ................................................................ 16

*Krakauer v. DISH Network, LLC*,
 311 F.R.D. 384 (M.D.N.C. 2015) ........................................................ 18

*Lawrence v. Texas*,
 539 U.S. 558 (2003) ............................................................................. 6

*Lee v. Credit Mgmt., LP*,
 846 F. Supp. 2d 716 (S.D. Tex. 2012) ................................................. 13

*Leung v. XPO Logistics, Inc.*,
 --- F. Supp. 3d ----, No. 15-03877, 2015 WL 10433667 (N.D. Ill. Dec.
 9, 2015) ............................................................................................... 11

*Lewis v. Casey*,
 518 U.S. 343, 116 S. Ct. 2174 (1996) (Souter, J., concurring) ............ 16

*Martin v. Leading Edge Recovery Solutions, LLC*,
 No. 11-5886, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012) ................. 11

*Maryland v. Universal Elections, Inc.*,
 729 F.3d 370 (4th Cir. 2013) ................................................................. 6

*Microsoft Corp. v. Does 1–18*,
 2014 WL 1338677 (E.D. Va. Apr. 2, 2014) ........................................... 9

*Mims v. Arrow Fin. Servs., LLC*,
 132 S. Ct. 740 (2012) ............................................................................ 7

*Mullins v. Direct Digital, LLC*,
 795 F.3d 654 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1161 ............... 18

*Neale v. Volvo Cars of North America, LLC*,
 794 F.3d 353 (3d Cir. 2015) ........................................................... 15, 17

*In re Nexium Antitrust Litigation*,
 777 F.3d 9 (1st Cir. 2015) ................................................................... 15

*Owens Ins. Co. v. European Auto Works, Inc.*,
 695 F.3d 814 (8th Cir. 2012) ................................................................. 6

885600

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris*, D.D.S., P.A.,
   781 F.3d 1245 (11th Cir. 2015) ................................................................. 10

*Parko v. Shell Oil Co.*,
   739 F.3d 1083 (7th Cir. 2014) ................................................................. 16

*Pierce v. Cty. of Orange*,
   526 F.3d 1190 (9th Cir. 2008) ................................................................. 19

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................... 16

*Register.com, Inc. v. Verio, Inc.*,
   126 F. Supp. 2d 238 (S.D.N.Y. 2000), *aff'd* 356 F.3d 393 (2d Cir.
   2004) ......................................................................................................... 9

*Rex v. Chase Home Fin. LLC*,
   905 F. Supp. 2d 1111 (C.D. Cal. 2012) ................................................... 11

*Robins v. Spokeo, Inc.*,
   742 F.3d 409 (9th Cir. 2014) ............................................................*passim*

*St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*,
   249 F.3d 389 (5th Cir. 2001) (Tex. law) ................................................... 6

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ............................................................... 16

*Thomas v. Baca*,
   No. CV 04-08448 DDP SHX, 2012 WL 994090 (C.D. Cal. Mar. 22,
   2012) ....................................................................................................... 19

*Underwood v. Carpenters Pension Trust Fund-Detroit and Vicinity*,
   2014 WL 4602974 (E.D. Mich. 2014) ....................................................... 6

*Valley Forge Christian College v. Am. United for Separation of Church &
State, Inc.*,
   454 U.S. 464 (1982) ............................................................................ 4, 16

*Walls v. Sagamore Ins. Co.*,
   274 F.R.D. 243 (W.D. Ark. 2011) ............................................................ 6

**Statutes**

47 U.S.C. § 227 ............................................................................................. 7

885600

Pub. L. No. 102-243, 105 Stat. 2394 ........................................................7, 12

**Other Authorities**

137 Cong. Rec. 30,821–22 (1991)..............................................................7, 12

Alba Conte and Herbert Newberg, *Newberg on Class Actions* (5th ed.) ...............1, 15, 18

Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431 (May 2015) ......................................................................................................6

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist & Plain Language Guide* (2010) ......................................................18

Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) ......................................................................18

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................18

H.R. Rep. 102-317 (1991) ...................................................................10, 13

*In re Rules & Regulations Implementing the [TCPA]*, 18 FCC Rcd. 14014 ¶ 165 (July 3, 2003) ......................................................................13

*In re Rules & Regulations Implementing the [TCPA]*, 23 FCC Rcd. 559, ¶ 7 (Jan. 4, 2008) ......................................................................13

*In re Rules & Regulations Implementing the [TCPA]*, 27 FCC Rcd. 1830, ¶ 25 (Feb. 15, 2012) ......................................................................13

Manual for Complex Litig. (4th) ..............................................................18

Restatement (Second) of Torts ..............................................................6, 8

## Argument Summary

The Supreme Court in *Spokeo* broke no new ground, but instead confirmed the bedrock Article III standing requirements of (1) a concrete and particularized injury in fact, that (2) is traceable to the defendant's conduct, and (3) is likely to be redressed by a favorable judicial outcome. Nonetheless, *Spokeo* spurred the Defendant to challenge Plaintiff Thomas H. Krakauer's standing for the first time in two-plus years of hard fought litigation.

*Spokeo* supplies no basis to challenge Dr. Krakauer's standing. He has standing to bring his TCPA claims, both because Congress conferred it to persons who receive telemarketing calls on numbers registered on do-not-call lists, and because the harm Krakauer alleges is closely analogous to harms cognizable that long recognized through the common law torts of invasion of privacy, trespass to chattels, and other privacy-invasive, nuisance-related wrongs.

Dish's request to decertify the class based on the Plaintiff's purported inability to prove standing classwide standing is contrary to the majority view that "if a class representative has standing, the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing." Alba Conte and Herbert Newberg, *Newberg on Class Actions* § 2:3 (5th ed.). And Dish cites no authority nor provides any valid grounds for its request to decertify because of the results of class notice, which in any event is rooted in an erroneous understanding of the notice campaign's results.

The Court should deny Dish's motion.

# Argument

## I. *Spokeo* provides no basis for dismissal.

### A. Standing after *Spokeo*.

In *Spokeo,* the Supreme Court addressed the injury-in-fact requirement for Article III standing. The Court's decision did not change the law of standing. Instead, the Court confirmed the long-established principle that "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The Court further confirmed that to establish injury in fact—the element primarily at issue in *Spokeo*—a plaintiff must "allege an injury that is both 'concrete' *and* 'particularized.'" *Id*. at 1545 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (emphasis added in *Spokeo*)).

According to the Supreme Court, a "particularized" injury "must affect that plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. The Court agreed with the Ninth Circuit that the *Spokeo* plaintiff had suffered a particularized injury because he claimed that the defendant—an alleged credit-reporting agency that had reported false information about him—"violated *his* statutory rights," and his "interests in the handling of his credit information are *individualized rather than collective*." *Id.* (quoting *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014)).

885600

Further, *Spokeo* confirmed that a "concrete" injury "must actually exist." *Id.* However, a "concrete" injury may also be "intangible." *Id.* at 1549. *Spokeo* indicated two approaches for establishing that an intangible injury is "concrete." "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* First, courts should consider whether an alleged intangible harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing *Vermont Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). A plaintiff may therefore demonstrate that she suffered a concrete injury by showing that her injury is analogous to a harm traditionally recognized at common law.

Second, Congress may identify and "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Id.* (citation and internal quotation marks omitted). Congress "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before" because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.*

The Court noted that merely asserting a "bare procedural violation, divorced from any concrete harm," will not satisfy the concreteness requirement. *Id.* However, this observation has little application to TCPA claims, since those claims are not based on "bare procedural violations," but rather on substantive statutory prohibitions of certain actions that cause harm to call recipients. As the Court stated: "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute

3

injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

In *Spokeo*, the defense bar sought a ruling that would have changed the law and eviscerated causes of action seeking statutory damages. But the Supreme Court did no such thing. Instead, it issued a narrow ruling, remanding the case to the Ninth Circuit solely on the basis that it had failed to address the extent to which Robins' injuries were "concrete" as opposed to merely "particularized." *Id.* at 1545. The Court explicitly took no position on whether Robins' injuries were in fact concrete for standing purposes. *Id.* at 1550. *Spokeo* thus created no new law. As Justice Alito noted, "[w]e have made it clear time and time again that an injury in fact must be both concrete *and* particularized." *Id.* at 1548 (emphasis in original).

### B. Dr. Krakauer suffered particular and concrete harms sufficient for Article III standing under *Spokeo*.

#### 1. Dr. Krakauer suffered "particularized" injuries.

*Spokeo* confirmed that injury in fact must be "particularized" in that it "must affect the plaintiff in a personal and individual way." 136 S. Ct. at 1548. In other words, standing requires that the plaintiff "has suffered some actual or threatened injury." *Valley Forge Christian College v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). Here, Dish's authorized dealer placed calls to *Dr. Krakauer's* residential telephones in violation of the TCPA.[1] The unlawful telemarketing calls that caused harm

---

[1] In support of his opposition to Dish's Motion to Dismiss, Dr. Krakauer relies on the facts set forth in his opposition to Dish's Motion for Summary Judgment (ECF No. 81 at 2-12).

in this case were received by *Dr. Krakauer* individually and, as a result, *Dr. Krakauer* suffered the harms resulting from those calls. Because Dr. Krakauer suffered such harms individually, the injury is particularized.

## 2.    Dr. Krakauer suffered "concrete" injuries.

In *Spokeo*, the Supreme Court provided courts with several tools for determining whether a plaintiff's alleged intangible harm is "concrete." *See* 136 S. Ct. at 1549. First, courts may look to common law to determine whether an alleged intangible harm "has a close relationship to a harm that has been traditionally regarded as providing a basis for a lawsuit." *Id.* Second, courts may look to the legislative intent of the statute at issue in the case to determine whether Congress identified the injury it sought to prevent by enacting the statute. *Id.* ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before") (quoting *Lujan*, 504 U.S. at 578 (Kennedy, J. concurring)).

Here, Dr. Krakauer has suffered concrete harm under either approach, in the form of invasion of his privacy, intrusion upon his property, waste of his time, and nuisance. Each of these intangible harms has a "close relationship" to a harm traditionally recognized at common law. Further, TCPA's legislative history demonstrates that Congress sought to "elevate to the status of legally cognizable injuries" the privacy and nuisance harms that the TCPA seeks to prevent. As a result, these harms confer standing under *Spokeo*.

885600

### a. Dish's invasion of Dr. Krakauer's privacy gives rise to standing.

The first harm Dr. Krakauer suffered was invasion of his privacy rights, an intangible harm recognized by the common law. American courts have long recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." Restatement (Second) Torts § 652A (1977). Nearly every state currently recognizes the tort. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (explaining results of state survey and concluding that "[c]urrently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). The right to privacy is also protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *Eisenstadt v. Baird*, 405 U.S. 438 (1972).

Courts have recognized that the interests protected by the TCPA are encompassed by the term "right to privacy." *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) (recognizing that the TCPA "protects residential privacy"); *Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA."). In addition, courts have allowed common law invasion of privacy claims for unwanted telephone calls under certain circumstances. *See, e.g.*, *Charvat v. NMP, L.L.C.*, 656 F.3d 440, 452–53 (6th Cir. 2011) (Ohio law); *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 394 (5th Cir. 2001) (Tex. law). Indeed, the TCPA can be seen as merely codifying the application of this tort to

6

particularly intrusive types of unwanted telephone calls. While the tort may require different elements than the TCPA, the Supreme Court's focus in *Spokeo* was not on the elements of the claim, but on whether the harm was of a type that traditionally provides a basis for a common law claim. Invasion of privacy is such a harm.

Additionally, Congress explicitly recognized the harm resulting from the invasion of privacy caused by unwanted telephone calls as a harm the TCPA sought to prevent. In enacting the TCPA, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive *invasion of privacy* [.]" Pub. L. No. 102-243, 105 Stat. 2394, at § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA's legislative history contains repeated references to "privacy rights," "invasion[s] of privacy," "intrusive nuisance calls," and the like. *Id.  See also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) (observing the TCPA "bans certain practices invasive of privacy"). And the Act's sponsor complained that "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–22 (1991) (Sen. Hollings).

Dr. Krakauer suffered an invasion of his privacy rights with each unlawful call placed to his residential telephone in violation of the TCPA. Indeed, placing calls to individuals who placed their telephone numbers on the National Do Not Call Registry constitutes an invasion of these consumers' expressly requested privacy.  Because the invasion of privacy harm caused by Dish's calls is both traditionally recognized at common law *and* is the very harm that Congress sought to prevent in enacting the TCPA,

7

Dr. Krakauer satisfies the concrete injury requirement for Article III standing as articulated in *Spokeo*.

>   **b. Dish's intrusion on and occupation of Dr. Krakauer's telephone line is sufficient for Article III standing.**

Dr. Krakauer also suffered a second concrete harm: intrusion upon and occupation of his residential telephone line. The harm recognized by the ancient common law claim of trespass and, more specifically, trespass to chattels, is a close analog for the harm to Dr. Krakauer. *See* Restatement (Second) of Torts § 217 (1965). Common-law courts recognized an action for trespass to chattels for temporary dispossession of personal objects, even when "there has been no impairment of the condition, quality, or value of the chattel, and no other harm to any interest of the possessor," and "he is not deprived of the use of the chattel for any substantial length of time." *Id.* § 218 cmt. d. This is similar to the more familiar concept of trespass, which requires nothing more than "plac[ing a] foot on another's property" to constitute harm and confer standing on the property owner. *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring).

The harm caused by unwanted telephone calls is closely related to the harm recognized by this tort. The TCPA can be viewed as merely applying this ancient tort to a 21st-century type of personal property (a telephone line) and a 21st-century method of intrusion (complete occupation of that telephone line through unlawful methods). Analogizing this common law harm to telephone calls and making redress for intrusive calls more readily available is particularly appropriate since electronic intrusion is so

885600

much easier, and so much more readily repeated, than physical dispossession or misuse of a chattel.

Several courts have held that temporary electronic intrusion upon another person's electronic equipment constitutes trespass to chattels. *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 249 (S.D.N.Y. 2000) (intruding electronically into business's database to harvest e-mail addresses causes harm by reducing the system's capacity; "mere possessory interference is sufficient to demonstrate the quantum of harm necessary to establish a claim for trespass to chattels"), *aff'd* 356 F.3d 393 (2d Cir. 2004); *America Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550-51 (E.D. Va. 1998) (granting summary judgment against spammer on trespass to chattels and other claims because the plaintiff's "possessory interest in its computer network ha[s] been diminished by the bulk e-mailing"); *CompuServe, Inc. v. CyberPromotions, Inc.*, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (issuing preliminary injunction against spammer on theory of trespass to chattels); *Microsoft Corp. v. Does 1–18*, 2014 WL 1338677, at *9–10 (E.D. Va. Apr. 2, 2014) ("The unauthorized intrusion into an individual's computer system through hacking, malware, or even unwanted communications supports [a claim for trespass to chattels]."). Courts have also applied this tort theory to unwanted telephone calls. *See Czech v. Wall St. on Demand*, 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages); *Amos Fin., L.L.C. v. H & B & T Corp.*, 2015 WL 3953325, at *8 (N.Y. Sup. Ct. June 29, 2015) (occupying memory of answering machine and interfering with unencumbered access to phone would have been trespass to chattels if proven).

9

885600

Not only is the harm associated with tying up a telephone line analogous to the tort of trespass to chattels, that harm is recognized in the legislative history of the TCPA. *See* H.R. Rep. 102-317 at 10 (1991) ("Once a phone connection is made, automatic dialing systems can 'seize' a recipient's telephone line and not release it . . . . This capability makes these systems not only intrusive, but, in an emergency, potentially dangerous."). Likewise, courts have recognized that one purpose of the TCPA is to "keep[] telephone lines from being tied up." *Am. States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004). And the Eleventh Circuit has recognized that "the occupation of the recipient's telephone line and fax machine" for even one minute is a sufficient injury in fact for a TCPA claim asserting violations of the statute's junk fax provisions. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250–51 (11th Cir. 2015).

Dr. Krakauer suffered harms analogous to the interference with property recognized in the common law claim for trespass to chattels. During the Dish telemarketing calls, Dr. Krakauer's residential line was tied up and unavailable for any other purpose. Dr. Krakauer could not place outgoing calls or receive other incoming calls due to Dish's interference with his possessory interest in his telephone line. In other words, Dish's authorized retailer took control of Dr. Krakauer's property against his express wishes. As a result, Dr. Krakauer suffered concrete harm of a type traditionally recognized at common law and recognized by Congress and courts as a harm the TCPA sought to address. He therefore has standing to pursue his TCPA claims.

885600

### c. The nuisance, interruption, and waste of time caused by Dish's calls gives Dr. Krakauer Article III standing.

Dr. Krakauer suffered a third type of intangible injury in the form of nuisance, interruption, and waste of time. Answering telemarketing calls or listening to telemarketing voice mail messages is wasteful of the precious resource of time and constitutes a nuisance. For that reason, the first post-*Spokeo* decision to address standing under the TCPA held that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA… violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

*Booth v. Appstack, Inc.*, No. 13-1533, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016). This decision is consistent with a number of pre-*Spokeo* decisions have also recognized that lost time is an adequate injury-in-fact in TCPA and other cases. *See Leung v. XPO Logistics, Inc.*, --- F. Supp. 3d ----, No. 15-03877, 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion [to dismiss TCPA claims] must be denied."); *Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-5886, 2012 WL 3292838, at *3 (N.D. Ill. Aug. 10, 2012) (plaintiffs suffered injury under TCPA in part "because they had to spend time tending to unwanted calls"); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d

11

1111, 1146 (C.D. Cal. 2012) ("[A] plaintiff suffers an injury sufficient to establish Article III standing where she alleges that she lost time spent responding to the defendant's wrongful conduct and the lost time is at least indirectly attributable to the defendant's actions.").

When it enacted the TCPA, Congress emphasized the nuisance aspect of unsolicited telemarketing calls, stating that it considered the interruptions they cause and the time they waste to be one of the chief harms the TCPA was intended to remedy. *See* Pub. L. 102-243, §§ 2(6), 2(10), 2(12), 2(13), 2(14). Senator Hollings' comments about unwanted telemarketing calls are illustrative: "They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed." 137 Cong. Rec. 30,821–22 (1991). Congress was also mindful that even steps taken to avoid such calls cause consumers harm. One of its findings was that "[t]echnologies that might allow consumers to avoid receiving such calls . . . place an inordinate burden on the consumer." Pub. L. 102–243, § 2, 105 Stat. 2394 (1991).

By placing his number on the Do Not Call Registry, Dr. Krakauer made it clearly known that telemarketing calls to his home were not welcome. Nonetheless, as a result of Dish's calls, Dr. Krakauer suffered the very nuisance, interruption, and waste of time harms that Congress identified and that courts have found sufficient to support Article III standing. These harms are not "bare procedural violations," but concrete injuries sufficient to establish standing to bring a TCPA claim.

885600

### d. Dr. Krakauer also suffered tangible harms.

Finally, not only has Dr. Krakauer suffered concrete but "intangible" harms due to invasion of privacy, nuisance, trespass to chattel and wasted time, but he also sustained "tangible" economic harm as well. Dish called Dr. Krakauer on his residential telephone line, for which Dr. Krakauer pays a monthly fee. The FCC has long recognized that the recipient of telemarketing calls is "charged" for the call, even if the recipient subscribes to a plan that charges a flat monthly rate. *See In re Rules & Regulations Implementing the [TCPA]*, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *In re Rules & Regulations Implementing the [TCPA]*, 23 FCC Rcd. 559, 562, ¶ 7 (Jan. 4, 2008); *In re Rules & Regulations Implementing the [TCPA]*, 27 FCC Rcd. 1830, 1839–40, ¶ 25 (Feb. 15, 2012); *see also Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2012) ("Lee has stated that he pays a third-party provider for cellular phone services. Normally, this is sufficient to show that an individual was charged for the calls."); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013). Although many of these opinions address mobile phone services, the same principle applies when a consumer pays a flat fee for his residential telephone line. As a result of such economic harm, Dr. Krakauer suffered a tangible injury in fact sufficient to satisfy Article III's standing requirement.

### C. Dish's claim that a violation of the TCPA is not a concrete injury is inconsistent with the Supreme Court's opinion in *Campbell-Ewald Co. v. Gomez*.

Any assertion that *Spokeo* divests federal courts of jurisdiction over TCPA claims is at odds with the Supreme Court's decision in *Campbell-Ewald v. Gomez,* a case

885600

decided earlier *in the same term*. Simply put, if an alleged TCPA violation could not amount to a concrete injury, the Supreme Court should have and would have dismissed *Campbell-Ewald* as non-justiciable, rather than considering, as it did, whether Gomez *retained* standing after receiving an offer of complete judgment from the defendant. Instead, the Court heard the case and ruled that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016). Similarly, the Supreme Court exercised subject matter jurisdiction over a TCPA case in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), in which the Supreme Court held that federal courts have federal question jurisdiction under the TCPA, and recognized that the class action vehicle is the most appropriate way to provide consumers with redress for violations covered by the TCPA. *Mims*, 132 S. Ct. at 753.

It is axiomatic that a federal court may not adjudicate an action in which a plaintiff lacks Constitutional standing. *Campbell-Ewald v. Gomez*, 136 S. Ct. at 669. Indeed, when evaluating "subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). By exercising subject matter jurisdiction over the TCPA claim asserted in *Campbell-Ewald*, the Court implicitly decided that there was a case or controversy within the meaning of Article III. A bright-line rule that TCPA violations do not confer standing rests on the untenable presumption that the Supreme Court violated its own precedent by hearing cases over which it lacked jurisdiction.

885600

## II. *Spokeo* provides no basis for decertification.

Dish contends that the class must be decertified because Dr. Krakauer cannot prove that there has been a concrete legal injury to any of the absent class members. Dish's argument is both legally and factually wrong. First, a majority of federal courts agree that "if a class representative has standing, the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing." (*Newberg* § 2:3.) Second, even if the law were otherwise, Dr. Krakauer has alleged and can prove that the members of the class suffered the same concrete injuries as did he.

Dish's argument relies too heavily on a single sentence from the Second Circuit's opinion in *Denney v. Deutsche Bank AG*, stating that "no class may be certified that contains members lacking Article III standing." 443 F.3d 253, 263-64 (2d Cir. 2006). But that sentence, Dish fails to mention, is embedded in a paragraph that begins, "we do not require that each member of a class submit evidence of personal standing," and later quotes *Newberg* for the proposition that "passive members need not make any individual showing of standing, because *the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.*" *Id.* (emphasis added.)

Indeed, as Dish also fails to mention, courts in nearly every circuit have held that the standing issue focuses on whether the class representative is properly before the court, not whether absent class members have demonstrated standing.[2] To require more would

---

[2] *See, e.g., In re Nexium Antitrust Litigation*, 777 F.3d 9 (1st Cir. 2015); *Denney*, 443 F.3d 253 at 263-64; *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 362, 364,

885600

be to compromise the very purpose of Rule 23. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084-85 (7th Cir. 2014) (Posner, J.) (requiring a showing of standing by absent class members would "put the cart before the horse" and "make the class certification process unworkable" because "[h]ow many (if any) of the class members have a valid claim is the issue to be determined after the class is certified"); *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 957 F. Supp. 2d 1272, 1278 (D. Colo. 2013) (requiring disability discrimination plaintiffs to identify an individual with standing to challenge physical access hurdles at each of approximately 248 stores within the class "would convert the case from a class action to a massive individual action, defeating the efficiencies of Rule 23").

Article III's standing requirements are designed simply to ensure that litigants are truly adverse to one another, and that a court's resources are reserved only for actual "cases or controversies." *Valley Forge Christian Coll.,* 454 U.S. at 476. Therein, held the Third Circuit, "lies the key" to this debate: "a class action is a *representative* action brought by a named plaintiff or plaintiffs. Named plaintiffs are the individuals who seek to invoke the court's jurisdiction and they are held accountable for satisfying

---

366 (3d Cir. 2015); *In re Deepwater Horizon*, 739 F.3d 790, 800-02 n.19 (5th Cir. 2014); *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *Bates v. United Parcel Service, Inc*., 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197-98 (10th Cir. 2010); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279, (11th Cir. 2000); *Underwood v. Carpenters Pension Trust Fund-Detroit and Vicinity*, 2014 WL 4602974, *3 (E.D. Mich. 2014); *Walls v. Sagamore Ins. Co.,* 274 F.R.D. 243, 253 (W.D. Ark. 2011); *see also Lewis v. Casey,* 518 U.S. 343, 395, 116 S. Ct. 2174 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs")

885600

jurisdiction." *Neale*, 794 F.3d at 364. Since Dr. Krakauer has established his own injury in fact, the Court's jurisdiction is proper.

Of course, even if the law required a showing of classwide standing, Dish's argument would fail. In contending that Dr. Krakauer could not possibly establish standing on a classwide basis, Dish adopts an unduly narrow view of the harm at issue. As explained above, the harm Dr. Krakauer alleges on behalf of the class is more than simple "annoyance." While the degree of a class member's "annoyance," as Dish characterizes it, might require some individualized proof, the harms Dr. Krakauer actually alleges—invasion of privacy, trespass to chattel, waste of time, and economic loss—are readily apparent upon common evidence. Every single call to a number on the DNC Registry reflects a concrete invasion of privacy against the call recipient's expressed wishes. In addition, each class member lost the use of his or her telephone line while Dish occupied it. Each class member lost precious time dealing with Dish's unwanted solicitations. And each class member was forced to pay for the telephone time that Dish took without permission. Thus, even if Dish's interpretation of the law were not terminally flawed, its motion to decertify could not succeed.

**III.    The class notice campaign supplies no basis for decertification.**

In a single, final paragraph, Dish asserts that Dr. Krakauer could not identify "more than 9,000 class members" for purposes of mailed class notice, a purported fact that "by itself is grounds for decertification because it shows that the classes are not ascertainable." (ECF No. 197.) Again, Dish misstates the facts, and is, as one might

885600

suspect from its omission of any authority supporting its argument, wrong on the law, too.

Legally, Dish's argument relies on the false premise, already rejected by the Court's class certification order, that ascertainability requires the identification of all class members. It does not. As Dr. Krakauer originally noted in his reply in support of certification (ECF No. 75 at 1-4), ascertainability only requires an objectively defined class, as exists here. "All courts essentially focus on the question of whether the class can be ascertained by objective criteria." *Newberg* § 3:3; *see also* Manual for Complex Litig. (4th) § 21.222, at 270 (same). The Court has concluded the class was ascertainable, and it was correct. *Krakauer v. DISH Network, LLC,* 311 F.R.D. 384, 390-94 (M.D.N.C. 2015).

Moreover, Rule 23 does not require perfect notice, but only "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B). It "does not insist on actual notice to all class members in all cases. It recognizes it might be *impossible* to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1161; *see also Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 567 (S.D.N.Y.2014) (even if ascertainability difficulties are "formidable, [ascertainability] should not be made into a device for defeating the action."); Manual for Complex Litig. (4th) at 287, n.882 (collecting cases); Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010), at 27 ("The norm is in the 70–95% range.); Fed. Jud. Ctr., *Judges' Class Action*

885600

*Notice and Claims Process Checklist & Plain Language Guide* (2010) (describing notice that reaches between 70-95% of the class as a "high percentage").[3]

Factually, Dish's contention that the notice program failed to meet the Court's expectations is incorrect. In short, Dish's assertion that the Administrator was unable to deliver more than 9,000 notices relies on double-counting and fails to account for the Administrator's remailing efforts. (*See* Decl. of Christina Peters-Stasiewicz, attached as Exhibit A). Tallied correctly, the chart below shows that the administrator was ultimately able to deliver notice to more than 75% of the class:

| | |
|---|---|
| Original Mailed Notices | 28,281 |
| First-time UAA Notices | -7,923 |
| First-time Re-mail Notices | 1,038 |
| Second-time UAA Notices | -130 |
| Second-time Re-mail Notices | 4 |
| Third-time UAA Notices | -3 |
| Total Count of Notices with Final Status Mailed or Re-mailed | **21,267** |
| Percentage of Total Notices with Final Status Mailed or Re-mailed | **75.20%** |

(*Id.* ¶ 11). That number actually exceeds the 70% threshold that Dish seemingly concedes reflects a successful notice campaign (*see* ECF No. 197 at 7, 14) and the 72.82% deliverability prediction in the notice plan approved by the Court. Thus, rather than

---

[3] The two cases Dish cites as supporting its claim that decertification is warranted on ascertainability grounds could not be further removed from the circumstances here. Both cases unremarkably decertified classes made up of prisoners, a "highly fluid" population with exceedingly variable individual damages. *Pierce v. Cty. of Orange*, 526 F.3d 1190 (9th Cir. 2008); *Thomas v. Baca*, No. 04-08448, 2012 WL 994090 (C.D. Cal. Mar. 22, 2012). As the *Baca* court noted, given the volume of detainees cycling through the jail system and the difficulty of determining which of them "actually slept on the floor," identification was virtually impossible, as was determining the "highly individualized questions of proof as to damages." *Id.* at *3.

885600

supporting Dish's motion to decertify, the success of the notice plan actually affirms the

Court's decision to certify the IDNC and NDNC classes in the first place.

<div align="center">

**Conclusion**

</div>

The Court should deny the Defendant's motion.


Respectfully submitted.

<div style="margin-left: 40%;">

*/s/ John W. Barrett*
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

*/s/ J. Matthew Norris*
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 *facsimile*
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
Telephone: (508) 655-1415
mmcue@massattorneys.net

</div>

<div align="center">

20

</div>

885600

Edward A. Broderick
Anthony Paronich
**Broderick & Paronich, P.C.**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

*Counsel for Plaintiff Thomas H. Krakauer*

885600

## CERTIFICATE OF SERVICE

       I, John W. Barrett, hereby certify that on June 23, 2016, I caused to be filed the foregoing with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

*/s/ John W. Barrett*
John W. Barrett

885600