IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REGARDING PLAINTIFF'S MOTION IN LIMINE

This matter is before the Court on a motion in limine filed by the plaintiff, Dr. Thomas Krakauer. Among other things, Dr. Krakauer has moved to exclude the defendant Dish Network L.L.C.'s evidence concerning its established business relationship ("EBR") defense; evidence concerning opinions in Dr. Debra Aron's supplemental report; and Dish's Exhibits 31A to 31S, which list different categories of class members' phone numbers as to which Dish contends there was no violation of the Telephone Consumer Protection Act. (Doc. 181 at ¶¶ 1, 7, 8).

Dr. Krakauer contends, *inter alia*, that Dish failed to timely disclose this evidence and that it is not relevant. Dish contends that that the EBR evidence and Dr. Aron's report were timely disclosed; that Dr. Aron's report is relevant; and that Exhibits 31A-S, including the EBR exhibit at 31M, are summaries of other evidence. Dish also contends that, even if any evidence is untimely, any error is harmless. Because Dish did not timely disclose this evidence and the error is prejudicial both to Dr. Krakauer and to the judicial

process, the Court will grant Dr. Krakauer's motion in part and order that Dish cannot use any EBR evidence, testimony about Dr. Aron's supplemental report, or Exhibits 31A-S.

The remaining aspects of Dr. Krakauer's motion in limine as well as Dish's motions in limine remain under advisement. Separate orders will be entered as time permits.

## BACKGROUND

This is a class action alleging violations of the Telephone Consumer Protection Act ("TCPA") by Dish Network L.L.C. (Doc. 32 at 13). Plaintiff Dr. Thomas Krakauer represents two classes of people who were on a do-not-call list but received telephone calls from Satellite Systems Network ("SSN") marketing Dish satellite television services. (*See* Doc. 153 at 1-2). Since the beginning of this case, Dish has asserted that some class members are not eligible to recover either because their phone numbers were not residential or because they were not on the do-not-call registry at the time of the calls. (*E.g.*, Doc. 56 at 17, 23). Dish also has asserted, vigorously and repeatedly, that some numbers belong to customers with whom it had an established business relationship ("EBR") or who consented to the calls, which are affirmative defenses under the TCPA. (*E.g.*, Doc. 34 at 10-11; Doc. 56 at 20).

In its initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure in July 2014, Dish named three Dish employees who had discoverable information about claims or defenses: Joey Montano, Bruce Werner, and Blake Van

Emst. (Doc. 205-1 at 2).[1] As to Mr. Montano and Mr. Werner, the disclosures stated that each "has knowledge regarding DISH's 'do-not-call' policies and procedures and DISH's policies, procedures, and directives relating to DISH's Independent Retailers." (*Id.*). The disclosure as to Mr. Van Emst was similar. (*See id.*). Dish did not specifically identify any witness as having knowledge of residential numbers, the consent defense, or EBR. (*See id.*).

In discovery, Dr. Krakauer sought to identify information about the categories of calls for which Dish would offer affirmative defenses. Dr. Krakauer's counsel requested information about defenses, including EBR and consent. (Doc. 205-3 at 1-4). In its responses, Dish objected on numerous grounds, including that the request was premature, sought information not in its control, and was unduly burdensome, and that identifying EBR customers was "not possible . . . absent individualized inquiry." (*Id.* at 2). Dish referred to but did not identify SSN and Five9[2] documents and witnesses, and provided only a list (the "EBR list") of what it characterized as "persons or entities with whom DISH has or had an established business relationship" and who "gave written permission to be contacted" by Dish. (*Id.* at 2). The list, which was later filed with the Court, redacted the full phone numbers and included obviously incorrect dates, such as "1/1/1900." (*See* Doc. 56-16).

---

[1] These disclosures were filed at the Court's request after disputes arose about Dish's initial disclosures during oral argument on this motion. (*See*, *e.g.*, Doc. 204 at 69).

[2] Five9 is "a telephone dialing system software company" that kept records of calls made by SSN. (Doc. 48-2 at 2, 8).

Dr. Krakauer's counsel sought to depose Dish on its defenses, including consent and EBR. (Doc. 183-3 at 5 ¶¶ 7-10). Dish identified Mr. Werner as the employee who would be deposed on those topics. (Doc. 183-2 at 4). When Dr. Krakauer's counsel asked questions about those defenses at deposition on March 17, 2015, Mr. Werner could not identify people who fit either defense, and Dish's counsel stated that Mr. Werner "is not going to be able to answer that question, as we sit here today." (*Id.* at 5-7). Mr. Werner was shown the disclosed EBR list and was unable to answer questions about it. (*See id.* at 7 ("[Dish's counsel]: [Y]ou're welcome to look through every single one of these numbers and see if you know the answer. [Mr. Werner]: I apologize. I would prefer not to go through the exercise.")).

Dish's expert disclosure deadline was March 12, 2015. (Doc. 46).

Dr. Krakauer moved for class certification on March 23, 2015, based, in part, on the expert report of Anya Verkhovskaya. (Doc. 48 at 9). Ms. Verkhovskaya's initial report analyzed call records and phone database information from Five9, LexisNexis,[3] the National Do Not Call Registry, and other sources. (Doc. 48-2 at 8-15).

As early as April 13, 2015, Dish disputed the accuracy of Ms. Verkhovskaya's analysis. (Doc. 56 at 8). In opposing class certification, Dish provided a list of phone numbers that Dish contended were associated with existing Dish customers and to which Dish had an EBR defense. (Doc. 56 at 21; Doc. 56-16). This list had the same Bates

---

[3] LexisNexis operates a commercial database of phone numbers, addresses, names, and other data from public records and proprietary sources. (Doc. 48-2 at 5).

4

number as the EBR list Dish produced in discovery; again, it redacted the full phone numbers and included inaccurate dates. (*See* Doc. 56-16; Doc. 205-3 at 2).

Dish also offered the report of Dr. Debra Aron in an effort to exclude Ms. Verkhovskaya's report. (*See* Doc. 58 at 15). Dr. Aron was asked to analyze Ms. Verkhovskaya's report "to determine whether she has offered a reliable methodology for ascertaining Plaintiff's proposed class." (Doc. 58-5 at ¶ 7). Dr. Aron's report does not indicate that she did any independent analysis of whether class members' phone numbers were residential, nor did she analyze whether consent or EBR applied to class members. (*See id.* at ¶ 51 (criticizing Ms. Verkhovskaya's methodology on consent but not offering independent analysis or opinions)). Dr. Aron did analyze and match phone numbers with names and dates of calls. (*See id.* at ¶¶ 42-50).

Dish's counsel also provided examples of calls to phone numbers that they contended could not violate the TCPA for other reasons, including calls to numbers identified as business numbers, calls where the class member had made an inquiry or application to Dish or SSN, and calls where Dish contended the class member consented to be called. (Docs. 56-18 to 56-25). Dish contended that individual issues predominated and class certification should be denied. (Doc. 56).

Discovery closed on April 17, 2015. (*See* Docs. 17, 18).

On September 9, 2015, the Court granted the motion for class certification and explained that none of Dish's purported individual issues prevented certification. (Doc. 111). The Court noted that Dish's EBR list was "incomprehensible." (*Id.* at 26). On the discrepancy about business versus residential numbers, the Court stated,

5

> [t]o the extent Dish has evidence that some numbers on Dr. Krakauer's putative class list were associated with businesses during the class period, Dish can present that evidence through an expert witness using data from Lexis or another vendor. On the record before the Court, to the extent resolution of these issues presents individual questions, these questions appear few in number, straightforward, and peripheral to the central issues in this litigation.

(*Id.* at 25). The Court reached similar conclusions about the other categories of calls Dish disputed because Dish's assertions about these categories of non-actionable calls were "largely speculative and unsupported by evidence" at the time of class certification. (*Id.* at 28-30 & n.7). The Court explained that "to the extent Dish has admissible evidence" that calls did not violate the TCPA, Dish "can present such evidence," but the possibility of such evidence did not prevent class certification. (*Id.* at 30 n.7).

After the Court certified the class, Dish did not seek to reopen discovery to supplement its discovery responses about affirmative defenses, customers who allegedly did not have residential numbers, customers who were not called during the class period, or other disputed categories of calls. As best the Court can tell, Dish never identified an expert witness for the purpose of testifying about any analysis of records for the purpose of establishing lists of putative class members with whom Dish had an EBR, who consented to the calls from SSN, whose numbers were associated with businesses, or who were otherwise unable to recover.[4]

---

[4] This fact was implicit in the briefs and oral argument, (*see generally* Doc. 194 at 19-20; Doc. 204 at 62-63 (Dish's counsel contending that no expert was required)), and Dish did not submit its expert witness disclosures to the Court to show anything to the contrary.

6

In November 2015, in opposition to Dr. Krakauer's motion for approval of class notice, Dish filed a brief citing a supplemental expert report of Dr. Aron. (Doc. 129). Dr. Aron's supplemental report assessed "the accuracy and the completeness of the identification information in the [mailing list] data for the proffered purpose of sending the class notice to individuals in this case." (Doc. 129-1 at ¶ 4). Included in the report were several lengthy attachments of redacted class member data. (Docs. 129-2, 129-3, 129-5). Dr. Aron's supplemental report does not include any opinions about residential versus business numbers or about the EBR or consent defenses. (Doc. 129-1).

In March 2016, when the parties informally exchanged Rule 26(a)(3) pretrial disclosures shortly before the scheduled trial date, Dish disclosed for the first time that it would use summaries of EBR evidence at trial. (Doc. 204 at 26-27). Pretrial disclosures were due, and were filed, on April 1, 2016. (Doc. 145 at ¶ 7; Doc. 164; Doc. 165). On April 15, 2016, thirteen months after Dish's expert disclosures were due, more than eleven months after discovery closed, seven months after the Court indicated to Dish that it could present additional evidence on these categories of phone numbers, and two weeks after pretrial disclosures were due, Dish disclosed Exhibits 31A-S for the first time. (*See* Doc. 204 at 25-27).

Dish describes Exhibits 31A-S as summaries of data from LexisNexis, Five9, Microbilt,[5] and Dish's IDNC[6] lists. (Doc. 194-3 at 1-3). According to Dish's counsel,

---

[5] Microbilt Corporation is a data processor that Dr. Krakauer used to identify name and address information based on telephone numbers. (Doc. 126-1 at ¶ 11).

[6] IDNC means "Internal Do-Not-Call." (*See* Doc. 194 at 9).

7

each exhibit describes a different set of calls or phone numbers that Dish contends do not violate the TCPA. (Doc. 204 at 12-14). For example, Dish's attorneys say that Exhibit 31G describes "contradictions between LexisNexis data and Microbilt data on telephone numbers as residential or business." (Doc. 194-3 at 2; *see also* Doc. 204 at 57).

Dish contends that Exhibits 31A-S "summarize previously-produced data" under Federal Rule of Evidence 1006.[7] (Doc. 194 at 19-20). Dish maintains that these summaries rely on source evidence, most of which—including the Five9 data, the IDNC lists, the LexisNexis data, and the Microbilt data—was produced by Dr. Krakauer, while the Dish customer data was produced by Dish during discovery. (*Id.* at 19 n.1). According to Dish, all of this source evidence was produced by October 2015. (*Id.*).

Dish contends that Exhibit 31M includes the calls for which there is an EBR defense. (Doc. 204 at 58; *see* Doc. 194-3 at 2). Dish intends to use Mr. Montano to testify about and explain the EBR exhibit. (Doc. 194 at 3).

Dish's May 10, 2016, revised exhibit list also included, under "may use," three exhibits that were originally used with Dr. Aron's supplemental report. Exhibits 53 to 55 each describe inconsistent or missing name or address information from Dr. Krakauer's class notice mailing list. (Doc. 194-3 at 4; *see* Docs. 129-2, 129-3, 129-5).

The Court heard argument on the motions in limine on June 3, 2016. (*See* Minute Entry 06/03/2016).

---

[7] Dish has not relied on Federal Rule of Evidence 611(a) as a basis for using these summary exhibits at trial. *See generally United States v. Johnson*, 54 F.3d 1150, 1157-1161 (4th Cir. 1995) (noting that many courts "look[] to Rule 611(a) as the means of reviewing whether a district court has properly admitted a summary chart into evidence").

8

## DISCUSSION

### I. Exhibits 31A-S

Federal Rule of Evidence 1006 allows parties to use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "To comply with this Rule, therefore, a chart summarizing evidence must be an *accurate* compilation of the voluminous records sought to be summarized. Moreover, the records summarized must otherwise be admissible in evidence." *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004) (internal citations omitted). Thus, summary exhibits under Rule 1006 function "as a surrogate for voluminous writings that are otherwise admissible." *Id.* at 273.[8]

While Rule 1006 requires only that the summarized documents be made available to the opposing party at a "reasonable time," "[n]o federal rule is needed . . . to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial." *Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005) (collecting cases). One prominent treatise has noted that Rule 1006's purpose is thwarted if the summaries themselves are not provided to the opposing party at a reasonable time "because, without

---

[8] Summaries can also be presented to the jury in connection with the testimony of a witness when they "aid the jury in its understanding of the evidence that has already been admitted." *Janati*, 374 F.3d at 273. Subject to the court's discretion under Federal Rule of Evidence 611(a), such "pedagogical charts or summaries" may be presented to the jury even if they include the conclusions, inferences, or opinions of witnesses. *Id.* Rule 611(a) exhibits may "summar[ize] data on which experts in the case have relied or summar[ize] the expert's opinions." *Id.*

9

notice of the summaries' contents, adverse parties cannot know what to look for in the source material to determine if the summaries are accurate." 31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 8045 (2016); *see also United States v. Dukes*, 242 F. App'x 37, 50 (4th Cir. 2007) (citing Wright & Gold); *Janati*, 374 F.3d at 273 ("The obvious import of these provisions [of Rule 1006] is to afford a process to test the accuracy of the chart's summarization.").

Absent a stipulation that an exhibit accurately summarizes voluminous writings, such Rule 1006 summaries do not come into evidence of their own accord; a witness or other foundation is required. *See State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845 (10th Cir. 1985) (noting that testimony by plaintiff's president explaining that the figures in the summary came from business records and stating that he helped prepare the summary was sufficient to satisfy "the foundational requirement"); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) ("In order to lay a proper foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation.").

Finally, in order to be admissible under Rule 1006, a summary document must be generally accurate and not unfairly prejudicial. *E.g.*, *Janati*, 374 F.3d at 273. In other words, it cannot be presented in a misleading manner or be "embellished by or annotated with the conclusions of or inferences drawn by the proponent." *Bray*, 139 F.3d at 1110; *see also United States v. Porter*, 821 F.2d 968, 975 (4th Cir. 1987) (noting that "[s]ummary charts may be admitted if they are based upon and fairly represent competent evidence already before the jury").

10

Case 1:14-cv-00333-CCE-JEP   Document 209   Filed 07/12/16   Page 10 of 19

Federal Rule of Civil Procedure 37 states that when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

To the extent Dr. Krakauer seeks to preclude Dish from using Exhibits 31A-S in its case in chief through the testimony of a fact witness who compiled the purported summaries, (Doc. 181 at ¶ 8), the motion will be granted. In its initial disclosures, Dish did not identify any witness as preparing such summaries, (Doc. 205-1 at 2), nor did Dish supplement its disclosures to provide such information. In the context of this case, it cannot be doubted that any witness who prepared the purported summaries was "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Dish has said from day one that it had affirmative defenses and that the class included people who could not recover. It has been known for more than a year that such information would be needed to present Dish's claims and defenses at trial.

11

Even after the Court addressed Dish's asserted defenses extensively in its class certification order, suggesting that evidence similar to what Dish is now proffering would be appropriate, Dish did not supplement its disclosures to provide the information. A supplemental disclosure was required if Dish intended to offer any evidence on those issues. Fed. R. Civ. P. 26(e)(1).

Moreover, Dish obstructed Dr. Krakauer's efforts to discover the identities of customers and customer numbers Dish contended were subject to consent and EBR defenses. As noted *supra*, Dish objected to discovery requests, (*e.g.*, Doc. 205-3), and the only document Dish provided in response to those requests was an "incomprehensible" list of purported EBR customers with phone numbers redacted and obviously inaccurate dates. (Doc. 111 at 26; *see* Doc. 56-16). The witness Dish proffered for deposition on its consent and EBR defenses was unable to answer any questions about those defenses. (*See* Doc. 183-2 at 5-7). Dish never supplemented its responses to Dr. Krakauer's discovery requests to indicate that it had a witness who could testify about such "summary" evidence at trial.

To the extent Dr. Krakauer seeks to preclude Dish from using Exhibits 31A-S in its case in chief through the testimony of Dr. Aron[9] or another expert witness, the motion in limine will be granted. Despite its relevance and importance to the case, as discussed *supra*, Dish did not disclose that Dr. Aron or any other expert witness would offer opinions at trial about specific categories of class members and phone numbers that

---

[9] At oral argument, Dish stated an intent to use Dr. Aron as an expert witness at trial to discuss several of the contested exhibits. (*See* Doc. 204 at 51-52, 55-56).

12

allegedly do not meet the elements for liability or are covered by one of Dish's affirmative defenses. *See* Fed. R. Civ. P. 26(a)(2)(A), (B)(i) (requiring disclosure of expert witness identities and reports, which must include "a complete statement of all opinions the witness will express and the basis and reasons for them"). Even after the Court invited such testimony, (*see* Doc. 111 at 25), and even though Dish recognizes that such evidence is "complicated, data-driven evidence," (Doc. 194 at 21), and that questions about consent and EBR were "not . . . appropriate request[s] for a lay person," such as Dish's 30(b)(6) deponent, (Doc. 204 at 59 (referring to Mr. Werner's deposition testimony at Doc. 183-2 at 5-6)), Dish did not supplement its expert reports to provide such disclosures.

Finally, to the extent that Dr. Krakauer seeks to prevent cross-examination of Ms. Verkhovskaya with Exhibits 31A-S, the motion is also granted. It would be unfair to question Ms. Verkhovskaya about unauthenticated, unfamiliar summary exhibits prepared by an unknown witness when Ms. Verkhovskaya has not seen any report or other information explaining how the information was selected. *See generally Bray*, 139 F.3d at 1110 (noting that summaries must not be misleading and must not contain extraneous matter); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (noting that Rule 1006 is generally not an appropriate vehicle for summaries that contain assumptions and opinions). Moreover, such cross-examination would be unhelpful and extremely confusing to the jury. Finally, it would be unfair to the process to allow Dish to ambush Dr. Krakauer and the Court with nineteen summaries of voluminous information long after the close of discovery. *See Fidelity*, 412 F.3d at 753.

13

When a litigant fails to provide information required by Rule 26(a)(1) and fails to timely supplement as required by Rule 26(e), the evidence is excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The parties agree that exclusion of evidence under Rule 37(c) is determined under the five factors in *Southern States*, 318 F.3d at 597. (*See* Doc. 183 at 3; Doc. 194 at 15-16).

On the first factor, (1), surprise to the party, Dr. Krakauer has no idea who created the summaries and no way to determine if that person accurately summarized and compared information in the records; regarding (2), ability to cure, Dish has offered to allow Dr. Krakauer to conduct some discovery on these exhibits, but that offer is far too late; regarding (3), the evidence would certainly disrupt the trial, given that the summaries are pulled from voluminous records of class members' phone numbers and could require line-by-line analysis; regarding (4), importance of the evidence, the exhibits vary: some point out minor discrepancies not particularly relevant or helpful, while others, like Exhibit 31M, concern main defenses; and regarding (5), Dish offered no reason, much less substantial justification, for why it failed to provide this witness information and evidence in advance.

Discovery followed a detailed schedule imposed by the Court and concluded more than a year ago. Dish did nothing after the Court's class certification decision to update its discovery responses and did not provide the "summaries" until shortly before trial. (*See* Doc. 194 at 21 (indicating that these exhibits were produced in mid-April 2016)). It is unreasonable to require class counsel to spend additional time and resources to

14

compensate for Dish's disregard for discovery procedures. Both the plaintiff and the process are harmed by Dish's late disclosures.

The Court need not decide the question of whether Exhibits 31A-S are appropriate summaries under Rule 1006. They are likely not, as they contain many assumptions and conclusions not otherwise in evidence. *See Janati*, 374 F.3d at 273; *United States v. Buck*, 324 F.3d 786, 791 (5th Cir. 2003), *Bray*, 139 F.3d at 1110; *Eichorn*, 484 F.3d at 650. Many are only tangentially relevant, such as those having to do with which numbers are cell phone numbers, (*see* Doc. 204 at 58), and would cause confusion and delay out of proportion to the value they would provide to the jury. Some of these exhibits might have been admissible, under either Rule 1006, Rule 611, or a combination of those rules and Rules 702 and 703, had they and their authenticating witnesses been produced to Dr. Krakauer in a timely fashion. *Janati*, 374 F.3d at 273; *Bray*, 139 F.3d at 1110. But given Dish's failure to produce the summaries in reasonable time and in compliance with discovery procedures, *see Fidelity*, 412 F.3d at 753, and given the delays and disruptions to the trial process if Dish were allowed to use these exhibits, the Court will exclude Exhibits 31A-S.

## II. EBR evidence

Dr. Krakauer seeks to exclude all evidence of Dish's EBR defense.[10] (Doc. 181 at ¶ 1). Because, in a similar manner to the summaries described above, Dish has failed to

---

[10] This evidence includes Exhibit 31M, (Doc. 183 at 3), which the Court will exclude for the reasons stated in Section I.

provide and facilitate discovery of the evidence of this defense, the evidence of the defense will be excluded.[11]

Dr. Krakauer diligently pursued discovery of the EBR defense throughout this litigation. Dr. Krakauer served interrogatories and requests for production related to EBR; Dish produced only an incomprehensible list. (*See* Doc. 205-3 at 2; Doc. 56-16). When Dr. Krakauer sought to depose Dish's designated Rule 30(b)(6) representative on "[a]ll facts supporting" the EBR defense, (Doc. 183-3 at p. 5 ¶ 9), the witness was unable to answer questions generally about EBR or to interpret the list provided in discovery. *See supra* p. 4.

Dish now contends that Mr. Montano will testify about and explain the EBR evidence in Exhibit 31M. (Doc. 194 at 3). While Mr. Montano was timely disclosed as a witness, nothing in that disclosure specifically indicated that he would testify about the EBR defense. (*See* Doc. 205-1 at 2). Any testimony by Mr. Montano about the EBR list will come as a surprise and will prejudice the plaintiff, especially because Mr. Werner, Dish's designated witness on EBR, was unable to answer any questions about the list at deposition.

Turning to the *Southern States* factors, 318 F.3d at 597, as to the fourth factor, the parties agree that the evidence of any EBR defense is important to Dish's case. As to the other factors, (1) there is substantial surprise to Dr. Krakauer, who never received

---

[11] Dr. Krakauer separately moved to exclude all evidence that class members established an EBR by asking SSN to "call back." (Doc. 181 at ¶ 2). This motion applies to a subset of the EBR evidence, and therefore it will also be granted.

16

answers about the purported EBR list in discovery; (2) there is some ability to cure given the continued trial date, but at the cost of reopening discovery on this issue, with increased expense; (3) the disruption to the trial is serious, because the use of this voluminous, data-driven evidence is likely to cause delays while class counsel and the Court figure things out; and (5) Dish has provided no explanation for its failure to disclose. Of these factors, (1), (2), (3), and (5) weigh heavily in favor of excluding the evidence based on Dish's failure to follow discovery procedures.

The EBR issue was front and center from the early moments of this case. Dr. Krakauer diligently pursued discovery of this defense, but Dish did not comply with disclosure deadlines, provided evasive responses, failed to prepare its witness at deposition to answer questions about the defense, and did not timely supplement its discovery disclosures. Dish now seeks to bring in evidence through a different witness at the last minute, at substantial prejudice to Dr. Krakauer. The EBR evidence will be excluded.

### III. Dr. Aron's supplemental report

Federal Rule of Evidence 403 allows a court to exclude evidence "if its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ." Fed. R. Evid. 403. To the extent Dr. Krakauer seeks to exclude testimony about the topics in Dr. Aron's supplemental report, (Doc. 181 at ¶ 7), the motion will be granted.

Dish submitted Dr. Aron's supplemental report, (Docs. 129-1 to 129-3), to oppose Dr. Krakauer's motion for approval of class notice. Dish never indicated or disclosed Dr.

17

Aron's opinions in the supplemental report as a topic for trial. Moreover, those attachments describe inconsistent name or address information for individual class members that is only tangentially related to the issues for trial and is likely to confuse the jury. (*See* Doc. 129-1 at ¶ 5).

Under the five *Southern States* factors, (1) the surprise is substantial because, although Dr. Aron was known to Dr. Krakauer as a rebutting expert on class notice issues, she was not disclosed as an expert trial witness on these issues; (2) there is some ability to cure, as Dish has offered for Dr. Aron to be deposed and trial has been continued, but there is likely not time to rebut Dr. Aron with a new expert witness, and such a deposition imposes unexpected, last-minute costs on Dr. Krakauer; (3) the report would disrupt the trial because it focuses on detailed class notice and mailing issues, not the merits; (4) the evidence is relatively unimportant, because it principally addresses the accuracy of class members' addresses; and (5) Dish has provided no explanation for why it did not supplement its expert disclosures to indicate it would offer testimony at trial from Dr. Aron on class notice issues. These factors, particularly (1) and (4), weigh in favor of exclusion.

Testimony related to Dr. Aron's supplemental expert report will be excluded under Federal Rule of Civil Procedure 37(c) and Federal Rule of Evidence 403.

## CONCLUSION

It is **ORDERED** that Dr. Krakauer's motion in limine, (Doc. 181), is **GRANTED IN PART** as to paragraphs 1, 2, 7, and 8. Dish may not use Exhibits 31A to 31S as affirmative evidence or on cross-examination. Dish may not present any evidence at trial

of its established business relationship defense, including any evidence that class members established an EBR by asking SSN to "call back." Dish may not use testimony related to Dr. Aron's supplemental report. Dish's motions in limine and the remainder of Dr. Krakauer's motion in limine remain under advisement.

This the 12th day of July, 2016.

_____
UNITED STATES DISTRICT JUDGE