# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

v.

                              Civil Action No. 1:14-cv-00333-CCE-JEP

DISH NETWORK, L.L.C.,

    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PROPOSED JURY INSTRUCTIONS

At the Court's invitation, Dr. Krakauer responds to Dish's objections to Plaintiff's proposed jury instructions as follows:

## Order of Instructions

Dish's general objection to the order of Dr. Krakauer's proposed instructions is without merit. Specifically, Dish insists that the jury be instructed on the issue of agency before all else. But, while it might make sense for a lawyer or judge to consider threshold legal issues first, lay jurors may not see the case that way. For the jury, this will be a case about telemarketing calls. The most helpful instructions will therefore begin by establishing the substantive law applicable to the plaintiff's TCPA claims, and then moving to the agency issue. Jumping straight into a complex instruction about agency, sans context, may confuse jurors who perceive the case as a narrative, not a legal puzzle.

Moreover, the purported benefit of instructing on agency first—efficiency—is illusory. Regardless of the order in which the instructions are presented, the jury will be instructed, and the verdict form will make clear, that the agency issue is dispositive. Changing the order of the instructions will not save any time during the presentation of evidence, the giving of instructions, or the jury's deliberations. The risk of confusion that would accompany Dish's proposed sequence is therefore unjustified.

Having said that, neither party is entitled by law to have one instruction read before another. The ultimate decision about order is one for the Court, and the Plaintiff defers to the Court's judgment and experience in instructing juries.

## **Plaintiff's NDNC Instruction**

Dish's contention that Dr. Krakauer's National Do Not Call Registry instruction fails to include every necessary element is simply inaccurate. First, Dish's argument that the jury should be instructed on so-called "subscriber" or "actual recipient" requirements ignores a key ruling in the Court's order granting class certification. Therein, the Court rejected Dish's attempts to limit the class to subscribers, instead concluding that "any person who has received a call" may sue under the TCPA. (ECF No. 111, at 12-14) (internal quotation marks and citation omitted). Dish's preferred "actual recipient" language appears nowhere in the relevant provisions of the TCPA, and is a standard that Dish invented to preclude certification of any TCPA claim.

Second, Dish asserts that Dr. Krakauer's instruction fails to mention that the called number must be residential. It does not do so because Dish has never contested that Dr. Krakauer's home line is a business line, and has no evidence to support that assertion.

2

Having said that, Plaintiff has no objection to adding a fourth element to the Issue One instruction, stating that Dr. Krakauer must prove, by a preponderance of the evidence, "that his telephone number was a residential line at the time of the calls." (*See* ECF No. 199-1 at 3.)

Third, Dish asserts the instruction should state "that the telephone number was registered on the national do not call registry for more than 30 days at the time that each phone call was made." (*Id.*) Plaintiff has no objection to adding this element as a fifth element to his Issue One instruction, and notes that the 30-day requirement is referenced in the class definition. (ECF No. 111 at 4.)

Fourth, Dish asserts the instruction should state that Dr. Krakauer must prove that the calls were received between May 1, 2010, and August 1, 2011. Plaintiff has no objection to adding this element, but again notes that the class period is stated in the class definition.

Next, Dish faults Plaintiff's proposed instruction because "it fails to instruct the jury that it must determine whether Plaintiff has proved each of the requisite elements of the national do not call registry claim with respect to every alleged violation in order to recover against Dish, not just Dr. Krakauer's claim." (ECF No. 199-1 at 3.) This is a variation on Dish's contention that Plaintiff must either prove every class member's claim, or suffer a complete loss. As Plaintiff has previously argued (*see* ECF No. 183 at 6-7), that contention rests on a single, inapposite district court decision and conflicts with a very recent opinion of the United States Supreme Court; *it is not the law*. See *Tyson Foods, Inc. v. Bouaphakeo,* 136 S.Ct. 1036, 1045 (2016) ("When one or more of the

3

central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) *even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."*) (emphasis added) (cited authority omitted).

Finally, Dish asserts that "by limiting instruction one to only Dr. Krakauer's claim, [plaintiff's instructions] have a high likelihood of causing the jury to mistakenly believe that Dr. Krakauer has only to prove the elements of *his* national do not call claim in order for the entire class to recover." (ECF No. 199-1 at 3-4.) This assertion disregards the fact that Plaintiff's proposed instructions regarding Issues Four and Five state that Dr. Krakauer must prove all elements of his claims for any class member to prevail.

## Plaintiff's IDNC Instruction

Dish first objects to Dr. Krakauer's IDNC instruction on the basis of Dish's assertion that "an internal do not call list is 'entity-specific' and does not apply across distinct entities." (ECF No. 199-1 at 4). In other words, Dish explains, "the 'retailer' portion of Dish's master internal do not call list does not reflect do not call requests made to Dish, but instead reflects do not call requests made to unidentified independent retailers that do business with Dish." (*Id.*). Dish is merely recycling an unsuccessful argument it made in opposing certification: that its own IDNC list is over-inclusive and unreliable. (*See* ECF No. 111 at 15). That type of argument does not belong in jury instructions, and in any event, Dr. Krakauer's proposed instruction recites verbatim the TCPA's "entity-specific" language. (*See* ECF No. 174 at 4.) Dish's objection to this aspect of Plaintiff's instructions should be rejected.

4

In addition, Dish contends that Dr. Krakauer's IDNC instruction fails to mention all necessary elements, including: (1) the purported subscriber "requirement"; (2) the residential requirement; (3) the 30-day requirement; and (4) that the call was made within five years of the IDNC request. The first three issues are discussed above. As to the fourth, Dr. Krakauer agrees that an IDNC request is good for only five years, and will work with Dish to carve out the 312 numbers that fail to meet that requirement. Plaintiff expects to iron out that issue over the next two weeks, which the Court has set aside for the parties to meet-and-confer on Dish's call-records challenges.

## **Classwide Liability**

Dish complains that Dr. Krakauer's proposed instructions fail to inform the jury that it must find Dish liable for every alleged violation, not just Dr. Krakauer's. Dr. Krakauer's instructions, however, plainly state that "the same instructions [given] regarding the elements of Dr. Krakauer's National Do Not Call claim also apply to the calls of the class members," and summarize those elements.[1] (ECF No. 174 at 9). Dr. Krakauer believes presentation of the instructions in this manner is consistent with the purpose of a representative action and will clarify, rather than confuse, the issues for the jury. Nonetheless, at the Court's direction, Dr. Krakauer and Dish are discussing how to

---

[1] These elements should be modified as stated *infra* at 2-3, to include reference to the thirty-day registration requirement and the residential requirement. Plaintiff proposes this revised summary:
> In summary, as I instructed you earlier, it is a violation of the Do Not Call law if (1) a class member received more than one telephone solicitation in any 12-month period, (2) by or on behalf of Dish Network, (3) when the class member's telephone number was a residential line, (4) registered on the National Do Not Call Registry for more than thirty days at the time of the call.

5

resolve the classwide liability issues and will report back on an agreement by the Court's August 15, 2016 deadline.

## Award Instruction

Dish's opposition to Dr. Krakauer's award instruction is unsupported. Dish does not say why Dr. Krakauer's proposed instruction is "inaccurate, incomplete, or misleading." On the other hand, Dish's proposed instruction is admittedly incomplete. (*See* ECF No. 176, at 10 (asserting award based on "factors *such as . . .*")). The primary difference between Dish's proposal and Dr. Krakauer's is that Dr. Krakuer's instruction includes one of the recognized factors that Dish omitted: that the award should serve the purposes of the statute. *See Charvat v. NMP, LLC,* No. 09-209, 2012 WL 4482945, *4 (S.D. Ohio) (holding TCPA damages award must "comport with the purpose of the statute.") Surely the purpose of a *remedial* statute is relevant to the *remedy* awarded thereunder.

## Willfulness Instruction

Dish argues that the willfulness of its violations is not a matter for the jury. Dr. Krakauer agrees that the decision whether to treble damages ultimately rests with the Court, but suggests that the issue may be submitted for an advisory verdict pursuant to Federal Rule of Civil Procedure 39(c). The arguments supporting an advisory jury on this issue are fully set forth in Dr. Krakauer's Brief on Whether the Court or the Jury Should Decide if Dish's Violations Were Willful or Knowing. (ECF No. 186).

Dish further objects to the substance of Dr. Krakauer's willfulness instruction, arguing that Dr. Krakauer's instruction "suggests that DISH may be held liable for willful

6

and knowing violation of the TCPA without Plaintiff sustaining his burden of demonstrating the DISH acted willfully or knowingly in violating the TCPA." Frankly, Dr. Krakauer is unable to interpret this circuitous contention. But notably, the language of Dr. Krakauer's willfulness instruction tracks, nearly word-for-word, the language used in Dish's own trial brief. (ECF 165-1, at 17). Much more importantly, it strictly adheres to the guidance of the FCC, the agency with the statutory obligation to interpret the TCPA (*see In re Intercambio, Inc.*, F.C.C. Rcd. 7247 (1998)).

## Agency Instructions

### *The North Carolina Pattern Instruction*

Dr. Krakauer has proposed an agency instruction based on the tried-and-true North Carolina pattern instructions. Pattern instructions are "preferred" because they are clear, non-biased, and vetted by legal experts. *United States v. White*, 571 F.3d 365, 368 n.3 (4th Cir. 2009) *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). Nonetheless, Dish argues that the pattern instruction is inadequate.

Dish first asserts that the pattern instruction concerning actual and apparent authority applies only when the existence of an agency relationship has been established. Though that is true insofar as it goes, Dr. Krakauer believes that his adaptation encompasses the appropriate two-part analysis: first, whether SSN was Dish's agent, second, whether SSN acted within the scope of its authority. If Dish believes further clarity on this point is necessary, however, there is no need to throw the baby out with the bathwater; Dr. Krakauer would not oppose an additional line about the pre-requisite agency relationship, while leaving the rest of the pattern instruction intact. For example:

7

"If you find that Dish, through words or conduct, manifested its assent for SSN to act on its behalf, and that SSN, through words or conduct, manifested its consent to so act, then SSN acted as Dish's 'agent.'"

Second, Dish opposes the pattern instruction on the ground that vicarious liability for TCPA violations must be determined "under federal common law principles of agency." *See In re the Joint Petition Filed by Dish Network, LLC, et al.*, 28 F.C.C. Rcd. 6574 (2013). But the "federal common law of agency" is derived from the Restatement of the Law of Agency. *See id.* (citing exclusively the Restatement (Third) of Agency)); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 n.31 (1989) ("In determining whether a hired party is an employee under the general common law of agency, we have traditionally looked for guidance to the Restatement of Agency."); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) ("To determine the general common law of agency, the [Supreme] Court notes that it has traditionally looked to sources such as the Restatement of Agency"); *Doe I v. Unocal Corp.*, 395 F.3d 932, 972 (9th Cir. 2002) ("The general principles of the federal common law of agency have been formulated largely based on the Restatement of Agency."); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865 n.15 (7th Cir. 1998) ("In developing the federal law of agency, courts have relied on the Restatement of Agency as a valuable source for those general agency principles."). Likewise, North Carolina's courts, which promulgate the pattern instructions, have long relied on the Restatement. *See, e.g., Holcomb v. Colonial Associates, L.L.C.*, 597 S.E.2d 710, 716 (N.C. Sup. Ct. 2004). Thus, the pattern

8

instruction upon which Dr. Krakauer relies is consistent with the "federal common law of agency," and Dish's objection is unfounded.

Dish's narrow view of agency, on the other hand, is markedly at odds with the Restatement approach. Dish's assertion that agency requires an "express agreement" between parties is not supported by the cases Dish cites, and ignores the Restatement rule that an agency relationship may be created through "written or spoken words *or other conduct.*" Restatement (Third) of Agency, § 1.03.

Dish's take on the scope of an agent's authority is also unduly restricted. It is not necessary, as Dish would have it, for the principal to authorize the "particular act at issue." *See First Tennessee Bank Nat. Ass'n. v. St. Paul Fire and Marine Ins. Co.,* 501 F. App'x 255, 260 (4th Cir. 2012). Rather, the correct analysis turns on whether "the service itself in which the tortious act was done was . . . within the scope of such authority." *Id.* In other words, it is not necessary that Dish authorized SSN to call numbers on the DNC registries; it is sufficient that Dish authorized SSN to perform telemarketing services, in the course of which SSN committed the unlawful acts.

Finally, Dish's proposed "adverse interest" instruction substantially misstates that doctrine. It is not enough for Dish to prove that SSN was acting "adverse to the interests of the principal," or else no principal would ever be responsible for an act that led to civil liability. Instead, the "adverse interest" exception applies only when the agent's "conduct is such to raise a *clear presumption* that [the agent] . . . is in reality acting in his own business interest." *See Commscope Credit Union v. Butler & Burke, LLP,* 764 S.E.2d 642, 650 (N.C. App. 2014) (emphasis added). To wit: the adverse interest doctrine would

9

not apply simply because SSN's TCPA violations could result in civil or criminal penalties for Dish. The real purpose of the rule would be to relieve Dish of liability if, for example, SSN—though purportedly acting as Dish's agent—violated the law while actually signing up customers for one of Dish's competitors.

*Right to Control*

Dish asserts that Dr. Krakauer's "right to control" instruction—which is taken verbatim from the Restatement—is "incomplete" because it ignores whether Dish and SSN intended to create an agency relationship. But an expression of intent is not part of the common law requirements for agency. *See* Restatement (Third) of Agency § 1.01. In contrast, both the Restatement and cases interpreting the TCPA focus on the parties' mutual agreement that the principal has the "right to control" the agent's actions. *See id.* ("Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents so to act. (emphasis added); *Lushe v. Verengo Inc.*, No. 13-07632, 2014 WL 5794627, at *4 (C.D. Cal. Oct. 22, 2014), ("To establish classical agency, Plaintiffs must show 'that the party designated as principal has the right to control the party designated as agent.'").

*Written Limits*

In circular fashion, Dish contends that Dr. Krakauer's "written limits" instruction—which provides that the parties' own characterization of their relationship is

10

not controlling—is inappropriate because it is inconsistent with Dish and SSN's characterization of their own relationship.

The rule that self-serving agency disclaimers are ineffective is *literally* black-letter law—an entire section of the Restatement is titled "Parties' Labeling and Popular Usage Not Controlling." Restatement (Third) Agency § 1.02; *see also Wynn's Extended Care, Inc. v. Bradle*, 619 F. App'x 216, 219 (4th Cir. 2015) ("[P]arties' disclaimer of an agency relationship, even in a contract, is not dispositive."); *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 737-38 (D. Md. 2008) (parties cannot "simply disclaim an agency relationship generally to avoid liability to third parties while agreeing to specific provisions that in fact bind each other to an arrangement that is the equivalent of principal and agent."); *United States v. Rapoca Energy Co.*, 613 F. Supp. 1161, 1163 (W.D. Va. 1985) ("What the parties call themselves is immaterial; the law looks to the actual relationship between the parties."); *Sky Cable, LLC v. Coley*, No. 11-00048, 2013 WL 3517337, at *28 (W.D. Va. July 11, 2013) ("While the agreement expressly disclaims any agency relationship . . .that fact alone is not determinative."); *Washington v. Kass Mgmt. Servs.*, No. 10-4409, 2011 WL 1465581, at *3 (N.D. Ill. Apr. 18, 2011) (paraphrasing President Lincoln: "calling a relationship a non-agency don't make it a non-agency.").

Dish's objection cites three cases. One actually *supports* Dr. Krakauer's instruction. *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009) (recognizing that "express disclaimers of agency do not necessarily eliminate the existence of an agency relationship"). Another, *Bridgeview*

11

*Health Care Center, Ltd. v. Clark*, does not even mention contractual limitations. *See* 816 F.3d 935, 939 (7th Cir. 2016). The third, *Keating v. Peterson's Nelnet, LLC,* relies in part on a contractual disclaimer, but with no mention at all of Restatement § 1.02 or the myriad cases applying it. With no support, Dish's objection to the instruction cannot be sustained.

**Respectfully submitted,**

*/s/ John W. Barrett*
John W. Barrett
Brian A. Glasser
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

*/s/ J. Matthew Norris*
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 *facsimile*
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
(508) 655-1415
Telephone: (508) 655-1415
mmcue@massattorneys.net

Edward A. Broderick
Anthony Paronich
**Broderick & Paronich, P.C.**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

*Counsel for Plaintiff Thomas H. Krakauer*

13

## CERTIFICATE OF SERVICE

  I, John W. Barrett, hereby certify that on August 1, 2016, I caused to be filed the foregoing with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

              */s/ John W. Barrett*
              John W. Barrett