# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT
# OF NORTH CAROLINA

| | |
|---|---|
| THOMAS KRAKAUER,<br><br>      Plaintiff,<br><br>v.<br><br>DISH NETWORK LLC,<br><br>      Defendant. | Case No. 1:14-CV-00333-CCE-JEP |

## DEFENDANT DISH NETWORK L.L.C.'S SUPPLEMENTAL BRIEFING ON PLAINTIFF'S IDNC CLAIM

Plaintiff improperly conflates separate and discrete portions of Defendant DISH Network L.L.C.'s ("DISH") "Master Internal Do-Not-Call List" (the "DISH Master List") to support his IDNC Class claims. Plaintiff blanketly asserts that the entirety of the DISH Master List represents "do-not-call" requests made directly to DISH, but the list is plainly segregated into distinct subparts reflecting:

(i) telephone numbers for do-not-call requests made *to DISH* (the "DISH Internal List"); and

(ii) telephone numbers for do-not-call requests made *to retailers*, which those retailers shared with DISH through telemarketing compliance vendor PossibleNOW (the "DISH Retailer List").

Plaintiff has no basis to assert IDNC Class claims for Satellite Systems Network ("SSN") telemarketing calls to telephone numbers on the DISH Retailer List. Regardless of whether SSN might be found to have an agency relationship with DISH, SSN has no relationship with all of the other retailers that contributed telephone numbers to that list, and SSN had no legal obligation to honor any of those "do-not-call" requests to other retailers. This Court should either dispose of those IDNC Class claims that are based on the DISH Retailer List as a matter of law, or include a relevant question on the verdict sheet to allow the jury to do so.

## SSN COULD NOT BE LEGALLY OBLIGATED TO HONOR "DO-NOT-CALL" REQUESTS MADE TO OTHER DISH RETAILERS

According to Judge Myerscough in the Central District of Illinois, an entity need only honor do-not-call requests made directly to it or to its principal or agent. Judge Myerscough found on summary judgment in *United States v. DISH Network, L.L.C.* that "[the TSR] imposes an obligation on a seller to honor a consumer do-not-call statement if the consumer made the statement to the seller or to a telemarketer with an agency relationship with the seller."[1]  75 F.

---

[1] This conclusion was in reference to the TSR rather than 47 C.F.R. § 64.1200 (the "FCC Rule").

1

Supp. 3d 942, 1015 (C.D. Ill. 2014), *amended on reconsideration on other grounds*, 80 F. Supp. 3d 914 (C.D. Ill. 2015), *and vacated in part on other grounds*, 80 F. Supp. 3d 917 (C.D. Ill. 2015); *see also* 80 F. Supp. 3d 917, 919 ("Dish is responsible for honoring a person's do-not-call request if the person made the request to a Dish employee or to an agent of Dish."). Judge Myerscough based this ruling on the FCC Rule's definition of a seller as "the person or entity on whose behalf a telephone call or message is initiated," 75 F. Supp. 3d at 1015 (quoting 47 C.F.R. § 64.1200(f)(7) (2008) (current version at 47 C.F.R. § 64.1200(f)(9))), and the FCC's determination that "the 'on whose behalf' language [in the FCC Rule] imposes liability on the seller for the actions of the telemarketer if an agency relationship existed between the seller and the telemarketer," *id.* (citing *DISH Network, LLC*, 28 F.C.C. Rcd. 6574 (2013) (declaratory ruling)).

> The FCC Rule requires that:
>
> > If *a person or entity making a call* for telemarketing purposes (*or on whose behalf such a call is made*) receives a request from a residential telephone subscriber not to receive calls from that person or entity, *the person or entity* must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. *Persons or entities making calls* for telemarketing purposes (*or on whose behalf such calls are made*) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

47 C.F.R. § 64.1200(d)(3) (emphasis added).

As explained below, for the telephone numbers on the DISH Retailer List that did not originate from SSN, the "person or entity [that] receive[d] a request" is another retailer, not SSN or DISH. Any obligation to honor that request therefore extends only to the retailer that received it and any entity "on whose behalf" the call was made, *i.e.*, for which the retailer was acting as an agent. However, the only agency question in this case relates to DISH and SSN. No court has

2

found any other retailers to be agents of DISH. Thus, any do-not-call requests that other retailers received and shared do not bind SSN or DISH.

**THE DISH RETAILER LIST IS SEPARATELY AND DISTINCTLY MAINTAINED**

Beginning in April 2008, PossibleNOW (which maintains DISH's Master List) allowed DISH retailers to upload their own internal do-not-call lists into PossibleNOW's database. *See United States v. DISH*, 75 F. Supp. 3d at 977. In September 2008, DISH began asking retailers that made 600 or more calls during the prior calendar year to submit all do-not-call requests to PossibleNOW. *See id.* Although DISH is not legally obligated to scrub against do-not-call requests made to its retailers, DISH nonetheless scrubs against the entire DISH Master List to avoid calling consumers who have expressed an interest not to be called with respect to DISH goods or services.[2] *See id.*

Joey Montano, the Operations Manager in the Outbound Operations Department at DISH, explained the distinction between the DISH Internal List and the DISH Retailer List at his deposition in this action.[3] Mr. Montano testified that DISH "allowed our internal do-not-call requests to be combined into a master list at PossibleNOW with do-not-call requests that are captured by retailers that also partner with PossibleNOW." Ex. A (Montano Dep. Tr.) at 18:1-5; *see also id.* at 24:4-13 (testifying that, in 2009 through 2011, DISH dealers "shared [their own internal do-not-call lists] with PossibleNOW if they partnered with PossibleNOW").

---

[2] It is possible that when retailers shared their IDNC lists with DISH, those lists also included do-not-call requests received by the retailers in connection with marketing products and services from other companies having nothing to do with DISH.

[3] Mr. Montano testified as DISH's Rule 30(b)(6) designee on the topic "All aspects of Dish's maintenance, use, and dissemination of any company-specific (*i.e.*, internal) do-not-call lists." Ex. A (Montano Dep. Tr.) at 10:24-11:8; Ex. B (Pl.'s Second Am. Notice of Rule 30(b)(6) Dep. Duces Tecum of DISH Network, Montano Dep. Ex. 1) at 4.

In this case, Plaintiff obtained production of the DISH internal do-not-call materials directly from PossibleNOW. PossibleNOW produced the DISH lists to Plaintiff in distinct parts, showing the delineation between the various constituent parts. John Taylor, who was deposed in this action as a representative of PossibleNOW to authenticate the lists, testified that "[t]he process was DISH segmented their internal do-not-call list into DISH internal do-not-call list . . . and retailer do-not-call list." Ex. C (Taylor Dep. Tr.) at 14:7-10. These distinct parts of the DISH Master List were marked as separate exhibits by Plaintiff's counsel during Mr. Taylor's deposition.[4] *See id.* at 15:7-16:11, 18:15-19:11, 20:17-21:13.

Plaintiff improperly asserts that DISH's distinctions about the constituent parts of its Master List render the list "inaccurate." In fact, the only inaccuracies come from Plaintiff's attempt to blur those distinctions. Plaintiff's proffered expert, Anya Verkhovskaya, conflates and combines separate portions of the DISH Master List, despite acknowledging them as separate. Ms. Verkhovskaya's report states that:

> A.B. Data obtained the following DISH internal do not call lists from the Plaintiff's counsel:
> - DISH Retailer DNC List 2010 and Older.txt
> - Echostar_Internal_Upto_20101231.txt
> - Echostar_Retailer_Upto_20101231.txt
>
> *A.B. Data combined the three lists* . . . for purposes of comparing them to the Analysis Database.[5]

Expert Report of Anya Verkhovskaya, A.B. Data, Ltd. at 11-12, Dkt. 48-2 (emphasis added).

The only agency question for determination at trial is whether *SSN* was *DISH's agent*.

---

[4] Because the lists produced by PossibleNOW do not identify the retailer that submitted each do-not-call request, *see* Ex. C (Taylor Dep. Tr.) at 16:1-17:7, 20:24-22:1, there is no evidence in the record to show whether any of the do-not-call requests on the DISH Retailer List were made to SSN.

[5] DISH was formerly known as EchoStar Satellite L.L.C. ("EchoStar"). The references to EchoStar should be treated as references to DISH.

*See* Pl.'s Third Revised Proposed Verdict Sheet at 1, Dkt. 238-1; DISH's Third Revised Proposed Verdict Sheet at 1, Dkt. 238-2.  Plaintiff has not alleged that any of the other retailers that shared their own do-not-call lists with DISH were principals or agents of SSN (or DISH), and there is no evidence in the record to suggest that other retailers acted as agents of SSN (or DISH).  Nor would a finding that SSN acted as *DISH's agent* create an agency relationship between SSN (or DISH) and *other retailers*.  In short, Plaintiff has never contended that other retailers acted as agents of SSN (or DISH), and therefore, as a matter of law, SSN had no obligation to honor do-not-call requests that were made to those other retailers.

## CONCLUSION

DISH has identified the calls at issue that were made to telephone numbers on the DISH Retailer List.  As with DISH's other categorical challenges, the parties can stipulate to the calls that fall into this category.  Those IDNC Class claims should be disposed of as a matter of law, because SSN had no obligation to honor do-not-call requests made to other retailers.  Alternatively, if the Court finds that there is a factual question as to the nature of the do-not-call requests reflected on the DISH Retailer List, a categorical challenge should be included on the verdict sheet so that the jury can make that determination.

Dated: December 19, 2016						Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  /s/ Peter A. Bicks
    Peter A. Bicks
    Elyse D. Echtman
    John L. Ewald

51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

 /s/ Eric Larson Zalud
Eric Larson Zalud
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone:  (216) 363-4588
ezalud@beneschlaw.com

 /s/ Richard J. Keshian
Richard J. Keshian
North Carolina Bar No. 10681
KILPATRICK, TOWNSEND & STOCKTON, LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7322
rkeshian@kilpatricktownsend.com

*Attorneys for Defendant DISH Network L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2016, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

    /s/ Peter A. Bicks
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

*Attorneys for Defendant DISH Network L.L.C.*