IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| THOMAS KRAKAUER, | Case No. 1:14-CV-00333-CCE-JEP |
|---|---|
| Plaintiff, | |
| v. | **JOINT SUBMISSION RE DEPOSITION DESIGNATIONS** |
| DISH NETWORK LLC, | |
| Defendant. | |

Plaintiff and DISH have exchanged deposition designations, counter-designations, and objections to those designations. DISH writes now to explain the basis of its objection and respond to Plaintiff's objections. The highlighted deposition transcript of Bahar Tehranchi referenced herein is attached as Exhibit A.

### A. Plaintiff's Deposition Designations of Bahar Tehranchi

### 1. DISH's Objections

**Page 21, line 20 to page 22, line 10**. The Court should exclude this portion of Plaintiff's designation of Bahar Tehranchi's designation because it lacks foundation, is based on speculation, and is misleading and confusing in violation of Fed. R. Evidence 602, 701, and 403. In general, the Court should preclude statements from witnesses where there is no explanation as to how the witness obtained knowledge of that information. *See Maisha v. Univ. of N. Carolina*, No. 1:12-CV-371, 2015 WL 224939, at *3 (M.D.N.C. Jan. 15, 2015), *aff'd*, 641 F. App'x 246 (4th Cir. 2016) (excluding

1

statements in witness declaration that asserted facts with no explanation of how witness became familiar with those facts); *see also United States v. Baraloto*, 535 F. App'x 263, 276 (4th Cir. 2013) (excluding testimony as to drug addiction under Rule 701 where none of the witnesses testified to having any special knowledge of drugs addiction behavior). Ms. Tehranchi testifies about her understanding of how the OE program—a program run by DISH—works without also testifying how she obtained that information. Furthermore, she is wrong, as multiple DISH witnesses who actually have personal knowledge about the OE program will testify differently about how the OE program works, how OE Retailers are paid, and when exactly SSN became an OE Retailer. Accordingly, Ms. Tehranchi's testimony on this subject is prejudicial to DISH as it is likely to confuse the jury, while adding very little relevant information.

### 2. **Plaintiff's Response to DISH's objections to 21:20-22:10**

DISH objects to this testimony on the following grounds: "foundation, speculation, misleading, and confusing."

The disputed designations consist of Ms. Tehranchi's responses to plaintiff's counsel's request to "explain to me what an OE retailer is." In her response, she does exactly that, not as a DISH-designated witness, but, unlike every other witness in the case, through the unvarnished lens of an actual DISH OE retailer. In other portions of her designated testimony, Ms. Tehranchi testified that she had worked for SSN for ten years (15:22-25); that SSN had sold only DISH since 2005 (her deposition was taken in 2013) (18:16-23); that her brother Alex founded and owns the company (16:1-5); that she

2

was "basically doing all the financial aspects of [SSN]" (16:11-14); that 5-6 years ago her brother "had another company, so I basically handled a lot of things at Satellite Systems" (16:24-17:1); her job title was "like basically the vice president, I would say" (21:4-7); and that the company's sole source of income was from DISH (121:17-20). She also signed a declaration, which she discussed at her deposition, explaining that SSN was an exclusive DISH OE retailer that used outbound telemarketing and the Five9 software platform to place DISH telemarketing calls. She explained that the Five9 dialing campaign entitled "Charter" was used to contact existing Charter Communications customers and attempt to switch their service to DISH.

She also testified knowledgeably about many other aspects of SSN telemarketing, including how the company handles customer service problems (25:9-11); the lag time between the completion of a sale and SSN's payment from DISH (25:20-26:3); SSN use of the Five9 dialing platform (26:15-27:7); how telephone numbers are loaded on to the Five9 platform for dialing (31:10-22); whose caller ID is displayed when SSN places a call (33:11-23); an interpretation of disposition and data codes on the Five9 call records (34:20-25); how DISH representatives control the reading of certain disclosures to new customers; how frequently promotions change, and how SSN is scored for compliance with DISH's quality assurance program (38:3-40:25).

Finally, but most importantly, DISH cannot have its cake and eat it too. It cannot claim on the one hand that Ms. Tehranchi is not competent to testify about what an OE retailer is, while on the other hand designate Ms. Tehranchi's testimony explaining the

3

legal responsibilities of SSN under its OE retailer agreement. Dish has designated, for example, her testimony regarding ¶ 9.1 of SSN's OE retailer agreement, where she agrees with the following question from DISH's counsel: "You agree that there's a contractual obligation there for Satellite Systems Network to comply with the law?" (89:4-90:5.) DISH also designated Ms. Tehranchi's testimony regarding the "independent contractor" provision of SSN's OE retailer agreement (90:16-24), and regarding DISH's rules stating SSN is responsible for ensuring that its own vendors comply with Do Not Call laws (113:20-114:12).

If Ms. Tehranchi is competent to testify about the meaning of SSN's OE retailer agreement with DISH, she is competent to testify about her personal knowledge of what it means to be an OE retailer. Ms. Tehranchi has personal knowledge of many aspects of the small business for which she has worked for ten years, displays thorough understanding of its operations, and is competent to testify about what an OE retailer is.

Regarding DISH's assertion that her response is misleading and confusing, Ms. Tehranchi's description of how an OE retailer works may be at odds with the description of DISH's employee witnesses, but it accurately states her own understanding of what it means to be a DISH OE retailer.

DISH's objections should be overruled.

**B.       Plaintiff's Deposition Designation Objections of Bahar Tehranchi.**

1. **Plaintiff's Objections[1]**

    a. **Plaintiff's objections to 75:13-15, 75:22-77:10, 79:4-81:2, and 106:2-4**

Plaintiff objects to these designations under Rules 402 and 403.

The disputed testimony concerns SSN's general policies for "scrubbing" telephone numbers against the National Do Not Call Registry to identify and remove registered numbers from its calling lists. Additionally, the testimony references a single "DNC scrub" report that SSN received from a compliance vendor, PossibleNow, in 2008.

For several reasons, the DNC scrub is irrelevant, and any probative value is outweighed by the evidence's prejudicial effect.

First, there is no evidence that SSN scrubbed any of the class calls. To the contrary, as discussed below, all the documentary evidence in the case is that the calls through the two campaigns at issue were NOT scrubbed and DISH has offered no evidence to establish that any of the class calls were in fact scrubbed.

Second, the date of the DNC Scrub, for some list of unknown phone numbers, is July 14, 2008, almost two years before the class calls.

---

[1] Close to midnight the night before this brief was due at 10:00 a.m. the following morning, DISH withdrew certain objections, and modified other portions of its designations. Because Plaintiff learned of this action the following morning, and was only able to review these changes two hours before the brief was due, Plaintiff has attempted to change portions of his already-drafted brief to address DISH's modifications, but may not have addressed all of those modifications.

Third, not only is there no evidence the class calls were scrubbed, the only contemporaneous evidence is in fact that they were *not* scrubbed. First, when she received Dr. Krakauer's informal complaint from DISH, Ms. Tehranchi responded by email that "We do not have a date for scrubbing this lead through PossibleNow because at the time [Dr. Krakauer was placed in their calling list] we were not a PossibleNow member." (DX-8, attached as Exhibit 1.) This makes using the 2008 scrub as evidence of scrubbing in this case terribly misleading to the jury. Additionally, SSN placed a portion of the class calls through its "Charter campaign," a telemarketing effort intended to persuade Charter customers to switch to DISH. Ms. Tehranchi testified that the list of Charter customers to which they telemarketed "was already scrubbed." (122:15-19.)

Evidence of a DNC scrub on an unrelated campaign almost two years before the class calls is irrelevant, particularly when all the evidence related to the actual numbers at issue in this case shows that SSN did not scrub the class calls at all.

### b. Plaintiff's objections to 80:3-16 and 80:25-81:2

The disputed designations concern Ms. Tehranchi's statement that Five9, the telephone software company that SSN used to place the class calls and is not a party to this lawsuit, scrubbed SSN's telephone numbers against their own do not call list. Ms. Tehranchi was asked how she knew that fact, and she replied, "Because they told me." (80:3-8.) This testimony is hearsay and fits no exclusions. It should be excluded.

### c. Plaintiff's objections to 83:13-19

6

Plaintiff objects to these designations on Rule 402 and 403 grounds. The disputed testimony and exhibit references a single September 27, 2008 invoice from Five9 to SSN. There is no relevant information on the invoice, nor is there any need to introduce the evidence, which is cumulative of testimony on the undisputed fact that SSN used the Five9 platform to place the class calls.

### d. Plaintiff's objections to 103:17-104:2

Plaintiff objects to this testimony in part on Rule 402 and 403 grounds. DISH's designation consists of DISH's attorney questioning the witness about SSN's relationship with Dr. Krakauer, to whom SSN had apparently sold DirecTV services back in 2003, when Dr. Krakauer called DirecTV to sign up for service. Dr. Krakauer has had DirecTV service since 2003, and sends his monthly payments to DirecTV.

Based on those facts, DISH's attorney asked the witness, "So SSN had an existing business relationship with Dr. Krakauer?" To which the witness replied, "That's correct."

That testimony is unfairly prejudicial, will confuse the issues, and mislead the jury. Not only have the parties reached a stipulation excluding all EBR calls from the class (ECF No. 264, referencing Exhibit 31M), DISH has never asserted the EBR defense with respect to Dr. Krakauer -- nor could it. An "established business relationship" is formed when a call recipient has purchased goods or services from the caller within the 18 months preceding the call, or when the call recipient has inquired about or applied for products of services from the caller within the three months preceding the call. 47 C.F.R. 64.1200(f)(4).

DISH should not be permitted to inject EBR issues into a trial that does not implicate EBR at all, nor should it be permitted to interject legal testimony from a lay witness who apparently does not understand the limits of an EBR.

### 2. DISH's Responses to Plaintiff's Objections

**Page 75, lines 13 to 15 (deposition exhibit 140 [DX 64]); pages 75, line 22 to page 77, line 10**. Plaintiff objects on the basis of Fed. R. Evidence 402 and 403. Ms. Tehranchi testified that Deposition Exhibit 140 (DX 64) was a scrub receipt from PossibleNOW, and she goes on to explain how SSN kept this record and the practice that the receipt reflected. An exhibit or testimony is relevant if it is more likely to make a fact true. *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) ("[R]elevance typically presents a low barrier to admissibility."). The admission of a scrub receipt and testimony about the receipt is relevant because it directly rebuts Plaintiff's claim that DISH acted unreasonably in its dealings with SSN. There is no evidence one way or another with respect to whether the class calls were scrubbed, and the scrub receipt is evidence of SSN's general scrubbing practices. For example, Plaintiff refers to SSN's response to Dr. Krakauer's initial complaint in May 2009, but that is not one of the class calls for which they are seeking recovery and is outside of the class period. Both side are making the same permissible argument—they are using evidence outside of the class period for the jury to infer whether or not SSN was scrubbing calls during the class period.

**Page 79, line 4 to 15; page 80, line 14-24.** Plaintiff objects on the basis of Fed. R.

8

Evidence 402 and 403 to the entire designated portion, and on the basis of Fed. R. Evidence 802 as to page 80, lines 14 to 16. Again, relevance presents a low bar to admission of testimony. The practices of SSN with respect to its internal DNC list are relevant to DISH's argument that it did not believe SSN was likely to call a number when SSN added that number to its internal DNC list. The portion of Ms. Tehranchi's testimony where she testifies about what PossibleNOW is doing is not inadmissible hearsay, because it is based on instructions that Ms. Tehranchi gave to PossibleNOW. Even if it is based on hearsay, it is relevant to show Ms. Tehranchi's belief about the scrubbing practices of PossibleNOW with respect to numbers SSN placed on its internal DNC list.

**Page 103, line 17 to page 104, line 2.** Plaintiff objects on the basis of Fed. R. Evidence 402 and 403. This portion of Ms. Tehranchi's testimony is relevant to SSN's state of mind at the time Mr. Krakauer received a call. The questions preceding this portion clarify the details of SSN's relationship with Mr. Krakauer, eliminating any potential prejudice to Plaintiff.

**Page 106, lines 2-4.** Plaintiff objects on the basis of Fed. R. Evidence 402, 403 and 802. This portion of Ms. Tehranchi's deposition testimony is not hearsay. Ms. Tehranchi, as the corporate representative of SSN, has direct knowledge as to how SSN obtained the numbers it was dialing. This testimony is also relevant to SSN's state of mind as to the source of some of its leads—that it thought of them as SSN's "former customers"—which is relevant to their overall telemarketing compliance and scrubbing

9

practices.

DISH had previously designated page 79, line 16 to page 80, line 13; page 80, line 25 to page 81, line 2; and page 83, lines 13 to 19 (the designation of the Five9 invoice). DISH has since withdrawn these designations.

Dated: January 5, 2017                                     Respectfully submitted,

By:   /s/ *John W. Barrett*                                By:   /s/ Peter A. Bicks
John W. Barrett                                            Peter A. Bicks
Brian A. Glasser                                           Elyse D. Echtman
Bailey & Glasser LLP                                       John L. Ewald
209 Capitol Street                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
Charleston, WV 25301                                       51 West 52nd Street
Telephone: (304) 345-6555                                  New York, NY 10019-6142
jbarrett@baileyglasser.com                                 Telephone: (212) 506-5000
bglasser@baileyglasser.com                                 pbicks@orrick.com
                                                           eechtman@orrick.com
/s/ J. Matthew Norris                                      jewald@orrick.com
J. Matthew Norris
Norris Law Firm, PLLC                                        /s/ Eric Larson Zalud
1033 Bullard Court, Suite 207                              Eric Larson Zalud
Raleigh, NC   27615                                        BENESCH, FRIEDLANDER, COPLAN &
(919) 981-4775                                             ARONOFF LLP
(919) 926-1676 facsimile                                   200 Public Square, Suite 2300
jmn@ncconsumerlaw.com                                      Cleveland, OH 44114
                                                           Telephone:  (216) 363-4588
Matthew P. McCue                                           ezalud@beneschlaw.com
The Law Office of Matthew P. McCue
1 South Ave., Third Floor                                    /s/ Richard J. Keshian
Natick, MA 01760                                           Richard J. Keshian
(508) 655-1415                                             North Carolina Bar No. 10681
Telephone: (508) 655-1415                                  KILPATRICK, TOWNSEND &
mmcue@massattorneys.net                                    STOCKTON, LLP
                                                           1001 West 4th Street
Edward A. Broderick                                        Winston-Salem, NC 27101
Anthony Paronich                                           Telephone:  (336) 607-7322
Broderick & Paronich, P.C.                                 rkeshian@kilpatricktownsend.com
99 High Street, Suite 304
Boston, MA 02110                                           *Attorneys for Defendant DISH Network*
Telephone: (617) 738-7089                                  *L.L.C.*
ted@broderick-law.com

*Counsel for Plaintiff Thomas H. Krakauer*

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2017, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Peter A. Bicks
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

*Attorneys for Defendant DISH Network L.L.C.*