# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**THOMAS H. KRAKAUER,**
on behalf of a class of persons,

    **Plaintiff,**

                            Civil Action No. 1:14-cv-00333-CCE-JEP

**v.**

**DISH NETWORK, L.L.C.,**

    **Defendant.**


## Plaintiff's Brief on Post-Trial Procedures

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barfeld v. Sho-Me Power Electric Coop.*,
    309 F.R.D. 491 (W.D. Mo. 2015) ................................................................... 4, 8, 9

*In re Lupron Mktg. & Sales Practices Litig.*,
    677 F.3d 21 (1st Cir. 2012) ..................................................................................... 6

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................................ 7

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................... 4, 6, 7

**Rules**

Fed. R. Civ. P. 23(c)(3)(B) ............................................................................... 3, 5, 8

Fed. R. Civ. P. 23(d)(1)(A) ..................................................................................... 1

Fed. R. Civ. P. 23(h)(1) ........................................................................................... 3

**Other Authorities**

Fed. Jud. Ctr., Manual for Complex Litig. (4th) § 21 .............................................. 1

National Ass'n of Consumer Advocates, *Guidelines for Litigating and
    Settling Consumer Class Actions*, 255 F.R.D. 215 (2009) ..................................... 5

*Newberg on Class Actions* § 2:4 (4th ed. 2002) ...................................................... 8

*Newberg on Class Actions* § 10.17 (2d ed. 1985) ................................................... 7

*Newberg on Class Actions* § 12.15 (5th ed.) ....................................................... 5, 8

7A Wright, Miller, & Kane, Fed. Prac. & Proc. § 1784 (3d) ................................ 1, 6

**Summary**

The Court has wide latitude to decide how best to distribute the class judgment. "[C]ourts must use their discretion, and in many cases their ingenuity, to shape decrees or to develop procedures for . . . distributing relief that will be fair to the parties but will not involve them in an unduly burdensome administration of the award." 7A Wright, Miller, & Kane, Fed. Prac. & Proc. § 1784 (3d). This discretion is codified in Rule 23(d)(1), which gives district courts extensive administrative powers reflecting the modern class action's origins in equity. Fed. Jud. Ctr., Manual for Complex Litig. (4th) § 21 at 244; Fed. R. Civ. P. 23(d)(1)(A) ("In conducting an action under this rule, the court may issue orders that . . . determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument . . .[or] deal with similar procedural matters.").

Plaintiff proposes a judgment distribution process designed to pay as many class members as possible, as efficiently as possible, using reliable class member identification methods similar to those the Court authorized at the class notice stage. After the proceeds are distributed, unclaimed funds should not revert to DISH — which the jury found liable for all 51,119 TCPA violations alleged at trial — but instead should be directed as *cy pres* or escheat to the government, with the recipients to be determined after distribution, when the issue is ripe. Plaintiff's proposal is practical and fair, consistent with the TCPA and precedent, and positions the case for final judgment within a matter of months, all without the need for costly and lengthy post-trial proceedings.

## Proposed Process

Plaintiff proposes the following process for distributing the class award and progressing to entry of final judgment:

1. For the 77% of class members who received class notice, their names and addresses will be checked against the United States Postal Service's National Change of Address (NCOA) database. (Ex. 1, Verkhovskaya Decl. ¶ 8.) Checks will be mailed to those class members, who will be instructed that by negotiating the check, they affirm they were the user, owner, or subscriber of the telephone line at the time of the class calls.

2. For those 23% of class members who did not receive class notice, additional research through Experian will reveal additional name and address information, which will then be checked against the NCOA, and checks will be mailed to those addresses, with the same affirmation described above. (*Id.* ¶¶ 7-8.)

3. Any mail returned as undeliverable will be subject to further research, this time through lookups available from TransUnion, which, like Experian, is a data processor with high-quality, reliable consumer and proprietary data commonly used to provide address information. (*Id.* ¶ 9.) These addresses will be checked against the NCOA, and a second round of checks will be mailed. (*Id.* ¶ 10.)

4. All remaining funds will be distributed as *cy pres* or will escheat to the government, to one or more recipients to be determined after any appeals are concluded, class member payments are distributed, and the amount of any unclaimed funds is known.

5. Prior to entry of final judgment, the Court should resolve motions seeking relief that will depend, to some extent, on the procedures the Court adopts. These motions include: (a) a motion to require Defendant to pay all costs of notice and administration, and to appoint class action administrator; (b) a motion for determination of post-judgment interest; (c) a motion for/notice of taxable costs; and (d) a motion for attorneys' fees and nontaxable costs, and a service award to the class representative. Plaintiff proposes that he file these motions 40 days after the Court's order designating the post-trial procedures for judgment distribution, with responses and replies under the normal timeframe allowed by the rules.

6. At the same time these motions are filed, Plaintiff will file a proposed form of Rule 23(h)(1) notice regarding the requested attorneys' fees and nontaxable costs. The administrator will mail the notice, which will inform class members that they have 30 days to object by mail or email directed to the class administrator.

7. Within ten days of the Court's ruling on the motions outlined in Paragraph 5, Plaintiff will submit a proposed judgment order that will, among other things, list the class telephone numbers as required by Rule 23(c)(3)(B).

**Argument**

At trial, the jury decided all issues needed to establish DISH's liability for the class calls. Specifically, the Court instructed the jury on all elements of a DNC claim:

> [T]he plaintiff must prove by a preponderance of the evidence (1) that he and the class members each received at least two telephone solicitations in any 12-month period, (2) that the numbers called were residential numbers, (3) that the calls were made by or on behalf of Dish Network, and (4) that

3

the calls were made when the telephone numbers were on the National Do Not Call Registry for over thirty days.

(ECF No. 293 at 4.) By its verdict, the jury concluded that DISH is liable for all alleged class TCPA violations (51,119), and that the penalty is $400 per violation, for a total liability of $20,447,600. That figure — no more and no less — fixes DISH's liability to the class on the class claim.

The verdict liquidates DISH's liability for the TCPA violations. The Court's instruction addressed all elements of a DNC claim, so nothing further need be proven against DISH. Despite DISH's insistence to the contrary, *proving the identity of the subscriber or recipient is not an element of a DNC claim.* It is sufficient that every telephone line has a subscriber, and every call was received.[1] What is not known, at least for some class members, is the subscriber's *identity*. But determining whom to pay relates to how damages should be *distributed,* not what the damages are; the jury resolved that issue, so it is a matter of no interest to DISH. *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."). DISH's interest is in obtaining a *res judicata* bar to block future claims by class members for the calls at issue here — something it will get through a judgment order that lists all telephone numbers in the class, a matter to which the parties have already stipulated. *See Barfeld v. Sho-Me Power Electric Coop.,* 309 F.R.D.

---

[1] As Anya Verkhovskaya testified at trial, she eliminated from her class call count unconnected, fax, busy, and abandoned calls, as well as all calls with a duration of zero seconds. (Jan. 12, 2017 Tr. at 177:6-178:5.) This testimony supported the jury's conclusion, consistent with the instructions, that the class calls were "received."

4

491, 492 (W.D. Mo. 2015) (judgment order need not list names of class members; description is sufficient under Rule 23(c)(3)(B)).

In addition to being legally superfluous, DISH's request for a claims process, a contested review of claims, and an opportunity for cross-examination would cost money and delay payments to class members — if it doesn't altogether rule out payments to a large swath of them. Keep in mind that the jury determined the value of each violation was $400, from which any court-awarded attorneys' fees and other expenses would be deducted. This means that DISH is proposing adversarial proceedings to contest payments that will, on average be in the hundreds of dollars for most class members.[2]

Apart from the fact that a claims process alone would reduce the number of class members who receive payments, DISH knows that few class members would agree to undergo that type of burdensome procedure. *See Newberg on Class Actions* § 12.15 (5th ed.) (sending checks directly to class members is the preferred method, "since class actions tend to involve small amounts of money, the more class members have to do to claim an award, the less likely it is that they will do so. Hence, if it is possible to accomplish, distribution without claim forms is far more efficacious."); National Ass'n of Consumer Advocates, *Guidelines for Litigating and Settling Consumer Class Actions*, 255 F.R.D. 215, 263 (2009) (in general, claims forms and procedures should be avoided

---

[2] Dividing the 51,119 violations by the 18,066 telephone numbers in the class, the average number of violations per number is 2.83. That figure, multiplied by $400, is $1,132, from which any Court-awarded attorneys' fees and other expenses would be deducted.

5

because they "can reduce the number of class members who receive recovery and the amount paid by the defendants.")

What DISH wants is exactly what the authorities warn against: "an unduly burdensome administration of the award." 7A Fed. Prac. & Proc. § 1784. *Why* DISH wants these procedures is equally clear: it wants the money back. DISH should not get the money back. Reversion to DISH would usurp the jury's determination that DISH is liable for 51,119 TCPA violations, at $400 each. Reducing DISH's responsibility for the verdict because some class members do not submit claims, or some do not wish to involve themselves in contested proceedings for a relatively small payment, or some cannot be found, would *reward* DISH for conduct a jury has determined violates federal law and is deserving of punishment. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 28, 33 (1st Cir. 2012) ("Returning unclaimed funds to the defendant 'would undermine the deterrence function of class actions and the underlying substantive-law basis of the recovery by rewarding the alleged wrongdoer simply because distribution to the class would not be viable.'").

Reversion would counteract the purpose of the TCPA in prohibiting nuisance telemarketing and result in a perverse outcome, a result that cannot stand. That is the teaching of *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990). There, much like here, judgment was entered against a defendant who violated a federal statute providing penalties of up to $500 per violation, without individual proof of actual damages, whose provisions had a "strong deterrence function," and where certain class members had not been identified by name and some funds could not be distributed

6

to class members. The court rejected reversion of unclaimed funds as an option, finding that the decision of how to handle leftover class funds should be "guided by the objectives of the underlying statute and the interests of the underlying class members," and returning the money to the violator would contradict the underlying statute's deterrent goals. *Id.* at 1307-08. Instead, the funds may escheat to the government, or, as the district court decided, be distributed as *cy pres* to a cause serving the interests of the class members. *Id.* at 1307 (three options for distributing unclaimed funds include *cy pres*, escheat to the government, and reversion to the defendant) (citing *Newberg on Class Actions* (2d ed. 1985) § 10.17 at 373-74).

At bottom, DISH appears to believe it is entitled to all the process it wants. It is not. The right to process involves a balancing test, and requires consideration of (1) the private interest affected, (2) the risk of erroneous deprivation of the interest through the procedures used, and (3) the government's interest, including all fiscal and administrative burdens that the additional procedure would require. *Mathews v. Eldridge,* 424 U.S. 319 (1976). DISH has already been found liable for more than $20.4 million to the class, so its sole remaining interest is in obtaining a *res judicata* bar, which it will receive through a judgment order listing all class telephone numbers. And the burden of DISH's procedures would be significant, delaying payment to the class, dragging out the proceedings, reducing the number of class members who get paid, and bogging the Court down in litigation battles waged over comparatively low-dollar claims.

The court in *Barfield v. Sho-Me Power Electric Coop.*, 309 F.R.D. 491, 492 (W.D. Mo. 2015), which involved a $79 million class verdict to property owners who alleged

7

the power company breached its power-line easement rights, rejected arguments similar to those DISH is making here. The defendant contended that Rule 23(c)(3)(B) required any final order to list the names and addresses of all class members, and the amounts awarded to each. *Id.* at 493. The court disagreed, finding that the Rule required only that a judgment order "specify or describe" class members, and noting that rule drafters purposely avoided requiring that a class judgment identify all class members; "all that is required is that the class be described in the final judgment." *Id.* (citing *Newberg on Class Actions* § 2:4 (4th ed. 2002)).

The court also rejected the defendant's argument, again similar to DISH's here, that the court could not enter final judgment until the defendant could "contest each and every claimant's standing as a class member and the amount of payment due, if any," based on what the defendant claimed were disputed facts. 309 F.R.D. at 494. The court held that the jury's verdict determined the total damages due to the class, and further proceedings were unnecessary. *Id.* at 495. That is equally true in this case; further proceedings are unnecessary, costly, and a burden to class members. "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Newberg on Class Actions* § 12.15 (5th ed.).

Finally, *Barfield* addressed the handling of unclaimed class member distributions. The court found that a choice between *cy pres*, escheat, and reversion was "premature," as no funds had been distributed to anyone, and the amount of unclaimed funds was unknown. *Id.* at 497-98. Although this Court may reasonably decide to defer choosing

8

between the three (and may even wish to consider other options, such as a second distribution to class members), Plaintiff requests that it rule out reversion, for all the reasons stated above, and to tee up this important issue for review on appeal.

## Conclusion

The same common sense, practical approach that permitted the adjudication of more than 51,000 claims in five trial days can and should generate an efficient, inexpensive, and fair plan for getting this case to final judgment. Plaintiff respectfully requests the Court adopt his proposed procedures.

**Respectfully submitted,**

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

9

## CERTIFICATE OF SERVICE

The foregoing was filed electronically on April 26, 2017. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

/s/ John W. Barrett

953376.a01