IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

                                     Civil Action No. 1:14-cv-00333-CCE-JEP

v.

DISH NETWORK, L.L.C.,

    Defendant.

**Plaintiff's Response in Opposition to
<u>DISH's Motion for Post-Trial Procedures</u>**

# TABLE OF CONTENTS

                                        **Page**

Argument Summary ................................................................................................ 1

Argument ................................................................................................................ 3

   1. DISH's procedures are an improper attempt to nullify the jury's verdict ................. 3

      a. Dish's claim form is designed not to implement class members' rights to receipt of the award, but to chill them. ............................................................. 3

      b. The jury's verdict should be implemented by sending checks to class members for their respective statutory damages. ................................................ 5

   2. The Court deferred determining how to distribute any judgment to class members. ........................................................................................................ 6

   3. Determining the identity of class members is not an element of a TCPA violation. ....................................................................................................... 7

   4. Any claims process should be limited to those class members who have not been identified. ....................................................................................... 8

      a. Dish conceded that most class members are entitled to recover the jury's award of statutory damages. .............................................................................. 9

      b. If claim forms are to be used, they must be necessary, clear and simple.......... 10

   5. The Court can describe the allocation plan in its judgment order and certify the order as final under Rule 54(b) ...................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) ................................................................................ 8

*Barfield v. Sho-Me Power Electric Coop.*,
  309 F.R.D. 491 (W.D. Mo. 2015) ..................................................................... 11, 12

*Central Wesleyan College v. W.R. Grace & Co.*,
  6 F3d 177 (4th Cir. 1993) ......................................................................................... 6

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................. 6

*Geanacopoulos v. Philip Morris USA Inc.*,
  No. 98-6002, 2016 WL 757536 (Mass. Super. Feb. 24, 2016) ......................... 10, 11

*Holmes v. Back Doctors, Ltd.*,
  695 F.Supp.2d 843 (S.D. Ill. 2010) .......................................................................... 4

*In re Nexium (Esomeprazole) Antitrust Litigation*,
  297 F.R.D. 168 (D. Mass. 2013) (Saris, J.) ............................................................. 6

*In re: Rules & Regs. Implementing the TCPA of 1991*,
  30 F.C.C. Rcd. 7961 (2015) ..................................................................................... 4

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................... 7, 11

*Wal-Mart Stores, Inc. v. Dukes*,
  504 U.S. 338 (2011) ................................................................................................. 2

**Other Authorities**

47 C.F.R. ¶ 64.1100(h) ................................................................................................. 4

7A Fed. Prac. & Proc. Civ. § 1784 (3d ed.) ............................................................ 2, 11

*Newberg on Class Actions* (5th Ed.) .................................................................. 3, 7, 10

**Argument Summary**

1. Was SSN acting as Dish's agent when it made the telephone calls at issue from May 11, 2010, through August 1, 2011?

    [✓] YES

    [ ] NO

    *If Yes, continue to Question 2. If No, skip all other questions and sign the verdict sheet.*

2. Did SSN make and class members receive at least two telephone solicitations to a residential number in any 12-month period by or on behalf of Dish, when their telephone numbers were listed on the National Do Not Call Registry?

    [✓] YES as to Dr. Krakauer and all class members

3. What amount, up to $500, do you award for each call made in violation of the TCPA?

    $ __400.00__

Based on the verdict: (1) DISH is liable for all class calls; (2) all class members received illegal calls; (3) the award for each of the 51,119 violations proven at trial is $400; and (4) by the mechanical application of simple math, DISH's liability to the class is $20,447,600. No additional proceedings are needed to reach this conclusion. What remains for determination is who should *receive* the award – an issue of judgment distribution, a matter committed to the Court's discretion, and a matter of no legal interest to DISH, whose liability was determined through the verdict.

"Insofar as the problem presented is one of *damage distribution*, rather than *damage calculation*, the district judge might reduce the burden on the court in actually administering the damage distribution by having the parties submit proposals as to how to

1

distribute the award with a minimal amount of judicial supervision." 7A Fed. Prac. & Proc. Civ. § 1784 (3d ed.)(emphasis added). That is exactly what this court did. And Dr. Krakauer's proposal offers a simple and straightforward means of distribution. Dish's proposal nullifies the jury's finding of liability and assessment of statutory damages to the class, and ignores the court's directive. Dish insists that, notwithstanding the verdict, each class member must now make individual showings in order to recover.

But class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 504 U.S. 338, 348-49 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). Any class action claim must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. The jury verdict here is that "one stroke" the Supreme Court described. DISH's recourse is not a second round of contested proceedings requiring detailed individual proof. The very purpose of the class action is to *avoid* the need to present individual proof, and in any event, *all elements of a DNC claim were presented at trial and the jury issued its verdict based on that evidence.* DISH's remedy at this point consists of its right to appeal; it has no right to overwhelmingly burdensome and patently unreasonable procedures to test the individual proof of class members whose claims have already been proven.

955902.a01

# Argument

**1. DISH's procedures are an improper attempt to nullify the jury's verdict.**

"A threshold consideration in thinking about the class action claiming process is the fact that most class members will never step forward and file claims for relief in most class actions." *Newberg on Class Actions* (5th Ed.) § 12:17 ("*Newberg*"). That would be especially true were DISH to determine how the claims process should work. DISH asks for a complete do-over through a complex, expensive, and inefficient post-trial process, which is not required under any reasonable notion of due process or application of the TCPA.

Fundamentally, DISH ignores that this case is a class action. It even ignores its concession that, apart from some 4,800 phone numbers where contradictory name information or no name information was available, "there are no other challenges that … the jury would have to address in the verdict sheet." Tr. at 48:11-25. Nevertheless, *despite* the jury's verdict, Dish wants all class members, not just the 4,800 it cites, to complete unnecessary and onerous claim forms.

**a. Dish's claim form is designed not to implement class members' rights to receipt of the award, but to chill them.**

DISH's proposed claim form is a striking example of overreaching, and is patently intended to discourage claims. Dish wants each class member to swear under penalties of perjury that, more than six years ago, he or she received "two or more telemarketing calls from SSN promoting DISH's pay television services." (DISH Claim Form, ECF No. 329-1 at Nos. 1-2.) The only reason to ask such a question is to instill doubt and fear.

3

Recovery is not limited to persons who "personally answered" a telemarketing call (ECF No. 111 at 12-13), and "ownership" is not the right test. TCPA regulations define "subscriber" as (1) "[t]he party identified in the account records of a common carrier as responsible for payment of the telephone bill[,]" (2) "[a]ny adult person authorized by such party to change telecommunications services or to charge services to the account[,]" or (3) "[a]ny person contractually or otherwise lawfully authorized to represent such party." 47 C.F.R. ¶ 64.1100(h). Further, the FCC has described the subscriber as "the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In re: Rules & Regs. Implementing the TCPA of 1991,* 30 F.C.C. Rcd. 7961 (2015).

These definitions – which must be interpreted broadly to support the TCPA's remedial purposes, *see, e.g., Holmes v. Back Doctors, Ltd.*, 695 F.Supp.2d 843, 854 (S.D. Ill. 2010) – cast a far wider net than DISH would have it.

The remaining questions on DISH's claim form are surplusage intended to dissuade and even intimidate class members. Again, invoking the specter of perjury by requiring class members to swear to the number of calls received six years ago (DISH's Question 7) is a chilling device. And in any event the parties have *stipulated* to that fact for each telephone number in the class. (ECF No. 277, Am. Joint Stip. Regarding Call Categories.) DISH has no need to know the name of the telephone company, or whether a phone was an internet or VOIP line – a matter DISH has not contested or even raised at any time during the three-plus years the case was litigated. Likewise, why would DISH need to know (Question 8) details about the date of the calls (a known fact), how long

4

955902.a01

each call lasted (a known fact), or "what was said" on the call (irrelevant to a DNC claim)?

Why would a class member be instructed to "provide copies of *all* [emphasis in original] documents in your possession, custody or control that might tend to show that you did or did not own the telephone number or answer the telephone number" on the specified date? Why would a class member submit a claim requesting such impossible detail "under penalty of perjury," particularly when threatened with "provid[ing] testimony under oath" that will be "subject to cross-examination in a court of law." The Federal Judicial Center warns against just such fear tactics: "[b]e careful to avoid claim forms that *scare class members away* with confusing questions and onerous proof requirements." Federal Judicial Ctr., Managing Class Action Litigation: A Pocket Guide for Judges (2010)(emphasis added). The FJC's advisory describes DISH's proposed procedures to the letter.

### b. The jury's verdict should be implemented by sending checks to class members for their respective statutory damages.

By exercise of the Court's considerable equitable powers to direct payment of the class judgment, the jury's award can reach the payee by sending checks to those class members identified at the notice stage, who will be instructed that by negotiating them, the class member affirms that he or she used, owned, or subscribed to the class telephone number during the class period. (ECF No. 331 at 2-3.) Those 4,798 class telephone numbers for which the administrator did not obtain corresponding names should be identified through the additional research identified in Ms. Verkhovskaya's declaration

5

955902.a01

Case 1:14-cv-00333-CCE-JEP   Document 334   Filed 05/10/17   Page 8 of 17

(ECF No. 331-1 ¶ 7), and checks with the same instructions should be directed to those identified through that work. This process tracks that of the class notice campaign, which the Court concluded would provide the "best notice practicable under the circumstances" as required by Rule 23 and due process. (ECF No. 153 at 3.) *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174 (1974) (Rule 23's notice standard "is designed to fulfill requirements of due process to which the class action procedure is of course subject.") (quoting Adv. Comm. Note to Rule 23).

### 2. The Court deferred determining how to distribute any judgment to class members.

DISH believes that comments made by the Court and Plaintiff's counsel well before trial, during the course of wide-ranging discussions about how to try this complex and unprecedented case, somehow anticipated the burdensome post-trial process DISH has proposed here. They do not. In any class action, "management for trial is a dynamic process, one which requires constant reevaluation and adjustment*." In re Nexium (Esomeprazole) Antitrust Litigation*, 297 F.R.D. 168, 181 (D. Mass. 2013) (Saris, J.). *See also Central Wesleyan College v. W.R. Grace & Co.*, 6 F3d 177, 190 (4th Cir. 1993) (after certification, "the course of . . . litigation is not set and . . . the district court retains considerable discretion to react to events as they unfold.").

This case is no exception. The parties finalized their categorical "bucket" approach weeks before trial, when on December 23, 2016 they filed their stipulation regarding call categories (ECF No. 267) and the final stipulation regarding class carve-outs (ECF No. 264). At no time before then did the Court rule on or forecast details on any claims

6

955902.a01

Case 1:14-cv-00333-CCE-JEP   Document 334   Filed 05/10/17   Page 9 of 17

process, and in fact the Court expressly directed that the matter of connecting names to telephone numbers "can be resolved post-trial using procedures to be determined later." (ECF No. 242 at 1.) Deferring post-trial procedures until after trial was the wiser course, as only then could the Court evaluate next steps with the full benefit of the jury's verdict and the evidence that supports it.

### 3. Determining the identity of class members is not an element of a TCPA violation.

DISH has no Seventh Amendment right to contest the *identity* of class members because the *identity* of the recipient is not an element of a DNC claim. It is an adjudicated fact that all class members received illegal calls, and that all class telephone numbers were listed on the NDNC. The Seventh Amendment's reexamination clause precludes DISH's proposed second chance to contest the jury's finding. U.S. Const. amend. VII ("[N]o fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."); *Newberg* § 11:10 ("The Seventh Amendment's re-examination clause prevents a fact that was tried by a jury from being re-examined at a later time.").

Nor would distribution to class members under the Court's broad equitable powers to administer a class judgment run afoul of the Rules Enabling Act. DISH is liable for 51,119 telemarketing calls that violated the TCPA – a finding that is not stripped of its force and effect if the passage of time or other factors make it difficult to locate some of the recipients of those calls, no more than the difficulty of locating migrant workers in *Six*

7

955902.a01

*Mexican Workers* would relieve the defendant of its liability for violating the registration laws in the first place.

All elements of 51,119 TCPA violations have been proven. For this reason, none of the authority DISH cites (*Jaffe, In re Shell Oil,* and *Allison*) supports its proposed second round of contested proceedings. One of DISH's cited cases proved the contrary point. In *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003), the defendant had the right to participate in a contested claims process because, unlike here, the jury ruled only on liability, not damages, which would be proven through a claims process. By contrast, where damages have been determined, "a defendant has no interest in how the class members apportion and distribute a damage fund among themselves." *Id.* (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 481 n. 7 (1980), and *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1307 (9th Cir. 1990)). This is Plaintiff's point exactly.

### 4. Any claims process should be limited to those class members who have not been identified.

Were the Court to adopt procedures requiring a claims process, the process should be limited to a subset of class members, not to all class members. For example, a claims process could be limited to those class members not identified after the second round of class member research described in Ms. Verkhovskaya's declaration. (*See* Anya Verkhovskaya Decl. (ECF No. 331-1) ¶¶ 6-7.) Or the claims process could be limited to those few thousand class members DISH contended at the September 8, 2016 pretrial conference were insufficiently identified and not entitled to recover.

8
955902.a01

Case 1:14-cv-00333-CCE-JEP   Document 334   Filed 05/10/17   Page 11 of 17

### a. Dish conceded that most class members are entitled to recover the jury's award of statutory damages.

At the pretrial conference, DISH *conceded* that the claimed inadequate identification of these class members prohibited only *them* from joining in a class recovery. The following explains DISH's concession. Before trial, DISH proposed a verdict form asking the jury:

> 6. Has Plaintiff proven that the individuals he claims to be in the classes are the subscribers or actual recipients of the calls:
>    (a) where the data used by Plaintiff's expert contains contradictory name and address information for a telephone number (12,101 calls) (4,322 phone numbers)
>    (b) where Plaintiff's expert has no name information for a telephone number? (2,789 calls) (478 phone numbers).

(ECF No. 228-3 at 2.)

In the following exchange, DISH stated that only those 4,800 phone numbers referenced in Question 6.a and 6.b were not adequately identified and were not entitled to recover:

> THE COURT: You've got, you know, 23,000 people, let's just say. And then they get over to 6A and 6B and the jury says, okay, we exclude 4,322 people where you have contradictory names and we exclude 478 where you have no name. That leaves the rest of the people. And you have no answer about the rest of the people. *So your verdict sheet assumes and concedes that the rest of the people have a name and can recover, if they don't fall into one of these other buckets.* Do you see what I'm saying?
>
> MR. EWALD: They've moved on past question four, and they get to question six on that -- only on the question of, you say actual recipient or subscriber, the name issue. *Yes. As to those other ones, there are no other challenges that would be – the jury would have to address in the verdict sheet.*

9

(Sept. 8, 2016 Tr. at 48:11-25.)

### b. If claim forms are to be used, they must be necessary, clear and simple.

Dish admits that post-verdict contested distribution battles are a rarity, and its claim form examples are all from settlements. Dish Brief, at 9, n. 4. Other than the *RCN* case, those settlements were premised on claimants providing proof of actual damages, not a jury verdict for statutory damages, as here. To the extent that the Court decides that a claims process should be used for a subset of class members, as *Newberg* explains, "the claiming process should be as simple, straightforward, and nonburdensome as possible."

> So important is this goal that the *Manual for Complex Litigation* warns judges to be on the lookout for settlements that "impos[e] such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits …."

*Id.* § 12.21 (emphasis added).

An analogous example of how a court applied basic notions of fairness and common sense in crafting a post-verdict distribution plan in a statutory damages case is found in *Geanacopoulos v. Philip Morris USA Inc.*, No. 98-6002, 2016 WL 757536, (Mass. Super. Feb. 24, 2016). After trial the Massachusetts Superior Court found that Philip Morris had deceived purchasers of Marlboro Lights cigarettes and awarded each class member statutory damages under the Massachusetts Consumer Protection Act. The class encompassed some 197,000 purchasers of Marlboro Lights between 1994 and 1998. *Id.* at *20.

Unlike in this case, where a list of most class members has been compiled, in *Geanacopoulos* providing those statutory damages to class members would have been

10

955902.a01

impossible without the court's approval of a creative notice and damage distribution plan. So, the plan approved in *Geanacopoulos* involved sending email or mail notice to a list of Massachusetts residents identified by Philip Morris as being in its "active smoker database," plus internet and newspaper notice to reach residents of the other New England states and New York. A very simple claim form required only name and address, verification of town and state of residency and checking a box attesting to purchasing Marlboro Lights. (Ex. 1, Prelim. App. Order, at Ex. C (Class Action Claim Form)). This procedure provided $225 checks to more than 36,000 class members. (Ex. 2, Mot. to Authorize Distrib. of Settlement Funds, at 1.) *Geanacopoulos* of course involved a settlement, but the point is that the Court employed a fair and straightforward process for paying class members, with considerable success.

Dish's proposal violates all of these principles. In contrast, the fair and reasonable post-verdict procedures in *Geanacopoulos*, and the allocation procedures in *Six Mexican Workers* and *Barfield* as outlined in Plaintiff's opening brief, illustrate the equitable power of the court to fashion appropriate distribution plans so that class members receive the statutory damages the jury awarded them, and wrongdoers like Dish do not avoid accountability. Wright and Miller endorse this principle:

> Keeping in mind that the modern class action sprang from equity, a federal court should feel free to experiment in structuring and distributing relief under Rule 23. It has the tools to shape the remedy to meet the exigencies of each case and difficulties in administration should not be allowed to destroy the usefulness of the class-action procedure

7A Fed. Prac. & Proc. Civ. § 1784 (3d Ed.).

If claim forms are to be sent, they should be clear and simple, and sent only to a subset of class members – either those not identified after Ms. Verkhovskaya's further research, or those DISH claimed were not adequately identified and not entitled to recover. There is no reason to send claims forms to all class members.

**5.    The Court can describe the allocation plan in its judgment order and certify the order as final under Rule 54(b).**

Finally, DISH asserts that its onerous procedures must actually be deployed before any appeal can be lodged. That is not the case. The Court can issue an order spelling out how the judgment will be distributed once all appeals are exhausted, and deem that order final under Rule 54(b). That is the sensible path adopted in *Barfield*, and one that will allow the Court of Appeals to review the Court's allocation plan for abuse of discretion, without expending the resources needed to actually distribute the judgment. *See Barfield v. Sho-Me Power Electric Coop.,* 309 F.R.D. 491, 501 (W.D. Mo. 2015); *see also id.,* No.2:11-CV-04321, ECF No. 731 (Ex. 3, Order granting Pl.'s Mot. For Approval of Plan of Allocation of the Judgment Funds and for Rule 54(b) certification.) Should the Court of Appeals affirm the judgment on the merits but conclude the Court abused its discretion in determining how to distribute the judgment, it may reverse and direct the Court to use other distribution methods.

**Respectfully submitted,**

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

13

## CERTIFICATE OF SERVICE

  The foregoing was filed electronically on May 10, 2017. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

              <u>/s/ John W. Barrett</u>

955902.a01