# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS KRAKAUER,

        Plaintiff,

    v.

DISH NETWORK LLC,

        Defendant.

Case No. 1:14-CV-00333-CCE-JEP

**Oral Argument Requested**

## REPLY IN FURTHER SUPPORT OF DISH NETWORK L.L.C.'S
## MOTION FOR POST-TRIAL PROCEDURES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    Plaintiff Effectively Concedes That Subscriber/Recipient Is an Element of a
      TCPA Claim .......................................................................................................... 2

      A.    Plaintiff Mischaracterizes the Record—DISH Did Not Concede Any
            Aspect of the Subscriber/Recipient Element ............................................... 3

      B.    The Jury Did Not Decide the Subscriber/Recipient Element ....................... 5

      C.    A Final Judgment Cannot Be Entered Until the Subscriber/Recipient
            Element Has Been Determined .................................................................... 8

II.   DISH Offers the Only Legally Supportable Post-Trial Proposal ........................... 9

      A.    DISH Has the Right To Participate in Post-Trial Proceedings ................... 9

      B.    DISH Offers a Reasonable Claim Form .................................................... 10

      C.    Plaintiff Fails To Propose a Credible Post-Trial Process .......................... 14

CONCLUSION ............................................................................................................. 16

i

**INTRODUCTION**

DISH's proposal for post-trial procedures is the only proposal before the Court presenting a legally acceptable mechanism to determine whether ostensible class members were telephone subscribers at the time of the calls at issue or recipients of those calls, as required by the TCPA. Plaintiff's Response in Opposition to DISH's Motion for Post-Trial Procedures ("Plaintiff's Opposition") confirms that Plaintiff proposes to issue checks indiscriminately, without any verification, based on underlying data of unknown origins that identify differing ostensible class members for a single telephone number. Plaintiff's proposal is not only reckless, as it seeks to distribute judgment proceeds without a modicum of reasonable safeguards, it also lacks any legal support.

Rather than attempt to propose reasonable post-trial procedures, Plaintiff attacks DISH's motivation in advocating for an adversarial post-trial process. But DISH's proposal has firm legal footing as a legitimate method to resolve the outstanding subscriber/recipient TCPA element that the jury did not decide. In contrast, Plaintiff's proposal represents a transparent attempt to artificially inflate the aggregate dollar amount of a judgment and class counsel's related fee award, with no concern for whether award check beneficiaries have any legal entitlement to participate in any judgment in this case.

Plaintiff's proposal violates DISH's due process and Seventh Amendment rights by preventing DISH from challenging whether the ostensible class members have satisfied an element of their claim. And the slipshod process proposed by Plaintiff also

1

significantly threatens to violate the constitutional rights of absent class members (thereby threatening the preclusive effect of any judgment).  Plaintiff's proposed process is a search for a name—any name—to tie to a telephone number.  It is not a search for the *right* name, the name of the class member.  Accordingly, Plaintiff's proposal should be rejected and the Court should adopt DISH's proposed post-trial procedures.

## ARGUMENT

### I. PLAINTIFF EFFECTIVELY CONCEDES THAT SUBSCRIBER/ RECIPIENT IS AN ELEMENT OF A TCPA CLAIM

DISH's Opening Brief demonstrated that each ostensible class member must prove that he or she was the residential telephone subscriber or actual recipient of calls at issue as an element of his or her claim.  In support of that proposition, DISH cited TCPA implementing regulations, case law interpreting the TCPA, and the law of statutory standing.  *See* Doc. 330 (DISH's Opening Br.) at 2-3; *see also* Doc. 335 (DISH's Br. in Opp'n to Pl.'s Mot. for Post-Trial Procedures ("DISH's Opposition")) at 3.  Plaintiff contends, contrary to applicable case law, that the subscriber/recipient issue is not an element of a do-not-call claim.  But Plaintiff has no authority to support that bald assertion.  Neither Plaintiff's Brief on Post-Trial Procedures ("Plaintiff's Opening Brief") nor Plaintiff's Opposition contains a single supporting legal citation for this proposition. The Court should not credit Plaintiff's *ipse dixit* on this significant legal issue, which is refuted by the ample authority cited in DISH's briefs.

### A. Plaintiff Mischaracterizes the Record—DISH Did Not Concede Any Aspect of the Subscriber/Recipient Element

DISH did not—and does not—concede that most of the names and addresses identified by Plaintiff's expert are subscribers or recipients for the telephone calls at issue. Plaintiff flagrantly mischaracterizes a statement made by DISH's counsel in a discussion with the Court related to a proposed verdict sheet that the Court did not adopt. *See* Doc. 334 (Pl.'s Opp'n) at 9 (quoting discussion of Doc. 228-3 (DISH's Second Revised Proposed Verdict Sheet)). The proposed verdict sheet assumed a trial in which Plaintiff presented name and address evidence to the jury, likely through expert testimony, and, as reflected in Question 3, the jury decided whether Plaintiff had established the subscriber/recipient element based on that evidence. To reach the questions quoted in Plaintiff's Opposition (Questions 6(a) and 6(b)), the jury first would have had to credit the methodology used by Plaintiff's expert to associate names and addresses with telephone numbers, and reject DISH's position that Plaintiff could not establish the subscriber/recipient element for any absent class member. Only by crediting Plaintiff's name and address evidence could the jury have concluded in response to Question 4 that Plaintiff had proven the subscriber/recipient element for at least some absent class members.

Of course, the Court did not adopt the questions concerning the subscriber/ recipient element in DISH's proposed verdict sheet. Instead, the Court excluded name and address evidence from the class trial, and the jury did not consider whether Plaintiff had met his burden on the subscriber/recipient element. Thus, Plaintiff did not present

3

proof on the subscriber/recipient element at trial, which differs from the residential telephone number issue on which Plaintiff's expert Anya Verkhovskaya opined. Had Ms. Verkhovskaya opined that the Five9, LexisNexis, or Microbilt data might reliably establish a telephone number subscriber at the time of the call or the telephone call recipient, DISH's counsel would have vigorously cross-examined her on this issue, to show the jury that the data on which she relied does no such thing. In addition, DISH's expert Debra Aron would have attacked the reliability of using the data for that purpose.

The attorney statement that Plaintiff excerpts in his Opposition, *see* Doc. 334 (Pl.'s Opp'n) at 9, simply recognizes that, should a jury accept the overall methodology as sufficient on that element, DISH still had additional aggregated challenges to the evidence. DISH developed those aggregated challenges in response to the Court's trial management concerns. The Court urged the parties to work together to develop a workable trial plan for this class action. The Court made clear that, while it was "not trying to prevent individual issues from being resolved," DISH could not raise those individual challenges at the class trial. Sept. 8, 2016 Hr'g Tr. at 75:13-25. DISH relied on the Court's ruling and attempted to categorize some of its individualized defenses broadly to try to make them more amenable to class-wide proof, notwithstanding that the subscriber/recipient element is rife with individualized issues that DISH did not concede. At every juncture, DISH maintained its position that the overall case was not amenable to class treatment. On the subscriber/recipient element, the Court ultimately agreed that it presented individual issues, and removed it from the province of the jury for later

individualized determination. For all of those reasons, the two generalized "buckets" of challenges reflected in Questions 6(a) and 6(b) do not constitute the full extent of DISH's challenges to Plaintiff's subscriber/recipient proof.

Plaintiff now proposes to skip the litigation process entirely on the subscriber/ recipient element and simply assume that his untested—and deeply flawed—name and address data would have established the subscriber/recipient element to the satisfaction of the jury. But the Seventh Amendment, due process, and the Rules Enabling Act require more than Plaintiff's mere assumption that his expert got it right; DISH must be given the opportunity to challenge Plaintiff's evidence.

### B. The Jury Did Not Decide the Subscriber/Recipient Element

Plaintiff's argument that the jury decided the subscriber/recipient element has no merit. The record is clear: no questions about names associated with the telephone numbers at issue were presented to the jury. And Plaintiff's argument that Rule 23(b)(3) class actions cannot include individualized issues borders on the frivolous.

As described in DISH's Opening Brief, the Court excluded trial evidence about the names and addresses of ostensible class members; limited the trial evidence to telephone numbers; instructed the jury that individualized issues such as names and addresses associated with the telephone numbers at issue would be determined through post-trial procedures; did not instruct the jury on the subscriber/recipient element; and stated repeatedly that post-trial procedures would be needed to establish the individuals associated with the telephone numbers presented at trial. *See* Doc. 330 (DISH's Opening

Br.) at 3-6. Indeed, as Plaintiff concedes, "the Court expressly directed that the matter of connecting names to telephone numbers 'can be resolved post-trial using procedures to be determined later.'" Doc. 334 (Pl.'s Opp'n) at 6-7 (quoting Doc. 242 (Nov. 14, 2016 Order) at 1). Plaintiff's Opposition does not even attempt to explain how the jury could have decided the subscriber/recipient element without any relevant evidence on the issue or any jury instructions describing the applicable standard, and after having been told explicitly that the jury would not decide that question.

Plaintiff argues that the jury must have decided the subscriber/recipient element because "[t]he very purpose of the class action is to *avoid* the need to present individual proof." Doc. 334 (Pl.'s Opp'n) at 2. That argument is specious and has been directly rejected by the Supreme Court. "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (alterations in original; internal quotation marks and citation omitted). Class action certification under Rule 23(b)(3) requires that common issues "predominate" over individualized issues—not that individualized issues are completely absent.[1] Fed. R. Civ. P. 23(b)(3); *see also* Doc. 111 (Mem. Op. and Order) at 33 (certifying a class action under Rule 23(b)(3) because "common questions of law and fact *predominate*" (emphasis added)). Consistent with the language of Rule 23 and Supreme Court precedent, a

---

[1] DISH maintains that class certification in this case was inappropriate and that, among other things, individual issues predominate over common ones.

6

number of class actions certified under Rule 23(b)(3) have involved adversarial post-trial procedures for the resolution of individualized issues. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259 (11th Cir. 2003) ("Because [the defendant] has certain defenses to each [class member's] claim, we believe that an adversarial claims process is warranted in this case."); *see also* Doc. 334 (Pl.'s Opp'n) at 8 (recognizing that, in *Allapattah*, "the defendant had the right to participate in a contested claims process because . . . damages . . . would be proven through a claims process"); Doc. 330 (DISH's Opening Br.) at 7-9, and cases cited therein.

Plaintiff mistakenly cites *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), for the proposition that certification of a class action precludes the existence of issues requiring individualized resolution. But *Dukes* addressed certification under Rule 23(b)(2), which does not implicate the predominance requirement of Rule 23(b)(3). *See* 564 U.S. at 346 n.2 ("The applicability of [Rule 23(b)(3)] to the plaintiff class is not before us."). The Court explained in *Dukes* that Rule 23(b)(3) exists precisely for cases in which the claims of individual class members raise individualized issues. *See id.* at 362 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)."). Furthermore, Plaintiff misrepresents the language he quotes from *Dukes*. Plaintiff argues that under *Dukes*, "*[a]ny class action claim* must be 'capable of classwide resolution . . . .'" Doc. 334 (Pl.'s Opp'n) at 2 (quoting *Dukes*, 564 U.S. at 350) (emphasis added). But Plaintiff omits surrounding language that makes clear that it is the common question of law or fact—not the entire claim—that must be capable of classwide

7

resolution: "[The class's] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. *That common contention*, moreover, must be of such a nature that it is capable of classwide resolution . . . ." 564 U.S. at 350 (emphasis added); *see also id.* at 359 ("[F]or purposes of Rule 23(a)(2), even a single [common] question will do." (internal quotation marks and citations omitted) (alteration in original)).

### C. A Final Judgment Cannot Be Entered Until the Subscriber/Recipient Element Has Been Determined

A final judgment cannot be entered until after the post-trial process is complete because the scope of DISH's liability depends on the number of ostensible class members who establish the subscriber/recipient element of their claim. *See Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1304 (S.D. Fla. 2001) ("Where, as here, the verdict does not determine an aggregate compensatory award to the class as a whole, it is not 'final' as contemplated in Fed. R. Civ. P. 54, 58, or 23 . . . ."); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (holding order cannot be final that does not assess damages or award other relief). *Barfield*, which Plaintiff relies upon, is not on point because there, unlike here, "Plaintiffs' claims ha[d] been resolved, both in liability and in damages, and [the defendant] ha[d] no affirmative defenses left to be litigated." *Barfield v. Sho-Me Power Elec. Coop.*, 309 F.R.D. 491, 500 (W.D. Mo. 2015). A final order cannot be entered here until all elements of the ostensible class members' claims have been resolved.

8

## II.     DISH OFFERS THE ONLY LEGALLY SUPPORTABLE POST-TRIAL PROPOSAL

DISH has the right to participate in post-trial proceedings.  The parties and the Court all recognized this right before trial, and Plaintiff's attempt to slough off past statements as "trial management" discussions does not support his abrupt and disingenuous post-trial reversal on this question.

### A.     DISH Has the Right To Participate in Post-Trial Proceedings

Plaintiff concedes that, under the reasoning of *Allapattah*, a class action defendant has the right to participate in a post-trial claims process if the jury verdict did not fully establish the scope of the defendant's liability.  *See* Doc. 334 (Pl.'s Opp'n) at 8.  Plaintiff attempts to distinguish *Allapattah* on the grounds that the amount of damages to be paid by DISH has been determined, but that is false.  The jury verdict determined the amount of damages that DISH would have to pay for each call to a class member who succeeds in establishing his or her claim, not the total amount of damages owed to the class.  *See* Doc. 292 (Verdict Sheet) at 2.  In fact, the Court made clear during the charge conference that it would not ask the jury to render a total damages award because the subscriber/ recipient issue remained undecided.  When the addition of a total damages amount was proposed, the Court stated:

> I'm not going to make them [*i.e.*, the jury] do that.  There are some post— there are some issues that may have to be decided after this, and so . . . *that number would be meaningless*. . . . [W]e'll have some posttrial proceedings of some sort so that Defendant can present any individual issues and so we can also figure out, you know, who gets the money, and *so I'm not going to have them determine the total amount.*

9

Jan. 17, 2017 Tr. at 159:9-21 (emphasis added). Accordingly, this is not a case in which the only remaining issue post-trial is the allocation of damages among class members from a fund established by the verdict at trial. Rather, this case is like *Allapattah*—"no damage fund has been created and there are several issues that must be resolved during the claims process." *Allapattah*, 333 F.3d at 1259. And as in *Allapattah*, an adversarial post-trial process is necessary to resolve those remaining issues and determine the amount of damages DISH ultimately will have to pay.

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), relied on by Plaintiff, is not to the contrary. In that case, the only remaining issue after trial was damages, and the court held that the award of statutory damages rather than actual damages meant that there was no need for individualized proof on that element. *See id.* at 1306 ("[C]oncerns . . . about the impermissible circumvention of individual proof requirements are not at issue where the underlying statute permits awards without a showing of actual damage."). That is not the case here, where an element of each ostensible class member's claim—the subscriber/recipient element—still must be established through individualized proof.

### B.     DISH Offers a Reasonable Claim Form

Plaintiff's criticisms of DISH's proposed claim form lack merit. Neither party has obtained evidence from the ostensible class members that could be used to assess the subscriber/recipient element. The claim form will serve as the primary—and likely for a substantial number of ostensible class members, the exclusive—evidence for the

10

subscriber/recipient element.  The questions posed on DISH's proposed claim form are streamlined and intended to elicit the evidence both sides need to resolve the final outstanding element of each ostensible class member's claim, and are based on questions from claim forms that have been approved in other class actions.  *See* Doc. 330 (DISH's Opening Br.) at 9-10.  Indeed, the opportunity to provide more information and documentation benefits the claimants because a claim will be stronger the more proof the claimant can offer on the subscriber/recipient element.

Plaintiff provides no support for his argument that requiring the claim form to be completed under penalty of perjury would dissuade meritorious claims.  Many courts have approved claim forms requiring statements under penalty of perjury, including the district and appellate courts in *Barfield*, which Plaintiff cites as "an appropriate distribution plan."  *See Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 805-06 (8th Cir. 2017) (noting approvingly that "class members will file a claim form with a sworn statement identifying the period of their ownership and attaching a deed" (internal quotation marks and citation omitted)) (cited in Doc. 334 (Pl.'s Opp'n) at 11); *see also, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *12 (S.D.N.Y. Nov. 12, 2004) (approving claim form requiring signature under penalty of perjury and documentation of losses because "[b]oth of these provisions are important in helping to insure" that claimants are entitled to recover); *In re Genworth Fin., Inc. Sec. Litig.*, No. 3:14-cv-00682-JAG, 2016 WL 7177515, at *4 (E.D. Va. Apr. 18, 2016) (requiring claim form to be signed under penalty of perjury and accompanied by

"adequate supporting documentation"); *Bd. of Trustees of the City of Lake Worth Emps.'*
*Ret. Sys.*, No. 3:10-cv-845-J-32MCR, 2012 WL 12903095, at *3 (requiring claim form to
be signed under penalty of perjury).

If ostensible class members brought their claims as individual plaintiffs, any
testimony they offered would be under penalty of perjury. Dr. Krakauer himself was
willing to testify under penalty of perjury in these proceedings. There is no reason to
impose a lesser standard on ostensible class members here.

Indeed, a sworn statement is critical to the validity of the post-trial process. If a
claimant is so unsure of the merits of the claim that he or she is unwilling to provide
information about it under oath, and has no documentation or other evidence to support it,
then a reasonable jury could not possibly find in favor of that claimant. Before DISH
might be required to send a claimant a check for hundreds of dollars or more, the
claimant, at the very least, should be confident in his or her right to recover. *See, e.g.*,
*Gascho v. Global Fitness Holdings, LLC*, Nov. 2:11-cv-436, 2014 WL 1350509, at *22,
*28 (approving of claim form signed under penalty of perjury where expected recovery
was between $25 and $41.28 per claimant), *report and recommendation adopted*, No.
2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th
Cir. 2016). If an ostensible class member is not confident of his or her claim, then the
Court should be skeptical of it too.

Plaintiff's nit-picking of the language in DISH's proposed claim form describing
the subscriber/recipient element misses the point. Whatever the definition of

12

"subscriber," post-trial procedures are needed to evaluate each claimant's evidence in support of that element. Plaintiff still has not offered a credible means to perform that evaluation.

DISH drafted its proposed claim form so that it would be easy for claimants to understand, and avoided unnecessarily legalistic terminology. The regulatory language Plaintiff quotes to define "subscriber" is precisely the kind of jargon that claimants may find difficult to understand. DISH maintains that its proposed language accurately reflects the definitions of subscriber and recipient, and Plaintiff has not proposed a viable alternative.

Regardless, the process that Plaintiff proposes does not even attempt to ensure that claimants satisfy Plaintiff's overly broad proffered definition of "subscriber." Plaintiff insists that a subscriber includes the party identified in account records, any party authorized by that person to make changes to his or her service or to represent that party, and any customary user of a telephone number. Doc. 334 (Pl.'s Opp'n) at 4. Plaintiff's definition sweeps far too broadly. In particular, Plaintiff misconstrues the passage he quotes from *In re Rules & Regulations Implementing the TCPA of 1991*. *See* Doc. 334 (Pl.'s Opp'n) at 4. Plaintiff's selective quotation omits surrounding language that shows Plaintiff has it backwards—the FCC actually expressly distinguishes between subscribers on the one hand, and non-subscribers who are customary users of the telephone on the other hand. *See In re Rules & Regs. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 8000-01 (2015). While both categories are included within the FCC's definition of

13

"called party" as used in the TCPA's prohibition on the use of autodialers and pre-recorded voice messages—which is the topic addressed in the passage Plaintiff quotes—non-subscribers who are customary users of the telephone are not included within the definition of "subscriber" for purposes of the do-not-call private right of action. Furthermore, any purported remedial purpose of the TCPA cannot justify Plaintiff's expansive and counterintuitive definition of "subscriber." *See Holmes v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 854 (S.D. Ill. 2010) ("[E]ven when a statute has a remedial purpose, that will not justify reading a provision more broadly than its language and the statutory scheme reasonably permit." (internal quotations and citation omitted)) (cited in Doc. 334 (Pl.'s Opp'n) at 4).

In any event, none of Plaintiff's data sources even purports to identify any of those categories of people. As described in DISH's Opposition, the data on which Plaintiff would rely are of unknown origins, do not provide the actual subscriber on any account, and produce different and contradictory results depending on the order in which they are applied. *See* Doc. 335 (DISH's Opp'n) at 14-19; Doc. 335-1 (Decl. of Dr. Debra J. Aron). While the language in DISH's claim form can be adjusted if necessary, there is no fix for these critical flaws in Plaintiff's proposed process.

### C.    Plaintiff Fails To Propose a Credible Post-Trial Process

The claims processes used in *Geanacopoulos*, *Barfield*, and *Six Mexican Workers* would be inappropriate here. In each of those cases, the absent class members' claims had been established, and no individualized issues remained for which further evidence

14

was required. *See Geanacopoulos v. Philip Morris USA Inc.*, 33 Mass. L. Rptr. 308, at *21 (Mass. Super. Ct. Feb. 24, 2016) (holding plaintiff class was prevailing party); *Barfield*, 309 F.R.D. at 493 ("The need to identify individual class members to determine . . . individualized inquiries is not present here . . . ."); *Six Mexican Workers*, 904 F.2d at 1303, 1304 (appealing judgment issued after trial). And the amounts in *Geanacopoulos* and *Six Mexican Workers* were substantially less than what class members in this action stand to recover. *See* Doc. 334-1 (Prelim. Approval Order in *Geanacopoulos*) at 9 (estimating that if all class members submit valid claims, each will receive approximately $75); *Six Mexican Workers*, 904 F.2d at 1310 (reducing damages award to "between $150-$600 per plaintiff before attorneys fees").

While the settlement claims process in *Geanacopoulos* is inadequate for this case, that process—which Plaintiff lauds as exhibiting "basic notions of fairness and common sense," Doc. 334 (Pl.'s Opp'n) at 10—provides an instructive counterpoint to Plaintiff's proposal here. Plaintiff's Opposition focuses only on the claim form itself, but ignores the multiple processes put in place in *Geanacopoulos* to ensure that the proper individuals received the award and to eliminate fraudulent claims. *See* Doc. 334-2 (Pl.'s Mot. To Authorize Distribution of Settlement Funds and To Reject Disallowed Claims in *Geanacopoulos*) at 6-8 (describing claims process in which claims administrator identified duplicative claims and used public records to test claimants' state of residency and date of birth).

15

In a case involving hundreds of dollars less than ostensible class members would be expected to recover here, the claims administrator in *Geanacopoulos* rejected nearly half of the claims submitted. *Id.* at 5 (reciting that 36,064 claims were allowed and 30,706 claims were rejected). Yet here, with data that does not purport to answer the subscriber/recipient question, and is contradictory, Plaintiff proposes simply to mail out checks based on class notice data and hope for the best. But there is "no 'way of definitively saying [the class notice postcards] actually reached the class members,'" and in the absence of reliable data from the defendant's own records to identify class members, "a claims-made process is appropriate." *Gascho*, 2014 WL 1350509, at *29. Plaintiff's proposal to mail out checks without verification flouts "basic notions of fairness and common sense" with respect to both DISH and the ostensible class members.

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court order post-trial proceedings as described in DISH's Opening Brief.

16

Dated:  May 19, 2017                          Respectfully submitted,

                                              ORRICK, HERRINGTON & SUTCLIFFE LLP


                                              By:  /s/ Peter A. Bicks
                                              Peter A. Bicks
                                              Elyse D. Echtman
                                              John L. Ewald

                                              51 West 52nd Street
                                              New York, NY 10019-6142
                                              Telephone:  (212) 506-5000
                                              pbicks@orrick.com
                                              eechtman@orrick.com
                                              jewald@orrick.com


                                               /s/ Eric Larson Zalud
                                              Eric Larson Zalud
                                              BENESCH, FRIEDLANDER, COPLAN &
                                              ARONOFF LLP
                                              200 Public Square, Suite 2300
                                              Cleveland, OH 44114
                                              Telephone:  (216) 363-4588
                                              ezalud@beneschlaw.com


                                               /s/ Richard J. Keshian
                                              Richard J. Keshian
                                              North Carolina Bar No. 10681
                                              KILPATRICK TOWNSEND & STOCKTON
                                              LLP
                                              1001 West 4th Street
                                              Winston-Salem, NC 27101
                                              Telephone:  (336) 607-7322
                                              rkeshian@kilpatricktownsend.com

                                              *Attorneys for Defendant DISH Network L.L.C.*

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2017, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.


/s/ Peter A. Bicks
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com

*Attorneys for Defendant DISH Network L.L.C.*

## WORD COUNT CERTIFICATION

Peter A. Bicks, an attorney of record in the above captioned matter, hereby certifies that the foregoing brief contains 4,137 words, in compliance with the Court's word limitations as set forth in Local Rule 7.3(d), as calculated by the word count function of the word processing system used to prepare the foregoing brief.

  /s/ Peter A. Bicks
_____
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com

*Attorneys for Defendant DISH Network L.L.C.*

19