IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

                                      Civil Action No. 1:14-cv-00333-CCE-JEP

v.

DISH NETWORK, L.L.C.,

    Defendant.

**Plaintiff's Reply in Support of Post-Trial Procedures**

958894

# TABLE OF CONTENTS

                                          **Page**

Argument Summary ................................................................................................ 1

Argument .................................................................................................................. 2

1. The subscriber's identity is not an element of a Do Not Call claim. ............................. 2

2. The only question remaining for the Court is, administratively, who should be paid, and how. ................................................................................................ 4

    A. Dr. Krakauer's process is designed to pay as many class members as possible, while ensuring only valid claims are paid. ................................. 4

        (i) The administrative process Dr. Krakauer proposes is reasonable and efficient. ........................................................................................ 6

        (ii) Courts endorse the combination of records indicating class membership coupled with an individual's attestation. ........................ 7

    B. DISH's claims of 3,664 name mismatches are, upon closer examination, reduced to seven people. ................................................................. 10

    C. The Class Administrator will utilize the best resources commercially available to update class members' addresses. ....................................... 11

    D. DISH's res judicata concerns are misplaced. .................................... 11

    E. The Court has discretion to reject reversion in favor of escheat, cy pres, or reallocation. ................................................................................ 12

Conclusion ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
No. 12-2078, 2015 WL 1346850 (S.D. Cal. Mar. 26, 2015) ........................................ 7

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) ............................................................................ 5

*Barfield v. Sho-Me Power Electric Coop.*,
309 F.R.D. 491 (W. D. Mo. 2015) ............................................................................... 3

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ....................................................................................... 2

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ................................................................................. 9, 10

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) ........................................................................................ 9

*Eisen v. Carlisle & Jacquelin*,
479 F.2d 1005 (2d Cir. 1973) .................................................................................... 13

*Fini v. DISH Network, L.L.C.*,
955 F. Supp. 2d 1288 (M.D. Fla. 2013) ...................................................................... 5

*Gonzales v. Cassidy*,
474 F.2d 67 (5th Cir. 1973) ....................................................................................... 12

*Harris v. World Fin. Network Nat'l Bank*,
867 F.Supp.2d 888 (E.D. Mich. 2012) ........................................................................ 4

*Kane v. Nat'l Action Fin. Servs., Inc.*,
No. 11–cv–11505, 2011 WL 6018403 (E.D. Mich. Nov. 7, 2011) ............................. 4

*Krakauer v. DISH Network, L.L.C.*,
311 F.R.D. 384 (M.D. N.C. 2015) .............................................................................. 4

*Manno v. Healthcare Revenue Recovery Grp.*,
289 F.R.D. 674 (S.D. Fla. 2013) ................................................................................. 4

*Maraan v. DISH Network, L.L.C.*,
   No. 1:13-CV-00436, 2014 WL 6603233 (S.D. Ohio Nov. 19, 2014) ........................ 4

*Melendres v. Arpaio,*
   784 F.3d 1254 (9th Cir. 2015), 136 S. Ct. 799 (2016) ................................................ 3

*Moore v. DISH Network, L.L.C.*,
   57 F. Supp. 3d 639 (N.D. W. Va. 2014) .................................................................... 4

*Olney v. Progressive Cas. Ins. Co.*,
   993 F. Supp. 2d 1220, 2014 WL 294498 (S.D. Cal. 2014) ....................................... 4

*Page v. Regions Bank*,
   917 F. Supp. 2d 1214 (N.D. Ala. 2012) ..................................................................... 5

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ................................................................................. 13

*Swope v. Credit Mgmt., LP*,
   No. 4:12CV832, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) ................................. 4

*D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC*,
   791 F. Supp. 2d 622 (N.D. Ill. 2011) ......................................................................... 4

*Tull v. United States*,
   481 U.S. 412 (1987) ................................................................................................... 8

*U.S. v. 198.73 Acres of Land, more or less, in Loudoun Cty., Va.*,
   800 F.2d 434 (4th Cir. 1986).. ................................................................................. 13

*Windham v. American Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977) ..................................................................................... 12

**Other Authorities**

47 C.F.R. 64.1200(c)(2) ..................................................................................................... 2

Fed. R. Civ. P. 23(c)(3)(B) ................................................................................................ 3

http://www.uscourts.gov/sites/default/files/fr_import/CV2015-04.pdf ........................... 14

Samuel Issacharoff, *Administering Damage Awards in Mass Tort
   Litigation*, 10 Rev. Litigation 463 (1990-91) ............................................................ 7

## Argument Summary

DISH's response to Dr. Krakauer's proposed post-trial plan is an exercise in denial: DISH remains in denial of the fact that the Court certified this case as a class action, and refuses to accept the jury's finding that DISH violated the Do Not Call law more than 51,000 times. Though Dr. Krakauer shares DISH's interest in ensuring that the proper individuals receive payments, his proposed post-trial procedures would ensure that as many class members as possible are compensated, while DISH's proposal is designed to do exactly the opposite, and would largely nullify the jury's verdict.

DISH attempts to negate the certification order and the jury's verdict by erroneously arguing that every class member must establish individual standing in addition to proving the elements of a Do Not Call violation. DISH also suggests that, despite the jury's finding that every class member received at least two calls to a residential number, it is somehow entitled to "fully litigate the individualized subscriber/recipient issue"; that is, to individually question each class member to determine whether she was the subscriber or user of the phone line. (DISH Opp. at 3). But the specific identity of the subscriber or user is not an element of proving a Do Not Call violation. That identity is only relevant in administering the jury award. DISH's position confuses its liability, which the jury already decided, with design of the ministerial process of distributing the damages award to the class.

Finally, DISH asserts that Dr. Krakauer's proposed plan for distributing those damages somehow jeopardizes its entitlement to *res judicata*, and that unless every one of the 18,066 class numbers is identified by name and address, it is not liable to

1

958894

Case 1:14-cv-00333-CCE-JEP   Document 337   Filed 05/19/17   Page 5 of 20

unidentified class members for any portion of the award. (DISH Opp. at 10-11, 14-19). This is also a canard, as shown below.

## Argument

**1.  The subscriber's identity is not an element of a Do Not Call claim.**

The elements of a do-not-call claim are straightforward: no entity shall (1) initiate a telephone solicitation to (2) a residential line[1] (3) that is listed on the national do-not-call registry. *See* 47 C.F.R. 64.1200(c)(2). Contrary to DISH's retelling, the verdict established each of these elements for all class telephone numbers.

DISH erroneously conflates the second element — that the call be made to a residential phone line on the DNC list — with a non-element of its own creation: that the DNC registrant be identified by name. But nothing in the statute requires such a showing to establish a DNC violation. In a class action, the class members' individual standing is not at issue; only the class representative's standing must be shown. *Beck v. McDonald*, 848 F.3d 262, 269-70 (4th Cir. 2017) (in a class action matter, "we analyze standing based on the allegations of personal injury made by the named plaintiff[.]").

Although Beck found that the named plaintiff did not have standing, Dr. Krakauer has established his standing, and therefore the standing of all class members. *See, e.g.,*

---

[1] Although the regulation refers to calls made to "a residential telephone subscriber," the Court has ruled that the TCPA "does not limit standing only to subscribers." (ECF No. 111 at 13; *see also* ECF No. 110 at 22, n.6 ("Further, for the reasons stated in the Court's class certification order, standing to sue under the section of the TCPA at issue is not limited to subscribers, so even if Ms. Verkhovskaya is wrong and Lexis does not identify the subscriber, that is not material to the case.")). The caselaw is uniform on this broad interpretation of the TCPA, as detailed in section 2.A, below.

*Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), cert. denied, 136 S. Ct. 799 (2016) (the "class certification approach" to standing "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met," quoting § 2.6 of 1 William B. Rubinstein, Newberg on Class Actions (5th ed.)).[2]

Thus, DISH's "common sense" example has no application to this class action. *Of course* a plaintiff bringing a DNC claim in his individual capacity would have to prove that he was the subscriber or recipient of the call—*but only to establish standing.* In a class action, however, where standing is based on the named plaintiff's claim, the identity of the subscriber or user is necessary only to administer the judgment, not to establish the validity of the claim itself.

DISH's novel requirement that every class member must be identified by name prior to the entry of judgment would eviscerate the usefulness of the class action remedy.[3] It should be seen as what it is: a patent attempt to relitigate the verdict in order to pay as few class members as possible, and nothing more.

---

[2] This principle is well-established. *See In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) (named plaintiffs in antitrust MDL involving brand name drug manufacturer's payments to generic manufacturers to delay launch of their products demonstrated they were overcharged for at least one transaction, and so had standing to sue for their injuries and seek judgment on behalf of class even if some class members were not injured).

[3] By its express terms, Rule 23 requires only that a class action judgment "specify *or describe*" those whom the Court finds to be class members. *See* Fed. R. Civ. P. 23(c)(3)(B); names and addresses are unnecessary. *Barfield v. Sho-Me Power Electric*

**2. The only question remaining for the Court is, administratively, who should be paid, and how.**

**A. Dr. Krakauer's process is designed to pay as many class members as possible, while ensuring only valid claims are paid.**

DISH argues that Dr. Krakauer's proposed post-trial distribution plan fails because DISH asserts the right to challenge every one of the class members' entitlements to damages. (DISH Opp. at 14-15). It appears to envision mini-trials to determine whether the class member was a subscriber or answered the phone when SSN made one of its 51,000+ DNC-violating calls. (*Id.*). In DISH's view, only after the class member provides sufficient proof to satisfy DISH's interrogation may that person collect the jury's damage award. But that is not the law. As this Court recognized, "The TCPA simply states that a person who has received a call in violation of the Section 227(c) regulations may sue and, by its plain language, does not limit standing to only subscribers." *Krakauer v. DISH Network, L.L.C.*, 311 F.R.D. 384, 391-393 (M.D. N.C. 2015). That rule is well-established.[4]

---

*Coop.,* 309 F.R.D. 491, 493 (W. D. Mo. 2015) (citing *Newberg on Class Actions* § 2:4 (4th ed. 2002), vacated on other grounds, 852 F.3d 795, 805 (8th Cir. 2017).
[4] Other courts have recognized that *both* the subscriber and the user of a particular phone line have standing to enforce the TCPA. *See Manno v. Healthcare Revenue Recovery Grp.,* 289 F.R.D. 674, 682 (S.D. Fla. 2013) ("[T]he standing provision of the TCPA is quite broad in that any 'person or entity' injured by a violation of the statute may seek redress[.]"); *Swope v. Credit Mgmt., LP,* No. 4:12CV832, 2013 WL 607830, at *3 (E.D. Mo. Feb. 19, 2013) ("By its plain language, the TCPA grants standing to any 'person or entity'"); *Harris v. World Fin. Network Nat'l Bank,* 867 F.Supp.2d 888, 894 (E.D. Mich. 2012) ("[T]he TCPA . . . plainly grants standing to 'any person or entity'[.]"); *Kane v. Nat'l Action Fin. Servs., Inc.,* No. 11–cv–11505, 2011 WL 6018403, at *7 (E.D. Mich. Nov. 7, 2011) (same); *D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC,* 791 F. Supp. 2d 622, 624–25 (N.D. Ill. 2011) (same); *see also Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 2014 WL 294498, at *5 (S.D. Cal.

DISH's attempted mutation of the TCPA class remedy is legally insupportable, but unsurprising. DISH has a proclivity for situational interpretation of the statute. In *Moore v. DISH Network, L.L.C.*, 57 F. Supp. 3d 639, 648-50 (N.D. W. Va. 2014), where the plaintiff was the subscriber, DISH claimed the subscriber *did not* have TCPA standing only the "intended recipient" of the call or the "regular user" of the phone could assert a TCPA claim. The *Moore* court of course rejected this. *See id*. Conversely, in *Fini v. DISH Network, L.L.C.,* 955 F. Supp. 2d 1288, 1295-97 (M.D. Fla. 2013), where the plaintiff was not the subscriber, DISH claimed that *only* the subscriber (or intended recipient) had standing. *Id.* at 17-19. The court rejected DISH's argument because plaintiff was "the regular user and carrier of the phone." *Id.* at 22. And, in *Maraan v. DISH Network, L.L.C.*, No. 1:13-CV-00436, 2014 WL 6603233 (S.D. Ohio Nov. 19, 2014), DISH claimed that the plaintiff subscriber to a five-line family plan had no standing because DISH's repeated calls were to a line used by plaintiff's minor grandson, and the plaintiff himself did not answer the calls at issue. *Id.* at 3-4. DISH lost on this twist as well. *Id.* at 5.

---

2014) ("the regular user of a cellular telephone has standing to bring a claim under the TCPA, regardless of whether he is responsible for paying the bill"); *Agne v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 565 (W.D. Wash. 2012) (finding authorized user of shared cellular plan had standing under TCPA); *Page v. Regions Bank,* 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) (plaintiff had TCPA standing even though number was registered in someone else's name because he was the cell phone's "regular user and carrier").

### (i) The administrative process Dr. Krakauer proposes is reasonable and efficient.

DISH relies on the declaration of Laura Dozois, a Lexis Field Account Manager, stating that "the LexisNexis data does not purport to identify the subscriber to the telephone number." (DISH Opp., Ex. B). But it ignores the immediately preceding sentence in Ms. Dozois's declaration, in which she affirms that the LexisNexis data identifies the "user of that telephone number." (*Id.* ¶ 7.). Further, in its Order denying DISH's Motion to Strike Ms. Verkhovskaya's expert testimony, this Court previously recognized:

> Even if the data Lexis provided does not actually include subscriber information that does not make Ms. Verkhovskaya's methods unreliable. She stated in her report that it is common in her industry to use third parties like Lexis to identify telephone number subscribers, (Doc. 48-2 at 5, 16) and DISH has not disputed this. Therefore, her belief that the Lexis data identifies subscribers is not based solely on unfounded opinion; as discussed *supra,* it is based on working with Lexis on many cases over many years, having no concerns about the accuracy of Lexis's results, and asking Lexis to provide subscriber information, all to which she testified under oath. (See Doc. 103 at 34, 37, 41). The fact that Lexis does not guarantee that the name provided is the "subscriber" is not fatal.

(ECF No. 110 at 21-22). The Court addressed the standing issue, as well: "[S]tanding to sue under the section of the TCPA at issue is not limited to subscribers, so even if Ms. Verkovshkaya is wrong and Lexis does not identify the subscriber, *that is not material to the case.*" (*Id.* at 22 n.6. (emphasis added)).

Accordingly, DISH's continued insistence that Ms. Verkhovskaya's identification of class members is not reliable is refuted by the record and the law. Legally, the TCPA

protects both the subscriber and the user. Factually, the LexisNexis data identified the users of those telephone numbers that are in the class during the class period.

### (ii) Courts endorse the combination of records indicating class membership coupled with an individual's attestation.

As the Court has previously noted, Ms. Verkhovskaya's methodology to identify class members was sufficiently reliable and the source she used (LexisNexis) to identify class members is commonly used as a reliable source of data in the industry to identify consumers by their phone numbers. Checks to class members so identified would necessarily be accompanied by an explanatory document describing the jury verdict and the way the award was calculated, subject to the Court's approval. The attestation on the back of each check would confirm the class member's entitlement to the award.

Contrary to DISH's assertions, such a ministerial process is adopted by most courts administering class action remedies. In fact, "the use of administrative models to resolve the allocation of damages in class actions has become fairly well established" for decades. *See* Samuel Issacharoff, *Administering Damage Awards in Mass Tort Litigation*, 10 Rev. Litigation 463, 470 (1990-1991).

This class has "a set of common characteristics sufficient to allow a member of that group to identify himself or herself as *having the right to recover* based on the description." *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 305 (S.D. Cal. 2015)(emphasis added). The class here is encompassed in question 2 of the jury verdict, and upon receipt of the check and explanation for it "class members will likely be able to

958894 7

identify whether they received . . . calls from defendant." *Id.*[5] On this score, the people who live in the house answer their home phones, and those with cell phones answer individually. These people are either subscribers or users. SSN called the numbers of those subscribers or users despite their being on the Do Not Call list. It is conceivable, but a rare anomaly, that someone other than a family member or household resident would answer a home phone. It is even more unlikely that such a person would answer an individual's cell phone. The attestation process provides verification that the elements of the claim Dish is so concerned with establishing have been met – not for proving the claim, but for establishing that the award is going to the right person.

But DISH wants to test every single class member because it claims a Seventh Amendment right to try and find such an anomaly. However, where, as here, the jury has issued a verdict both as to liability and a specific amount of statutory damages, no Seventh Amendment issues exist. In *Tull v. United States*, 481 U.S. 412, 414 (1987), "[t]he question for decision [was] whether the Seventh Amendment guaranteed petitioner a right to a jury trial on both liability and amount of penalty in an action instituted by the Federal Government seeking civil penalties and injunctive relief under the Clean Water Act." The Supreme Court held that "the Seventh Amendment does not require a jury trial for [assessing the amount of a civil penalty] in a civil action." *Id.* at 426–27. Given that here the jury has incorporated its $20.5 million total "damage assessment into its decision

---

[5] This is also the approach taken in *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), where the court found that even if a class member's records "fail to indicate that she received [an unwanted] call … she may in addition to her records provide a sworn statement at an appropriate point during the litigation."

958894 8

regarding liability, the Seventh Amendment obstacles to administrative apportionment disappear, at least insofar as concerns the defendants." Issacharoff, 10 Rev. Litigation at 483-84.

DISH's invocation of *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), is of no help to it. *Carrera* involved a proposal to identify class members solely by affidavit. Here, as the jury found in accordance with the evidence and the Court's instructions, every phone number to which SSN made at least two telemarketing calls was on a list that absolutely prohibited those calls. There was a class member "connected" to each of the calls, and the jury found DISH liable at $400 per call. Because the calls were all made between May 1, 2010, and August 1, 2011, to persons whose telephone numbers were on the DNC list for at least 30 days prior, the calls were made to the class members. Dr. Krakauer's proposal seeks to have check recipients attest that they are the persons the records indicate as being connected to the illegal calls.

The Third Circuit clarified *Carrera* in *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), which emphasizes that "*[t]here will always be some level of inquiry required to verify that a person is a member of a class*. Such a process of identification does not require a mini-trial, nor does it amount to individualized fact-finding . . . *and indeed must be done in most successful class actions.*" *Id.* at 170–71 (emphasis added; citations omitted). The proposed check attestation process does not infringe on DISH's challenge rights.

As *Byrd* notes, no mini-trials are necessary. As Judge Rendell points out in her concurrence: "While a rigorous insistence on a proof-of-purchase requirement … keeps

958894                                                      9

Case 1:14-cv-00333-CCE-JEP   Document 337   Filed 05/19/17   Page 13 of 20

damages from the uninjured, it does an equally effective job of keeping damages from the truly injured as well, and 'it does so with brutal efficiency.'" *Byrd*, 784 F.3d at 177 (citation omitted). Judge Rendell may as well have been describing DISH's post-trial proposal, which is designed to minimize the number of class members who receive the jury's award.

> **B. DISH's claims of 3,664 name mismatches are, upon closer examination, reduced to seven people.**

DISH questions Ms. Verkhovskaya's work to provide notice to the class, primarily complaining that the Five9 data is allegedly unreliable.[6] (DISH Opp. at 15-17.) Ms. Verkhovskaya utilized multiple data sources to identify class members, including Five9, LexisNexis, and Microbilt. DISH contends that of the 18,066 unique telephone numbers in the class, "different names" were associated with 3,664 of these telephone numbers across the Five9, LexisNexis, and Microbilt data. (*Id*. at 17.)

The primary source of these conflicts is the Five9 data, which DISH contends is not reliable. (Decl. Anya Verkhovskaya ¶¶ 12-14, attached as Ex. 1.) When the Five9 data is set aside, and the names of the consumers associated with these 3,664 telephone numbers are identified using only the LexisNexis and MicroBilt data, there are only 180 instances (about 1% of the universe of unique telephone numbers) where "different names" are associated with the same telephone number. (*Id.* ¶ 13.) In addition, further review of the 180 MicroBilt/LexisNexis "mismatches" shows that 173 instances (96%)

---

[6] Five9 provided the telemarketing data SSN used to make the telemarketing on behalf of Dish.

958894                                                        10

Case 1:14-cv-00333-CCE-JEP   Document 337   Filed 05/19/17   Page 14 of 20

are *actually* exact matches or family, abbreviation, or typo matches to each other, leaving only 7 "true" mismatches. (*Id.* ¶ 15, and Ex. A to Decl.).

Accordingly, to accommodate DISH's concern as to the accuracy of the Five9 data, the class administrator could, at the post-trial distribution stage, use the winnowed list shown in Exhibit A to Ms. Verkhovskaya's declaration to eliminate all "name inconsistencies" but for those seven mismatches.[7] (*Id*. ¶¶ 12-16.)

> C. **The Class Administrator will utilize the best resources commercially available to update class members' addresses.**

DISH complains about the National Change of Address Database that the Class Administrator has proposed to use to update the addresses of class members who may have moved. DISH contends that this database only has a two-year look back and it would be "irresponsible" to put checks in the mail because consumers may have moved. As acknowledged in the attached declaration, the Class Administrator has access to additional resources and vendors that save moving data going back 35 years that can be accessed to update the addresses of class members. (*Id.* ¶ 22.)

> D. **DISH's res judicata concerns are misplaced.**

DISH's complaint that Dr. Krakauer's proposed procedure does not provide DISH with sufficient res judicata protection is illusory. Rule 23(c)(3) requires that a class

---

[7] Dish claims that Dr. Krakauer's proposed post-trial distribution plan is flawed because the data relied upon by Ms. Verkhovskaya to identify class members was outside the class period. The Court has previously considered and rejected this exact argument when DISH challenged the reliability of Ms. Verkhovskaya's work. (ECF 110, at 20). The jury also had the opportunity to accept DISH's argument via the verdict form, but did not. (ECF No. 292 (permitting jury to exclude class calls placed to "[t]elephone numbers that LexisNexis identifies as residential before May 11, 2010 or after August 1, 2011").

958894                                         11

Case 1:14-cv-00333-CCE-JEP   Document 337   Filed 05/19/17   Page 15 of 20

judgment order "specify or describe those . . . whom the court finds to be class members," which will be accomplished by the narrative class definition and backed up by a list of all class telephone numbers. In the extraordinarily unlikely event that any person attempts to bring an individual action for calls placed six years ago, DISH could assert both a statute of limitations defense and, more to the point, the class judgment order that describes the class and lists all class telephone numbers. To overcome the *res judicata* bar, the litigant would need to convince some future court that the bar is invalid because the class representative and class counsel failed to vigorously and tenaciously protect the interests of the class. *Gonzales v. Cassidy*, 474 F.2d 67, 75 (5th Cir. 1973). That is a question for another day, and another court; as DISH says in its brief, "No court can 'predetermine the *res judicata* effect of its own judgment." (DISH Opp. at 10.) So long as the Court has discharged its obligation to specify or describe the class in its judgment order, it has done all it need do under applicable law.

### E. The Court has discretion to reject reversion in favor of escheat, cy pres, or reallocation.

In addressing how the Court should handle any unclaimed judgment funds, DISH not only misapprehends the effect of the jury's verdict, it also misreads and badly contorts authority to back up its categorical assertion that "the Fourth Circuit does not allow escheat or fluid recovery in litigated judgments." (DISH Opp. at 20.)

For example, *Windham v. American Brands, Inc.*, 565 F.2d 59, 72 (4th Cir. 1977) says nothing about *cy pres* or litigated judgments at all. The opinion reviewed a district court's denial of a class certification motion, not a judgment, and it referenced fluid

recovery as a means of establishing class-wide damages (which is not at issue here), not as a means of distributing unclaimed class damages (which *is* at issue here). *Id.* The Ninth Circuit in *Six Mexican Workers* correctly pointed out the distinction, noting that while fluid recovery as a way to aggregate damages was controversial, *cy pres* as a means of distributing unclaimed class funds was perfectly acceptable, and in fact was and remains an acceptable means of distributing unclaimed class funds. *See Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306-1307 (9th Cir. 1990) (quoting 2 *Newberg on Class Actions* § 10.17 at 373-74).

Tellingly, DISH can cite *no* cases or treatise authority rejecting *cy pres* as a method of distributing remaining class funds *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1018 (2d Cir. 1973) was also a review of a class certification decision that does not address judgment distribution issues or speak to the district court's considerable discretionary powers in shaping equitable decrees to distribute class judgments.

Nor can DISH cite authority rejecting escheat. The best it can do is point to a case about a dispute between heirs to real property where the district court incorrectly concluded the property should revert to the Commonwealth. *U.S. v. 198.73 Acres of Land, more or less, in Loudoun Cty., Va.,* 800 F.2d 434, 435 (4th Cir. 1986). While escheat may be disfavored in the context of a dispute among heirs to real property, the decision has nothing to do with class actions or anything close, and does not rule out escheat.

Across the board, DISH overreaches to find "authority" to support its categorical pronouncements of law. It even cites the *notes of a conference call* among members of a

Rule 23 advisory committee discussing the application of *cy pres* in the settlement context. *See* http://www.uscourts.gov/sites/default/files/fr_import/CV2015-04.pdf, at 301, Notes of Conference Call, Feb. 12, 2015, Rule 23 Subcommittee, Advisory Committee on Civil Rules. DISH elevates these unattributed comments to nothing less than "the comments to Rule 23" (DISH Opp. at 22), disregarding not only that the quoted text was a memorialization of a conference call, but also that the amendments the committee was discussing have not been incorporated into Rule 23. Respectfully, when one must resort to arguments such as these to try to overcome the unassailable proposition that federal courts have broad powers to fashion orders distributing class judgments, the latter wins.

None of DISH's arguments rebut what Dr. Krakauer has said from the beginning: the Court has wide latitude to use any number of tools to administer the class judgment, and to do so fairly but without requiring an unduly burdensome and expensive administration process. But at this stage, the Court also has discretion to defer the decision, as there is no money to distribute and will be none unless or until the Court of Appeals affirms the judgment. Nonetheless, the prospect of reverting undistributed funds to DISH so conflicts with the purposes of the TCPA that the Court should rule out reversion. This will allow the Court of Appeals to review the decision, and will advance the proceedings more expeditiously toward distribution and closure.

## Conclusion

DISH continues to wage a war of procedural attrition, advancing insupportable arguments and proposing measures which would impair the jury's verdict rather than

implement it. Dr. Krakauer respectfully urges the Court to adopt his proposed post-trial plan.

        **Respectfully submitted,**

        /s/ John W. Barrett
        John W. Barrett
        Brian A. Glasser
        **Bailey & Glasser LLP**
        209 Capitol Street
        Charleston, WV 25301
        Telephone: (304) 345-6555
        jbarrett@baileyglasser.com
        bglasser@baileyglasser.com

        /s/ J. Matthew Norris
        J. Matthew Norris
        **Norris Law Firm, PLLC**
        1033 Bullard Court, Suite 207
        Raleigh, NC 27615
        (919) 981-4775
        (919) 926-1676 facsimile
        jmn@ncconsumerlaw.com

        Matthew P. McCue
        **The Law Office of Matthew P. McCue**
        1 South Ave., Third Floor
        Natick, MA 01760
        Telephone: (508) 655-1415
        mmcue@massattorneys.net

## CERTIFICATE OF SERVICE

       The foregoing was filed electronically on May 19, 2017. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

                                        /s/ John W. Barrett