# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS KRAKAUER,

       Plaintiff,

    v.

DISH NETWORK LLC,

       Defendant.

Case No. 1:14-CV-00333-CCE-JEP

**Oral Argument Requested**

**BRIEF IN SUPPORT OF DEFENDANT DISH NETWORK L.L.C.'S MOTION
FOR JUDGMENT AS A MATTER OF LAW AND REMITTITUR**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY ............................................................................................. 3

LEGAL STANDARDS ................................................................................................... 6

ARGUMENT................................................................................................................... 7

I.      CLAIM PRECLUSION BARS RECOVERY ON CLAIMS THAT WERE
        BROUGHT OR COULD HAVE BEEN BROUGHT IN THE ILLINOIS
        ACTION. ............................................................................................................. 7

        A.      Final Judgment in the Illinois Action Precludes Many Class Claims in
                This Case. ................................................................................................. 7

        B.      Preclusion of Dr. Krakauer's Individual Claims Means That He May
                No Longer Act as Class Representative, and This Court Should
                Dismiss the Case or Decertify the Class. ................................................ 14

II.     THE AGGREGATED, TREBLED AWARD IS UNCONSTITUTIONALLY
        EXCESSIVE AND DUPLICATIVE AND THEREFORE SHOULD BE
        REDUCED OR REMITTED. ............................................................................... 16

CONCLUSION ............................................................................................................. 23

CERTIFICATE OF SERVICE

WORD COUNT CERTIFICATION

# PRELIMINARY STATEMENT

On June 5, 2017, the United States District Court for the Central District of Illinois entered judgment for plaintiffs and against DISH on certain claims in *United States v. DISH Network LLC*, No. 09-3073 (C.D. Ill.) (the "Illinois Action"). *See* Ex. 1 (Findings of Fact and Conclusions of Law in *United States v. DISH Network LLC*). The plaintiffs included four States that brought TCPA claims on behalf of their residents. Many of the claims disposed of in the resulting judgment are the same as those at issue in this case—they are based on the phone calls to the same phone numbers, and they seek the same monetary recovery on behalf of the same people. Ex. 2 (Declaration of Dr. Debra J. Aron, dated July 13, 2017). One such person is Dr. Krakauer, who testified extensively in the Illinois Action. The district court cited his testimony as helping establish that the States had standing as representatives of individuals who allegedly suffered concrete injuries. Ex. 1 at 9. And ultimately, judgment was entered in the Illinois Action for the same alleged individual violations that Dr. Krakauer seeks judgment on here. *See* Ex. 2 at 7-8.

A straightforward application of the doctrine of claim preclusion bars Dr. Krakauer's claim. The judgment in the Illinois Action is (1) a final judgment, (2) resolving individual TCPA claims arising from the same conduct alleged in this case, and (3) involving plaintiffs who are in privity with Dr. Krakauer and certain other class members in this case. This Court should enter judgment as a matter of law dismissing Dr. Krakauer's claims as precluded. Because the class claims are inextricably tied to Dr.

1

Krakauer's individual claims, the Court should dismiss the entire action or decertify the class. At a minimum, the Court should dismiss all class claims in this case that overlap with the claims that the States brought or could have brought in the Illinois Action. That is because the same claim preclusion analysis applicable to Dr. Krakauer's claim applies equally to each of those overlapping claims, as well. In total, 12,315 of the 51,119 calls at issue in this case were made to phone numbers at issue in the parallel TCPA claim in the Illinois Action. Ex. 2 at 7. All such calls could have been alleged in the Illinois Action and are therefore precluded here. And of those calls, 10,208 were *actually* alleged by the States to be violations under their parallel TCPA claim. *Infra* § I.

DISH also renews its argument, in light of both this Court's decision to treble the award and the Illinois Judgment, that the award in this case is excessive under the Due Process Clause. The now-trebled award against DISH could exceed $60 million for telemarketing calls placed exclusively by a third party. This total award has punitive purpose and effect. It is far out of step with the record in this case, and far beyond anything Congress could ever have imagined when it enacted the TCPA.

The award is even more problematic in light of the Illinois Action. The district court in that case awarded the plaintiffs $280 million. The district court concluded that the award "represents a significant penalty for . . . years and years of careless and reckless conduct." Ex. 1 at 449-50. This Court's treble award threatens to punish DISH for *the same course of conduct* that the district court considered in the Illinois Action when calibrating the award in that case. Indeed, every fact witness that testified live in

2

this case—including Dr. Krakauer, Reji Musso, Amir Ahmed, and Jim DeFranco—testified there as well, and like here, their testimony formed the basis for the district court's decision. Fundamental precepts of due process require a reduction in the award. At the very least, this Court should remit the award. *Infra* § II.

Accordingly, DISH respectfully moves this Court (1) for an order entering judgment as a matter of law dismissing the claims of Dr. Krakauer and other class members that have been disposed of by final judgment in the Illinois Action; (2) for an order dismissing the case or decertifying the class; and (3) for an order finding the total, trebled award excessive as a matter of law under the Due Process Clause of the Constitution, or remitting the award.

## PROCEDURAL HISTORY

In March 2009—more than five years before this action began—the United States and four State plaintiffs sued DISH in the Central District of Illinois for alleged violations of telemarketing laws, including violations of the TCPA. *See* Ex. 3 (Complaint, *United States v. DISH Network LLC*).[1] The State plaintiffs brought their TCPA claims as representative actions filed on behalf of individual citizens pursuant to 47 U.S.C. §

---

[1] Relevant orders and filings from the Illinois Action included as exhibits to this motion are judicially noticeable pursuant to Federal Rule of Evidence 201(b)(2) as facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "When entertaining a motion to dismiss on the ground of res judicata or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding." *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010) (internal quotation marks omitted).

227(g)(1), which authorizes a state to bring a "civil action *on behalf of its residents*" to recover a money award for "telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section." 47 U.S.C. § 227(g)(1) (emphasis added); *see also* Ex. 3 at 2-4. For a state to bring such claims—unlike an individual—it must sufficiently establish that a defendant has engaged in "a pattern or practice" of violating the TCPA.[2] 47 U.S.C. § 227(g)(1).

Relevant to this motion, Count V of the plaintiffs' operative complaint in the Illinois Action alleged that "DISH Network, either directly or indirectly as a result of a third party acting on its behalf, has violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c)" by calling numbers on the National Do Not Call Registry. Ex. 4 at 16 (Third Amended Complaint and Demand for Jury Trial, *United States v. DISH Network LLC*). Included within that Count were calls that SSN made to Dr. Krakauer's phone number and to many of the other phone numbers at issue in this case. Ex. 2 at 7-8. The claims in both cases were based on much of the same evidence. For example, Dr. Krakauer was one of only six consumers who testified live in the Illinois Action, and his testimony there overlapped significantly with his testimony in this case. *Compare* Ex. 5 at Tr. 848-94 (Transcript of Proceedings, Jan. 26, 2016, *United States v. DISH Network LLC*), *with* Doc. 302 at 6-30. Further, the plaintiffs in the Illinois Action focused on SSN's early

---

[2] By contrast, for an individual to bring a claim directly, he or she must have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of the TCPA. 47 U.S.C. § 227(c)(5).

conduct, including the 2004-2005 emails emphasized by Dr. Krakauer in this case. *Compare* Ex. 6 at 9 (State Plaintiffs' Closing Statement, *United States v. DISH Network LLC*) (where the State plaintiffs highlight an internal DISH email based on a consumer complaint regarding an alleged call by SSN that was eventually discovered to be from a different retailer), *and* Ex. 1 at 118 (where the district court in the Illinois Action quotes the email in full in its findings of fact accompanying the judgment), *with* Doc. 306 at 23 (where Dr. Krakauer discusses the email at length in his closing in this case). Additionally, the deposition testimony of SSN's President, Sophie (Bahar) Tehranchi, was designated in both cases. *Compare* Ex. 7 (Deposition Designations, *United States v. DISH Network LLC*), *with* Doc. 327.

Further, the States sought the same monetary recovery at issue in this case—"$500 in damages for each violation"—as well as the potential to treble the award, 47 U.S.C. § 227(g)(1); *see also* 47 U.S.C. § 227(c)(5) (providing up to $500 for actions brought by individuals). Ex. 4 at 2-4. And the States sought to distribute the award directly to the individuals they sued on behalf of. *See* Ex. 8 at 168 (Plaintiffs' Motion for Summary Judgment, *United States v. DISH Network LLC*). The district court found that many of the calls violated the TCPA and awarded judgment. That judgment disposed of all TCPA claims that were at issue in that action. Ex. 1 at 4, 475.

Many of the claims covered by that judgment are also at issue here. As detailed below and in the attached Declaration of Dr. Debra J. Aron, this case involves 12,315 calls arising from the same course of conduct at issue in the Illinois Action, and 10,208

calls that were actually alleged to be violations in that action. Ex. 2 at 7.[3]

## LEGAL STANDARDS

The defense of claim preclusion presents a question of law that a party must raise as soon as practicable after it becomes available. *See, e.g.*, *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013) (explaining that a party must timely raise a preclusion defense even when it "is not available at the outset of a case"); *United States v. Brekke*, 97 F.3d 1043, 1046-47 (8th Cir. 1996) (noting that preclusion presents a question of law). The district court in the Illinois Action issued final judgment on June 5, after the jury's verdict and post-trial briefing in this case but before this Court entered judgment. DISH therefore timely brings this motion for judgment as a matter of law raising the issue of preclusion as to some of the claims at issue in this case. *See* Fed. R. Civ. P. 50(b).

DISH brings its renewed challenge to this Court's decision to treble the award under Rules 50 and 59. Under Rule 50, the Court has the power to enter judgment as a matter of law to reduce a damages award that exceeds constitutional limits. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). Rule 59, meanwhile, empowers the court to grant a motion for remittitur. *Atlas Food Sys. & Servs., Inc. v.*

---

[3] Dr. Aron was asked to conduct an analysis to identify overlapping calls and phone numbers between this case and the States' parallel TCPA claim in the Illinois Action. Dr. Aron produced a list of calls that the States alleged to be TCPA violations in the Illinois Action. Ex. 2 at 3-5. Using that list, she determined the number of calls in this case that overlapped with those that the States alleged, and the number of calls in this case made to unique phone numbers that were also at issue in the States' claims. *Id.* at 7.

6

*Crane Nat. Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996).

**ARGUMENT**

**I.**   **CLAIM PRECLUSION BARS RECOVERY ON CLAIMS THAT WERE BROUGHT OR COULD HAVE BEEN BROUGHT IN THE ILLINOIS ACTION.**

>   **A.**   **Final Judgment in the Illinois Action Precludes Many Class Claims in This Case.**

The doctrine of claim preclusion, or res judicata, establishes that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (alteration in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The doctrine applies whenever there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* Therefore, "[w]hen all of the requirements for claim preclusion are satisfied, the judgment in the first case acts as *an absolute bar* to the subsequent action with regard to every claim which was actually made . . . and those which might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (emphasis added).

Each claim preclusion requirement is satisfied in this case. And equitable considerations further support a preclusion finding.

*1. Final Judgment.* The judgment in the Illinois Action is a final judgment on the merits in favor of the plaintiffs, through which the district court closed the case except to retain jurisdiction over enforcement of a permanent injunction. Ex. 1 at 4, 475. Such a

7

judgment constitutes a final judgment for claim preclusion purposes, even though appeal of that judgment has yet to run its course. *See Georgia Pac. Consumer Prod.*, 710 F.3d at 534 n.8 (explaining that a final judgment has claim preclusive effect even if it remains appealable).

**2. Identity of Action.** The Fourth Circuit follows the "transactional approach" when considering whether claims in different cases share an identity of action: "[T]he appropriate inquiry is whether the new claim arises out of [the] same transaction or series of transactions as the claim resolved by the prior judgment." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (internal quotation marks omitted); *see also Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (applying the transactional approach to claim preclusion); *Salami v. Monroe*, No. 1:07CV621, 2008 WL 2981553, at *2 (M.D.N.C. Aug. 1, 2008) (same).

Here, each of the claims that DISH seeks to preclude alleges violation of the same statutory section—47 U.S.C. § 227(c)—based on phone calls that were alleged or could have been alleged as the basis for a TCPA claim in the Illinois Action. That includes, at a minimum, any call in this case that the States actually alleged to be a TCPA violation in the Illinois Action, a total of 10,208 calls. Ex. 2 at 7. Identical calls, of course, arise from the "same transaction." The precluded claims also include any call in this case that the States *could have* alleged as violations in the Illinois Action. *See Varat Enters.*, 81 F.3d at 1317 (explaining that claim preclusion bars "every claim which was actually made . . . *and those which might have been presented*" (emphasis added)). That includes

every call in this case made to a phone number also at issue in the Illinois Action, even if the States did not in the Illinois Action try to establish violations for each of the calls made to that number and at issue here. These calls arise out of the same "series of transactions," because they were made by the same entity—SSN—to the same phone number at issue in both cases. When those incremental 2,107 calls are added to the calls actually alleged to be violations, the calls total 12,315. Ex. 2 at 7.

It makes no difference that the claims in this action contain an extra element—the subscriber/recipient element—that the States were not required to establish in the Illinois Action. *Compare* 47 U.S.C. § 227(g)(1) (requiring a state to establish that a defendant has engaged in "a pattern or practice" of violating the TCPA to have standing to bring claims on behalf of individuals), *with id.* § 227(c)(5) (requiring that an individual show that he or she has received two calls in a twelve-month period to establish standing). As the operative complaint in the Illinois Action makes clear, the States specifically alleged individual violations of § 227(c), and this action seeks to hold DISH liable for the same calls under the same provision. Ex. 4 at 16. That means for claim preclusion purposes they are the same legal claim—the same, single right to redress—even if the State plaintiffs were not required to satisfy the subscriber/recipient element.

*3. Privity Between Parties.* When the first two elements are met, claim preclusion applies to all those in privity with a plaintiff in the first action. "The concept of privity requires an alignment of interests and not an exact identity of parties." *Weinberger v. Tucker*, 510 F.3d 486, 492 (4th Cir. 2007). And black letter principles of

res judicata provide that privity exists where a party "acts on behalf of another." Restatement (Second) of Judgments § 85.

The privity analysis in this case is straightforward:  Under the statutory language of 47 U.S.C. § 227(g)(1), the State plaintiffs in the Illinois Action brought their relevant TCPA claim "on behalf of" individuals who received the calls, and the States sought to recover the same amount of money per violation that Dr. Krakauer seeks to recover for class members in this case.  *See* Ex. 4 at 2-4, 16, 25.

The district court in the Illinois Action further confirmed that the States were bringing their TCPA claims in a "parens patriae" representative capacity on behalf of individuals.  Ex. 1 at 7.  "In such an action, the State's claim is derivative of the state resident's claim."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 237-38 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016).  The district court found that the States had established statutory standing by demonstrating that a "pattern or practice" of TCPA violations existed.  47 U.S.C. § 227(g)(1).  The court went on to find that the basis of the State plaintiffs' lawsuit demonstrated "some concrete injury to its residents by Dish that can be redressed by the claims in Counts V and VI."  Ex. 1 at 7-9.  As found by the district court, the States are representatives of a class of individuals in much the same way as in a traditional class action.

Each of the three circuits to have considered whether a parens patriae action creates privity with individual residents for later preclusion purposes have squarely found

10

that privity generally exists. The Ninth Circuit has found that when a government entity

sues for the same relief that "plaintiff [has] already pursued, then the requisite closeness

of interests for privity is present" for claim preclusion purposes. *California v.

IntelliGender, LLC*, 771 F.3d 1169, 1179 (9th Cir. 2014) (internal quotation marks

omitted). The court held that an earlier class action that reached settlement precluded a

later state action to the extent that the state action sought a remedy that the class action

had already pursued. *Id.* at 1179. The Ninth Circuit has similarly held that a parens

patriae action brought by the government may bar later private claims, where both actions

seek the same remedies. *See Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769,

774 (9th Cir. 1994) ("Because plaintiffs were in privity with these governments, as

members of the public, and because plaintiffs seek to recover for the very same damages

the governments have recovered for, plaintiffs' claims are barred by res judicata.").

The Tenth Circuit reached the same conclusion in *Sierra Club v. Two Elk

Generation Partners*. There, the court examined whether an action brought under the

citizen-suit provision of the Clean Air Act ("CAA") was precluded by an earlier

Wyoming Department of Environmental Quality action brought before the Wyoming

Environmental Quality Council. 646 F.3d 1258, 1268-69 (10th Cir. 2011). Examining

privity, the court concluded that "[w]hen a state litigates common public rights [under the

doctrine of parens patriae], the citizens of that state are represented in such litigation by

the state and are bound by the judgment." *Id.* at 1268 (alteration in original; internal

quotation marks omitted).

Finally, the Seventh Circuit has agreed "that a person not a party to a previous action can be said to be in privity with an 'official or agency invested by law with authority to represent the person's interests.'" *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 758-59 (7th Cir. 2004) (quoting Restatement (Second) of Judgments § 41(1)(d)). Although the Seventh Circuit ultimately concluded that privity did not exist in that particular case because the state had not been diligent in its prosecution, it nevertheless made clear that a state agency acting on a private individual's behalf will give rise to privity, and that a "final judgment in the agency's court action will be a res judicata or collateral estoppel bar to the earlier citizen suit." *Id.* (internal quotation marks omitted).

Here, the case for a finding of privity is particularly strong. Section 227(g)(1) authorizes states to bring actions "on behalf of" individuals—the very language of privity. The States' relevant TCPA cause of action also expressly alleged that it was "on behalf of" individual residents. Ex. 4 at 2-4, 16, 25. The States sought to recover the same amount of money for each violation as an individual could have recovered if he or she brought a private action. *See* 47 U.S.C. § 227(g)(1), (c)(5). And there is no question as to the States' diligence on their residents' behalf—the States prosecuted their case for the better part of a decade and obtained an $84 million judgment in their favor under the TCPA.

**4. Additional Considerations.** Supreme Court precedent is clear that claim preclusion operates strictly as an absolute bar when the above elements are satisfied.

Indeed, the Supreme Court has rejected attempts to articulate exceptions to that bar based on the policy considerations of an individual case or notions of "simple justice." *Moitie*, 452 U.S. at 398-401. Yet even if this Court were to look to equitable considerations of fairness and sound policy, such considerations would support the application of claim preclusion here.

Allowing the overlapping class claims to move forward would permit duplicative recovery. That risk is, of course, acute in this very case. DISH has suffered a judgment for telemarketing calls under the TCPA. Now it potentially faces another TCPA judgment on those exact same calls. Only scarcely less acute is the risk of endless litigation. Without claim preclusion, private plaintiffs could lay in wait until a parens patriae action has been litigated on their behalf, only to bring a private class action based on the exact same claims and seeking the same monetary recovery once again. *Cf. Hawaii v. Standard Oil of Cal.*, 405 U.S. 251, 264 (1972) (holding that a state could not bring a parens patriae action to seek damages where there was no way to "cope with the problems of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State").

Nor are there equitable considerations that favor ignoring settled claim preclusion doctrine. The State plaintiffs in the Illinois Action have every ability to distribute the money they have recovered directly to the affected individuals on whose behalf they brought suit. Indeed, the States have indicated that they intend to do so. In the plaintiffs' Motion for Summary Judgment, the States asked the court to make DISH identify and

fund a claims administrator to "identify and distribute damage awards to consumers in the Plaintiff States who received calls that violated the TCPA." Ex. 8 at 168.

The bottom line, as the Seventh, Ninth, and Tenth Circuit cases above make clear, is that a parens patriae action resulting in a recovery for the government is no less preclusive of a later private action than any other case, so long as the elements of claim preclusion are satisfied. "The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Moitie*, 452 U.S. at 401 (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946)); *see also Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1181-82 (4th Cir. 1989) (relying on *Moitie* in applying claim preclusion); *Varat Enters.*, 81 F.3d at 1317.

This Court should enter judgment against the overlapping claims. Those claims consist of all calls that SSN made to phone numbers that the States in the Illinois Action included in their overlapping allegations covering the same time period, a total of 12,315 calls. Ex. 2 at 7. At a minimum, claim preclusion must apply to all 10,208 calls actually at issue in both actions. *Id.*

**B. Preclusion of Dr. Krakauer's Individual Claims Means That He May No Longer Act as Class Representative, and This Court Should Dismiss the Case or Decertify the Class.**

Because Dr. Krakauer's TCPA claims were resolved in the Illinois Action, Ex. 1 at 4, 473-75; Ex. 2 at 7-8, they are precluded here. That leaves this class action without any

adequate class representative, and indeed without the claims that form the foundation for the jury's verdict. Dr. Krakauer's dismissal from this case therefore requires dismissal of the case as a whole or, at minimum, decertification of the class.

First, the preclusion of Dr. Krakauer's claims leaves a gaping void in this class action, undercutting the jury verdict. From the start, class counsel proceeded with Dr. Krakauer as the lone class representative and sought to prove its entire case through him. At trial, moreover, the class claims were inextricably bound to Dr. Krakauer's individual claims, and much of the evidence at trial concerned the individual claims. Indeed, the jury instructions stated that if Dr. Krakauer's individual claims failed, then the class claims failed with them. Doc. 293 at 12. That remains true. And now that Dr. Krakauer's claims have fallen, the class claims must fall along with them. As a result, the Court should enter judgment against all claims and dismiss this action.

Second, Federal Rule of Civil Procedure 23 is built on the premise that a named class representative will present live claims establishing that he "possess[es] the same interest" as class members he seeks to represent. *Hill v. W. Elec. Co.*, 672 F.2d 381, 385 (4th Cir. 1982). Certification of a class depends on it. As such, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Dr. Krakauer can no longer fulfill that role insofar as he no longer has a live interest in the outcome of the case. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (explaining that a plaintiff must have standing throughout all stages of litigation). And because the class lacks a representative, it must be

decertified.

## II. THE AGGREGATED, TREBLED AWARD IS UNCONSTITUTIONALLY EXCESSIVE AND DUPLICATIVE AND THEREFORE SHOULD BE REDUCED OR REMITTED.

DISH also respectfully renews its argument that the total award in this case is constitutionally infirm. DISH previously argued that the jury's statutory award of $400 per call, when aggregated, offends due process. *See* Doc. 321 at 19-20. A trebled award would constitute an extraordinary and unjustified penalty for third-party conduct, presenting even graver due process problems. It would also impermissibly duplicate the Illinois Judgment, piling a potentially massive penalty on top of the $280 million district court in that action imposed on the same generalized basis and for the same overarching reasons. DISH respectfully submits that this Court's award must be reduced as a matter of law, or, in the alternative, remitted.

*Excessiveness.* As DISH explained in its new trial motion, an excessive award violates substantive due process rights. *See* Doc. 321 at 19-20. The Supreme Court has long recognized "that the Due Process Clause of the Fourteenth Amendment imposes substantive limits beyond which penalties may not go." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 453-54 (1993) (internal quotation marks omitted); *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919) (a civil penalty may not be "wholly disproportioned to the offence"). Over the last two decades, the Court has twice struck down monetary awards as unconstitutionally excessive. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S.

408, 418 (2003).  In those cases, the Supreme Court uses "three guideposts" to evaluate whether the award that is imposed for punitive purposes is permissible under the Due Process Clause: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Campbell*, 538 U.S. at 418.

Courts have recognized that similar due process concerns arise when large class actions threaten the mass aggregation of statutory damages.  *E.g.*, *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003); *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 277-78 (4th Cir. 2010) (unpublished) (Wilkinson, J., concurring); *see Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 778 n.6 (N.D. Ill. 2008); *Leiber v. Bertelsmann A G (In re Napster, Inc. Copyright Litig.)*, Nos. C MDL–00–1369 MHP & C 04–1671 MHP, 2005 WL 1287611, at *10 (N.D. Cal. June 1, 2005); *DirecTV v. Gonzalez*, No. Civ.A.SA–03–1170 SR, 2004 WL 1875046, at *4 (W.D. Tex. Aug. 23, 2004).  DISH raised these concerns in its new trial motion, Doc. 321 at 19, and they are all the more salient now that statutory damages have been trebled, because trebling a monetary award is "a 'punitive' or 'vindictive' sanction for egregious … behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

In light of intervening events, DISH respectfully renews its objection to the award in this case and submits that, when examined by reference to the Supreme Court's three

due process guideposts, the aggregated and trebled award in this case is unconstitutionally excessive.

As to the first factor—which gauges the reprehensibility of DISH's conduct—the bulk of Dr. Krakauer's evidence (and this Court's findings) pertained only to generalized telemarketing compliance issues prior to the class period and often involving different types of conduct (for example, automated calls). Doc. 338 at 5-13. But that conduct is not at issue here, and Dr. Krakauer cannot use an action concerning calls made by one retailer over the course of a year as a "platform" for punishing DISH for perceived shortcomings in telemarketing compliance generally. *Campbell*, 538 U.S. at 420; *see id.* at 424.

Regarding the second factor—the disparity between harm suffered and the total award—there is no evidence at all of actual injury other than by Dr. Krakauer himself. At most, Plaintiff has established that the class members were at risk of receiving an unwanted call. Thus, the disparity between any demonstrated harm and the potential total award is vast.

This Court acknowledged the disproportionality of trebling the award, but suggested that a disproportional award is necessary to "deter[] the violative conduct and encourage[] victims to bring suit." Doc. 338 at 30 (citing *Hannabury v. Hilton Grand Vacations Co.*, 174 F Supp. 3d 768, 776 (W.D.N.Y. 2016)). But, as explained above, all the evidence purporting to demonstrate the need for deterrence is nearly a decade old. And in any event, as discussed further below, the district court in the Illinois Action has

already penalized DISH, as part of its $280 million award, for the same generalized compliance issues. Nor is trebling necessary as a bounty to encourage suit, since no such incentive is necessary in a class action. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 515 n.28 (2008). So what is left is an award completely untethered from actual injury and any other conceivable justification; the only result of the trebling would be to punish DISH.

Finally, regarding the third factor—a comparison of the award to authorized penalties in analogous contexts—it is of course true as a facial matter that the award here accords with the TCPA. But Congress did not contemplate the mass aggregation and trebling of a modest individual recovery into a crushing class award. The legislative history suggests that Congress contemplated that many TCPA actions would take place in "[s]mall claims court or a similar court," and that the aim was to set damages that are "fair to both the consumer and the telemarketer." 137 Cong. Rec. 30821-22 (1991) (statement of Sen. Hollings); *cf. Stillmock*, 385 F. App'x at 276 (Wilkinson, J., concurring) ("[N]othing in [FACTA] would lead us to believe that Congress intended the modest range of statutory damages to be transformed into corporate death by a thousand cuts through Rule 23."); *Parker*, 331 F.3d at 27 (Newman, J., concurring) ("I do not believe that in specifying a $1,000 minimum payment for Cable Act violations, Congress intended to expose a cable television provider to liability for billions of dollars."). This award, moreover, has the potential to be among the largest in the history of the TCPA, and the largest ever imposed on a principal solely for the actions of a third party.

**Duplication.** "A defendant in a civil action has a right to be protected against double recoveries . . . because overlapping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process." *Otos Tech Co. v. OGK Am., Inc.*, No. Civ. 03-1979, 2009 WL 2356882, at *2 (D.N.J. July 29, 2009) (citation omitted), *aff'd*, 393 F. App'x 5 (3d Cir. 2010). In addition, this Court expressly founded its decision to treble the monetary award in part on a finding that a trebled award was necessary "to deter Dish from future violations." Doc. 388 at 28. That finding is undercut by the $280 million Illinois Judgment, which was imposed as a deterrent for the same conduct. Accordingly, a treble award in this case would impermissibly duplicate a basis for the Illinois Judgment.

As explained above, the plaintiffs in the Illinois Action—and ultimately the district court there—relied extensively on evidence regarding SSN's conduct, much of it the very same evidence relied upon here. Dr. Krakauer was one of the Illinois plaintiffs' star witnesses, testifying live regarding calls SSN placed to him—just as he did here. *Compare* Ex. 5 at Tr. 881, *with* Doc. 302 at 24-26. Mr. Ahmed and Ms. Musso also testified in both trials. Mr. Ahmed testified about SSN's business and retailer contract. *Compare* Ex. 9 at Tr. 2290-91, 2349-51 (Transcript of Proceedings, Feb. 4, 2016, *United States v. DISH Network LLC*), *with* Doc. 302 at 137-41. And Ms. Musso testified about SSN and Dr. Krakauer's complaint. *Compare* Ex. 10 at Tr. 1281-82, 1286-87 (Transcript of Proceedings, Jan. 28, 2016, *United States v. DISH Network LLC*), *with* Doc. 303 at 27-32. She specifically described the Compliance Group's process for investigating and

following up on consumer complaints, and meting out discipline to retailers. *Compare* Ex. 10 at Tr. 1220-22, 1259-60, *with* Doc. 303 at 56-59. All told, every single fact witness that testified in this case also testified in the Illinois Action.

The overlap does not end there. The plaintiffs in the Illinois Action also emphasized SSN's early conduct, down to the very same 2004-2005 emails emphasized by Dr. Krakauer here. *Compare* Ex. 6 at 9 (where the State plaintiffs highlight an internal DISH email based on a consumer complaint regarding an alleged call by SSN that was eventually discovered to be from a different retailer), *and* Ex. 1 at 118 (where the district court in the Illinois Action quotes the email in full in its findings of fact accompanying the judgment in that case), *with* Doc. 306 at 23 (where Dr. Krakauer discusses the email at length in his closing in this case). And the deposition testimony of SSN's President, Sophie Tehranchi, was designated in the Illinois Action, the same testimony that this Court relied on in electing to treble the monetary award. *Compare* Ex. 7, *with* Doc. 327.

Indeed, virtually everything this Court relied upon in its decision to treble the award was also expressly relied upon by the district court in the Illinois Action in fixing the amount of the monetary award in that case. The court in the Illinois Action relied heavily on Mr. Ahmed's and Ms. Musso's testimony concerning DISH's retailer compliance—including investigation of complaints, follow-up with retailers, and discipline of retailers—just as this Court did here. *Compare* Ex. 1 at 63-75, 95-100, *with* Doc. 338 at 17-19. Similarly, both this Court and the district court in the Illinois Action

emphasized the 2004-2005 Florida and North Carolina judgments against SSN as purportedly informing DISH's blameworthiness. *Compare* Ex. 1 at 117, *with* Doc. 338 at 11. This Court characterized DISH's divisions that handled complaints as a "compliance department in name only" based on what the Court perceived as DISH's inadequate investigation of consumer complaints, review of SSN's call records, and supervision of SSN's scrubbing of call lists. Doc. 338 at 17-18. In its opinion, the court in the Illinois Action cited the same evidence in adopting the view that DISH "did not investigate complaints," "uncritically accepted Order Entry Retailers' explanations," and "did not audit Order Entry Retailers with respect to Do-Not-Call compliance." Ex. 1 at 90-91, 97-98.

Ultimately, the Illinois Judgment imposed a $280 million monetary award for a broad universe of telemarketing conduct, a universe that encompasses any conceivable aspects of SSN's telemarketing activities that could have been at issue in this case. Nothing in the district court's decision in that action suggests that the punitive component of the award it imposed was anything less than necessary to punish DISH for SSN-related conduct or deter future SSN-related conduct. And certainly nothing in this record suggests that an additional trebled award totaling potentially $60 million for the exact same SSN-related conduct is necessary to punish or deter DISH in the future. Under these circumstances, trebling the award is pure punishment for conduct for which DISH has already been punished. That is unconstitutional. DISH therefore submits that this Court should also reconsider its order trebling the monetary award.

**CONCLUSION**

For the foregoing reasons, DISH respectfully requests that the Court (1) enter judgment as a matter of law dismissing the claims of the class members that have been disposed of by final judgment in the Illinois Action; (2) enter an order dismissing the case or decertifying the class; and (3) enter an order finding the total, trebled award excessive as a matter of law under the Due Process Clause of the Constitution, or remitting the award.

Dated:  July 19, 2017

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: /s/ Peter A. Bicks
Peter A. Bicks
Elyse D. Echtman
John L. Ewald

51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com


/s/ Richard J. Keshian
Richard J. Keshian
North Carolina Bar No. 10681
KILPATRICK TOWNSEND & STOCKTON
LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7322
rkeshian@kilpatricktownsend.com

*Attorneys for Defendant DISH Network L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2017, I electronically filed the above document

with the Clerk of Court using the CM/ECF system, which will send notifications of such

filing to all counsel of record.


   /s/ Peter A. Bicks
_____
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com

*Attorney for Defendant DISH Network L.L.C.*

## <u>WORD COUNT CERTIFICATION</u>

Peter A. Bicks, an attorney of record in the above captioned matter, hereby

certifies that the foregoing brief contains 6359 words, in compliance with the Court's

word limitations as set forth in Local Rule 7.3(d), as calculated by the word count

function of the word processing system used to prepare the foregoing brief.


 /s/ Peter A. Bicks
--------------------------------------------
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com

*Attorney for Defendant DISH Network
L.L.C.*