IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant, Dish Network, LLC, willfully violated the Telephone Consumer
Protection Act when its agent made 51,119 telephone solicitations to 18,066 residential
phone numbers on the National Do Not Call Registry. Each class member is entitled to
damages of $1,200 for each violative solicitation call. Having considered proposals from
the parties, the Court by this order outlines a process for entry of judgment in favor of
those class members who are clearly identified and a general claims administration
process for all other class members. The Court directs the parties to confer and submit
motions, forms, and proposed additional procedures that follow the Court's outline and
schedule.

### I.      Background

This lawsuit was filed in 2014. The plaintiff, Dr. Thomas Krakauer, asserted that
Dish's agent, Satellite Systems Network, made repeated telephone solicitations to phone
numbers, including his own, that were listed on the National Do Not Call Registry. Doc.

1.  After discovery, the Court granted the plaintiffs' motion for class certification, and, as is relevant here, certified the following class:

> All persons throughout the United States whose telephone numbers were listed on the federal Do Not Call registry for at least 30 days, but who received telemarketing calls from Satellite Systems Network, to promote the sale of Dish satellite television subscriptions from May 1, 2010 to August 1, 2011.

Doc. 47 at 1; *see* Doc. 111 at 4.[1]

At the time of class certification, all the telephone numbers had been identified using business records maintained by Five9, the software company that provided the agent's dialing software.  *See* Doc. 137 at 19-136; Doc. 137-1; Doc. 137-2 at 1-34.  The Five9 records included names and addresses associated with many of the phone numbers, but not all.  When those records were incomplete, the plaintiffs' expert located names and addresses associated with the phone numbers using a LexisNexis commercial database.  *See* Doc. 103 at 129:24-131:6.  After incorporating this data, about 4,000 numbers still had incomplete name and address information.  *See* Doc. 133-1 at ¶ 8.

The plaintiffs notified class members of the lawsuit by sending postcards to these names and addresses in February 2016.  Doc. 206-1 at ¶ 4; *see* Doc. 153 at 2.  The plaintiffs successfully delivered postcards to names and addresses associated with about 75 percent of the phone numbers in the class.  Doc. 206-1 at ¶¶ 11-12.

---

[1] The Court also certified a second class of people whose numbers were on Dish or its agent's internal do-not-call lists.  *See* Doc. 111 at 4 (citing Doc. 47 at 1-2).  The parties later stipulated to dismiss this class from the lawsuit.  Doc. 271.

In the lead-up to trial, the parties stipulated to remove several categories of phone numbers from the class. *See* Docs. 264, 266, 271. This left 18,066 class phone numbers; the plaintiffs had delivered postcards to 13,268 persons associated with these phone numbers, leaving 4,798 not delivered. Doc. 331-1 at ¶¶ 6-7.

At trial, the plaintiffs presented class-wide evidence that (1) Dr. Krakauer and the 18,066 class members each received at least two telephone solicitations in any 12-month period, (2) the numbers called were residential numbers, (3) the calls were made on behalf of Dish, and (4) the calls were made when the telephone numbers were on the Registry for over thirty days. *See* Doc. 293 at 4. The jury answered all issues in favor of the plaintiffs, finding that Dish's agent "[made] and class members receive[d] at least two telephone solicitations to a residential number in any 12-month period by or on behalf of Dish, when their telephone numbers were listed on the National Do Not Call Registry." Doc. 292 at ¶ 2. The jury also determined that statutory damages of $400 were appropriate for each violative call. *Id.* at ¶ 3. The Court thereafter trebled the damages because Dish's violations were willful and knowing, increasing the award to $1,200 per call. Doc. 338; 47 U.S.C. § 227(c)(5).

After the trial and at the Court's request, each party proposed procedures for moving the case to final judgment and responded to each other's proposals. *See* Docs. 329 to 331, 334 to 337. The Court heard oral argument on June 7, 2017.

## II. Overview of issues

The plaintiffs contend that liability and aggregate damages were established at trial, that no more proof is necessary, and that judgment can be entered now against Dish

in favor of the class. Plaintiffs seek to mail checks to the class members for whom they successfully delivered a class notice postcard and to have a claims administrator identify the remaining class members in a non-adversarial, practical process. Dish, on the other hand, asserts that more proof is required before any individual class members have established liability. Dish suggests mailing claim forms to the class notice addresses and then allowing the parties to litigate each recipient's membership in the class in an adversarial process with discovery, depositions, and jury trials.

These disputes break down into three basic issues. The first is whether the verdict established all issues of liability and whether the Court should enter judgment in an aggregate amount, at $1,200 for each of the 51,119 violations. The second issue, which depends on the answer to the first issue, is what claims process is appropriate. The third issue is whether any unclaimed damages revert to Dish.

## III. Liability and judgment

The plaintiffs contend that the jury's verdict satisfied all elements of the TCPA claims and ask the Court to enter judgment against Dish and in favor of the class in the amount of $61,342,800, based on a total liability of $1,200 per call multiplied by 51,119 calls. *See* Doc. 331 at 9-11.[2] Dish contends that it is entitled to individual discovery and jury trials on the issue of the identity of the subscriber or recipient of each violative

---

[2] The plaintiffs initially requested judgment in the amount of $20,447,600 based on the $400 damages amount per call set by the jury. Doc. 331 at 6. At that time, the Court had not yet trebled the damages. *See* Doc. 338. Over the course of the briefing and at oral argument, it is clear that plaintiffs now want judgment entered based on the $1,200 damages amount, in view of the Court's finding on willfulness.

phone call. Doc. 330 at 14-15. Dish phrases this argument in several different ways, but it essentially claims that identity is an element of the cause of action and of statutory standing. The plaintiffs, on the other hand, contend that the jury by its verdict determined that each class member received the calls, that the plaintiffs' expert identified most of the class members as part of the class certification process, and that only a small number of phone numbers remain unlinked to a particular individual.

### A. Statutory standing

To the extent Dish contends that statutory standing is an element that individual class members must prove to show liability, Dish is correct. However, the plaintiffs already proved the statutory standing of each class member at trial.

Statutory standing is "best understood as not even standing at all," *CGM, LLC v. BellSouth Telecommc'ns, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011), but as an "element of proof" for a claim. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 307 (3d Cir. 2011) (en banc) (statutory standing in antitrust context). In considering whether an individual has statutory standing, courts consider whether the individual "is a member of the class given authority by a statute to bring suit." *CGM*, 664 F.3d at 52 (quotation omitted). "Normally, where the statutory language provides a clear answer, [the] analysis begins and ends with that language." *Id.* at 53 (quotation omitted).

The class definition, the evidence, the jury instructions, and the jury verdict establish that this element was proven at trial. The standing provision at issue here, 47 U.S.C. § 227(c)(5), states that "[a] person who has received" calls in violation of the

§ 227(c) provisions may sue.[3]  By its plain language, the determinative question for statutory standing is whether a call to a class member was *received*.  The jury answered "Yes" to this question for all class members:

> Did [Dish's agent] make *and class members receive* at least two telephone solicitations to a residential number in any 12-month period by or on behalf of Dish, when their telephone numbers were listed on the National Do Not Call Registry?
>
> [ X ] YES as to Dr. Krakauer *and all class members*

Doc. 292 at ¶ 2 (emphasis added).  The jury instructions also repeatedly referred to receiving calls and stated that "the plaintiff must prove . . . that he *and the class members each received* at least two telephone solicitations."  Doc. 293 at 4 (emphasis added); *see also id.* at 3, 8, 10-12.[4]

As the Court told the jury, "a person whose residential number is on the National Do Not Call Registry and who receives at least two telephone calls within any 12-month period by or on behalf of [Dish]" is entitled to damages.  *Id.* at 3.  The jury found that the plaintiffs proved all of these elements at trial.  *See* Doc. 292.  Dish is not entitled to undermine the jury's verdict by second-chance challenges to the fact that the calls were received.

---

[3] The Court previously addressed statutory standing in its order certifying the class.  *See* Doc. 111 at 12-14.  At that time, the Court rejected Dish's contention that only subscribers had statutory standing.

[4] The evidence at trial established that all of the phone calls were connected and thus received.  *See* Trial Tr. Jan. 12, Doc. 303 at 177:3-178:5 (testimony of Anya Verkhovskaya).

6

Statutory standing is an element of the claim, but the jury determined it in the plaintiffs' favor for every class member.[5]  No additional procedures are required to satisfy that element.[6]

## B.    Identity of class members

Dish similarly contends that due process entitles it to discovery and a trial on whether the class member was the "subscriber" to the phone number and whether the phone number was residential.  *See* Doc. 330 at 4-5, 14.  Dish is correct that the jury did not pair phone numbers with particular names or addresses, nor did the jury determine the identity of the persons who received the calls.[7]  But that does not mean that Dish is entitled to discovery from thousands of individual class members and jury trials on the identities of thousands of class members when a verdict has already determined that Dish's agent made tens of thousands of violative calls, each received by a class member.[8]

---

[5] The plaintiffs assert that, in class actions, only the class representative must prove standing. Doc. 337 at 6-7.  Dish correctly points out that this assertion confuses constitutional standing, which is a jurisdictional requirement, with statutory standing, which functions as an element. Doc. 340-1 at 10-11.

[6] Dish also contends that it has the right to dispute this element under due process, the Rules Enabling Act, and the Seventh Amendment.  Doc. 330 at 9.  Dish had the opportunity to dispute the issue of receipt at trial, so these arguments are without merit.

[7] The Court repeatedly told the jurors and parties that the trial would not resolve those issues. Doc. 242 at 1; Doc. 260 at 79:7-80:2 ("We're not going to be trying those issues."); Doc. 293 at 9 ("There is no issue for you to decide in connection with names and addresses or the identities of class members.  That is something that may be decided down the road in other proceedings."); Trial Tr. Jan. 17, Doc. 305 at 42:24-43:8 ("[T]here's no issue in this case about names and addresses.  That's not something that you all have to decide.").

[8] In support of its due process claim, Dish cites cases from the class certification stage that appear to be based on ascertainability problems.  *See Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3d Cir. 2013) (vacating class certification order because plaintiffs admitted that proposed claims

The Court has previously found that the class members were ascertainable, Doc. 111 at 9-14, and that the business records of Dish's agent—supplemented by the LexisNexis database—identified most of them by name and address. *See id.* at 11; Doc. 153 at 2. Likewise, it has been established that Dish violated the TCPA when its agent made and class members received 51,119 telephone calls to residential numbers on the Registry, *see* Doc. 292 at ¶¶ 1-2, that each class member is entitled to $400 in statutory damages per call, *id.* at ¶ 3, and that because Dish acted willfully, the damages should be trebled. Doc. 338.

Thus, Dish violated the TCPA and the class members—those persons whose telephone numbers were listed on the Registry—are entitled to up to $1,200 for each violative call. There may be some questions about who is a class member, but that does not create a right to full-blown discovery and a jury trial on identity for each and every class member. Rule 23 contemplates that the court will make the decision about who the class members are. *See* Fed. R. Civ. P. 23(c)(3)(B) (in a Rule 23(b)(3) class action, the judgment must "specify or describe those to whom the Rule 23(c)(2) notice was directed,

---

process would likely pay out some claims based on false affidavits, and defendant had an interest in ensuring that did not happen); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 138-39 (E.D. Pa. 2015) (denying class certification and stating that "affidavits alone, without any objective records to identify class members . . . will not suffice" to identify class members and protect defendants' interests). The Court already decided ascertainability in favor of the class, *see* Doc. 111 at 9-14, and these cases give little to no guidance on how class administration should occur after a jury verdict. Moreover, a third case cited by Dish criticizes the reasoning of *Carrera* as misguided. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239-40 (N.D. Cal. 2014) (granting class certification and stating that *Carrera*'s reasoning seems to be a "strange solution" to a problem that "seems, at best, premature"). The Court has already rejected Dish's contention that class members must prove they are "subscribers." Doc. 111 at 12-14.

who have not requested exclusion, and *whom the court finds* to be class members."
(emphasis added)).

In other class actions fully litigated through post-trial proceedings, courts have not found that due process or any other principle entitled defendants to a jury trial on individual class members' identity. For example, in *Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259, 261 (D. Ariz. 1986), after trial, the court created a procedure using claim forms for the parties to identify the unnamed migrant farmworkers who made up the class. The court did not treat class members' identities as an element. Instead, it indicated it would take "reasonable measures" to check that class members' identities were correct, and it held that verifying class members' identities "needs to be tailored to this particular situation." *Id.* at 262-63.[9]

Similarly, in *Allapattah Services, Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291 (S.D. Fla. 2001), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005), the court used a claims administration process that evaluated claims using a special master and a summary judgment process. "The goal of the Claims Administration Process [was] to determine whether a claimant is the proper owner of the interest in the damage award for the period of ownership asserted on the claimant's respective proof of claim form."

---

[9] In a similar case, the court held that the process of identifying migrant farmworker class members was "unlikely to engender dispute or controversy" because "the amount of statutory damages per class member has been determined, and all that remains is to contact the class members and have them demonstrate that they are indeed class members entitled to the pre-determined amount of damages." *Rodriguez v. Berrybrook Farms, Inc.*, No. K86-161 CA8, 1990 WL 10520985, at *3 (W.D. Mich. Oct. 29, 1990).

*Exxon*, No. 91-0986-CIV, 2006 WL 1132371, at *3 (S.D. Fla. Apr. 7, 2006).[10] While the details of the process are not set forth in the decision, there is nothing to indicate that the Court authorized discovery pursuant to the Rules of Civil Procedure or contemplated jury trials, even though the issues to be determined in the claims process were significantly more complicated than the simple question of class membership left to resolve in this case. *See infra* pp. 12-13.

As the trial already established all of the elements necessary to prove a violation—indeed, 51,119 violations—Dish is not entitled to discovery and trials on the identities of class members. Whether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23.

Like Dish, the Court is interested in insuring that only class members receive the damages awarded by the jury. The Court intends to establish a fair claims administration process that will weed out any unjustified claims by non-class members. As discussed *infra* p. 14, the Court agrees that Dish has some due process rights to a reasonable opportunity to participate in the claims administration process. In the circumstances of this case, the Court rejects the plaintiffs' contention that Dish has no right at all to participate in the process of identifying class members and accurately distributing class funds. *See* Doc. 334 at 10-11. So long as Dish's participation is helpful to confirm

---

[10] At the time of the April 2006 order, the parties had reached a class settlement, but the order describes the incomplete, contested class administration process already underway.

identification of class members, does not delay the proceedings, and is not obstructive, the Court anticipates allowing Dish to have some input.

### C. Aggregate damages

The plaintiffs ask the Court to enter judgment in the amount of $61,342,800, based on a total liability of $1,200 per call multiplied by 51,119 calls. *See supra* note 2. The plaintiffs make a strong argument. Dish willfully violated the TCPA tens of thousands of times when its agent willfully made repeated solicitation calls to persons on the Registry; the jury set the amount of damages for each violative call; and a simple mathematical calculation leads to the appropriate judgment amount.[11] While such a judgment is no doubt appropriate, the Court concludes in its discretion that the better course in this case is to take a different approach that takes into account the uncertainties in some of the data about class membership.

Few contested class actions of this type have reached this stage, so there is little guidance for the Court. The two most helpful cases are *Barfield v. Sho-Me Power Electric Co-op.*, 309 F.R.D. 491 (W.D. Mo. 2015), *vacated on other grounds*, 852 F.3d 795 (8th Cir. 2017), and *Exxon*, 157 F. Supp. 2d 1291.

In *Barfield*, the jury awarded a verdict of $79 million on behalf of a class because of Sho-Me Power's unauthorized use of property easements to lay commercial fiber optic cable. *See* 309 F.R.D. at 492. Like Dish, Sho-Me Power asserted a due process right to

---

[11] *See Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir. 1985) (Once there is a final judgment, "calculating the actual amount owed each class member . . . is not the resolution of a separate claim but merely the disbursement stage.").

participate in the claims process and to contest claims.  The court rejected this assertion and held that, because the jury had created an "aggregate damage fund," the defendant "has no interest in how the Plaintiffs apportion and distribute the damage fund among themselves." *Id.* at 499; *see also In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 3879264, at *3 (D. Kan. July 26, 2013) ("[A]lthough Dow has an interest in making sure that the judgment against it is proper, the Court agrees with plaintiffs that Dow has no interest in the particular manner in which the total damages found by the jury are distributed among the class members."), *aff'd*, 768 F.3d 1245, 1269 (10th Cir. 2014).[12]

In *Exxon*, a court chose not to use a per-violation jury verdict to calculate an aggregate damages figure.  Classes of individual gas station dealers alleged that the way Exxon accounted for credit card processing fees had violated a good-faith clause in their gas supply contracts.  *Exxon*, 61 F. Supp. 2d 1308, 1311-13 (S.D. Fla. 1999).  The jury returned a special verdict in favor of the dealers and determined class damages on a cents-per-gallon basis.  *Exxon*, 157 F. Supp. 2d at 1297.  The plaintiffs asked for a final judgment setting out a total amount of class damages based on Exxon's internal sales records, from which class members would be paid.  *Id.* at 1295, 1297.  The court found that calculating total compensatory damages was "straight-forward," but the individual payments to class members were complicated by state law statutes-of-limitations issues, prejudgment interest, and by Exxon's assertions of set-offs.  *See id.* at 1308-09, 1313,

---

[12] The court adopted a plan similar to the one in *Barfield*.  *See In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 3879264, at *2-3 (D. Kan. July 26, 2013), *aff'd*, 768 F.3d 1245 (10th Cir. 2014).

Case 1:14-cv-00333-CCE-JEP   Document 351   Filed 07/27/17   Page 12 of 28

1322. Because there were thousands of plaintiffs and because of these individual adjustments, the court declined to calculate a total, aggregate damages amount. *Id.* at 1299-301.

This case is not exactly like either *Barfield* or *Exxon*. The jury here issued a per-violation damages award, like the cents-per-gallon award in *Exxon* and unlike the total damages award in *Barfield*. Unlike in *Exxon*, however, there are no complicated individual issues, such as set-offs or state law questions, that affect application of the jury's damage award to individual class members, and the total damages amount is easy to calculate using simple multiplication.

In addition, neither of those cases dealt with the issue in this case about identifying who some of the class members are. On one hand, there are many class members fully identified by the various sources of name and address information used in these proceedings and for whom there can be no legitimate dispute about their membership in the class.[13] On the other hand, there are a few phone numbers that the plaintiffs have not yet linked to any particular name or address. In between these two extremes are situations where the name and address information is either incomplete or inconsistent.

The Court is not inclined to enter judgment against Dish now for damages to be awarded to persons who are yet unidentified, and this fact alone augurs against an aggregate damages award. Dish has presented evidence that close to 3,700 of the

---

[13] For example, there are class phone numbers for whom the names and addresses in the Five9 data match the name and address information from LexisNexis, *and* for which the plaintiffs successfully delivered a class notice postcard.

telephone numbers did not have complete identifying name information or the information is inconsistent, *see* Doc. 340-2 at ¶ 5, and the parties appear to agree that the accuracy of the Five9 data about names and addresses is not guaranteed. *See* Docs. 335 at 18; *see* Doc. 337 at 14-15. Dish has had no opportunity to challenge the attribution of names and addresses to particular individual phone numbers,[14] and some persons may have been incorrectly identified as class members. Dish has repeatedly asserted its intention to challenge individual class membership, *e.g.*, Doc. 129 at 10-11; Doc. 231 at 43:9-44:5; Doc. 330 at 8, and the Court has indicated that Dish would have some opportunity to do so. *See, e.g.*, Doc. 204 at 112:21-113:13; Doc. 231 at 75:13-:25; Trial Tr. Jan. 17, Doc. 305 at 159:25-160:11.

As a matter of fairness and "basic due process," in a class action not resolved by settlement, a defendant who will ultimately pay damages to class members has a right to participate in claims administration and "to object and oppose any unfounded or incorrect claim." *Exxon*, 157 F. Supp. 2d at 1324. Apart from any element of liability, Dish has an interest in not paying damages to persons who are not proper class members, which aligns with the Court's interest in insuring that only class members receive damages awards.

For these reasons, the Court will not enter an aggregate judgment against Dish in the amount of $61 million and instead will require a claims administration process that

---

[14] Dish has also contended that it lacked complete access to the details of how the plaintiffs' expert identified names and addresses for the phone numbers where Five9 had no name and address information. *See* Doc. 335 at 19.

gives Dish the opportunity to reasonably challenge individual claims to class membership.

## IV.    Class administration

Class administration should be simple and straightforward.  In class actions, "courts must use their discretion, and in many cases their ingenuity, to shape decrees or to develop procedures for ascertaining damages and distributing relief that will be fair to the parties but will not involve them in an unduly burdensome administration of the award."  7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1784 (3d ed. 2017).  Courts should "shape the remedy to meet the exigencies of each case and difficulties in administration should not be allowed to destroy the usefulness of the class-action procedure."  *Id.*  "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  William B. Rubenstein, *Newberg on Class Actions* § 12.15 (5th ed. 2017).

If a claim form is necessary, "the claiming process should be as simple, straightforward, and nonburdensome as possible."  *Id.* at § 12.21.  "Be careful to avoid claim forms that scare class members away with confusing questions and onerous proof requirements."  Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 30 (3d ed. 2010).

### A.    Overview of process

Upon motion of the parties, the Court will appoint a claims administrator who shall oversee and manage the claims process.  The claims administrator shall mail claim

forms to all potential class members and shall otherwise publicize the claims process and make claim forms available. The claims administrator shall receive completed forms, make copies available to the parties, and undertake other responsibilities as directed by the Court.

When individual claim forms do not raise a dispute, the parties will submit such individual claims to the Court for judgment. The Court will establish a reasonable summary procedure for resolving disputed claims after hearing further from the parties.

Upon motion of the plaintiffs as to any group of class members who are identified fully and without contradiction in the existing data, the Court will consider entry of judgment in favor of such class members regardless of whether those individuals complete claim forms. To the extent the Court enters judgment for class members who do not submit claim forms, the administrator shall oversee and manage the process of updating addresses, obtaining any needed information from these class members, and mailing checks. As to class members not part of a group judgment, individual claim forms will be required from these class members before the Court will enter judgment.

### B. Claims administrator

The parties shall confer about an appropriate claims administrator, and if they agree, they shall file a joint motion no later than September 6, 2017. If the parties do not agree, each side shall file a motion for appointment of a claims administrator on or before September 8, 2017, where each side shall suggest at least two entities or persons qualified, willing, and able to serve.

16

## C.    Distributing claim forms and publicizing the claims process

Once appointed and as soon as the claim form is approved by the Court, the claims administrator shall send a claim form to all potential class members.  As a starting point, the claims administrator shall use the mailing list generated by the plaintiffs during the class notice process.  *See* Doc. 153 at 2.[15]  The claims administrator shall update addresses as needed and appropriate.  For the remaining class members, the administrator may use additional databases to identify potential class member names and addresses, potentially including, but not limited to, the TransUnion, Experian, and MicroBilt resources.  The claims administrator shall make information available to the parties concerning the source of information used to identify these names and addresses.

The administrator shall also make claims information, including blank claim forms, available using a case-dedicated website and press releases, in the same manner as in the class notice process.  *See id.* at 2-3.  The website shall provide public information about the lawsuit and its current status.

## D.    Claim form and communications to class members

The claim form or cover letter shall summarize the proceedings so far and provide the internet address for the case-dedicated website.  The administrator will customize the mailed claim form for each claimant to include the phone number on the Registry, the number of violations, and the potential maximum damages amount associated with that phone number, subject to appeal, costs, and attorney's fees.  Recipients who are not the

---

[15] Both parties suggested beginning the claims process with this mailing list.  Doc. 330 at 11; Doc. 331 at 4.

proper claimant shall be encouraged to forward the claim form to the proper class member, if known to the recipient, or to inform the class administrator of any other means to contact that class member. The deadline for claim submission shall be prominently stated.

The claim form shall include a place for the claimant's name and contact information, along with any other needed personal identification information. Claimants shall affirm that the phone number was theirs or their household's during the class period, and shall be asked to attach a document, such as a phone bill, showing that they, or their household, paid for or used the phone number at a time within the class period. If such documentation is unavailable, the claimant shall identify the provider of his or her phone service during the class period and will be encouraged to provide other documentation that supports his or her claim. Such documentation might include, for example, a phone bill dated outside the class period.

The Court directs the parties to confer about the exact format of the claim form and any cover letter or other communication giving instructions to class members, keeping in mind that the claim form should be both fair and as simple as possible.[16] The parties shall also confer about an appropriate deadline for submission of claims. The Court hopes for and expects a consent proposal, but if the parties cannot reach full

---

[16] Dish's proposed claim form, Doc. 329-1 at 2-3, is inordinately complex and includes many demands for information as to issues which have already been decided. The Court cautions Dish that if it continues to attempt to re-litigate matters already decided, such as the issue of residential use, as part of the claims process, the Court will consider limiting Dish's role in the claims process.

agreement, the parties shall file a joint submission identifying areas of disagreement along with dueling proposed orders. The parties shall filed the consent proposal or joint submission no later than August 28, 2017.

### E. Claims process

#### 1. Entry of judgment without a claim form

There are likely many persons whose membership in the class—and entitlement to a damages award—cannot reasonably be disputed. *See supra* note 13. The plaintiffs may move for judgment in favor of any such group[17] of class members who are identified fully and consistently in the existing data, for whom there is no contradictory information, and as to whom the evidence is the same.[18] Should the Court grant such a motion, receipt of a completed claim form will not be necessary for entry of judgment as to these class members.

If the plaintiffs decide not to file any such motion, they shall advise the Court and Dish of that decision no later than September 15, 2017. If the plaintiffs decide to file a group judgment motion, by that same date they shall provide Dish with a full list of any such class members' names, addresses, phone numbers, and the source(s) of that

---

[17] The Court uses singular language here, but more than one group may be appropriate. To the extent the evidence is different, the plaintiffs should group the purported class members—similar to the "buckets" on the verdict sheet at trial, Doc. 292 at ¶ 2—and put each group in a separate motion.

[18] The plaintiffs suggested something like this approach as an alternative. *See* Doc. 334 at 11. The Court will not, at a minimum, entertain such a motion for any of the class members that have truly inconsistent name and address information, *see* Doc. 335-1 at ¶¶ 13-14, nor the numbers for which notice postcard delivery was unsuccessful. *See* Doc. 331-1 at ¶¶ 6-7.

information, along with a proposed draft judgment. No later than October 2, 2017, Dish shall communicate in writing any general objections it has about the list, along with any specific objections to the status of any individual on the list as a class member and any evidence Dish has indicating that the particular class member should not be included in the proposed judgment. No later than October 16, 2017, the parties shall meet and confer in an effort to identify and narrow any disputes so that individual issues are not included in the plaintiffs' motion and so that the briefing will be of optimal assistance to the Court. No later than November 1, 2017, the plaintiffs shall either file a motion for judgment for this group of class members or notify the Court and Dish that it has decided not to file the motion.

Dish has objected to any process that does not require some sort of individual claim by class members, contending that the Court had previously indicated that a claims process would be "required." *E.g.*, Doc. 335 at 10. In its previous statements, the Court made no decisions on post-trial procedures or identity of class members. Doc. 260 at 75:11-:12 ("I'm going to put that off.").[19] Among the statements cited by the defendant,

---

[19] *See* Doc. 231 at 75:16-:20 ("[I]f there are individual challenges for particular people under particular circumstances, you know, we can identify those. If there is a couple of hundred of them, we'll figure out how to deal with them, should the plaintiffs win."), 78:20-:23 ("[T]here may be individuals or particular phone numbers where you have particular challenges and that we need to figure out a way for those to be resolved."). At the final pretrial hearing, the Court made clear that it was making no final decision about post-trial procedures. While the Court expressed skepticism about whether Dish should pay damages if no class member can be found for a particular phone number, the Court was explicit that that decision was "tentative." Doc. 260 at 75:12-:22.

Dish also mentions other statements by the Court that were tentative and provided no promises or a rulings about how post-trial proceedings would work. Some statements merely forecasted future decisions that the Court would need to make. *E.g.*, Doc. 204 at 113:2-:6; Doc.

only once did the Court state that post-trial proceedings were affirmatively necessary. Trial Tr. Jan. 17, Doc. 305 at 158:23-159:24 ("[W]e'll have some posttrial proceedings of some sort so that Defendant can present any individual issues and so we can also figure out, you know, who gets the money."). Even that statement indicated that such proceedings would be held only when Dish raised individual issues, and it made no specific guarantees about what the process would be.

In any event, the claims administration process outlined herein does not conflict with those or any other previous statements by the Court during this case. Indeed, the Court anticipates providing a mechanism for Dish to be heard when it has actual evidence to indicate that an individual claimant is not a class member.

### 2. Individual claims

Beyond those persons identified fully and without contradiction in the existing data, the Court will follow generally the model set forth in *Exxon*, which allowed the defendant to participate in the process of identifying class members. *See* 2006 WL 1132371, at *3. Given the uncertainties about the identification of some class members and their addresses and the passage of time, a simple claim form and claims

---

242 at 1 (class membership "can be resolved post-trial using procedures to be determined later"). At other times, the Court excluded evidence at trial without determining whether those issues could arise after trial. *See* Doc. 231 at 79:25-80:3 ("I'm not interested in being surprised during the trial with individual—with requests for individual issues on the verdict sheet."). Other statements were hypotheticals meant to elucidate a party's argument. *E.g.*, *id.* at 64:17-71:18 (discussion that ends with the Court's statement that "[w]e have got to finalize these things at some point," but not ruling on the issue). Dish also cites some of plaintiffs' counsel's statements during these discussions, Doc. 335 at 10, but these statements were an attempt to explore potential courses of action and did not concede anything or bind the parties to any particular post-trial procedure. *See, e.g.*, Doc. 231 at 64:3-:6.

administration process is appropriate for these claimants, to protect both Dish's rights and the integrity of the distribution of damages awards. Considering the amounts of the damage awards, which at a minimum will be $2,400 per class member before costs and attorney's fees, it is not unduly burdensome for a claimant to fill out a short claim form that asks for basic information about their phone line.

As completed claim forms are received, the claims administrator shall make copies available to the parties. The parties shall confer about the claims. Some completed forms will clearly establish a claimant's status as a class member. When that is the case, the plaintiffs may move for judgment on that class member. Others will no doubt be facially insufficient, and when the parties so agree, the claims administrator shall deny the claim.

The Court anticipates that some claims will raise substantial questions about whether a claimant is a class member, that there may sometimes be two claimants for the same phone number, and that there may be other individual disputes or problems relevant to distribution of damages and entry of judgment. For those claims, a summary decision process will be needed, either by the claims administrator or a special master.[20]

The Court does not anticipate allowing either party any individual discovery of the kind contemplated by the Rules of Civil Procedure directed to any claimant. If the completed claim form is inadequate, it will be denied. If it is adequate, it will be granted.

---

[20] It is possible that there will be some categories of claims involving similar evidence for large numbers of claimants as to which the Court may need to make the decision, and the parties should include this possibility in their discussions. Beyond entry of judgment, the Court does not expect to be involved in ordinary, individual claims resolution.

That said, the claims administrator should give an individual claimant a second chance to fill out an incomplete form. Where circumstances raise a question about whether the claimant is a class member, the claims administrator can seek additional specific information from a particular claimant by mail, email, phone, text, or other reasonable means in order to give the claimant a full opportunity to establish class membership. The Court does not absolutely rule out individual discovery should there be an unusual circumstance in an individual situation, but in the ordinary case it would be unduly burdensome and is unnecessary to a fair decision.

After hearing further from the parties, the Court will enter an order establishing specific procedures for entering judgment and resolving disputes. To that end, the parties shall confer about the specifics of a process for obtaining entry of judgment for undisputed claimants. They shall also confer about an appropriate schedule and mechanism for making and resolving objections to a claimant's status as a class member and for obtaining judgment for claimants whose class-member status is resolved. After conferring generally and no later than October 2, 2017, the parties shall exchange proposals. They shall meet and confer again in an effort to reduce and narrow areas of disagreement, continuing to exchange proposals as is productive. The parties shall file a joint submission no later than November 15, 2017. The joint submission shall identify the areas of agreement and disagreement.

## V. Unclaimed damage awards

The plaintiffs contend that Dish should have to pay any and all unclaimed damage awards and that no unclaimed damages should revert to Dish. Doc. 337 at 16-18. To the

23

extent this simply restates the argument that the Court should enter judgment now for $61 million, the Court rejects it for reasons previously explained. *See supra* pp. 13-15.

It is possible that there will be damages awards unclaimed by class members. As noted, the plaintiffs may file a motion to enter judgment in favor of some class members whose identities were consistently established by the call records and databases without contradiction, without requiring claim forms. The Court may grant such a motion. If that happens, it is likely that some of these folks will have moved or otherwise become "lost," and a few may not cash the check. The plaintiffs contend that Dish should not get this money back through a reversion and that the money should be distributed otherwise by *cy pres* or some other means.

No doubt there is something unfair about Dish avoiding payment of damages for proven, willful violations of the law, a result that is certain to happen to some extent under the process established by this order. Moreover, Congress designed the TCPA's damages provisions, in part, to deter violations. *Hannabury v. Hilton Grand Vacations Co.*, 174 F. Supp. 3d 768, 776 (W.D.N.Y. 2016). That deterrent effect weakens if Dish is off the hook for damages owed to injured class members who cannot be found.

However, the actual amount of unclaimed funds is unknown at this point. Given that the plaintiffs seek an equitable *cy pres* distribution of those funds determined in the Court's discretion, *see* Doc. 337 at 16-18, the relative amount of those funds may be relevant to the Court's decision on what to do with them. To the extent the decision is an equitable one, Dish's conduct during the claims administration process may be appropriate for consideration.

If and when the plaintiffs move for judgment for certain class members in a subgroup, if and when the Court grants such a motion, and if and when it becomes clear that some damages awards cannot be delivered to the class members, the Court will be open to consideration of this issue.

## VI.    Interlocutory appeal

The claims process is likely to take some months and to require resources by the parties and the Court.  While it is going on, it would appear that there is no just reason to delay final judgment as to all issues the Court has finally decided, and pursuant to Rule 54(b), the Court intends to certify the case for interlocutory appeal.  Subject to the Court's decision on Dish's recently filed motion for judgment as a matter of law and remittitur, Doc. 346, the Court expects to, at a minimum, certify the class certification issue, the *Spokeo* issue, the sufficiency of the evidence issue, and the Court's decision not to enter judgment against Dish in the amount of $61 million.  *See* Doc. 111; Doc. 218 at 1-4; Doc. 341; *supra* pp. 13-15.  There may be other issues appropriate for certification. The parties shall confer and the Court will look for a motion, motions, or a joint motion for a Rule 54(b) judgment on specific issues no later than fourteen days after the Court rules on Dish's recent motion filed at Doc. 346, subject to further order of the Court.  If no party files such a motion, the Court directs the parties to file a joint submission explaining why a Rule 54(b) judgment is not appropriate, limited to 6,000 words and with no individual briefs or responses allowed.

## VII.  Other matters

The parties shall confer about other matters requiring resolution that may require a scheduling order, such as motions for attorney's fees and costs, and shall file a joint submission no later than August 31, 2017.

## VIII.  Conclusion

An aggregate judgment in the full amount is inappropriate in this case in light of the particular circumstances and inability to presently identify all class members.  The plaintiffs may move for judgment for any group of class members who are identified fully and without contradiction in the existing data.  Beyond that, claimants must submit a completed claim form, Dish will have a reasonable opportunity to raise concerns about whether a particular individual is a class member, and when appropriate, the Court will enter individual judgments.

It is **ORDERED** that:

1. The defendant's motion for post-trial procedures, Doc. 329, and the plaintiffs' requests for post-trial procedures, Doc. 331, are **GRANTED in part and DENIED in part** as stated herein.

2. The parties shall confer as directed and file such motions and submissions as are required by this order, as summarized in the Appendix.

3. Unless stated otherwise in this order, the time frame and word limits for briefing are those set forth in the Local Rules.

4. For all matters where joint submissions are required, the joint submission shall specifically state areas of agreement and disagreement and shall include

proposed orders, if applicable.  If the parties do not reach full agreement, each

party may file a brief at the time of the joint submission addressing areas of

disagreement.  In view of the degree of advance consultation required, the

Court expects the parties to address all issues in the initial briefs, which are

limited to 6,000 words.  The parties may file short response briefs no longer

than 2500 words within ten days, if necessary, and no reply briefs are allowed.

This the 27th day of July, 2017.


UNITED STATES DISTRICT JUDGE

APPENDIX

| Date | Event to occur on or before that date |
|---|---|
| Fourteen days after the Court rules on Doc. 346 | Motions or joint submission on issues for interlocutory appeal |
| August 28, 2017 | Parties confer and submit consent proposal or joint submission on claim form, claims deadline, and instructions to class members |
| August 31, 2017 | Joint submission on all remaining matters requiring a scheduling order |
| September 6, 2017 | Joint motion for appointment of claims administrator, if parties agree |
| September 8, 2017 | Individual motions for appointment of claims administrator, if parties do not agree |
| September 15, 2017 | Plaintiffs provide Dish with list of class members in any group for which the plaintiffs intend to file a group motion for judgment before claims process; if they will not file such a motion, plaintiffs advise Dish and the Court |
| October 2, 2017 | Exchange proposals for procedures for adjudicating individual claims disputes; parties shall confer before and after this exchange |
| October 2, 2017 | Dish provides plaintiffs with any objections to class members in proposed group judgment and any evidence for those objections |
| October 16, 2017 | Parties meet and confer about class members in proposed group judgment |
| November 1, 2017 | Plaintiffs file group motion(s) for judgment |
| November 15, 2017 | After conferring as needed, joint submission on procedures for adjudicating individual claims disputes |