IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In this nationwide class action brought pursuant to the Telephone Consumer

Protection Act, a jury found that the defendant, Dish Network, LLC, was liable to the

named plaintiff, Dr. Thomas Krakauer, and several thousand class members for more

than 50,000 telemarketing calls made on behalf of Dish to phone numbers on the

National Do Not Call Registry. The Court determined that Dish willfully and knowingly

violated the TCPA and trebled the damages.

Dish now seeks to set aside the verdict and dismiss this action because, Dish

contends, the judgment of the United States District Court for the Central District of

Illinois in *United States v. DISH Network, LLC*, No. 3:09-3073 (C.D. Ill.), constitutes res

judicata. The Court will deny the motion for judgment as a matter of law because Dish

waived its right to assert res judicata in this case and has failed to establish that it applies.

Dish also renews its request for remittitur, asserting that the treble damages

awarded are excessive and duplicative under the Due Process Clause in light of the

Illinois Action.  Because the treble damages awarded are neither excessive nor duplicative in any meaningful way, Dish is not entitled to remittitur.

## BACKGROUND

Congress enacted the TCPA to curb abusive telemarketing practices that threatened consumer privacy.  *See* 47 U.S.C. § 227 (2012); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).  Among other things, the TCPA prohibits telemarketers from repeatedly calling people who list their phone numbers on the National Do Not Call Registry.  *See Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 771 (W.D.N.Y. 2016).  The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [TCPA] regulations."  47 U.S.C. § 227(c)(5); *see Hannabury*, 174 F. Supp. 3d at 771-72.  The TCPA also authorizes state Attorneys General to bring actions against persons "engaging in a pattern or practice of" TCPA violations.  § 227(g).  Section 227(g) also authorizes injunctive relief and damages.  Under both § 227(c) and § 227(g), the court may treble damages if the defendant willfully or knowingly violated the TCPA.  § 227(c)(5), (g)(1).

### I.     The Illinois Action[1]

In March 2009, the United States of America, together with the States of Ohio, North Carolina, Illinois, and California, filed a lawsuit against Dish in the United States District Court for the Central District of Illinois.  Doc. 347-3.  Count V of the complaint,

---

[1] For purposes of this order only, the Court takes judicial notice of facts found in the Illinois Action.  *See Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010).

as amended, alleged that Dish violated the TCPA by engaging in a pattern or practice of initiating telephone solicitations to residential subscribers who reside in the plaintiff States and whose telephone numbers were on the Registry. Doc. 347-1 at 358.[2] Pursuant to § 227(g), the plaintiff States sought injunctive relief, monetary relief, statutory penalties, and attorney's fees. Doc. 347-3 at ¶¶ 66-69, at pp. 24-25. There was one other TCPA count, Doc. 347-1 at 3-4, 367, along with ten other counts brought pursuant to the Federal Trade Commission Act, the Telemarketing Act, and analogous state laws.[3]

In December 2014, the Illinois Court entered partial summary judgment. *United States v. Dish Network, LLC*, 75 F. Supp. 3d 942 (C.D. Ill. 2014), *vacated in part on other grounds on reconsideration*, 80 F. Supp. 3d 917 (C.D. Ill. 2015). That decision did not fully resolve any claims. *Id.* The Illinois Court heard the remaining issues in a bench trial held in February, October, and November of 2016. *See* Doc. 347-1 at 1-2.

On June 5, 2017, the Illinois Court entered judgment in favor of the plaintiffs and against Dish on eleven counts, including the TCPA claim in Count V. Doc. 347-1 at 5-6. The Illinois Court entered a permanent injunction against Dish to protect against future illegal calls. *Id.* It also awarded civil penalties and statutory damages in favor of the plaintiffs and against Dish in the total sum of $280,000,000. *Id.* Of that sum, $84,000,000 was awarded for the two TCPA violations. *Id.* at 452.

---

[2] All citations to the record reference the docket number and page number appended by the CM-ECF system. Where the document cited contains paragraph numbers, the reference will include the paragraph number for specificity.

[3] Dish relies only on Count V for its res judicata argument. Doc. 347 at 6.

For Count V, the Illinois Court found that Dish engaged in a pattern or practice of initiating telephone solicitations to residential subscribers who reside in North Carolina, Illinois, Ohio and California and whose telephone numbers were on the Registry. Specifically, Dish was found liable to the plaintiff States for 2,651,957 calls made in violation of the TCPA. Doc. 347-1 at 367.

The Illinois Court awarded damages significantly lower than the calculated statutory damages of $500 per call. Calculated damages for the two TCPA claims were more than $8.1 billion. Doc. 347-1 at 444-45. The Illinois Court reduced the statutory damages after considering damages awarded for other counts and also because standing alone $8.1 billion "would be excessive and in violation of due process." Doc. 347-1 at 375-76. The Illinois Court also decided not to determine whether the TCPA violations were knowing and willful so as to warrant treble damages, because the calculated damages were substantial. *Id.* at 378-79.

## II.    The Present Action

In 2014, Dr. Krakauer, the plaintiff and class representative, sued Dish pursuant to § 227(c) alleging that he and others on the Registry received more than one telephone call within a 12-month period in violation of the TCPA and that the calls were made on behalf of Dish. Doc. 1 at 10. Dr. Krakauer sought injunctive and monetary relief on behalf of himself and the class. On September 9, 2015, the Court certified the following class:

> (a) all persons whose telephone numbers were on the [Registry] for at least 30 days, but who received telemarketing calls from [Satellite Service Network ("SSN")] to promote DISH between May 1, 2010, and August 1, 2011 … .

Doc. 111 at 4, 34.[4]

Summary judgment was denied in substantial part, Docs. 113, 118 and 169, and the matter was tried to the jury in January 2017. *See* Minute Entry 01/10/2017. The Court heard the evidence about willfulness at the same time. *See* Doc. 222 at 6. After a six-day trial, the jury returned a verdict finding that through its agent, SSN, Dish made over 51,000 telephone solicitations to a class of plaintiffs on the Registry, in violation of the TCPA. The jury awarded $400.00 per call. Doc. 292 at 2. The Court, after finding the violations were willful, trebled the damages to deter Dish from future violations and to give appropriate weight to the scope of the violations. *See* Doc. 338 at 28. Judgment has not been entered, pending a claims process. Doc. 351 at 26-28; Doc. 360; Doc. 361.

## ANALYSIS

### I.      Res Judicata

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004).[5] Dish asks the Court to apply res judicata to two categories of claims in this case: (1) claims based on 10,208 calls that also supported the Count V TCPA claim in the Illinois Action, and (2) claims based on 12,315 calls that were not in the Illinois

---

[4] The Court also certified a second class of people whose numbers were on the internal do-not-call lists of Dish or its agent. *See* Doc. 111 at 4 (citing Doc. 47). The parties later stipulated to dismiss this class from the lawsuit. Doc. 271.

[5]   The Court has omitted internal alterations, citations, and quotation marks from any cited cases throughout this opinion.

Action, but that Dish alleges "aris[e] from the same course of conduct." Doc. 347 at 7-8. Dr. Krakauer contends that Dish waived its right to assert res judicata and that in any event the requirements for res judicata are not met.

### A. The Parties' Prior Positions on the Illinois Action

Dr. Krakauer and Dish discussed the Illinois Action with the Court throughout the course of this litigation. Until July 19, 2017, Dish never informed the Court that it believed any of the claims in the present action were the same as claims in the Illinois Action or inextricably tied to them. *See, e.g.*, Doc. 204 at 37-38, 105-08, 115; Doc. 231 at 123, 127-30. Dish never moved to dismiss, asked for a stay, sought a transfer, or otherwise informed the Court that the Illinois Action was duplicative of or identical to the class members' claims. Rather, Dish indicated its view that the Illinois Action was a totally different case and that the results would not bind Dish, much less bar the plaintiffs from recovering damages in this case. *See, e.g.*, Doc. 82 at 6; Doc. 172 at 33-35; Doc. 231 at 129-30; Doc. 343 at 4-5. These representations include the following:

- In May 2015, Dr. Krakauer asserted in summary judgment briefing that Dish should be collaterally estopped from asserting various affirmative defenses based on the Illinois Court's December 2014 summary judgment decision. Doc. 72 at 5. Dish took the position that collateral estoppel did not apply because, among other things, the Illinois Action "involve[d] a different statute, different issues, and different plaintiffs." Doc. 82 at 6.[6]

---

[6] The Court ultimately denied the plaintiff's motion because the Illinois decision was not final. Doc. 169.

- At a later pretrial conference, the Court and Dr. Krakauer's counsel mentioned in passing that the Illinois Action could not bind Dr. Krakauer and the class members because they were not parties to it, *see* Doc. 172 at 14-15; Dish's counsel was present, had an opportunity to address the issue, and did not contradict these views. *Id.* Rather, counsel for Dish essentially agreed that the plaintiffs would not be precluded: after indicating that there had been discussions with the plaintiffs' counsel about a stay while the Illinois Action was decided, Dish's counsel commented that "it always strikes me as a bit unfair that they get multiple bites at the apple and Dish is potentially bound by what's happened." Doc. 172 at 33-34.

- At that same conference, Dish contended that it had affirmative defenses in this case, that it had not raised those defenses in the Illinois Action, and that issue preclusion did not apply to prevent those defenses. Doc. 172 at 26.

- In another pretrial conference, the Court again asked the parties how the Illinois Action might affect this case and whether the parties were "willing to be bound by some of the conclusions in those proceedings." *See* Doc. 231 at 127-28. In response, Dish refused to commit to being bound by the Illinois Action. *Id.* at 129-30 ("To your question about the impact of what may or may not happen [in the Illinois Action] … I suspect it will be informative and helpful to this case, but it is hard to commit to, without knowing what the judge is going to do.").

In sum, Dish consistently took the position that the issues in the Illinois Action were different, never hinted that the Illinois Action would support application of res judicata in this case, never conceded that an adverse decision in the Illinois Action would estop or preclude Dish from litigating the same issues in this case, and agreed with the plaintiffs' position that a decision in the Illinois Action would not preclude the class from litigating the same issues in this case.

## B. Waiver

A "principal purpose of … res judicata is to protect the defendant from the burden of relitigating the same claim in different suits." *Pueschel*, 369 F.3d at 356. "The failure of the defendant to object to the prosecution of dual proceedings while both proceedings are pending … constitutes waiver." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995); *see also Beazer East, Inc. v. U.S. Navy*, 1997 WL 173225, *3 (4th Cir. Apr. 11, 1997) (noting that "acquiescence to the filing of two separate lawsuits has … been determined to constitute consent."); *accord, Pueschel*, 369 F.3d at 356 (holding that a defendant waives his right to assert res judicata if he consents, "in express words or otherwise, to the splitting of the claim.") (relying on Restatement (Second) of Judgments § 26(1)(a), cmt. a) and *Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir. 1990)). *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986) (same).

While there are "no precise rules" that govern how a court responds when claims arising from the same transaction or occurrence are pending before two separate courts, courts seek to ensure "wise judicial administration, giving regard to conservation of

judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). To this end, a court has discretion to "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (discussing the court's inherent power to stay one federal lawsuit while another proceeds to resolution). Courts necessarily rely on the parties to learn of related litigation. *See Young-Henderson v. Spartanburg Area Mental Health Ctr.,* 945 F.2d 770, 774 (4th Cir.1991). Depending on the circumstances of the case and the parties' requests, a court may order joinder, consolidation, stay, dismissal, or transfer, or it may decide that both actions can proceed.

This case was filed many months after the Illinois Action, and both were pending at the same time for several years. Dish knew very early in this lawsuit that some of the same phone calls were involved in both lawsuits. Yet Dish said nothing to this Court for over three years to indicate that it objected to the prosecution of dual proceedings, that the proceedings involved duplicate claims, or that it thought res judicata or collateral estoppel would arise or apply against the plaintiffs. It never moved to stay or dismiss, *see Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993); it made no effort to transfer this case in whole or in part to Illinois, *see Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688 (D. S.C. 2007); and it did not seek to exclude the allegedly duplicative claims from the class definition, Doc. 56, or to join them to those in the Illinois Action. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). Instead, Dish resisted the plaintiffs' efforts to apply collateral estoppel, represented to the Court that the Illinois

Action "involve[ed] a different statute, different issues, and different plaintiffs,"[7] and agreed that the Illinois Action would not bind the plaintiffs in this case. *See supra* at 6-8.

Dish waived any res judicata arguments and acquiesced in the filing of two separate lawsuits through its prolonged silence, its representations to the Court and the plaintiffs, and its failure to object to the dual prosecution of this case and the Illinois Action. *See Pueschel*, 369 F.3d at 356; *Calderon*, 805 F.2d at 1087. To hold otherwise would work an injustice on Dr. Krakauer, the class, and the judicial system without serving the main purposes of res judicata: to promote judicial economy and to protect the defendant from defending the same lawsuit twice. *See Montana v. United States*, 440 U.S. 147, 153–54 (1979).

Dish's silence, inaction, and contrary representations meant that Dish, the Court, and the plaintiffs have now expended considerable time and resources in litigating this case, without any warning that Dish would later contend that the Illinois Action was res judicata. There were many motions filed and several pretrial hearings, and trial took over a week.[8] *See, e.g.,* Minute Entries 6/30/2015, 9/28/15, 4/21/2016, 6/3/2016, 1/19/2017. If Dish had really thought that this case was duplicative, it would have sought to prevent the duplicative lawsuits to avoid the time and expense involved in defending this case.

---

[7] While the Court has not reviewed the docket in the Illinois Action in detail, it appears that as recently as February of this year, Dish argued to that court that the Illinois Action "involved a number of issues and evidentiary showings that differ from those presented in" this case. Letter by Dish Network, LLC, *United States v. DISH Network*, LLC, No.: 3:09-CV-3073, Doc 767 at 6 (C.D. Ill. Feb.10, 2017).

[8] Forty citizens were summoned to court for jury selection in this case, and ten jurors spent six days away from jobs and other obligations to hear the evidence and resolve this dispute for Dish and the plaintiffs. *See* Minute Entry 1/10/2017.

Dr. Krakauer and class counsel expended significant resources and time to prosecute the case, defend against Dish's many motions, and take the case to verdict. Dish's failure to take any action to protect itself against these allegedly duplicative claims also prevented the class from evaluating whether it had any way to protect its interests in the Illinois Action. *See Ga. Pac. Consumer Prod., LP v. Von Drehle Corp.*, 710 F.3d 527, 531 (4th Cir. 2013) (noting prejudice to other litigant when one litigant delays in raising res judicata claim). Thus Dish's acquiescence and consent "work[ed] a substantial injustice on the plaintiffs." *Clements*, 69 F.3d at 329; *see also* Restatement (Second) of Judgments § 26 cmt. j (noting defendant also waives his right to assert res judicata by making "an innocent misrepresentation [that] prevent[s] the plaintiff from including the entire claim in the original action"). This is especially so when an entirely different party brought the case on which the defendant relies, so that the plaintiffs would have no reason to think preclusion would apply to their damages claim. Dish should not "gain [a] tactical advantage" when it is the one who has changed its tune on the res judicata issue. *Matter of Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).

Dish contends that the waiver doctrine only applies when claims are split, not when claims are duplicative. Dish notes that in the usual waiver case, the plaintiff "splits" the claims when it brings a cause of action in one court and another cause of action stemming from the same occurrence or transaction in another court.

First, Dish's premise is incorrect: the claims are not duplicative and are different causes of action. "Duplicative claims include those in which there are no significant differences between the claims, parties, and available relief in the two suits." *Motley*

*Rice*, 518 F. Supp. 2d at 697; *see also I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986); *Cottle v. Bell*, No. 00-6367, 2000 WL 1144623, *1 (4th Cir. Aug. 14, 2000) (relying on *I.A. Durbin*). Count V in the Illinois Action arises under § 227(g), while the claims in this case arise under § 227(c)(5), and there are significant differences between the issues in the Illinois Action and the issues in this case, as Dish told the Court back in May of 2015. Doc. 82 at 6.[9] As discussed *infra*, the parties and the relief sought are also different. Thus, the consent-to-claim-splitting cases have direct application.

Even if Dish is correct that the claims and the parties are duplicative, that is no reason not to apply the waiver-by-acquiescence rule. Dish cites no cases supporting its contention that the waiver-by-acquiescence rule does not apply when claims in different lawsuits are allegedly duplicative, nor does Dish provide any principled reason that the rule should not operate in these circumstances. Indeed, the reasons underlying the consent-to-claim-splitting cases apply with more force when duplicative claims are presented: if the claims are identical or duplicative, a defendant has a <u>stronger</u> reason to avoid the litigation in the first place; and the courts and other parties have a <u>stronger</u> interest in preventing a litigant from benefiting from an about-face after significant resources have been incurred in what the litigant *post hoc* says was an unnecessary trial.

---

[9] For example, in the Illinois Action, the plaintiff States had to establish a "pattern or practice" of TCPA violations. *See supra* at 2-3. Dr. Krakauer did not need to establish this element under his § 227(c) claim. Doc. 293 at 8. Dr. Krakauer had to prove that he and each class member received more than one telephone call within any 12-month period in violation of the TCPA. *Id.* This was not an element of the § 227(g) claim in the Illinois Action.

Dish contends that it did not waive its res judicata defense because it raised the defense at the first reasonable opportunity after the Illinois Court entered final judgment. Waiver for failure to bring the defense after final judgment is a different issue from waiver by consent or acquiescence. A defendant can consent and thereby waive its res judicata defense before a final judgment is issued in the first case. *See, e.g.*, *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735 (9th Cir. 1988) (stating that defendant could not object to claims being split where both actions were pending in federal court without objection from defendant and defendant first raised claim-preclusion objection after judgment in one case). The cases Dish cites, Doc. 355 at 4-5, do not say otherwise.

"Any proper analysis of the preclusive effect of courts must keep . . . in mind" the principle that "[t]he course of litigation is determined, for the most part, by the actions of the litigants." *See Young-Henderson*, 945 F.2d at 774. Allowing litigants to delay objecting to dual proceedings until they receive a judgment in one proceeding "could only encourage mischief," *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003), which in this case would be a serious waste of court resources and unfairness to the opposing party.[10] Dish has waived its right to assert that the result in the Illinois Action is res judicata to the class members' damage claims.

---

[10] This case involved many thousands of telephone calls that were not at issue in the Illinois Action, and the claims arising from those calls are not duplicative of any claim in the Illinois Action as Dish concedes. Despite this concession, Dish nonetheless seeks to avoid liability for these non-duplicative calls by application of res judicata to Dr. Krakauer's claim, which Dish contends, should result in dismissal of every class member's claim. This, too, qualifies as mischief.

**C. Application of the Res Judicata Elements**

In the alternative, the Court concludes that Dish has not shown that it is entitled to the benefit of the res judicata doctrine. "[T]he application of res judicata requires a showing of three elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Young-Henderson*, 945 F.2d at 773.[11] Res judicata does not apply here because Dish has not shown an identity of parties or identity of the cause of action. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (noting that it is incumbent on the defendant to prove the res judicata defense).

**i.     Identity of the parties**

The plaintiffs in the Illinois Action as to Count V were governmental entities: the states of North Carolina, Ohio, Illinois and California. The plaintiffs in this case are individuals. The parties are not identical, and Dish does not contend otherwise. Res judicata can still apply, however, if the parties are in privity with each other. *See Taylor*, 553 U.S. at 893-95. Dish argues that there is privity here because the government entities virtually represented the interests of Dr. Krakauer's and the class.

"[P]rivity for purposes of res judicata … is determined on a case by case examination of the relationship and interests of the parties." *Weinberger v. Tucker*, 510 F.3d 486, 491-92 (4th Cir. 2007). Privity exists only if, at a minimum, "[t]he interests of

---

[11] The parties do not dispute that the June 5, 2017, decision in the Illinois Action was a final judgment on the merits, so the Court will address only the remaining two elements.

the nonparty and her representative are aligned, and either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900.[12] There is no contention here that the Illinois Court "took care to protect the interests" of the class,[13] so Dish must show both alignment of interests and that the states understood they were acting in a representative capacity. In addition, the Fourth Circuit applies virtual representation narrowly and will not bar "relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or the parties to the first suit are not accountable to the nonparties who file a subsequent suit." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005).

The interests of the class members in this case and of the plaintiff States in the Illinois Action are not aligned. Dr. Krakauer and the class members seek individual monetary relief payable to them for violations of their individual privacy rights. The plaintiff States in the Illinois Action sought injunctive relief and damages payable to the States, designed to protect the state population as a whole.[14] These are different interests.

---

[12] "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Taylor*, 553 U.S. at 889.

[13] The class members did not receive notice or the opportunity to opt-out of the Illinois Action, and Dish has not identified any mechanism established in the Illinois Action by which Dr. Krakauer or the class members could have protected their interests in obtaining individual damages. *See Taylor*, 553 U.S. at 900.

[14] Section 227(g) suits by states also serve the value of upholding public faith in the government's Registry. *Cf. United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 409 (4th Cir. 2013) (upholding civil penalties in the absence of economic harm against an excessive fine challenge, noting, *inter alia*, that the prevalence of the violations "shakes the public's faith in the government's competence").

*See Jones v. SEC*, 115 F.3d 1173, 1181-82 (4th Cir. 1997) (explaining that penalties to different entities for the same conduct are "serving separate interests"). Neither are the plaintiff States accountable to the class members. Dish has not identified any way that the class members can obtain payment for their damages from the judgment in the Illinois Action. For these reasons, there is no privity between the government entities in the Illinois Action and Dr. Krakauer and the class members.

The *parens patriae* doctrine Dish relies on does not support a different outcome. As the Illinois Court recognized, the plaintiff States were suing *in parens patriae* "to protect the well-being of each Plaintiff State's populace," Doc. 347-1 at 8, and the Court said nothing about protecting or advancing the individual rights of the recipients of the violative phone calls to recover damages. Indeed, a *parens patriae* suit is premised on harm to the state's quasi-sovereign interests, *see Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 258 (1972), not protection of individual rights. *See Jones*, 115 F.3d at 1180-81 (noting that privity does not exist unless the plaintiff in the former litigation "represents precisely the same legal right in respect to the subject matter involved").

The decision in *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014), cited by Dish, in fact undermines its argument. In that case, the Ninth Circuit reached the unsurprising conclusion that the state could not obtain "a duplicate recovery in the form of restitution" for individual citizens that received restitution awards in an earlier class action settlement where the state had notice of the settlement and did not object. *IntelliGender*, 771 F.3d at 1172. The opposite is true here—the class members will receive nothing from the Illinois Action and had no opportunity to object or opt-out.

Moreover, the *IntelliGender* court did <u>not</u> preclude the state from seeking civil penalties from the defendant, despite the previous award of damages to individuals based on the same conduct.  *Id.* at 1182.

The other *parens patriae* cases that Dish cites concerned individuals bringing claims for the protection of public resources like clean air and water, matters within the state's sovereign interests, not individual claims for money damages specific to the claimant as we have in this case.[15]  This case is more like *In re Exxon Valdez*, where the court refused to apply res judicata against individuals seeking monetary relief for personal property damage related to an oil spill based on a prior government settlement obtaining monetary relief for public resource damage due to the same spill.  270 F.3d 1215, 1227-28 (9th Cir. 2001).

Dish contends that the plaintiff States were acting in a representative capacity because in their motion for summary judgment they ask the Court, as part of its injunctive relief, "to require Dish to identify and fully fund a claims administrator … in order to identify and distribute damage awards to consumers in the [p]laintiff States who received calls that violated the TCPA."  Doc. 347-8 at 3.  The fact that during more than seven years of litigation, the plaintiff States only made one reference to compensation for the

---

[15]  *Alaska Sport Fishing Ass'n v. Exxon*, 34 F.3d 769, 774 (9th Cir. 1994); *Sierra Club v. Two Elk Generation Partners*, 646 F.3d 1258, 1268 (10th Cir. 2011); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743 (7th Cir. 2004).

victims of Dish's telemarketing violations—a request not made in the complaint—demonstrates that the States' interests are not aligned with the interests of the class.[16]

Dish also maintains that equitable considerations support application of res judicata because allowing both cases to proceed would amount to duplicative recovery for the same violative calls. Yet the TCPA authorizes damages to both the government and to an individual based in part on the defendant's same actions. Indeed, *Hawaii v. Standard Oil Co. of California*, cited by Dish, indicates that the government and private individuals can both recover in these circumstances "upon a clear expression of a congressional purpose to make it so," 405 U.S. at 264, which is what the TCPA provides. The TCPA did not foreclose, as other statutes have,[17] an individual's right to bring an action for damages when the government is pursuing the same action or vice versa. "While double liability for the same conduct does, in the abstract, offend a certain sense of fairness, our system tolerates it and, at times, even requires it." *Jones*, 115 F.3d at 1181. This is one of those times.[18]

### ii.   Identity of claims

---

[16] Dish has not identified any order in which the Illinois Court addressed this request. In the original complaint, Doc. 347-3, and the Third Amended Complaint, Doc. 347-4, the plaintiffs sought an award of damages to the States, not to the persons who received the calls in violation of the TCPA. Similarly, the final judgment issued in the Illinois Action requires Dish to pay the plaintiff States, not individuals. Doc. 347-1 at 458-76.

[17] *See, e.g.,* 29 U.S.C. §§ 216(b), 626(c)(1).

[18] The Illinois Court also rejected this argument, holding that "an act that violates multiple statutes may be liable for multiple awards of statutory damages and penalties." Doc. 347-1 at 445 (citing *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105-06 (11th Cir. 2015)).

As set forth *supra*, the application of res judicata also requires an identity of the causes of action in the two lawsuits. This begins with a requirement that the claims asserted in the two lawsuits arise out of the same transaction or series of transactions or the same core of operative facts. *Pueschel*, 369 F.3d at 355. The 10,208 calls that were asserted in this case and the Illinois Action are the same transaction.

That is not enough, however, to establish identity of claims. "[A] critical predicate for applying claim preclusion is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding." *Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 683 (4th Cir. 1994) (citing 18 C. Wright, A. Miller & E. Cooper, Fed. Prac. and Pro. § 4412 at 93-94 (1981)).[19] In other words, to have an identity of claims, a plaintiff must have had "'ample procedural means for fully developing the entire transaction in the one action.'" *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) (quoting Restatement (Second) of Judgments § 24(1) cmt. a).

Dish has not identified any mechanism by which Dr. Krakauer and the class members could have adjudicated their claims in the Illinois Action. The burden to prove a res judicata defense is on Dish, and the Court has no obligation to identify a rule or theory under which Dr. Krakauer and the class might have been able to add their personal claims for damages to the Illinois Action, much less to figure out whether they would

---

[19] *See also* 2 H. Black, Law of Judgments § 618, p. 744 (1891) (cited in *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 329 (2011) (Sotomayor, J., concurring) ("A judgment is not conclusive of any matter which, from the nature of the case, the form of action, or the character of the pleadings, could not have been adjudicated in the former suit.").

have been successful. *See generally Davenport v. N.C. Dept. of Transp.*, 3 F.3d 89, 97 n.8 (4th Cir. 1993) (noting that a "special mark of the unfairness of treating the claims at issue here as the same [for claim preclusion purposes] is the impossibility of truly effecting" a single unitary adjudication.).

Dish has not shown that Dr. Krakauer and the class members had "a fair opportunity to advance [their] 'same transaction' claims" in the Illinois Action. *Dionne*, 40 F.3d at 683. Therefore, there is no identity of claims with the Illinois Action.

## II.     Dr. Krakauer's Status as Class Representative

Because Dish has not satisfied all three elements of res judicata and in any event waived any res judicata defense, Dr. Krakauer's claims are not precluded. Dr. Krakauer remains an appropriate class representative and there is no reason to dismiss the case or decertify the class.

Even if the Court had decided that res judicata was applicable to Dr. Krakauer's claims, dismissal or decertification is not necessarily proper. A stay pending appeal of the final judgment in the Illinois Action[20] or substitution of another class representative might be more appropriate in these circumstances. *See* n. 10 *supra*.

## III.    Remittitur

Dish asks the Court to remit or reduce the treble damages awarded in this case as both excessive and duplicative in violation of due process. For the reasons stated below,

---

[20] When Dish was resisting collateral estoppel based on the Illinois action, it took a similar position. Doc. 172 at 26.

the treble damages award is neither excessive nor duplicative. *See also* Docs. 341 at 32-33, 338 at 28-30.

## A. Excessive Damages

"[T]he Due Process Clause imposes limits on 'grossly excessive' monetary penalties that go beyond what is necessary to vindicate the government's 'legitimate interests in punishment and deterrence.'" *Ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996)). Two "guideposts" govern whether statutory punitive damages violate due process: "(1) the degree of reprehensibility of the defendant's misconduct, [and] (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award."[21] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Considering these factors, the treble damages award in this case is not excessive in violation of due process.

Treble damages are congressionally prescribed for willful or knowing violations and "express[] Congress's judgment of the reprehensibility of the conduct at issue." *Ex rel. Drakeford*, 792 F.3d at 388. The treble damages here reflect the reprehensibility of a telemarketer's conduct in repeatedly invading the privacy of thousands of consumers on the Registry when that telemarketer has a long history of ignoring its responsibilities under federal law, repeatedly broke its promise to numerous state Attorney Generals that

---

[21] The Fourth Circuit has determined that a third guidepost is not relevant to the statutory penalties at issue here. *See Ex rel. Drakeford*, 792 F.3d at 388, n.19.

it would monitor and enforce compliance with the telemarketing laws, and willfully violated the TCPA thousands of times.[22]  *See* Doc. 338 at 10-12, 14-15, 17-20.  The treble damages are not "grossly excessive," but necessary for deterrence in light of Dish's actions.

Dish incorrectly characterizes the treble damages awarded as unlawfully punishing Dish based on Dish's past "compliance issues" with telemarketing laws.  Doc. 347 at 20.  Certainly the Court considered the evidence of Dish's historic and general non-compliance with telemarketing laws in evaluating whether the plaintiffs had met the statutory standard of "willful and knowing."  *See, e.g.*, *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (allowing evidence of harm to others when determining reprehensibility).  But the Court did not treble the damages to punish Dish for past or general behavior; rather, it imposed treble damages to deter and to give appropriate weight to the specific violations at issue in this case.  Doc. 338 at 28.

Dish's argument that no deterrence is necessary because the evidence demonstrating a need for deterrence is over a decade old is both inaccurate and nonsensical.  The evidence at trial was clear that Dish's non-compliance with the TCPA continued over the course of many years through the dates of the calls in this case.  *See,*

---

[22] Dish's argument that punitive damages should be limited because Dish's agent made the violative calls is not persuasive.  Doc. 355 at 16.  Assuming without deciding these damages are punitive, it is nonetheless appropriate to hold Dish liable because of its past actions in failing to appropriately monitor its agents despite known violations and its promise to monitor.  This theory of liability falls within the "strict limits on the extent to which an agent's misconduct may be imputed to the principal for purposes of awarding punitive damages."  *See Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 542 (1999).

*e.g.,* Doc. 338 at 10-14, 16-17 (summarizing complaints about non-compliance by Dish's agent beginning in 2004 and continuing through 2010).  Dish's past violations make Dish's violative conduct here more reprehensible and increase the need for deterrence.

Dish's assertion that there was no actual harm from its conduct and that the award is not necessary to deter because the Illinois Court already punished those actions, Doc. 347 at 20-21, is equally without merit.  The Court previously addressed Dish's argument that its conduct did not cause harm, *see* Doc. 338 at 30, and will not repeat its reasoning here.  The Illinois Court's judgment overwhelmingly addresses different statutory violations and conduct, *see infra* at 24-26, and the treble damages awarded in this case remain appropriate and indeed necessary to give due weight to the scope of the violations found in this case.  Moreover, Dish has presented no evidence to this Court that the size of the judgment in the Illinois Action will affect its financial situation in a way that will provide sufficient deterrence.  First, Dish does not say that it has paid the Illinois judgment, making any deterrence resulting from paying that award quite hypothetical at this point.  Second, according to the Illinois Court, Dish "is worth $28 billion[,] … has made net after tax profits of $700 million to 1.5 billion annually for the past several years," and "has repeatedly demonstrated an ability to make large one-time payments and still maintain operations."  Doc. 347-1 at 438-39.

"While the [Supreme] Court has been reluctant to fix a bright-line ratio that punitive damages cannot exceed for purposes of the Due Process Clause, it has suggested that 'an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.'"  *Ex rel. Drakeford*, 792 F.3d at 389

(citing *State Farm*, 538 U.S. at 425). The congressionally-authorized treble damages awarded here do not come close to this line. It is not "grossly excessive" to require Dish to pay treble damages for the more than 50,000 willful violations it committed, given the nature of the privacy interests repeatedly invaded and Dish's continuing disregard for those interests, the extent of the violations, and the need to advance reasonable governmental interests in deterring future violations. *Ex rel. Drakeford*, 792 F.3d at 389.

### B. Duplicative Damages

Dish contends that the treble damages imposed in this case "impermissibly duplicate the Illinois Judgment, piling a potentially massive penalty on top of the $280 million the district court [in Illinois] imposed on the same generalized basis and for the same overarching reasons." Doc. 347 at 18. This argument has little merit because the treble damages awarded in this case are not duplicative of the judgment in the Illinois Action in any meaningful way.

First, there is only minimal overlap between the claims in the Illinois Action and the claims in this case. The judgment in the Illinois Action found that Dish violated two other federal statutes and analogous state statutes, and approximately $196 million of the $280 million judgment in the Illinois Action is based on violations of these other statutes. *See supra* at 3-4. These violations were based on calls made to the Registry before May 2010, calls made to numbers on Dish's and its agent's internal do not call lists, prerecorded "abandoned" calls that violated Federal Trade Commission Rules, calls made to numbers on state do not call lists, and calls considered unfair business practices. *See* Doc. 347-1 at 273-357, 379-428. Little if any evidence supporting these violations was

24

before this Court and the Court did not consider these violations when it decided to impose treble damages.

Second, the TPCA claims have only minimal overlap. This case concerned calls made by only one Dish retailer, SSN, while the Illinois case concerned calls made by five additional retailers and concerned much more widespread and systemic TCPA violations than were before the Court in this case. *See, e.g.*, Doc. 347-1 at 111-46 (discussing relationship with other retailers), at 368-73 (prerecorded call violations), at 359-60 (2003 to 2007 calls), at 361-62 (calls in violation of internal registries). For one of the TCPA claims, the Illinois Court found Dish liable for 13,556,007 prerecorded calls made in violation of the TCPA. Doc. 347-1 at 424-25. Approximately 83% of the $84 million TCPA damages award was based on prerecorded calls, *see* Doc. 347-1 at 425, which were not at issue in this case and result in no overlap.

Third, there is minimal overlap between the non-prerecorded calls that were addressed in the Illinois Action and the calls in this case. Dish alleges that 10,208 of those calls—less than one percent of the non-prerecorded calls at issue in the Illinois Action[23]—were also at issue in this case. Going the other way, many calls at issue in this case were not before the Illinois Court at all, so the judgment in the Illinois Action does not take those violations into account.

Fourth, the purpose of the damages award in the Illinois Action is not the same as the purpose behind the treble damages awarded in this case. In this case, the Court

---

[23]  The Illinois Court found Dish liable for 2,651,957 non-prerecorded calls made in violation of the TCPA. Doc. 347-1 at 367.

awarded treble damages "to deter Dish from future violations," "to give appropriate weight to the scope of the violations," Doc. 338 at 28, and "to emphasize the seriousness of such statutory violations." *Id.* at 29. The Illinois Court did not address deterrence in setting damages. *See, e.g.*, Doc. 347-1 at 378-79. Rather, the Illinois Court imposed what it considered to be liquidated damages. Doc. 347-1 at 373. It is also apparent that the Illinois Court reduced the TCPA damages award because of the amount of damages it awarded for Dish's violations of other statutes not at issue in this case. Doc. 347-1 at 378-79. It would be a bit much to twice reduce Dish's obligation to pay TCPA damages because it has been found to have violated many other laws millions of times.

## CONCLUSION

Dish waived its right to assert res judicata in this case and in any event has failed to establish that it applies. Therefore, it is not entitled to judgment as a matter of law based on the final decision in the Illinois Action. The treble damages awarded are neither excessive nor duplicative in any meaningful way. Therefore, it is not entitled to remittitur. Dish's motion will be denied.

It is **ORDERED** that the defendant DISH Network's motion for judgment as a matter of law and remittitur, Doc. 346, is **DENIED**.

This the 3rd day of October, 2017.

UNITED STATES DISTRICT JUDGE