IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

v.                                         Civil Action No. 1:14-cv-00333-CCE-JEP

DISH NETWORK, L.L.C.,

Defendant.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT/DISBURSEMENT OF AWARD

### Summary

In its July 27, 2017 Order, the Court invited a motion for entry of judgment in favor of "any group of class members who are identified fully and without contradiction in the existing data." (*See Memorandum Opinion & Order,* ECF No. 351 at 16). The Court is also considering Plaintiff's proposed judgment in favor of the entire class, which would require subsequent motions to disburse awards. Consistent with either possible outcome, Plaintiff submits the attached motion and supporting declarations identifying class members whose entitlement to a damages award, in the Court's words, "cannot reasonably be disputed." (*Id.* at 19).

DISH has disregarded the July 27 Order. Rather than looking for inconsistencies in the existing class member data as the Court directed, DISH obtained data of indeterminate date ranges from three new sources, dumped it into the existing data, and used the new conglomeration to try to derail the group judgment process. The result?

DISH now contests the identification of 98% of the names on Plaintiff's list – *including Dr. Krakauer,* who has lived at the same address for 30 years. By these actions, DISH has effectively rewritten the rules for consideration of group judgment, and granted itself the individualized claim process the Court has denied. (*Id.* at 20-21).

DISH did this at its peril; the Court has warned DISH that its participation in the claims administration process is conditioned on reasonableness and good behavior. In this exercise, DISH has demonstrated its disinterest or inability to meet that standard. Accordingly, the Court should reject DISH's objections and grant the Plaintiff's motion for judgment with respect to the class members identified in Exhibit 1. Alternatively, if the Court adopts the Plaintiff's proposed judgment order, Plaintiff requests the Court authorize disbursement of the awarded damages to each identified class member.

## Argument

### A. Exhibit 1 identifies 11,471 class members who should receive payments.

Exhibit 1 contains a list of "class members who are identified fully and without contradiction among the existing data." (Decl. of A. Verkhovskaya, attached as Exhibit 2 at ¶ 1). It was prepared under the direction of Anya Verkhovskaya, who directed class notice efforts and testified at trial as an expert in data management and analysis.

Exhibit 1 is divided into two sub-groups, both of which satisfy the Court's criteria. Group 1-A includes 9,609 class members who are identified fully and without contradiction among two or more of the data sources used in effectuating class notice. (*Id.* ¶¶ 39-40). Group 1-B includes 1,862 class members who are identified fully and

2

without contradiction, but whose names were found on only one of the data platforms used to effectuate class notice. (*Id.* ¶¶ 50-52).

Ms. Verkhovskaya's declaration details the data and methodology used to create these lists. Plaintiff respectfully requests an order entering judgment in favor of or disbursing the jury's award to these 11,471 members of the class.

### B. In contravention of the Court's Order, DISH's objections are based on new, unexplained, and dubiously relevant data sources.

The Court's Order outlining the claims administration process stated unambiguously that it would consider entry of a group judgment based on the "existing data"; *i.e.*, the data used to effectuate class notice. During the meet and confer process, however, DISH has indicated that it will challenge as many as 98% of the class members identified in Exhibit 1 based on new data purchased specifically for this purpose. Moreover, DISH has declined to provide critical information about its new data sources, including the date ranges for the allegedly contradictory contact information—meaning neither the Plaintiff nor the Court can determine whether this new data has any relevance at all for identifying class members during the class period.[1]

---

[1] DISH has claimed its use of new data is "consistent with Plaintiff's use of new data sources (*e.g.,* Experian, NCOA) to supplement the [existing] data." (Email from J. Ewald to J. Barrett, Oct. 31, 2017, attached as Exhibit 3). Plaintiff has used no "new data sources." What DISH claims is "new" is nothing more than USPS National Change of Address data that the notice administrator obtained more than a year-and-a-half ago to update and standardize class member addresses. Providing DISH with old data files used to effectuate notice does not give DISH license to disrupt the group judgment process by unilaterally injecting new data sources into the mix.

3

DISH's post-trial injection of new data not only contravenes the Court's directive to use "existing data," but also violates the Court's rules regarding DISH's conditional participation in the claims administration process. In its July 27 Order, the Court cautioned that it would "allow DISH to have some input in the claims administration process" only "[s]o long as DISH's participation is helpful to confirm identification of class members, does not delay the proceedings, and is not obstructive." (ECF No. 351 at 11). DISH's conduct here—its election to disregard the Court's instructions and use unauthorized new data to challenge nearly every name in the Plaintiff's proposed group judgment—is not helpful to confirm the identity of class members, delays the proceedings, and amounts to obstruction.[2]

Given DISH's default due to its disregard of the Court's processes, the only competent evidence of the identity of class members is Plaintiff's Exhibit 1.[3]

### C. DISH's challenges to class member identity are unreasonable; many are absurd.

Despite the Court's finding that there are "likely many persons whose membership in the class . . . cannot reasonably be disputed," Dish finds itself unable to agree on all but

---

[2] The Court also warned that "DISH's conduct during the claims administration process" would also influence the Court's decision on how to dispose of unclaimed funds, an issue the Plaintiff has asked the Court to resolve in conjunction with his proposed judgment in favor of the entire class. (*See* ECF No. 351 at 24).

[3] Further, the Court would be justified in barring DISH from further participation in the claims administration process. The Court has noted that it too is "interested in insuring that only class members receive the damages awarded by the jury." (ECF No. 351 at 10). Plaintiff respectfully submits that paying the class members in Exhibit 1, with the assistance of the Court's designated Claims Administrator, should satisfy those concerns.

4

about 2% of the proposed class members. (*See* ECF No. 351 at 19). Incredibly, DISH has even refused to agree that the named Plaintiff—who testified to his address at trial—has been properly identified.

Yes, Dr. Krakauer himself appears among those whom DISH contends are not fully identified in the existing data. DISH contends that Dr. Krakauer's identity is in doubt because its new data associates "Janet" and "Elizabeth" Krakauer with the Plaintiff's residential phone number. This is unremarkable—Janet is Dr. Krakauer's late wife, who passed away in 2006, and Elizabeth is Dr. Krakauer's mother, for whom he provided care prior to her death in 2006. (Decl. of T. Krakauer ¶¶ 14-16, attached as Exhibit 4). Not only does this evidence fail to contradict Dr. Krakauer's identification—indeed, "the existence of a household or familial relationship only confirms the accuracy of the address" (Ex. 2 ¶ 31)—it also demonstrates that DISH's challenges rely on old, irrelevant data that goes well beyond the class period. The same goes for DISH's challenge based on a handful of allegedly contradictory addresses, none of which Dr. Krakauer has lived at in nearly 30 years. (Ex. 4 ¶ 17).

Other challenges are equally unimpressive. In DISH's view, it is unreasonable to conclude that an "A▮▮▮ Q▮▮▮▮▮" listed in the Five9 data is the same person as the "A▮▮▮▮▮ Q▮▮▮▮▮" that Lexis Nexis identifies with the same phone number. (*Id.* at ¶ 24-25). It is apparently unlikely that "B▮▮▮t" is just a misspelling of "B▮▮▮▮t." (*Id.* at ¶ 37). And, according to DISH, the Court cannot conclude that "El▮▮ A▮▮▮▮▮▮" and "V▮▮▮ A▮▮▮▮▮▮" who are associated with the same phone number, are members of the same household. (*Id.* at ¶ 30).

5

There are many similar challenges based on similarly insubstantial data—too many to address here. And that is the point. By ignoring the Court's instructions to work collaboratively on a group judgment and instead using new data to challenge thousands of class member identities that are not reasonably in dispute, DISH is attempting to grant itself the individual, claim-by-claim process that the Court denied.

## Conclusion

For these reasons, Plaintiff respectfully requests that the Court enter judgment or authorize disbursal of the jury's award to the 11,471 class members identified in Exhibit 1.

**Respectfully submitted,**

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

6

/s/ Matthew P. McCue_____
Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

## CERTIFICATE OF SERVICE

  I hereby certify that on November 20, 2017, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

              /s/ John W. Barrett
              John W. Barrett