# Exhibit 2

# REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER, on behalf of a class of persons similarly situated,

Plaintiff,

v.

Civil Action No. 1:14-cv-00333

DISH NETWORK, L.L.C.,

Defendant.

**DECLARATION OF ANYA VERKHOVSKAYA REGARDING THE IDENTIFICATION OF CLASS MEMBERS APPROPRIATE FOR ENTRY OF COMMON JUDGMENT**

I, Anya Verkhovskaya, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. The purpose of this Declaration is to provide the Court with a list, as the Court requested, of all class members who "are identified fully and without contradiction in the existing data."

2. I am the Managing Director of DRRT. With offices in Miami, Paris, London and Frankfurt, DRRT offers, among other services, litigation support services with a focus on data management. I have more than 17 years of experience preparing, coordinating, and effectuating plans of allocation in class action settlements. As I have described in prior filings and testimony, I also have nearly 20 years of experience identifying and locating class members.

3. I have previously testified in this case as an expert in the field of data

analysis at both class certification and at trial. The matters and opinions stated herein are based upon my personal knowledge, experience, and information reasonably available to me, and I would testify competently thereto if called as a witness.

## SUMMARY OF NOTICE EFFECTUATION

4. On February 9, 2016, the Court approved the Plaintiff's notice plan and directed A.B. Data to provide notice to the class.[1]

5. I began with the Five9 data, which was the original data used by Dish's agent to make the telephone calls at issue in this matter. All of the telephone numbers for class members originated in the Five9 data.

6. The complete names and addresses of many, but not all, class members also originated in the Five9 data.

7. In order to supplement that data when it was incomplete, I relied upon third-party data sources including LexisNexis and Microbilt, reputable data vendors with broad access to data sources that can identify consumers by name and address using their telephone number.

8. This data was produced to DISH in response to its informal requests.

9. When mailed notices were returned undeliverable, I used Experian to locate updated addresses. Rather than utilizing a batch process or creating a new data file, the administration team would simply query the Experian interface and enter the information to the notice database if any updates were located.

10. On February 17, 2016, I directed notice to class members informing them

[1] A.B. Data was my employer at this time; I am now employed by DRRT.

that this case had been certified to proceed to trial as a class action. Of these notices, 75.2% were successfully delivered to class members.

## CLASS MEMBERS WHO ARE IDENTIFIED FULLY AND WITHOUT CONTRADICTION IN THE EXISTING DATA

11. I have been asked to provide the Court with the identity of those class members who have been "identified fully and without contradiction in the existing data," and who received notice of the Court's class certification decision. (*See Memorandum Opinion & Order*, July 27, 2017, ECF No. 351 at 11).

12. To generate this list, I started with those class members to whom the United States Postal Service (USPS) successfully delivered notice.

13. The fact that notice was successfully delivered is an indication that the class member was properly identified. If a class member identified on the notice did not live at the listed address, it is likely that the notice would have been returned by the USPS or by the current resident.

14. In this case, 8,062 notices were returned as undeliverable. In those instances, I conducted additional research to identify updated addresses for those class members and the notice was re-mailed.

15. Exhibit 1 is a spreadsheet identifying those class members who are identified fully and without contradiction in the existing data and who received notice of the Court's class certification decision.

16. The spreadsheet is divided into two groups: Group 1-A and Group 1-B.

17. Group 1-A includes class members:

- Whose names were found in the Five9 data that was used by Dish's agent (SSN) to make the illegal telemarketing calls at issue;

- Whose telephone numbers were found in the Five9 data;

- Whose names were then confirmed as accurate via a reputable data source (Lexis Nexis or Microbilt);

- Whose addresses were updated via the National Change of Address database via the United States Postal Service; and

- Who received notice of the Court's class certification decision.

18. Group 1-B includes class members:

- Whose names were found in the either Five9 data or, where Five9 data was missing, in either the LexisNexis or Microbilt data;

- Whose telephone numbers were found in the Five9 data;

- Whose addresses were updated via the National Change of Address database; and

- Who received notice of the Court's class certification decision.

19. Again, each class member in Exhibit 1 is, as the Court requested, "fully identified without contradiction in the existing data." The difference is that the identities of class members in Group 1-A are consistent and uncontradicted across more than one data platform, while the identities of class members in Group 1-B were found on only one data platform, but are uncontradicted by any other data. Class members in both groups received mailed notice.

## EXPLANATION OF THE DATA AND METHODOLOGY BEHIND GROUP 1-A

20. All of the names and telephone numbers of the consumers listed in Group 1-A were originally obtained, from the Five9 data. In other words, the names listed in

Group 1-A are the names of the class members whom Dish's agent was trying to reach.

21. The analysis underlying my identification of these class members is set forth in a tabbed excel spread sheet entitled "Group 1-A." To guide the Court in its review of my work, I explain the significance of the Columns within Group 1-A as follows:

- Column A lists the name of the class member.
- Column B is a Notice ID number that A.B. Data assigned to each class member.
- Column C is the number of times each class member was called.
- Column D reflects the value of the class member's claim.
- Column E confirms that the class member's name came from Five 9 data.
- Column F identifies the source of the class member's address.
- Column G lists the telephone number called by SSN.
- Column H indicates whether DISH challenges the identification of the class member.[2]
- Column I indicates whether Dish is challenging the identification of the class member based on new data.[3]
- Columns J-N list the class member's addresses, the accuracy of which was confirmed using the USPS National Change of Address Database.
- Column O contains Lexis Nexis name data used to confirm the name of the class member in Column A.
- Column P contains Microbilt name data used to confirm the name of the class member in Column A.
- Column Q indicates the mailing Status of class notice. The entry "Mail1" means that the class member identified in Column A received notice at the address listed in Columns J-N. The entry "Remail" means that the class member received the re-mailed notice.

[2] Dish has indicated that it intends to challenge 98% of the class members I have identified as class members who have been consistently identified across the data and who received notice.

[3] In contrast to the Court's request for a motion based on "existing data," many of Dish's challenges are based on new data purchased from Lexis, Microbilt and Transunion. This data was not produced in discovery and was not used to effectuate the Court-approved notice process. Further, Dish has not disclosed the date range for the inputs of the new data—making it impossible to assess whether the data has any relevance for identification of class members during the class period.

- Columns R-U relate to re-mailings. If the notice to the original address listed in Columns J-N was returned, A.B. Data then performed additional research and notice was sent to the new address at which it was received. Re-mailing data is reflected in Columns R-U.

22. The following examples may assist the Court in understanding how the data described above was used to select those class members who were “identified fully and without contradiction in the existing data.”

**Example 1**

**Group 1-A: A[redacted] Q[redacted]s**[4]

23. In most instances, the first and last name of the class members listed in Ex. 1-A are identical or virtually identical across the data sources.

24. For example, the Five9 data identified class member [redacted] (Column A & E) as associated with the telephone number [redacted] (Column G), and residing at [redacted] (Columns J-N). Mr. Q[redacted] received notice (Column Q).

25. LexisNexis data (Column O) also identified this class member as “[redacted] Q[redacted]

26. It is very likely that this is the same person.

27. Accordingly, I included Mr. Q[redacted] in Group 1-A as a class member “identified fully and without contradiction in the existing data.”

28. There are many similar instances throughout Group 1 where non-substantive variations in the name of the class member do not change the fact that the

---

[4] Dish objects to my identification of this class member (Column H).

class member has been identified fully and without contradiction in the existing data.

**Example 2**

**Group 1-A: E[redacted] A[redacted]**[5]

29. In some instances, the data also identifies a person with a different first name but the same last name as associated with the phone number in question.

30. For example, the Five9 data identified class member [redacted] (Column A & E) as associated with the telephone number [redacted] (Column G), and residing at [redacted] (Columns J-N). Ms. A[redacted] received notice (Column Q). Lexis data also associated "[redacted]" with the telephone number in question (Column O).

31. It is very likely that there is a household or familial relationship between E[redacted] and V[redacted]. It is commonplace that third-party data providers frequently will associate household members with the same telephone number. I also note that the language of the Court-approved claim form asks consumers to confirm whether "you ***or someone in your household*** [had] this telephone number between May 11, 2010 and August 1, 2011" (emphasis added). The existence of a familial relationship only confirms the accuracy of the address of the class member.

32. There are many similar instances throughout Group 1 where minor name variations may occur that do not change the fact that the name of the class member has been identified fully and without contradiction in the existing data.

---

[5] Dish objects to my identification of this class member (Column H).

**Example 3**

**Group 1-A: J[redacted] A[redacted][6]**

33. In some instances, the first and last name of the class member as it appears in the Five9 data are reversed in the LexisNexis data.

34. For example, the Five9 data identified class member [redacted] (Column A & E) as associated with the phone number [redacted] (Column G) and residing at [redacted] (Columns J-N). Mr. A[redacted] received notice (Column Q). Lexis Nexis data also associated "[redacted]" as associated with the phone number in question (Column O). In my experience in the field of class action administration, first and last names (especially uncommon names) are commonly reversed as a result of human error. Similarly, individuals may be known by different iterations of their first name (e.g., [redacted]). This does not impact my opinion that these class members likely are one in the same.

35. There are many similar instances throughout Group 1 where obvious minor data entry errors have occurred that, in my opinion, do not change the fact that the name of the class member has been identified fully and without contradiction in the existing data.

**Example 4**

**Group 1-A: T[redacted] B[redacted][7]**

36. Finally, in some instances the name of the class member is slightly misspelled across the data.

---

[6] Dish objects to my identification of this class member.
[7] Dish objects to my identification of this class member.

37. For example, the Five9 data identified class member [redacted] (Columns A & E) as associated with the phone number [redacted] (Column G). Mr. B[redacted] received notice at [redacted] (Columns J-N and Q). Lexis data also associated "[redacted]" as associated with the phone number in question (Column O). In my professional experience as a recognized expert in the field of class action administration, I can attest that due to human data entry error, names are commonly misspelled in slight ways across the data. This does not impact my opinion that a household member of [redacted], the class member listed in Column A, has been properly identified.

38. There are many similar instances throughout Group 1 where minor data entry errors have occurred that do not change the fact that the name of the class member has been identified fully and without contradiction in the existing data.

**Group 1-A Conclusion**

39. In total, I identified **9,609** class members in Ex. 1-A. The telephone numbers and names of all of these class members were found in the original Five9 data. The addresses for these class members was found either in the Five9 data or in other reputable data sources during the class notice process. All of the addresses for these class members were updated/formatted utilizing the NCOA database. All of the class members identified in Ex. 1-A received notice initially or after the re-mailing process.

40. Based on more than 17 years of experience in the field of data analysis and class action administration, I believe that the class members included in Ex. 1-A are identified fully and without contradiction in the existing data.

## EXPLANATION OF THE DATA AND METHODOLOGY BEHIND GROUP 1-B

41. The analysis used to identify the class members identified in Group 1-B differs slightly from the analysis used to identify the class members identified and explained above in Group 1-A.

42. As detailed above, the names of the class members in Group 1-A were identical or consistent ***across*** various data platforms. The names of the class members in Group 1-B, however, were found in only one data platform (Five 9, Lexis Nexis or Microbilt), but are uncontradicted by any other existing data.

43. Almost all of the names of class members in Group 1-B were also found in the Five9 data. Again, these were the names of the individuals that Dish's agent, SSN, was trying to call. In a small number of instances, the Five9 data did not include the names of some class members listed in Group 1-B. In these instances, I used third-party data to identify class members.

44. The analysis underlying my identification of these class members is set forth in a tabbed excel spread sheet entitled "Group 1-B." To guide the Court in its review of my work, I explain the significance of the Columns within Group 1-B as follows:

- Column A lists the name of the class member.
- Column B is a Notice ID number that A.B. Data assigned to each class member.
- Column C is the number of times each class member was called.
- Column D reflects the value of each class member's claim.

- Column E identifies the source from which the class member's name was derived.[8]
- Column F lists the telephone number called by SSN.
- Column G indicates whether Dish is challenging the identification of the class member.
- Column H indicates whether Dish is challenging the identification of the class member based on new data.
- Columns I-M list the class members' addresses, the accuracy of which was confirmed using the USPS National Change of Address Database.
- Column N contains Lexis Nexis name data used to identify the class member if that data was not available via Five9.
- Column O contains Microbilt name data used to identify the class member if that data was not available via Five9.
- Column P indicates the mailing status of class notice. The entry "Mail1" means that the class member identified in Column A received notice at the address listed on Columns I-M.
- Columns Q-T relate to re-mailings. If the notice to the original address listed in Columns I-M was returned, AB Data then performed additional research and notice was sent to the new address at which it was received. Re-mailing data is reflected in Columns Q-T.

45. The following examples may assist the Court in understanding how the data described above was used to select those class members who were "identified fully and without contradiction in the existing data."

**Example 1**

**Group 1-B: A[redacted] S[redacted]r**[9]

46. [redacted] was identified in the Five9 data as a class member (Columns A & E) and associated with the telephone number [redacted] (Column F). Mr. [redacted] was called by SSN on two occasions (Column C). Five9 data also indicated that Mr. S[redacted] resides at [redacted] (Columns I-M). Mr.

[8] As is made apparent by Column E, the vast majority of the names of class members listed in Group 1-B came from Five9 data.

[9] Dish objects to my identification of this class member.

S[redacted]er received notice (Column P).

47. Out of all the data I used for class notice (Five9, Lexis, Microbilt) I did not find any data that contradicted the identification by name and address of Mr. S[redacted]r as a class member.

**Example 2**

**Group 1-B: A[redacted] J[redacted]z**[10]

48. A[redacted] J[redacted] was identified in the Lexis data as a class member (Columns A &E) and associated with the telephone number [redacted] (Column F). Mr. J[redacted] was called by SSN on two occasions (Column C). Lexis data also indicated that Mr. J[redacted] resides at [redacted] (Columns I-M). Mr. [redacted] received notice (Column P). Mr. [redacted] a good example of a class member whose phone number was found in the Five9 data, but the data was missing his name or address. The name and addresses associated with the phone number called by SSN was found using Lexis data.

49. Out of all the data used for class notice (Five9, Lexis, Microbilt), none contradicted the identification by name and address of Mr. [redacted] a class member.

**Group 1-B Conclusion**

50. In total, I identified **1,862** class members in Ex. 1-B.

51. The telephone numbers of these class members were found in the original Five9 data. The names and addresses for these class members were either found in the Five9 data or in reputable third-part data sources during the class notice process. All of the addresses for these class members were updated/formatted utilizing the NCOA

[10] Dish objects to my identification of this class member.

database. All of the class members identified in Ex. 1-B received notice initially or after the re-mailing process.

52. Based on more than 17 years of experience in the field of data analysis and class action administration, I believe that class members included in Ex. 1-B are identified fully and without contradiction in the existing data.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 20, 2017

/s/ Anya Verkhovskaya

Anya Verkhovskaya