# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS KRAKAUER, | ) | CASE NO. 1:14-CV-00333-CCE-JEP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| DISH NETWORK LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DISH NETWORK L.L.C.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR JUDGMENT/DISBURSEMENT OF AWARD**

## PRELIMINARY STATEMENT

The Court invited Plaintiff to move for summary judgment in favor of class members "who are identified fully and consistently in existing data, for whom there is no contradictory information, and as to whom the evidence is the same." Memorandum Opinion and Order (Doc. 351) ("Order") at 19. Instead of making such a summary judgment showing, Plaintiff asks the Court to enter judgment and summarily award millions of dollars to 11,471 individuals (the "Judgment List") who indisputably are *not* "identified fully and consistently in existing data." Plaintiff requests judgment notwithstanding that different, contradictory names are associated with the same telephone numbers. Plaintiff also requests judgment notwithstanding that incomplete names are associated with certain telephone numbers, and seeks judgment for names that are only identified in a single data source and not "consistently in the data."[1]

Plaintiff has not come close to meeting his burden to show that any class members are "identified fully and consistently in existing data." DISH's analysis shows that the existing data is so rife with inconsistencies that it cannot be relied upon to accurately determine class membership as a matter of law. For those reasons, Plaintiff's motion for judgment (the "Motion") should be denied in its entirety. The claims administration process that already has begun should run its course prior to entry of judgment in favor of

---

[1] DISH offers specific evidence countering Plaintiff's contention that the ostensible class members on the Judgment List are "identified fully and consistently in the existing data" for all but 221 of the 11,471 individuals listed. For those 221 numbers, DISH maintains general objections to relying upon this data to determine class membership. *See infra* at 23-24.

1

any absent class members. It is only through that claims process that the Court might "weed out any unjustified claims" to the substantial sums awarded for the telephone calls in this case. Doc. 351 at 10. As the Court is aware, the minimum recovery for each class member is $2,400 (minus expenses and attorney's fees). Numerous purported class members in this group of 11,471 stand to recover over $10,000. Reliance on Plaintiff's flawed data analysis instead of a claims process could very well result in millions of dollars ending up with the wrong individuals.

The Court has made plain that it is "interested in insuring that only class members receive the damages awarded by the jury." Doc. 351 at 10. DISH's analysis of the Judgment List shows that Plaintiff and his expert, Anya Verkhovskaya, have not taken care to insure that the correct individuals are identified as subscribers to the telephone numbers that Satellite Systems Network ("SSN") called between 2010 and 2011 or the telephone call recipients.

For example, Plaintiff requests that the Court award $21,600 to ███████ because Plaintiff claims that he is "identified fully and without contradiction in the existing data" as being associated with the telephone number ███████. That assertion is patently wrong. While Ms. Verkhovskaya's LexisNexis data identifies ███████ as associated with that telephone number, that same LexisNexis data also identifies ███████ as associated with the same telephone number. Exhibit 1, Declaration of Debra Aron ("Aron Decl.") at ¶¶ 74-76. Ms. Verkhovskaya selected ███████ for a $21,600 payment over ███████ and incorrectly represents to the Court

2

that there is no conflict in the existing data. This undisclosed conflict is not an isolated example; it is the norm for Ms. Verkhovskaya's analysis. Indeed, there are over 4,000 instances where Ms. Verkhovskaya ignored contradictory identifying information within her own LexisNexis data set. Aron Decl. at Table 4. And, there are even more instances where Ms. Verkhovskaya ignored contradictory identifying information within the other data sources that she endorsed as reliable sources to identify class members—Microbilt, Experian and Transunion—and which the Court specifically ordered that the class administrator in this case could rely upon to ascertain class member identity.

Moreover, Plaintiff's argument that DISH unreasonably contests Dr. Krakauer's membership in the class is misguided. Obviously, DISH does not contest that Dr. Krakauer has established entitlement to relief in connection with the jury's verdict; DISH moved for Rule 54(b) judgment on Dr. Krakauer's individual claim. DISH mistakenly included Dr. Krakauer within its specific objections to class membership, which was based on inconsistencies in the data, and Plaintiff did not raise the issue during the meet-and-confer period. That oversight, however, only highlights the fact that if one were to rely solely on the data that Ms. Verkhovskaya endorses for determining class membership, there would be significant uncertainty as to whether Dr. Krakauer, his wife or his mother might be the right class member. We know that Dr. Krakauer is the telephone subscriber and a telephone call recipient based upon his trial testimony. If he had not testified, the data sources show that any one of three different people could be class members. In Dr. Krakauer's four-page declaration, he explains that his wife and

mother are both validly associated with his telephone number, but that telephone number actually belongs to him. Doc. 382-4. In the absence of Dr. Krakauer's trial testimony and declaration, there would be no way to determine which one of those three individuals might belong in the class.

As set forth in more detail below, Plaintiff has not met his burden on this Motion, and the Motion should be denied in its entirety. The Court should rely on the claims process already in progress to resolve class membership.

## RELEVANT PROCEDURAL HISTORY

Plaintiff's position on class member identities has shifted over time, as Plaintiff has picked and chosen among data sets as it suits him. For purposes of initially identifying ostensible class members for class notice purposes, Plaintiff's expert, Ms. Verkhovskaya, prioritized her reliance on certain data sources using a waterfall approach.

### Five9 Data Source

First, she relied on the names and addresses within the Five9 call records. In any situation where names and addresses conflicted, Ms. Verkhovskaya used names from the Five9 call records for the class notice postcards. Doc. 335-1 at ¶ 14. As Plaintiff's counsel acknowledged, the Five9 names and addresses represent lead data that SSN purchased from unknown sources, and is likely the least reliable data source of all. Sept. 8, 2016 Hr'g Tr. at 52:15-24 ("Five9 data was basically the lead information . . . Those are leads. There are companies out there that sell sales leads, large bits of data."); Doc.

133-1 at ¶ 5 ("A.B. Data believes that the LexisNexis and Microbilt data is more reliable than the data available from Five9.").

### LexisNexis Data Source

To the extent that the Five9 call records did not have a name and address associated with a telephone number, Ms. Verkhovskaya used names and addresses she obtained from LexisNexis. Doc. 382-2 at ¶ 7. However, LexisNexis itself disclaims that its data will show the subscriber to a telephone number. Doc. 56-13 at ¶ 7("The LexisNexis data does not purport to identify the subscriber to the telephone number."). And the names and addresses in the LexisNexis data often conflicted with the names and addresses in the Five9 call records. Sept. 8, 2016 Hr'g Tr. at 52:15-24 (Mr. Barrett: "that's not cross-checked, to our knowledge against LexisNexis . . . . So, there are some discrepancies in the names between the Five9 data and the LexisNexis data, which isn't surprising."). Moreover, the LexisNexis data itself was internally inconsistent, at times showing multiple names associated with a single telephone number. Doc. 335-1 at ¶ 16.

### Microbilt Data Source

To the extent that LexisNexis did not have name or address information for a telephone number, then Ms. Verkhovskaya used Microbilt as a data source for class notice. Doc. 382-2 at ¶ 7. Ms. Verkhovskaya, however, only pulled Microbilt data for numbers that had no identifying information in Five9 or LexisNexis. Doc. 126 at 4.

This is the process Plaintiff used for the first round of class notice. However, approximately 7,928 postcards came back as undeliverable. Ex. 2, Declaration of John L.

5

Ewald (the "Ewald Decl."), Ex. B. (Emails between Counsel). Ms. Verkhovskaya re-mailed 1,167 postcards, many to the same name and address as before. Doc. 335-1 at ¶ 7.

### Experian Data Source

Ms. Verkhovskaya then proceeded to undertake two additional remailings, resulting in a total of four mailings. Ewald Decl., Ex. B (Emails between Counsel). Through the meet-and-confer process leading up to Plaintiff's latest Motion, DISH became aware that, for purposes of those additional mailings, Ms. Verkhovskaya relied upon additional data from both Experian and the National Change of Address ("NCOA") databases, a fact confirmed by the declaration she submitted in connection with this Motion. Doc. 382-2 at ¶¶ 9, 39; Ewald Decl., Ex. A (Emails between Counsel); Doc. 382-2. When DISH requested the Experian data upon which Plaintiff relied, Plaintiff's counsel responded that no records of the output from Experian had been saved and therefore that source data could not be provided to DISH. Ewald Decl., Ex. A at 1 (Emails between Counsel).

### Plaintiff's Proposed Post-Trial Procedure Includes Use of TransUnion and Experian Data Sources

After trial, the Court requested briefing from the parties on post-trial procedures. Doc. 328. In that briefing, Plaintiff proposed that individuals on the final class notice list would be mailed checks. For the remainder of phone numbers, where the final class notice list was still missing identifying information or where the last postcard sent was returned as undeliverable, Plaintiff proposed that checks be mailed to individuals who might be identified using Experian. Doc. 331-1 at ¶ 7; Doc. 337-1 at ¶¶ 19-20. With

6

respect to the mail returned as undeliverable, Plaintiff's expert proposed that TransUnion then be used to identify individuals who would be mailed checks. Doc. 331-1 at ¶ 9; Doc. 337-1 at ¶¶ 19. Ms. Verkhovskaya swore in her declaration that Experian and TransUnion were both "accurate, reliable and recognized in the industry." Doc. 331-7 at ¶ 20. In the Court's Order, it adopted Plaintiff's position and expressly identified TransUnion, Experian, and Microbilt as additional databases that could be used by the claims administrator to identify potential class member names and addresses. Doc. 351 at 17.

### The Meet-and-Confer Process Relating to Plaintiff's Motion

The Court's Order also directed that the parties meet and confer prior to Plaintiff making this Motion on the ostensible class member names and addresses that Plaintiff asserts are not reasonably in dispute. As part of that meet-and-confer process, Plaintiff provided DISH with a list of individuals for whom, according to Plaintiff, there was no contradictory information within his data sources.

In response, DISH asserted specific objections to certain individuals identified on Plaintiff's preliminary list (as well as asserting overarching general objections). DISH's specific objections were based on evidence of inconsistent name information obtained from one or more of the following sources:

(1) Five9 call records, the foundation of Plaintiff's class certification motion and the class notice process (Doc. 48 at 8);

(2) <u>LexisNexis data</u>, which Plaintiff used in his class certification motion and the class notice process (Doc. 48 at 12);

(3) <u>Microbilt data</u>, another data source Plaintiff used in the notice process for certain phone numbers. Plaintiff cherry-picked Microbilt data where he sought to fill holes in his existing information. Doc. 126 at 4. DISH pulled Microbilt data for all telephone numbers at issue;

(4) <u>Experian data</u>, also used by Plaintiff to gap-fill identifying information. Doc. 382-2 at ¶ 9.[2] As set forth above, Plaintiff did not preserve or produce the Experian data he relied upon. DISH pulled Experian data for all telephone numbers at issue; and

(5) <u>TransUnion data</u>, a data source that Ms. Verkhovskaya validated as reliable for the identification of purported class members, and which the Court specifically endorsed for use in the claims process (Doc 337-1 at ¶ 20; Doc. 351 at 17).

The Judgment List that accompanied Plaintiff's Motion differs from the preliminary list Plaintiff provided to DISH. In this opposition, DISH addresses only the names on the Judgment List.

---

[2] Plaintiff's representation that the NCOA is the only new data source Plaintiff used cannot be reconciled with Ms. Verkhovskaya's declaration or Plaintiff's representations to DISH during the meet-and-confer process, in which both Plaintiff and Ms. Verkhovskaya confirmed the use of new Experian data. Doc. 382-2; Ewald Decl., Ex. A (Emails between Counsel).

## ARGUMENT

## I.    LEGAL STANDARD

Plaintiff's Motion violates Local Rule 7.3(b), which requires that "all motions shall state with particularity the grounds therefor, cite any statute or rule of procedure relied upon, and shall set forth the relief or order sought."  Plaintiff's Motion does not identify the rule pursuant to which Plaintiff claims to be entitled to relief nor does it state with particularity the applicable standards for the relief he seeks.

Pursuant to the post-trial procedures established by the Court, Plaintiff should have styled his Motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56.  As this Court noted in her Order, another court presented with this same procedural posture used a summary judgment process to determine appropriate class membership.  Doc. 351 at 9 (noting that "in *Allapattah Services, Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291 (S.D. Fla. 2001), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005), the court used a claims administration process that evaluated claims using a special master and a summary judgment process.").

Summary judgment requires that "the movant show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Accordingly, it is Plaintiff's burden to establish that there is no genuine issue of fact as to whether each individual included in the Motion is a bona fide class member who received the SSN telephone calls at issue in the case or was the telephone number subscriber at the time that the calls were made.  47 U.S.C. § 227(c)(5);

9

*Lee v. Loandepot.com, LLC*, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6-7 (D. Kan. Aug. 17, 2016). Plaintiff does not meet that burden. There are thousands of genuine issues of fact as to whether the individuals that he identifies are the subscribers or recipients of the SSN calls at issue. The data shows either multiple individuals associated with each telephone number or significant uncertainty as to an individual's name or identity. Moreover, Plaintiff's data does not purport to show subscriber status or who might have picked up the telephone.[3]

## II. THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT ESTABLISHED THAT THE INDIVIDUALS ON THE JUDGMENT LIST ARE BONA FIDE CLASS MEMBERS

### A. DISH Bases its Objections On Existing Data Sources that the Court and Plaintiff's Expert Endorse as Relevant and Reliable

Plaintiff cherry-picked which phone numbers to look up in different databases, relied on incomplete data, and prioritized data sources without any justification. Plaintiff's arbitrary approach demonstrates that he has no interest in correctly identifying class members, as opposed to associating any available name individual with a telephone number. There is no rhyme or reason why Ms. Verkhovskaya chose a data waterfall of

---

[3]The only other possible basis for judgment would be Rule 54(b), but Plaintiff's Motion falls far short of meeting that Rule's requirements. Plaintiff did not identify the governing standard and does not attempt to demonstrate under the Fourth Circuit's multi-factor test why there is "no just reason for delay[.]" Fed. R. Civ. P. 54(b); *See Braswell Shipyards Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) (enumerating relevant factors). In any event, any motion under Rule 54(b) comes too late. When given the opportunity by the Court to move for Rule 54(b) judgment, Plaintiff declined. Doc. 372; Doc. 373; Doc. 377.

Five9-Lexis-Microbilt-Experian for class member identity.  The only constant among these data sources is that Ms. Verkhovskaya has opined that all of them—plus TransUnion—are reliable for identifying class members.  If that were true, the five data sets should yield the same class member identities for the numbers at issue, such that if Plaintiff chose a waterfall of, for example—Lexis-Microbilt-Experian-TransUnion—the results would be materially similar.  DISH tested that proposition.  The result of the test?  The data failed.  DISH's analysis shows that the data provides conflicting class member name information 98% of the time.  Aron Decl. at ¶ 13(d).

The Court should not grant judgment in favor of an ostensible class member simply because Ms. Verkhovskaya decided to use LexisNexis before Microbilt, or Experian instead of TransUnion.  Such arbitrary decisions should not determine whether one individual might receive almost $30,000 as opposed to someone else.  Plaintiff's request that the Court disregard available contradictory information would frustrate the Court's goal of conducting "a fair claims administration process that will weed out any unjustified claims by non-class members."  Doc. 351 at 10.

Plaintiff claims that by relying on Microbilt, LexisNexis, and TransUnion data DISH disregarded the Order's directive to object only "based on the 'existing data'; *i.e.*, the data used to effectuate class notice."  Doc. 382 at 3; Doc. 382-2, n.3.  Plaintiff is wrong that DISH is relying on new data sources.  All of the data sources upon which DISH relies are existing data sources previously identified by Plaintiff's expert and authorized for use during the claims process by the Court.

Plaintiff fails to acknowledge that DISH pulled supplemental Microbilt data only because Plaintiff did not pull the data for the entire class. Plaintiff relied on this data source, *see supra* at 5; Doc. 382-2 at ¶ 7, and the Court expressly authorized its use in the Order, Doc. 351 at 17. Plaintiff cannot now disavow a data source that he uses, albeit incompletely.

Plaintiff's objections to DISH's reliance on LexisNexis and TransUnion data are equally unavailing. Contrary to Plaintiff's contention, DISH has not pulled any additional LexisNexis data; rather, DISH relies exclusively on the same LexisNexis data set that Plaintiff produced in this case. As for TransUnion, this is a data source that Plaintiff not only endorsed as helpful and reliable in previous filings, but also a data source that the Court specifically authorized the claims administrator to use. Doc 337-1 at ¶ 20; Doc. 351 at 17.

Plaintiff does not appear to challenge DISH's reliance on Experian data, Doc. 382-2 at 6, n.3, nor could he, particularly in light of his failure to preserve the data that his expert pulled from Experian and failure to provide that data to DISH. Ewald Decl., Ex. A (Emails between Counsel).

In any event, the Court did not issue any directive limiting DISH's evidence to existing data. DISH is allowed to object based on "*any evidence* DISH has indicating that the particular class member should not be included in the proposed judgment." Doc. 351 at 20 (emphasis added).

**B. Ms. Verkhovskaya Did Not Take Date Ranges From LexisNexis and Microbilt Into Account In Her Analysis, And Has Previously Testified That Those Data Sources Provide Relevant And Reliable Information, Regardless Of Whether It Is From The Class Period**

Plaintiff also urges the Court to ignore the data upon which DISH relies because, according to Plaintiff and Ms. Verkhovskaya, the lack of date ranges for name information in certain data sets calls into question whether the data has any relevance to the time period at issue—i.e., the class period.  Doc. 382 at 3; Doc 382-2 at 6, n.3.  Plaintiff's position is irreconcilable with Ms. Verkhovskaya's approach to class member identity, which, contrary to the statements in her Declaration, did not take date ranges within the data into account.

For example, Ms. Verkhovskaya identifies ███████████ as the proper class member associated with the telephone number ███████████ and concludes that this name is consistent with the LexisNexis data, which identifies ██████████ as a person associated with this phone number.  Aron Decl. at ¶ 21(b).  Leaving aside the different first names, the LexisNexis data (which contains a "first seen" and "last seen" date observation for some entries) shows ██████████ as associated with this number from January 1, 2003 to April 1, 2008, which predates the class period.  *Id.*  LexisNexis data, however, also identifies ██████████ as being associated with this number *during* the class period, which Ms. Verkhovskaya ignores.  *Id.*  Ms. Verkhovskaya offers no explanation for choosing a name that LexisNexis places more remote in time from the class period than another name available in the data.  She made arbitrary choices like this,

ignoring date information for 4,164 numbers on the List. Aron Decl. at ¶ 21(a).

Accordingly, Ms. Verkhovskaya is mistaken about the method she used.

Moreover, at trial, Ms. Verkhovskaya testified that, as a matter of "common logic," any and all LexisNexis information for a telephone number is probative for the class period, regardless of the dates associated with the data observations. Jan. 13, 2017 Tr. at 15:5-16:18. According to Ms. Verkhovskaya's testimony, LexisNexis relies upon records, such as applications, where individuals provide their telephone numbers for contact purposes. *Id.* at 15:9-25. Ms. Verkhovskaya testified that the LexisNexis "first seen" and "last seen" dates tie to those records. *Id.* As Ms. Verkhovskaya explains it, that LexisNexis data does not provide true date boundaries on an individual's use of a telephone number – only as to when LexisNexis has seen these records. In connection with Ms. Verkhovskaya's residential analysis, she testified that she found all LexisNexis data probative for the class period regardless of whether it was dated exclusively prior to the class period or exclusively after the class period. *Id.* at 16:12-18. DISH agrees that all of this data should be taken into account, regardless of the LexisNexis date range.

But even if date ranges contained within the LexisNexis and Microbilt data were taken into account to narrow the scope of data considered for determining whether there are contradictions or inconsistencies for the names on Plaintiff's Judgment List, it would not have a material impact on the overall volume of contradictions and inconsistencies. Debra Aron performed that alternative analysis, excluding LexisNexis and Microbilt data with date ranges exclusively pre-dating or post-dating the class period. That alternative

analysis removes the contradictions and inconsistencies for only 91 names. Aron Decl. at ¶ 37.

As set forth above, consistent with Ms. Verkhovskaya's position at trial, and the way that she actually performed her analysis here, all of the data should be considered, and the data as a whole shows that there are genuine issues of material fact on the identity of all absent class members. Accordingly, Plaintiff's date-range objection is without merit.

**C.     The Judgment List Contains Telephone Numbers For Which There Are Contradictory, Inconsistent, and/or Not Adequately Ascertainable Names**

As Dr. Aron previously testified, inconsistencies across various data sources call into question the reliability of each data source being used. Doc. 340-1 at ¶ 6. DISH maintains that the data sources are unreliable for the purpose that Ms. Verkhovskaya is using them (as LexisNexis expressly disclaims), and summary judgment should be denied in its entirety on that basis alone. In the alternative, using data sources produced by Plaintiff, used by Plaintiff, and/or endorsed as reliable by Plaintiff's expert and the Court, DISH has categorized its specific evidence opposing summary judgment into the four categories summarized below.[4]

a.      <u>Telephone Numbers Associated With a Completely Different First and Last Name</u>

---

[4] These categories are not mutually exclusive, and some telephone numbers at issue fall into one or more of these categories. If the Court denies the Motion as to less than all categories, the parties will need to confer post-ruling to address any overlap issues, and then report to the Court as to which phone numbers are subject to the Court's ruling.

The Judgment List includes 8,274 telephone numbers (amounting to a total award of $28,342,800) for which at least one data source identifies at least one individual with a completely different first and last name associated with the same number than the individual that Plaintiff identifies.  Aron Decl., Table 4.  The conflicting information on which DISH relies comes from all relevant data sources.  Below are examples of individuals from the Judgment List who fall into this category:

- Plaintiff requests that the Court award ██████████ $21,600 for calls to ████████ ████ even though LexisNexis data shows ███████████ as being associated with this number.

- Plaintiff requests that the Court award █████████████ (sic) $7,200 for calls to ██████████, even though LexisNexis data shows █████████████ associated with the same number.  Moreover, ███████████ is the individual associated with the number *during* the class period, while █████████████ is associated with the number almost two years *after* the class period.  Aron Decl. at ¶ 13(a)(ii).

- Plaintiff requests that the Court award ██████████ $28,800 for calls to ████████ ████ even though TransUnion data show ███████████ and ████████████████ as associated with this number.

- Plaintiff requests that the Court award ██████████ $26,400 for calls to ███ ████████, even though three other individuals are associated with this number.  Microbilt and TransUnion data identify ██████████, and TransUnion further associates ██████████ and ██████████ with this number.

- Plaintiff requests that the Court award ██████████ $6,000 for calls to ████████ ████ when LexisNexis also associates ██████████ with this number.

Ex. A to Aron Decl.

Plaintiff has not met his burden of establishing, as a matter of law, that the individuals who fall within this category have a legal right to recover payment because

16

the evidence identifies different individuals associated with those telephone numbers. Further, Plaintiff has not presented any evidence that could be used to determine which of these individuals is the proper class member. Accordingly, summary judgment should be denied for this category of conflicts.

        b.    <u>Telephone Numbers Associated With a Different First Name But The Same Last Name</u>

The Judgment List includes 9,592 telephone numbers (amounting to a total award of $33,124,800) for which the data sources identify multiple individuals with different first names but the same last name associated with the same number, presumed by Plaintiff to be members of the same household. Aron Decl., Table 4. Plaintiff argues that all he must do is simply choose one "household" or family member and that person will be entitled to a large cash payment. That is wrong under the statutory standing requirements. That position also is inequitable when there is significant money at issue and no information on the nature of these assumed family/household relationships. Below are examples of individuals from the Judgment List who fall into this category:

- Plaintiff requests that the Court award $30,000 to ███████ for calls to ███████- ███ even though at least two other individuals with the same last name are associated with this number. Microbilt identifies ███████ and TransUnion lists ███████ and ███████ as also associated with this number.

- Plaintiff requests that the Court award $15,600 to ███████ for calls to ███████, even though LexisNexis and TransUnion data show ███████ also associated with this number.

- Plaintiff requests that the Court award ███████ $9,600 for calls to ███████- ███, even though three other individuals with the same last name are associated with this number. Five9 records identify ███████ and Microbilt and

TransUnion both show ████████ and ████████ associated with this number.

Ex. A to Aron Decl.

Plaintiff has not met his burden of establishing, as a matter of law, that the individuals who fall within this category have a legal right to recover payment. An individual's status as a household member does not provide statutory standing to collect an award. 47 U.S.C. § 227(c)(5) (requiring proof that the plaintiff is "[a] person *who has received* more than one telephone call within any 12-month period.") (emphasis added). However, even if the Court disagrees, a claims process is still needed to determine which household member is entitled to recover, because the data alone does not establish which purported household member might have rights with respect to the telephone number or telephone calls. Plaintiff cannot offer any principled justification as to why ████████ should recover $30,000, as opposed to ████ or ████████. Ex. A to Aron Decl. An individual should not receive a windfall because Ms. Verkhovskaya happened to select him or her among various household or family members.

The need for this category of phone numbers to proceed through the claims process is made even more apparent by the declaration that Dr. Krakauer submitted in connection with this Motion. Dr. Krakauer explained that he was "not surprised" that other household members were associated with his phone number. Doc. 382-4. In this way, DISH and Plaintiff are in agreement: it is not surprising at all that there are non-class members associated with the phone numbers in the class, which is precisely why Plaintiff has failed to meet his burden on this category of numbers. Through Plaintiff's

18

expert's methodology, any of the three individuals with the last name Krakauer could have been selected by Ms. Verkhovskaya for recovery.  It is only through Dr. Krakauer's trial testimony and declaration that it becomes clear he is the proper party to assert claims with respect to his number.  Accordingly, the phone numbers in this category should proceed through the claims process so that the correct class member identity can be established.

      c.      <u>Telephone Numbers Associated With a Different Last Name But A Similar First Name</u>

The Judgment List includes 991 telephone numbers (amounting to a total award of $3,418,800) for which the data sources identify multiple individuals with the same first name but different last names as associated with a telephone number.  Aron Decl., Table 4.  Below are examples of individuals from the Judgment List who fall into this category:

- Plaintiff requests that the Court award ███████████ 2,400 for calls to the number ████████████, but Microbilt, LexisNexis, TransUnion, and Five9 associate ████████████ or ████████████ with this number.

- Plaintiff requests that the Court award ██████████ $14,400 for calls to ████████- ████ but Experian, LexisNexis, Microbilt, and TransUnion associate ████████████ with this number.

- Plaintiff requests that the Court award ███████████ 6,000 for calls to ████████ ████████, but LexisNexis, Microbilt, and TransUnion associate ████████████ or ████████ with this number.

Ex. A to Aron Decl.

Plaintiff has not met his burden of establishing, as a matter of law, that individuals who fall within this category have a legal right to recover payment.  Plaintiff has argued

that these individuals are the same *women*, and that the last name differences are the result of either marriage or divorce. Plaintiff has no evidence to support this assertion. As some of the above examples demonstrate, the list of individuals who fall into this category is not limited to women. Furthermore, regardless of gender, Plaintiff has not provided a scintilla of evidence in support of his argument, and summary judgment cannot be granted on speculation alone. Plaintiff's assumption is even less reasonable where common first names are involved, such as Linda or James. Ex. A to Aron Decl. It is entirely plausible that two different women with the name Linda could have been associated with the same phone number during the class period. Therefore, claims based on telephone numbers in this category should proceed through the claims process so that the correct class member can be identified.

> d. Telephone Numbers Associated With Individuals Whose Names Are Not Adequately Ascertainable, Including a Missing First or Last Name

Additionally, there are 138 numbers where the full name that Plaintiff provides consists solely of a first or a last name (amounting to a total award of $502,800). Aron Decl., Table 4. As an illustration, the name Plaintiff identified as associated with █████ ████████ in Group 1-B is "Clint," with no further name information provided. Ex. A to Aron Decl. For obvious reasons, summary judgment cannot be granted in connection with partial names. Those individuals are not fully identified as required by the Court's Order, and as a practical matter, they should not be able to cash a check that is issued to a partial name.

Finally, the Judgment List includes 343 telephone numbers (amounting to a total award of $1,191,600) for which the individuals Plaintiff associates with the number are not fully or meaningfully identified. For these individuals, it is possible that multiple data sources are identifying the same person, but the differences in how the names are spelled make it impossible to determine the person's correct name. For example, Plaintiff associated ███████████ with 7██████████ but the last name reflected in LexisNexis is ██████. Aron Decl. at ¶ 35(c). Similarly, Plaintiff associates ██████ ██████ with the number ██████████, but the TransUnion and Microbilt data list ███████████. These are not trivial differences. A check should not be sent out to an individual where there is a dispute about the spelling of that person's name, if the conflicting data even relates to the same person. As a result, the individuals that fall into this category should be required to submit claims forms so that their proper names can be ascertained.

### D. Group 1-B Contains Phone Numbers With Uncorroborated Name Information

As part of Group 1-B, Plaintiff is seeking relief in connection with 1,862 phone numbers for which, according to the Plaintiff, name information appears in only one data source—Five9, LexisNexis, or Microbilt. The Court's Order requires that class members be "identified fully and consistently in the existing data" and with "no contradictory information [.]" (Doc. 351 at 19.) Name information from only one data source is not "identified fully and *consistently* in the existing data"; as such, Plaintiff cannot satisfy the

Court's standard by relying on a single, uncorroborated source to establish, as a matter of law, the proper identity of an ostensible class member.

Furthermore, the primary data source at issue in Group 1-B is particularly unreliable. According to Ms. Verkhovskaya, "almost all of the names of class members in Group 1-B were . . . found in the Five9 data," Doc. 382-2 at ¶ 43, which even Plaintiff's counsel admits is not reliable because it represents lead data that SSN purchased from unknown sources, and should not be expected to accurately represent bona fide class members in this case. Sept. 8, 2016 Hr'g Tr. at 52:15-24.

Additionally, because Ms. Verkhovskaya did not pull and review data from the sources at issue for all of the class members, her analysis does not account for all existing name information. For example, Ms. Verkhovskaya concludes that ███████ is the only person associated with the number ███████, but Microbilt and TransUnion identifies other individuals (███████████████████████, and ███████████) as associated with that number. Aron Decl. at ¶ 61. Plaintiff has included 301 telephone numbers in Group 1-B when, in fact, those telephone numbers have name information in more than source. Aron Decl. at ¶ 38(e). For the above reasons, the Court should deny summary judgment for all Group 1-B phone numbers.

E.      **The Evidence Plaintiff Submitted To The Court Is Replete With Data Handling Errors**

The evidence Plaintiff submitted to the Court is replete with data handling errors, which undermine the reliability and accuracy of the List as a whole, and which militates in favor of using the claims process to determine class member identity. In a number of

22

instances, the name identified on the List is actually different from the name that appears in the data source that Ms. Verkhovskaya purportedly used. For example, there are 12 telephone numbers for which Plaintiff purports to have relied on Five9 data to identify the ostensible class member, but the Five9 data actually lists someone other than the individual identified on the Judgment List, and no source lists the name Plaintiff uses at all. Aron Decl. at ¶ 38(b). Similarly, for 89 telephone numbers, the names on the Judgment List do not match the names actually listed for those telephone numbers in the LexisNexis data on which Ms. Verkhovskaya relies. For 286 telephone numbers, Plaintiff purportedly relies on address information in the Five9 records, when no address information exists in the Five9 records. Aron Decl. at ¶ 38(f). And Plaintiff even included six telephone numbers twice on the Judgment List. Aron Decl. at ¶ 38(a). These errors highlight the flaws in Ms. Verkhovskaya's handling of the underlying data, which undermines the accuracy of the Judgment List as a whole, and which dictates that the Court deny Plaintiff's Motion in its entirety.

## III. DISH MAINTAINS ITS GENERAL OBJECTIONS FOR ALL TELEPHONE NUMBERS AT ISSUE IN PLAINTIFF'S MOTION

DISH is not asserting specific evidentiary conflicts for 221 telephone numbers on the Judgment List, but maintains the following general bases for denial of Plaintiff's Motion (which also apply to the other telephone numbers subject to Plaintiff's Motion):

- Plaintiff's Motion should be denied because the data sources upon which Plaintiff relies are not reliable as a whole for the purpose of identifying the subscriber to the phone line at the time of the call or the actual recipient of the call.

23

- DISH maintains its position that an essential element of each ostensible class member's claim is that he or she was the residential telephone subscriber or actual recipient of the calls at issue, and that element should have been decided by the jury during the trial.

- DISH maintains its position that once the Court decided to defer the determination of the subscriber/recipient element to post-trial, the Court should have granted DISH permission to conduct discovery of absent class members and required that this element be proven by ostensible class members at a future trial.

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court deny Plaintiff's motion in its entirety.

Dated:  December 15, 2017

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Peter A. Bicks*
Peter A. Bicks
Elyse D. Echtman
John L. Ewald
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com


*/s/ Richard J. Keshian*
Richard J. Keshian
North Carolina Bar No. 10681
KILPATRICK TOWNSEND & STOCKTON
LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7322
rkeshian@kilpatricktownsend.com

*Attorneys for Defendant DISH Network L.L.C.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 15, 2017, I electronically filed the above

document with the Clerk of Court using the CM/ECF system, which will send

notifications of such filing to all counsel of record.


                            */s/ Peter A. Bicks*

                            Peter A. Bicks

                            ORRICK, HERRINGTON & SUTCLIFFE LLP

                            51 West 52nd Street

                            New York, NY 10019-6142

                            Telephone:  (212) 506-5000

                            pbicks@orrick.com

                            *Attorney for Defendant DISH Network L.L.C.*

## WORD COUNT CERTIFICATION

Peter A. Bicks, an attorney of record in the above captioned matter, hereby certifies that the foregoing brief contains 6,234 words, in compliance with the Court's word limitations as set forth in Local Rule 7.3(d), as calculated by the word count function of the word processing system used to prepare the foregoing brief.


_/s/ Peter A. Bicks_
Peter A. Bicks
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com

_Attorney for Defendant DISH Network L.L.C._