**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

**THOMAS H. KRAKAUER,**
**on behalf of a class of persons,**

**Plaintiff,**

**Civil Action No. 1:14-cv-00333-CCE-JEP**

**v.**

**DISH NETWORK, L.L.C.,**

**Defendant.**

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT/DISBURSEMENT OF AWARD

# TABLE OF CONTENTS

**Page**


Argument .......... 2

A. Dish's expert's new report is inconsistent with her prior testimony. .......... 2

B. Dish's use of new data violates the Court's order and renders Dish's analysis unreliable. .......... 4

1. Dish's use of new data violates the Court's order. .......... 4

2. Dish's new data cannot be used to reliably identify class members. .......... 6

C. Dish misinterprets and misapplies the Court's standard for identifying class members entitled to an award. .......... 8

1. Dish's challenges are unreasonable .......... 8

2. Dish's categorical challenges are unfounded. .......... 9

D. Plaintiff agrees that a small number of individuals should be stricken from his proposed list. .......... 11

Conclusion .......... 12

## Summary

In July, the Court accurately predicted that "there are likely many persons whose membership in the class—and entitlement to a damages award—cannot reasonably be disputed." (ECF No. 351 at 19). After all, just two months earlier, Dish had asserted that there were only 3,644 "inconsistencies" in the Plaintiff's identification of the 18,066 members of the class. Accordingly, the Court invited the Plaintiff to generate a list of all class members "identified fully and without contradiction in the existing data," (*id.*), to confer with Dish to hash out specific objections (in the same vein as the cooperative process that led to the narrowing of the class for trial), and to submit a motion for group judgment.

Acting on the Court's instructions, Plaintiff and his expert produced a list of 11,471 class members who met the Court's criteria, including only 465 individuals to whose identification Dish had previously objected. The Court can imagine Plaintiff's surprise when, in response, Dish's expert suddenly claimed that there were more than 11,000 inconsistencies—roughly 98% of the total proposed list.

What explains Dish's abrupt and dramatic shift? First, Dish ignored the Court's directive to base its review solely on the "existing data." Instead, Dish purchased new, unvetted data in order to ***create*** inconsistencies where, by its own reckoning, none had existed. Not only does Dish's use of new data violate the Court's order, it is useless for identifying class members because it has no temporal limitation. There is no way of knowing whether the information upon which Dish bases its "inconsistencies" is from 2009 or 1989.

Second, Dish's analysis ignores the Court's reasonableness standard. Really, "analysis" is too strong a word; for Dish, ***any*** inconsistency, no matter how easily explicable, means a class member has not been identified "without contradiction." That cannot be what the Court intended. Rather, the Court emphasized that its goal was to facilitate the payment of class members whose identity could not "***reasonably***" be disputed. Dish's near universal objections to Plaintiff's list ignore the many reasons why not every superficial inconsistency gives rise to a reasonable dispute about a class member's identity.

Hoist with its own petard, DISH's objections should be rejected and Plaintiff's motion should be granted.

## Argument

### A. Dish's expert's new report is inconsistent with her prior testimony.

In April, the Court ordered the parties to outline their proposed post-trial procedures. (ECF No. 328). In support of its proposal, Dish offered the declaration of Dr. Debra Aron, an economist with no experience identifying class members or overseeing the distribution of class funds. Based on her review of the data "relied upon for class notice," Dr. Aron concluded that, "out of the 18,066 unique phone numbers in the class, 3,644 ha[d] name inconsistencies." (ECF No. 335-1 ¶ 13).

In June, the Court summoned the parties to Greensboro to discuss their proposals. At that hearing, Dish's lawyers repeatedly cited Dr. Aron's report and conclusions.[1] As a result, the Court expressed its view "that there is not even any real dispute about the names of some 14,000 of these class members." (ECF No. 342 at 4). Accordingly, the Court entered its July 27 Order inviting the Plaintiff to move for group judgment on behalf of all class members "identified fully and without contradiction in the existing data." (ECF No. 351 at 19).

In preparing the list of class members suitable for group judgment, Plaintiff's expert, Anya Verkhovskaya, also considered Dr. Aron's May 2017 Report and, in order to achieve greater consensus, excluded 3,179 of the telephone numbers that Dr. Aron deemed "inconsistent." (*See* Exhibit A, Verkhovskaya Decl. ¶ 6). Thus, if Dr. Aron's new report were consistent with her prior testimony, there would be challenges to only 465, or about 4%, of the individuals for whom Dr. Krakauer asks the Court to disburse an award. (*Id.* ¶ 7).

In response to Plaintiff's motion, however, Dish not only moved the goalposts, but relocated the entire field. Dish's opposition relies entirely on a new report by Dr. Aron that is dramatically different than the one she wrote just six months ago. What was once 3,644 contradictions suddenly swelled to 11,250. (*Id.* ¶ 8).

[1] Dish also insisted that "none of th[e] data" was reliable but, when pressed by the Court, could not supply any expert testimony or other evidence in support of that assertion. (ECF No. 342 at 33-35).

Dr. Aron's about-face would undermine the Court's carefully considered process for administering the jury's award. And it is unfortunately consistent with Dish's recalcitrant approach to these post-trial proceedings. As the Court has noted, rather than accepting the Court's rulings and moving forward, Dish has attempted to grant itself relief already denied and to relitigate issues already resolved. (ECF No. 342 at 5, 37). In its July 27 Order, the Court warned that Dish's right to involvement in the class member identification process was conditioned on whether or not that participation was "helpful." (ECF No. 351 at 10). Plaintiff respectfully submits that Dr. Aron's new report is not only not helpful, but outright "obstructive." (*Id.*). Not only would the Court be justified in barring Dish from further participation, but in entering judgment on behalf of the entire class as Plaintiff has proposed. (ECF No. 377).

**B. Dish's use of new data violates the Court's order and renders Dish's analysis unreliable.**

It is easy to understand ***why*** Dr. Aron so drastically altered her conclusions. It is also plain to see ***how.*** When the number of contradictions in the "existing data" proved insufficient to derail the award distribution process, Dish simply bought more data and used it to manufacture ostensible inconsistencies where none had existed.

**1. Dish's use of new data violates the Court's order.**

The Court's July 27 Order reiterated four times that the group judgment process would be determined by analysis of "existing data." (ECF No. 351 at 16, 19, 21, 26). Given the context of Dr. Aron's May 2017 Report and the hearing preceding the Court's order, the phrase "existing data" unambiguously refers to the class notice data; *i.e.*, the

Five9 records, and the data from LexisNexis, Microbilt, and the National Change of Address Database that Plaintiff gave Dish as part of the class notice and meet and confer process. Nonetheless, Dish injected three new data files into the existing data, and then relied on an expert with no experience identifying class members to manufacture conflict. Dish's justifications for doing so range from the disingenuous to the illogical.

During the post-trial meet-and-confer process, Dish claimed it was using the newly-purchased files "[c]onsistent with Plaintiff's use of new data sources (e.g., Experian, NCOA)[.]" (ECF No. 382-3.) But DISH has abandoned this phony rationale. Now Dish tries to support its injection of new data by claiming it was sandbagged. According to Dish, "through the meet-and-confer process . . . DISH became aware that, for purposes of . . . additional remailings [at the class notice stage], Ms. Verkhovskaya relied upon additional data from both Experian and the national Change of Address ('NCOA') databases." (Def.'s Br. at 6).

Wrong again. Dish has long known that Ms. Verkhovskaya used NCOA and Experian data at the notice stage. The Court's February 9, 2016 order outlining the notice plan authorized the use of NCOA data to update addresses (ECF No. 153 at 2), and the administrator's declarations (ECF Nos. 166, 206-1) confirmed that the plan was completed. And Dish knew since September 24, 2016, that Ms. Verkhovskaya used Experian data to mail class notice. (*See* Exhibit B, email between Barrett and Echtman). In fact, Dish demanded its production before trial, and told the Court that it would move to compel production of all class member data. (ECF No. 260 at 79, 81.) It never did.

With no valid justification for expanding the dataset, Dish resorts to semantic distinctions and transparent rhetorical sleight of hand. Throughout its brief, Dish furtively substitutes the phrase "existing data ***sources***" for the Court's use of the phrase "existing data." (*See, e.g.,* Def.'s Br. at 3, 10, 11, 15-17, 19). Dish also relies on an out-of-context fragment to assert the alternative fact that "the Court did not issue any directive limiting DISH's evidence to existing data." (*Id.* at 12). Read congruously with the rest of the July 27 Order, however, the Court's statement that Dish could submit "any evidence" challenging a class member's identity plainly referred to evidence in the existing data. After all, the Court solicited "any evidence Dish ***has***," not any evidence it might go out and buy.

Although, as explained below, Dish's new data is not even useful for identifying class members, Dish's violation of the Court's order alone is grounds for disregarding Dish's opposition.

**2. Dish's new data cannot be used to reliably identify class members.**

Dr. Aron attempts to justify her reliance on new data by noting that Ms. Verkhovskaya has testified as to the reliability of those data ***sources***. But the ***source*** of the data is not the problem. The problem is that the new data in Dr. Aron's report has no historical timeframe limitation. (Ex. A ¶¶ 21-30). As Dr. Aron candidly admits, she "did not incorporate the date information provided by the data vendors into the name matching analysis." (ECF No. 393-1 ¶ 37). In other words, Dish's challenges to class member identity are not limited to a relevant period, but are based on data from any point in time—some more than 30 years old.

Dish claims that Plaintiff's expert, too, "did not take date ranges within the data into account." (Def.'s Br. 13). That is false. Occasionally, Ms. Verkhovskaya has relied on data from slightly outside the class period to confirm a class member's identity. (Ex. A ¶ 26). For example, as Dr. Aron notes, Ms. Verkhovskaya used data from 2008 to confirm a class member's phone number and address in 2010. (*Id.*). That does not mean she "did not take date ranges into account" or that that age of a record does not matter. It simply means that, as an expert in the field of class administration, Ms. Verkhovskaya is confident that information from 2008 is relevant to the identification of a class member in 2010. (*Id.*)

Ms. Verkhovskaya's common-sense approach is a far cry from Dish's position—that ***any*** data from ***any*** point in time can give rise to a "reasonable dispute" about the class member's identification. For example, Dr. Aron claimed that Dr. Krakauer has not been identified "without contradiction" because Dish's new data contained an address at which Dr. Krakauer lived in 1983. No expert in the field of class action administration would conclude that a decades-old address reasonably contradicts the existing data used to identify Dr. Krakauer during the notice stage. (*Id.* ¶ 29). Indeed, under Dr. Aron's temporally unlimited "analysis," no class member who had ever lived at more than one address could be identified "without contradiction."

Although Dish does not say how many and which of its challenges rely on new data, Ms. Verkhovskaya's review indicates that at least 59% of Dish's challenges are based on this flawed methodology. (*Id.* ¶ 30). They should be rejected.

## C. Dish misinterprets and misapplies the Court's standard for identifying class members entitled to an award.

### 1. Dish's challenges are unreasonable

Not content with factual obfuscation, Dish also attempts to confuse the legal issues with a pedantic digression into the local rules and a baseless assertion that Plaintiff's motion must be governed by Rule 56. The Court could have asked for a motion for summary judgment, but didn't. Instead, acting as factfinder on the issue of class member identity, *see* Fed. R. Civ. P. 23(c)(3)(B), the Court set forth its own, unambiguous standard for resolution of Plaintiff's motion: that it be granted for any group of class members "identified fully and without contradiction in the existing data." (ECF No. 351 at 16, 19, 21, 26).

Plaintiff interpreted this standard in light of the Court's statement that the goal of this process is to identify those "whose membership in the class—and entitlement to a damages award—cannot ***reasonably*** be disputed." (*Id.* at 19) (emphasis added). As explained above, Plaintiff understands the "existing data" to include only the data that was used to mail class notice. Plaintiff believes that a class member who is "identified fully" is one whose first name or initial(s), last name, and address are found in the existing data. And importantly, a class member identified "without contradiction" is one for whom there is no contradictory information upon which her identification could ***reasonably*** be disputed.

Dr. Aron, on the other hand, has failed to apply the reasonableness standard. Rather, her work is limited to identifying any purported anomaly and claiming that it is a contradiction. For example, Dr. Aron challenges a number on the basis that it is

associated with “[redacted] [redacted]” in the Five9 data, and with “[redacted], [redacted]”—same address—in another source. This is not “analysis” in any meaningful sense, but, as Ms. Verkhovskaya calls it, “blind number crunching.” (Ex. A ¶ 29). As a result, Dr. Aron makes no effort to—and would not even be qualified to—take a meaningful look at these alleged contradictions to determine whether they give rise to a “reasonable dispute.” (*Id.* ¶ 20). Dr. Aron’s failure to apply the reasonableness standard is yet another manifestation of Dish’s refusal to participate in the post-trial process the Court has prescribed.

**2. DISH’s categorical challenges are unfounded.**

Dish asserts several categories of alleged contradictions. As summarized below, Ms. Verkhovskaya has explained why these superficial “contradictions” do not actually give rise to “reasonable dispute” about a class member’s identity. (Ex. A ¶¶ 31-58).

***First***, as explained above, the Court should summarily reject all challenges that that rely on new data.

***Second***, while Dish illustrates each categorical challenge with a few examples and baldly asserts that there are thousands of similar inconsistencies, Dish never identifies which proposed class members are subject to which alleged errors.[2] In doing so, Dish deprives the Court and the Plaintiff of the ability to verify or accommodate Dish’s assertions.

***Third,*** Dish ignores the significance of the Five9 data. (*Id.* ¶¶ 31-37). Throughout its objections, Dish incorrectly asserts that Ms. Verkhovskaya arbitrarily prioritized the

---

[2] Ms. Verkhovskaya has responded specifically to Dr. Aron’s examples. (Ex. A ¶¶ 56-57).

Five9 data (such as in deciding the order of her “waterfall,” or when the data indicated a familial match). In doing so, Dish ignores that the Five9 data is uniquely important to the identification of class members because it is the only contemporaneous record of who SSN intended to call during the class period. (*Id.* ¶¶ 32-33). Dr. Aron’s claim that the Five9 data is unreliable and that Ms. Verkhovskaya has admitted as much is incorrect. (*Id.* ¶¶ 34-35).

***Fourth,*** Dish fails to acknowledge the significance of a familial match. The majority of Dish’s challenges are familial matches, but the identification of a class member is strengthened, not contradicted, when the data associates multiple members of the same family with a single number. (*Id.* ¶¶ 38-43). Again, when this occurs, Ms. Verkhovskaya does not, as Dish asserts, pick one person at random. Rather, familial matches are used to confirm the name appearing in the Five9 data.

***Fifth***, surname changes are common. (*Id.* ¶¶ 44-48). Although name changes through marriage or divorce are most common, there are additional reasons why a person might change their name. It is also possible that a misspelling or alternate spelling could be the cause of a last name “difference.” (*Id.* ¶ 46). Most of Dish’s surname challenges are women who Ms. Verkhovskaya reasonably concluded changed their name due to marriage. (*Id.* ¶ 48). For example, one of the class members that Dr. Aron challenges, “B[redacted] F[redacted]” is identified in the Five9 data, but LexisNexis shows “B[redacted] T[redacted]r” and “C[redacted] F[redacted]” at the same address. A reasonable person would assume not that there are two different B[redacted] using the same number at the same time, but that B[redacted] and C[redacted] got married. (*Id.*).

***Sixth***, Dr. Aron claims that a class member is not identified "without contradiction" if the data contains more than one potential address. It is common, however, for people to change addresses, and third-party data will reflect these changes. Dish claims that if an address shows up in the data as associated with the class member that differs from the address found in the Five9 data, that is a conflict that prevents the entry of judgment in favor of the consumer. Critically, however, every class member on Plaintiff's list ***received notice at the address identified.*** As a result, the existence of other addresses in the data does not give rise to a reasonable dispute about the class member's identity. (*Id.* at ¶¶ 49-52).

**D. Plaintiff agrees that a small number of individuals should be stricken from his proposed list.**

Although Plaintiff has done his best to thoroughly analyze the existing data, when working with lists of thousands of class members, a small number of errors are inevitable. (*Id.* ¶ 60). In its July 2017 Order, the Court instructed the parties to meet and confer regarding any dispute about the names on Plaintiff's proposed list of class members whose entitlement to an award cannot reasonably be disputed. Given Dr. Aron's prior testimony that there were only 465 contradictions among the 11,471 individuals on the list, Plaintiff assumed that the parties would be able to work together to weed out errors, as they had done before trial when narrowing the class. (*Id.* ¶ 61). Unfortunately, Dish's decision to use new data to challenge more than 98% of the names on Plaintiff's list made it impossible for this process to occur. (*Id.* ¶ 62).

Nonetheless, in response to Dish's opposition, Ms. Verkhovskaya has identified 191 names that should not have been included among those whose entitlement to an award cannot reasonably be disputed. A list of these names is attached to Ms. Verkhovskaya's supplemental declaration. (*Id.* ¶ 63).

Plaintiff does not concede that these 191 are not class members. Ultimately, the question before the Court is whether it is more likely than not that a class member has been accurately identified. Plaintiff simply recognizes that these names do not meet the Court's standard for distribution of an award at this time.

**Conclusion**

For these reasons, Plaintiff's motion should be granted.

.

**Respectfully submitted,**

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2018, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ John W. Barrett
John W. Barrett

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3, the undersigned verifies that, using the Microsoft Word word count tool, the word count for Plaintiff's Reply In Support of Motion for Judgment/ Disbursement of Award is 3,048 words. This word count does not include the caption, signature lines, certificate of service, cover page, table of contents or table of authorities.

Respectfully submitted**,**

/s/ John W. Barrett

John W. Barrett
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com