IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| THOMAS H. KRAKAUER, | ) | |
|---|---|---|
| on behalf of a class of persons, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

After a trial, the jury and the Court found that from May 1, 2010, through August 1, 2011, Dish willfully violated the Telephone Consumer Protection Act thousands of times. Records maintained as part of Dish's sales efforts show that Dish's agent made over 51,000 solicitation calls to approximately 18,000 class members whose phone numbers were on the National Do Not Call registry, in violation of the TCPA. Dr. Krakauer now seeks entry of judgment as to approximately 11,000 of these class members. With two small exceptions, the identities of these class members are not reasonably subject to dispute. They were identified in the same records that establish the TCPA violations, there is no contradictory evidence in existing data, and their identities have been corroborated with other reliable data and/or circumstantial evidence. Excluding the two exceptions, the Court will grant the motion.

## Background

During the relevant timeframe, Dish's agent, SSN, made phone calls on Dish's behalf attempting to sell Dish's products. It used Five9's dialing services and software to

make these calls. *See generally* Doc. 327 at 17-18. Every phone call at issue in this case is documented in the Five9/SSN records.[1]

SSN provided Five9 with phone numbers and other identifying information for persons to call. *See, e.g.*, Doc 327 at 22, 27-28.[2] As to a very large majority of the phone numbers, this identifying information included full names and addresses of the persons SSN wanted to call. *See, e.g.*, Doc. 382-2 at ¶ 6. Five9 maintained these records from SSN, adding to them the dates SSN called the persons on the list at the number provided, whether the call was completed, and if so the duration of the call. *See generally, e.g.,* Doc. 48-2 at 8-9.

These records, as analyzed and corroborated by Dr. Krakauer's expert Anya Verkhovskaya, were the foundation for the finding that class members were ascertainable. Doc. 111 at 10-12 (*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015). They also formed the backbone for class notice in this case, though they were supplemented with other records when they were incomplete and addresses were updated when persons identified in the records moved. *See, e.g.,* Doc. 382-2 at ¶¶ 4-10; Doc. 110 at 4-8 (*Krakauer*, 2015 WL 5227693, at *2-4); Doc. 111 at 10-12

---

[1] These records have been denominated in varying ways throughout this litigation, including as the Five9 records, in reference to the software provider, or as SSN's call records or as SSN's call logs. *See generally* Doc. 110 at 4-8 (*Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2015 WL 5227693, at *2-4 (M.D.N.C. Sept. 8, 2015)).

[2] SSN bought some of these lists from Dish-approved data companies, *see, e.g.*, Doc. 327 at 40, and also used information in its own records from prior sales calls.

(*Krakauer*, 311 F.R.D. at 391).[3]  Roughly 13,000 of the 18,000 class members received notice.  *See, e.g.*, Doc. 382-2 at ¶ 10.

The Five9/SSN records also were authenticated and admitted at trial.  The jury relied upon these records as to phone number, duration, and other matters to find Dish had violated the TCPA.[4]

In a previous order, the Court indicated that it would enter judgment in favor of those "persons identified fully and without contradiction in the existing data."  Doc. 351 at 16, 21, 26 (*Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *7, 10, 12 (M.D.N.C. July 27, 2017)).  The "existing data" is a clear reference to Five9/SSN records, as supplemented and updated during the class certification and class notice process.  *See generally* Doc. 111 at 10-12 (*Krakauer*, 311 F.R.D. at 391); Doc. 110 at 4-8 (*Krakauer*, 2015 WL 5227693, at *2-4).

## The Pending Motion

Dr. Krakauer now moves for entry of judgment as to 11,471 persons, contending their class membership cannot reasonably be disputed based on the existing data.  Doc. 381.  In support of his motion, he provided two lists of class members for judgment, Doc. 382-1, that Ms. Verkhovskaya identified with testimony and analysis.  Doc. 382-2.

The Court has reviewed a number of Ms. Verkhovskaya's reports and declarations during the course of these proceedings and heard her testify at trial.  She is well-qualified

---

[3] This is an accurate though somewhat simplified description of the process Ms. Verkhovskaya used and this Court approved.

[4] The jury did not decide the names of the persons Dish's agent had repeatedly solicited.

3

to address issues related to locating and updating addresses for class members and identifying those with incomplete name information from telephone numbers. Based on its familiarity with her work over time and on its personal, in-court observations of her testimony, the Court finds her to be a credible witness and has no concerns about her honesty or integrity.

Throughout this litigation, Dr. Krakauer and his expert have shown a willingness to carefully examine issues and questions when they are raised in a concrete manner.[5] Here, Ms. Verkhovskaya worked through objections to class membership that the defendant's expert raised in April, *see* Doc. 395-1 at ¶ 6, and she has made an effort to evaluate Dish's additional objections raised this winter. *See e.g.*, Doc. 395 at 14 (removing 191 names from motion for judgment in response to Dish's latest new position). She has diligently and logically worked through the existing data.

Dr. Krakauer's proposed judgment lists are based on the names in the Five9/SSN records. Doc. 382-2 at ¶¶ 17, 18. As noted *supra*, the Five9/SSN records contain, as is relevant here, names and, in large part, addresses, that Dish's agent provided, obtained either from Dish-approved data sources or from Dish's agent's files. Dish's agent used these records to contact people to attempt to sell those people Dish products. Dish's agent created and maintained the records at Dish's behest for the purpose of selling Dish products, at or around the time the violative sales calls were made. The jury implicitly

---

[5] As just one example, Dr. Krakauer's counsel spent hours working with Dish to place certain calls at issue at trial in various "buckets" based on Dish's contentions that the numbers called were not residential, *see* Doc. 267, buckets that Dish then virtually ignored at trial.

4

accepted the Five9/SSN records as reliable as to the phone numbers and duration of calls, as part of its verdict.

Ms. Verkhovskaya used other reliable data sources in the existing data to obtain names associated with the known telephone numbers and compared those names to the names in the Five9/SSN records. *See* Doc. 48-2 at 15; Doc. 382-2 at ¶¶ 17, 18. Where the name or address information in the Five9/SSN records was incomplete, she also used these data sources to finds names associated with the phone number. Doc. 48-2 at 15-16.

Dr. Krakauer has divided the motion for judgment into two groups of class members. Group 1A contains persons whose full names and phone numbers were found in the Five9/SSN records, whose names and association with the telephone number were then confirmed or corroborated via a reputable data source that was part of the existing data in this case, and whose addresses were updated via the United States Postal Service's National Change of Address database. Doc 382-2 at ¶ 17. Group 1B includes class members whose names were found in the either Five9/SSN records or, where names in the Five9/SSN records were incomplete or missing, in other existing data from LexisNexis or Microbilt, whose telephone numbers were found in the Five9/SNN records, and whose addresses were updated via the National Change of Address database. Doc 382-2 at ¶ 18. Class notice was successfully delivered to the persons in both groups. Doc. 382-2 at ¶¶ 17, 18.

Ms. Verkhovskaya combed through Dish's most recent brief and Dish's expert Dr. Aron's latest report and summaries, and as a result she has suggested removal of 191 persons from the proposed judgment lists. It is not surprising that there would be a few

5

oversights or mistakes in a list of several thousand people that consolidates a significant amount of information, and the Court appreciates the careful attention Ms. Verkhovskaya and class counsel gave to Dish's arguments, which has aided the Court in its review of the record.

There are two exceptions where the Court is not satisfied that the current record supports the requested relief. The 191 exclusions Dr. Krakauer has suggested and these two small exceptions aside, the Court finds that there is no reasonable dispute as to the identity of the class members set forth in the motion for judgment.

The first exception is the persons listed in Group B only by first name and as to whom Dr. Krakauer has not developed evidence in the existing data of a last name and persons listed in Group B only by last name as to whom Dr. Krakauer has not developed evidence in the existing data of a first name or initial.[6] The Court does not at this time feel it is appropriate to enter judgment in favor of persons where only part of a name is available, even if that single name is otherwise uncontradicted in existing data. A claims process for these persons is more appropriate.

The second exception concerns one person listed in Group A, Elia Batista, as to whom Dr. Krakauer believes there has been a surname change. *See* Doc. 397-1 at ¶ 56(viii). Because the existing data also reflect a person named Elia Rosales as associated

---

[6] *See, e.g.*, Doc. 385-1 at 240, line 24 ("Calhoun"), line 61 ("Michael P"), line 63 (Miller"), at 241 line 130 ("Theodora"), line 136 ("Alejandra"). The Court does not include in this group persons for whom there is a last name and first initial. *See, e.g.*, Doc. 385-1 at 240 line 74 (Schlies G"), at 241 line 91 ("Timberlake C"). That is sufficient to reasonably identify the class member, especially since the class notice was delivered.

6

with the same address, this name should be excluded from the judgment list.[7]  A claims process is more appropriate for this class member.

With these exclusions, the Court is satisfied that the persons listed in Group IA and IB are class members who have been identified fully without contradiction in the existing data.  The Court concludes that judgment should be entered in their favor.

### Dish's Arguments.

In the spring of last year a few months after the jury verdict, Dish's expert Dr. Aron filed a declaration in which she identified 3,644 name inconsistencies within the existing data for the entire class of 18,066 members.  Doc. 335-1 at ¶ 13.  In thereafter preparing the proposed judgment lists submitted with the pending motion, Ms. Verkhovskaya reviewed Dr. Aron's list, and Dr. Krakauer did not include 3,179 of these 3,644 persons in either Group A or Group B.  Doc. 395-1 at ¶ 6.  One would logically

---

[7] According to Dish's brief, Dr. Aron identified 991 telephone numbers "for which the data sources identify multiple individuals with the same first name but different last names." Doc. 390 at 20.  To support this assertion, Dish cites Table 4 in Dr. Aron's 34-page declaration, without any pin cite to the page or paragraph number that directs the Court to the location of Table 4.  *Id.*  (The Court located the table in Paragraph 34 of the declaration.  Doc. 390-1 at 18-19.)  Dish then lists a few examples, referencing in support the entirety of Exhibit A to Dr. Aron's declaration - an exhibit that is over 3,700 pages long and spans three docket numbers - again without pin cites.  Doc. 390 at 20 (referencing Docs 390-2, -3, and -4).  Moreover, nowhere in Paragraph 34 or the paragraphs surrounding Paragraph 34 does Dr. Aron state that she identified these 991 "inconsistencies" using only existing data.  As the Court understands it, Ms. Verkhovskaya asserts that these challenges, except for Ms. Batista, are based either entirely or largely upon new data, Doc. 395-1 at 15, and that assertion is consistent with the Court's review of Dr. Aron's declaration.  To the extent the existing data might offer some support for Dish's argument as to other persons on the judgment list with different last names, Dish has not specifically directed the Court's attention to that data or even provided a list of these 991 names, and the Court will not do Dish's work for it.  *See* n. 9 *infra*.

think, then, that the identity and membership of only a few hundred class members might possibly be disputed as part of this motion.

Yet Dr. Aron now states that over 96% of the persons subject to Dr. Krakauer's motion have a name inconsistency. *See* Doc. 390-1 at ¶¶ 13(b), (c) (asserting that 98.4% of the phone numbers in Group 1A and 96.4% of the phone numbers in Group 1B have a name inconsistency). This leaves only 221 class members for which Dish asserts there are no evidentiary conflicts as to their identity or entitlement to judgment. Doc. 390 at 24; Doc. 399-1 (Dish's list of 221 persons filed at Court's request).

In changing her opinion, it appears that Dr. Aron did not limit her consideration to existing data and instead is relying on three new datasets that Dish obtained from outside sources in 2017. *See* Doc. 390-1 at 3 n. 9-11. This data was obtained years after discovery closed[8] and substantially expands and changes the arguments Dish has made over the years about the identity of class members named in the Five9/SSN records. This new evidence is not limited to persons as to whom the Five9/SSN records were incomplete or even to persons as to whom Dish previously identified an issue within the existing data. Moreover, it appears that at least some of this "new evidence" – generated in 2017 – contains data going back for decades. Doc. 395-1 at ¶ 3; *see* Doc. 390-1 at ¶ 37 (Dr. Aron's explanation of how she used date information). While the Court's July 27

---

[8] During discovery, Dish did not disclose any expert witness who undertook a comprehensive analysis linking phone numbers to persons or who attempted to locate other, putatively more reliable data. Indeed, until its most recent filings, Dish was content to criticize Dr. Krakauer's analysis and data by pointing to a limited number of individual issues. *See, e.g.*, Doc. 129.

8

Order approved use of new data to identify class member names and addresses beyond those identified in the class notice list, Doc. 351 at 17 (*Krakauer*, 2017 WL 3206324, at *8), that Order cannot reasonably be read to authorize inclusion of such data in the "existing data" category that the Court referenced in another section of the Court's Order. *Id.* at 16 (*Krakauer*, 2017 WL 3206324, at *7).

In addition, many of the "inconsistencies" Dish identifies cannot reasonably be considered inconsistencies at all. For example, when the Five9/SSN records identify a particular person as the person Dish's agent was calling in an attempt to sell Dish's products and other existing data identifies other persons with the same last name as having an association with that phone number, the Five9/SSN records are corroborated, not undermined. Similarly, minor misspellings do not give rise to a reasonable dispute. *See* Doc. 397-1 at ¶ 19 ("Jeff Seymour" vs. Jeff Seymore."), ¶ 57(vii) ("Dan O'Torman" vs "Daniel OGorman"). Nor are situations where a name change is obviously associated with a change in marital status subject to reasonable dispute. *See* Doc. 397-1 at ¶ 48 (discussing Beulah Farmer). Likewise, different address information located as a result of change of address information filed with the Post Office does not give rise to an inconsistency.

Finally, Dish's presentation has made it harder for Dr. Krakauer and the Court to evaluate its claims that there are reasonable disputes. The Court required Dr. Krakauer to provide a proposed list to the defendant and for the parties to confer about any errors before a more final list was presented to the Court with the motion. *See* Doc. 351 at 28 (*Krakauer*, 2017 WL 3206324, at *12). Dish chose to dump thousands of pages of new

9

data on Dr. Krakauer and to make broad-brush claims of inconsistencies largely unsupported with specific citation to existing data.

These difficulties remain in the materials filed with the Court. Dr. Aron's declaration is 34 pages long, Doc. 390-1, and contains several thousand pages of exhibits. Docs. 390-2, -3, -4, -5, -6. The Court has struggled to determine when her opinions are based on new data and when her opinions are based on existing data. *See, e.g.*, Doc. 393-1 at ¶ 41 (referencing "the data" without stating whether "the data" includes the 2017 datasets); *cf.* Doc. 397-1 at ¶ 56(i) (Ms. Verkhovskaya's declaration that the referenced data is new). While Dish claims that the examples of individual problems set forth in its brief are widespread, it has not provided a comprehensive and clear breakdown of its challenges with specific citation to existing data. The Court has made every effort to evaluate and consider Dish's arguments, but it is not required to do the work that Dish elected not to do.[9]

Except to the limited extent stated *supra*, the Court rejects Dish's challenges to the Dr. Krakauer's motion. As previously explained, the Five9/SSN records, appropriately updated and supplemented with other reasonably reliable sources in the existing data, support the motion.

---

[9] *See Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 429 n.* (4th Cir. 2009), *quoting with approval United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) ("[A] court is not required to scour the record in search of evidence to defeat a motion") (internal quotation marks omitted); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n. 1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

10

## CONCLUSION

The Court takes seriously the need to correctly and efficiently identify class members not fully identified in the Five9/SSN records and to locate class members who may have moved. To that end, the Court has carefully reviewed Dr. Krakauer's evidence, sifted through Dish's haystacks, and found a couple of needles. The Court will direct Dr. Krakauer to revise the Group lists to remove those persons identified in this Order.

Specifically, the Court directs Dr. Krakauer to file under seal, within fourteen days, revised Group A and Group B lists to remove the 191 persons Dr. Krakauer now agrees should come off the judgment lists, *see* Doc. 395 at 14; to remove from Group B those persons identified only by first or last name; and to remove Elia Batista from the Group A list. These lists shall be filed under seal in the same format as the original lists, except Group A and Group B should be filed separately on the docket. No motion to seal is necessary.

Upon filing and review of those revised lists, the Court expects to enter a partial final judgment in favor of the class as to these violations. The parties shall immediately confer with each other about the form of a judgment which complies with the requirements of Federal Rule of Civil Procedure 23 and will be sufficient to certify the entire case, with the exception of issues remaining as to claims administration and processing, costs, and attorneys' fees, for appellate review. They shall thereafter exchange proposals and confer again. Should a party desire to require deposit of funds with the Court in an interest bearing account, the proposed judgment should require the deposit be made in the Court Registry Investment System (CRIS) pursuant to Local Civil

Rule 67.1(b). In any event, the Clerk of Court should be consulted for any proposed language regarding the deposit of funds with the Court.

No later than February 9, 2018, the parties shall file a Joint Submission on the Form of the Judgment, which shall be no longer than 6000 words total, divided evenly between the parties if they do not agree, with proposed judgments attached. The plaintiff shall also provide revised Group Lists including only the name, city of residence, and judgment amount, to be attached to the judgment. *See* Fed.R.Civ.P. 23(c)(3). If either party believes more information is needed in the list attached to the judgment, that may be addressed in the Joint Submission. No further briefing will be allowed on the form of the judgment.

Dish has been found liable for willfully violating the TCPA 51,000 times, and the Five9/SSN records identify in overwhelming numbers the persons Dish's agent attempted to solicit on Dish's behalf. In making future decisions about an efficient and fair claims administration process, the Court will take into account Dish's lack of respect for the terms of the Court's July 2017 Order, its continuing repetition of long-rejected arguments, and its attempt to obfuscate the issues, confuse the record, and shift arguments and facts. Resolving uncertainties as to the remaining 7000 or so class members need not consume an irrational amount of resources by the Court, the parties, and the Claims Administrator in order to make reasonable decisions.

**IT IS ORDERED** that Dr. Krakauer's motion for judgment, Doc. 381, is **GRANTED IN PART and DENIED IN PART as stated herein.** The parties shall

revise, confer, and file the materials required in this Order and a partial final judgment will be entered upon further review.

This the 25th day of January, 2018.

_____
UNITED STATES DISTRICT JUDGE

13