IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

v.

                                                   Civil Action No. 1:14-cv-00333-CCE-JEP

DISH NETWORK, L.L.C.,

    Defendant.

### Plaintiff's Response to Dish's Motion for Reconsideration

The still-pending arguments in Dish's motion to reconsider are based primarily on a handful of changes to the proposed judgment list made between November and February. In short, the changes reflect simple corrections—all *based on existing data*—to a small number of human data entry or merger errors. The Plaintiff should have notified the Court of these changes and regrets the miscommunication with his expert that resulted in his failure to do so. Nonetheless, these changes provide no basis for granting Dish's motion. Dish's motion does, however, support Plaintiff's request for a judgment identifying phone numbers rather than names.

### Background

On November 29, 2017, at the Court's invitation, Plaintiff filed a Motion for Judgment/Disbursement of Award. (ECF No. 385). Along with the motion, Plaintiff submitted a list of class members that were—as the Court had requested—"identified fully and without contradiction in the existing data." (*See* ECF No. 351 at 16). Herein, that exhibit is known as the "November List."

On January 25, 2018, the Court partially granted the Plaintiff's motion. (ECF No. 407). The Court accepted the November List in most respects but ordered the Plaintiff to submit an updated list that excluded (a) 191 class members the Plaintiff agreed to withdraw; (b) "those persons identified only by first or last name"; and (c) an individual named Elia Batista. The Plaintiff filed the new list on February 8, 2018. (ECF Nos. 409 & 410). It is referred to herein as the "February List."

On February 23, 2018, Dish filed the instant motion. Prior to any response by the Plaintiff, the Court entered an Order denying the parts of Dish's motion based on "reorganized information." (ECF No. 428). Plaintiff responds to the remaining aspects of Dish's motion below.

## Argument

**A. Dish's challenges are based on a small number of human errors that were corrected in the February List.**

Dish's remaining challenges, which concern less than 1.6% of the names on the February List, provide no basis for reconsideration of the Court's Order.

*First*, Dish points to a relative handful of discrepancies between the November List and the February List. Specifically, Dish identifies 164 instances in which the Plaintiff changed partial names to full names. Notably, Dish does not claim that the updated names are incorrect—that's because, as Dish surely knows, those updates were made based on information "in the existing data." As explained in Ms. Verkhovskaya's declaration, these names were simply truncated in the November List as a result of human error.

2

*Second*, Dish points out one instance in which the plaintiff substituted the name "Wilda Zirkle" for "Glen Moyer." Again, Dish does not claim that the name in the February List is incorrect, because the substituted name is based on the existing data. The substitution simply corrected a data entry error.

*Third*, Dish claims that the Plaintiff's identification of class members is undermined by the fact that, of the more than 5,300 claims submitted to date, five people have made claims that appear to contradict the information in the February List. Four of these instances, however, are traceable to the same data entry error described above. In the only other instance, the inconsistent claimant provided no evidence to support her submission.

*Finally*, Dish lists nine class members who it claims are deceased and therefore not entitled to recover on a TCPA claim. Dish's contention in this regard is best resolved via the individual claims process. Without conceding the legal issue, Plaintiff is willing to remove these class members from the February List and submit their claims for further review.

### 1. The "augmented" names in the February List are based on existing data.

In its January 25 Order, the Court ruled that it was not "appropriate to enter judgment in favor of persons where only part of a name is available" in the existing data. (ECF No. 407 at 6). The Court did not provide an exhaustive list, but instructed the Plaintiff to identify and remove from his proposed judgment list "all persons identified only by first or last name." (ECF No. 407 at 11).

3

The Plaintiff directed his expert, Ms. Verkhovskaya, to do so. However, when reviewing the November List, Ms. Verkhovskaya realized that many of the apparently incomplete names were actually the result of unintentional omissions, inadvertent truncations, or other human data entry errors. (*See* Verkhovskaya Decl. ¶ 9, attached as Exhibit A). As it turned out, 164 of these individuals (identified in Exhibit D to Dr. Aron's report) were in fact identified by first and last name *in the existing data.* (*Id.* ¶ 10). Accordingly, Ms. Verkhovskaya made appropriate corrections to these entries in the February List.[1] Believing her actions to be consistent with the Court's order, Ms. Verkhovskaya did not notify Plaintiff's counsel of the changes. (*Id.* ¶¶ 11-12).

In its motion, Dish does not contend that these changes in the February List are inaccurate or inconsistent with the Court's desire to enter judgment on behalf of all class members who have been "identified fully and without contradiction in the existing data." (ECF No. 351 at 11). Nor could it. As Ms. Verkhovskaya's declaration establishes, the changes were based on data that Dish has had for years. There is thus no basis for excluding any of these 164 class members.

### 2. The allegedly "new" name in Dish's motion is also based on existing data.

Dish asserts that, in one instance, Plaintiff added an "entirely new" name to the February List, substituting the name "Wilda Zirkle" for the name "Glen Moyer." (ECF

---

[1] As Dish's expert points out, Ms. Verkhovskaya did remove a number of class members who were truly identified by first and last name only. (*See* ECF No. 424 ¶ 12).

4

No. 424 ¶ 16). Again, this was a correction, *based on existing data*, to a data entry error in the November List.

In the database used to prepare the November List, Mr. Moyer and Ms. Zirkle appeared in consecutive rows. (Ex. A ¶ 17). At some point, however, Mr. Moyer's name, number, and zip code were erroneously transposed onto the row containing the address, notice ID, judgment amount, and other information belonging to Ms. Zirkle. (*Id.*). The result was two "Moyer Rows," one containing Mr. Moyer's name and information, and the other a mix of Moyer and Zirkle. (*Id.*). Then, in a process called "de-duplication," the second Moyer Row was deleted. (*Id.* ¶ 18).

When preparing the February List, Ms. Verkhovskaya recognized the error and included rows for both Zirkle and Moyer. (*Id.*). That is why it appeared that Ms. Zirkle was a "new" name. Believing her actions to be consistent with the Court's order, Ms. Verkhovskaya did not notify Plaintiff's counsel of the changes. (*Id.* ¶ 19).

Again, Dish does not actually claim that the February List is incorrect or that Wilda Zirkle is not entitled to an award based on the Court's criteria. As a result, there is no basis for excluding her from the List.

### 3. The allegedly "inconsistent" claim forms do not undermine the February List.

In its motion, Dish identifies five claims submitted by potential class members that it says "provide[] further evidence of contradictions" in the February List. For example, Dish points out that while the February List identifies "Tina Myers" with the phone number ending in ▉▉▉▉, a claim form was submitted—including a phone bill—stating

5

that Masato Miyamoto and his deceased wife, Yukiko Miyamoto, had the phone number ending in ▮▮▮ for over twenty years.

Upon examination, Ms. Verkhovskaya has concluded that the Miyamoto claim is not evidence of a true contradiction, but simply the result of a data entry error like the one described above. (Ex. A. ¶¶ 21-23). In other words, as in the case of Glen Moyer and Wilda Zirkle, Ms. Myers' name, number, and zip code were inadvertently transposed onto the Miyamoto entry. The difference is Ms. Verkhovskaya did not identify or correct this error prior to the production of the February List. (*Id.* ¶ 24).

Ms. Verkhovskaya confirms that three of the four other "contradictory" claims identified by Dish—Logue, Horner, and Robbins—are a result of the same type of error. (*Id.* ¶ 23). Importantly, the nature of these mistakes also explains away Dish's concern that, for these individuals, the Plaintiff has requested judgment for the wrong number of calls. When the transpositions are undone, the judgment amounts are correct. (*Id.* ¶ 3(c)). While these errors are unfortunate, they do not undermine the overall integrity of the February List, and provide no basis for excluding any class members. (*Id.* ¶ 4).

The only other "inconsistent" claim form—submitted by someone named Angela Blackley, who claims the phone number ending in ▮▮▮—contains no supporting evidence, such as a phone bill, to contradict the Plaintiff's identification of Lisa Hogrewe. Nor is Ms. Blackley's name associated with that number anywhere in the existing data. It could be evidence of an error in the February List, or it could be a fraudulent or erroneously filed claim. (*Id.* ¶ 25-26). In either event, the existence of a single

6

Case 1:14-cv-00333-CCE-JEP   Document 429   Filed 03/19/18   Page 6 of 12

inconsistent claim among the more than 5,000 filed does not undermine the class member identification process but, to the contrary, is strong evidence of success. (*Id.* ¶ 4).

**4. For now, Plaintiff will remove the allegedly deceased class members from the February List.**

Dish claims to have identified nine individuals on the February list who it claims are deceased and therefore not entitled to recover under the TCPA. Plaintiff disagrees with Dish's legal analysis. Nonetheless, in the interest of avoiding a potentially lengthy digression, Plaintiff is willing to remove these class members from the February List and subject their claims to the non-group claims process.

**B. Dish is right about two things: there is "good cause" for the changes to the February List, and the Plaintiff should have notified the Court about them.**

Dish itself suggested that there might be "good cause" for the changes to the February List, and the Plaintiff trusts that in light of the explanations above, the Court will agree. Indeed, Dish and its experts could have easily confirmed that all of the changes to the February List were based on the existing data. For reasons known only to Dish, it either chose not to perform this analysis or chose not to include that relevant information in its motion.

Nonetheless, Dish is also correct that the changes should not have been made without notifying the Court. The Plaintiff's failure to do so, however, was not an act of "stealth," as Dish accuses. It was simply the result of a misunderstanding between the Plaintiff and his expert.

The Plaintiff and Ms. Verkhovskaya have strived for perfection in their work, but when dealing with large amounts of data requiring human data entry, some mistakes are

7

inevitable. Had Dish committed itself to the robust meet and confer processes the Court prescribed—rather than saving its criticisms for its briefs—perhaps some of these mistakes would have been identified and corrected at an earlier stage. Nonetheless, the Plaintiff has been diligent in bringing its occasional errors to the Court's attention and will continue to do so even if an error is not identified by Dish.[2] The Plaintiff hopes his track record of cooperation and candid disclosure will earn the Court's indulgence here.

**C. The issues raised in Dish's motion support the Plaintiff's request for entry of judgment in favor of phone numbers.**

While the issues raised in Dish's motion to reconsider do not justify the removal of any individuals from the February List (aside from the allegedly departed), Dish's motion does illustrate the preferability of a judgment in favor the entire class, identified by phone numbers, not names.

Throughout these post-trial proceedings, Plaintiff has advocated for such an outcome, for which Rule 23 expressly provides. (*See, e.g.,* ECF No. 414 at 9-10); Fed. R. Civ. P. 23(c)(3)(B) (providing that the judgment in a class action may "specific *or* describe" the members of the class (emphasis added)). Essentially, Plaintiff has suggested that entry of a judgment that describes telephone numbers can reduce headaches by allowing for the administrative resolution of future issues related to the identification of

---

[2] Consistent with that approach, Ms. Verkhovskaya's has identified three additional errors similar to those discussed in Section B.2, which are identified in her declaration and can be filed as part of a corrected proposed judgment list, should the Court request. (Ex. A ¶¶ 31-34).

8

class members, rather than the need for hearings and motions to alter or amend the judgment.

The exercise of briefing and resolving Dish's motion to reconsider is a great example. The proposed judgment lists have been heavily scrutinized for months. The end result is a list that is, at worst, *more than 99.85% accurate*. And yet, the resolution of that miniscule fraction of potential errors has required dozens of hours of legal work, hundreds of pages of expert reports and exhibits, and untold frustration for the Court and its staff. If, after a judgment in favor of names is entered, a few more class members die or change their names (inevitable), or a few more errors are found (evitable, Plaintiff hopes), the Court and the parties could find themselves repeating this process over and over again.

On the other hand, if the Court enters a judgment in favor of numbers, all of that can be avoided. There is no dispute about the phone numbers that received illegal calls and the number of calls each received. If such a judgment is entered and there are subsequent changed circumstances among the class members, or errors unearthed, or dueling claims submitted, they can be resolved much more efficiently and effectively by the special master according to the rules the Court prescribes.

## Conclusion

For the foregoing reasons, Dish's motion for reconsideration should be denied. Plaintiff agrees that the allegedly deceased individuals Dish has identified should be stricken from the February List, and that the additional three errors identified in Ms. Verkhovskaya's declaration should be corrected. Ms. Verkhovskaya stands ready to

9

expeditiously prepare a revised judgment list consistent with the Court's rulings on Dish's motion.

                                      **Respectfully submitted,**

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
**Norris Law Firm, PLLC**
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

## CERTIFICATE OF SERVICE

    I hereby certify that on March 19, 2018, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

    /s/ John W. Barrett
    John W. Barrett

# CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3, the undersigned verifies that, using the Microsoft Word word count tool, the word count for Plaintiff's Response to Dish's Motion for Reconsideration is 2,354 words. This word count does not include the caption, signature lines, certificate of service, cover page, table of contents or table of authorities.

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com