IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

v.

                      Civil Action No. 1:14-cv-00333-CCE-JEP

DISH NETWORK, L.L.C.,

    Defendant.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO OVERRULE AND STRIKE DISH'S OBJECTIONS TO THE CLAIMS ADMINISTRATOR'S VALIDITY DETERMINATIONS**

**ARGUMENT**

1. **DISH's interpretation of the Claims Procedure Order and its meet-and-confer obligations is unreasonable.**

Plaintiff's motion is not complicated: Under the claims procedure order, the parties had seven days to meet and confer on any objections DISH had to the Claims Administrator's validity determinations, and then notify the Administrator of any agreements they might reach. (ECF No. 441 at 8.) Despite the tight timeframe, DISH disclosed only that it *might* object to 1,915 of the 2,093 validity determinations, on grounds it would specify at some later date. It did not specify those grounds or identify the objectionable claims (ultimately there were 678 of them) until after the meet-and-confer period was over.

Given DISH's post-trial track record and the Court's warning that "any future abuse of Court procedures by Dish" were "highly likely" to result in sanctions (ECF No.

458 at 3), Plaintiff was surprised to receive DISH's non-specified objections. How could the parties meaningfully meet and confer unless DISH told the Plaintiff which claims it objected to, and the grounds for the objections, during the meet and confer period?

Lacking any real explanation, DISH's response is to (again) urge a strained reading of the claims procedure order.[1] According to DISH, the obligation to tell the Plaintiff which claims it objected to and why is not contained in the order, but instead is a "secret precondition" imposed solely by Plaintiff's counsel. (DISH Br. at 4, ECF No. 480.) Explaining the basis for an objection is not a "secret precondition," but is necessary for the parties to engage in any meaningful meet-and-confer, especially during a truncated seven-day period.[2]

DISH also responds to Plaintiff's motion by blaming Plaintiff's counsel for not following up on an email to provide dates for a meet-and-confer. Rather than attribute this to oversight (which it was), rather than raise the issue again by phone or email, and rather than provide Plaintiff with the grounds for its objections at any time during the meet and confer period, DISH effectively claims the oversight excused DISH from

---

[1] And not for the first time. In the proceedings leading to the Court's entry of judgment to some 11,000 class members, DISH claimed that the order's reference to "existing data" authorized DISH to round up and dump on Plaintiff mountains of new evidence long after the close of discovery. The Court rejected DISH's reading of the order, awarded judgment to the class members, and warned DISH against similar efforts. (ECF No. 407 at 8-9, 12.)

[2] Meaningful meet-and-confers *can* happen in this context, and they just did. DISH timely notified Plaintiff of its objections to three recent validity determinations made by the Claims Administrator. After a short telephone call on September 6, DISH and Plaintiff's counsel agreed to resolve two of the objections, leaving only the third for consideration by the Special Master.

participating in the meet-and-confer process. According to DISH, this is because the nonresponse somehow revealed Plaintiff's "unwillingness to compromise on any of DISH's objections." (ECF No, 480-2 at 2.) This is a conundrum – how can Plaintiff refuse to compromise on objections without knowing the basis for them in the first place?

And in any event, DISH's false conjecture about Plaintiff's mindset is belied by Plaintiff's consistent approach to discussing and narrowing issues through all aspects of the case. As the Court has said, throughout the litigation Plaintiff has shown "a willingness to carefully examine issues and questions when they are raised in a concrete manner." (ECF No. 407 at 4). Nothing has changed since then; Plaintiff was willing to address concrete issues, but DISH raised none of them during the meet and confer period. Based on the Court's statements about the consequences of DISH's future noncompliance with Court orders, Plaintiff felt compelled to point out DISH's actions by filing the instant motion.[3]

---

[3] In its brief, DISH defends against Plaintiff's motion by deflecting on a host of irrelevant matters. For example:
- DISH faults Plaintiff for not responding to its notice that nine class members' names were misspelled. (DISH Br. at 3.) As the Court has stated, "minor [name] misspellings do not give rise to a reasonable dispute," (ECF No. 407 at 9), and name misspellings do not warrant a meet and confer. In any event, the names were easily corrected.
- DISH faults Plaintiff for not responding to a DISH email that did not request a response, or warrant one. (Email from E. Echtman to J. Barrett, Aug. 20, 2018, attached as Ex. 1.)
- DISH says Plaintiff did not disclose the basis for his objections along with his notice of intent to object, but does not mention that the only basis for the objections was that the claims were untimely, or that the parties did in fact confer during the meet-and-confer period on this issue. (Email from E. Echtman to R. Donovan, Aug. 1, 2018, attached as Ex. 2.)

3

Case 1:14-cv-00333-CCE-JEP   Document 483   Filed 09/10/18   Page 3 of 8

**2. Sanctions are warranted because the Court has warned DISH three times of its obligations to participate in the claims process in good faith, without effect.**

If this was the first time DISH had taken liberties during the claims process, sanctions would not be warranted. However, DISH has a history of this sort of conduct, despite repeated warnings, making sanctions warranted.

In its very first order outlining the post-trial claims process more than a year ago, the Court set the stage: "So long as Dish's participation [in the claims process] is helpful to confirm identification of class members, does not delay the proceedings, and is not obstructive, the Court anticipates allowing DISH to have some input." (ECF No. 351 at 10-11.)

Nonetheless, within a matter of months, "Dish chose to dump thousands of pages of new data on Dr. Krakauer" to support new opinions from an expert who had previously challenged the identity of a relative handful of class members, but who now asserted that over 96% of them were inconclusively identified. (ECF No. 407 at 8-9; *see also infra* n. 1.) This led the Court to warn:

> In making future decisions about an efficient and fair claims administration process, the Court will take into account DISH's lack of respect for the terms of the Court's July 2017 Order, its continuing repetition of long-rejected arguments, and its attempt to obfuscate the issues, confuse the record, and shift arguments and facts.

(*Id.* at 12).

---

- And despite the Court's statement that it had no intention of getting involved in the resolution of individual claims (ECF No. 351 at n. 20), DISH gets into these issues in its brief. The time for that kind of discussion was during the meet-and-confer period, not in a brief filed with the Court.

4

Even this did not stop DISH. After the Court ruled that it would enter judgment for roughly 11,000 class members, DISH repackaged its expert's opinions and moved to reconsider – a tactic the Court rejected without requiring Plaintiff to respond. (ECF No. 428.)

Then, the Court issued another warning when DISH tried to introduce yet more new evidence to support its request that the Court deny judgment to class members DISH claimed were deceased. This failed attempt led to the Court's most pointed statement: "[A]ny future abuse of court procedures by DISH and its lawyers . . . is highly likely to result in the Court's *sua sponte* considerations of sanctions," including "limiting or prohibiting DISH's participation in the claims process. (ECF No. 458 at 3-4.).

Now DISH has done it again, this time subverting and contorting the reasonable provisions of the claims procedure in order to avoid a meaningful meet-and-confer. DISH did so with full knowledge of the consequences, and its objections should be stricken.

## CONCLUSION

Plaintiff respectfully requests the Court grant his motion, overrule and strike DISH's objections to the Claims Administrator's validity determinations, and grant any other relief necessary to enforce compliance with its orders.

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555

jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
Norris Law Firm, PLLC
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775 /(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

6

## CERTIFICATE OF SERVICE

      The foregoing was filed electronically on September 10, 2018. Notice of this filing will be sent to all parties registered with the Court's electronic filing system by operation of the Court's system. Parties may access this filing through the Court's electronic filing system.

                                        /s/ John W. Barrett

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3, the undersigned verifies that, using the Microsoft Word word count tool, the word count for Plaintiff's Reply in Support of Motion to Overrule and Strike Dish's Objections to the Claims Administrator's Validity Determinations is 1,299 words. This word count does not include the caption, signature lines, certificate of service, cover page, table of contents or table of authorities.

Respectfully submitted**,**

/s/ John W. Barrett
John W. Barrett
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com