IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, on behalf of a class of persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:14-CV-333 |
| DISH NETWORK, L.L.C., | ) ) ) | |
| Defendant. | ) | |

## **MEMORADUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Class Counsel for plaintiffs seek attorney's fees, nontaxable costs, and compensation for the class representative from a common fund created following a jury trial and final judgment of $61 million against defendant Dish Network, LLC for its willful violations of the Telephone Consumer Protection Act. The Court has reviewed Class Counsel's request and supporting evidence, as well as attorney's fees and class representative awards from similar cases. For the reasons stated herein, the Court will grant the motion in part to award Class Counsel's fees and expenses but will deny the motion to the extent it seeks a class representative award.

I. **BACKGROUND**

In April 2014, Dr. Thomas Krakauer, the plaintiff and class representative, sued Dish under the Telephone Consumer Protection Act, 47 U.S.C. § 227(c), alleging that he and others on the "Do Not Call Registry" received more than one telephone call within a 12-month period in violation of the TCPA and that the calls were made on behalf of Dish.

Doc. 1 at 10. Dr. Krakauer sought injunctive and monetary relief on behalf of himself and the class. *Id.* at 10–11. On September 9, 2015, the Court certified the class, Doc. 111 at 4, 34,[1] which at the time of judgment was approximately 18,066 persons. Doc. 439 at ¶ 1.

The Court denied summary judgment in substantial part, Doc. 113; Doc. 118; Doc. 169, as well as motions to exclude expert witnesses. Doc. 110; Doc. 222; Doc. 233. After some delays while trial logistics and management issues were resolved, *see* Doc. 203; Doc. 225; Doc. 251, the case proceeded to a jury trial in January 2017. *See* Minute Entry 01/10/2017. After a six-day trial, the jury returned a verdict finding that Dish, through its agent Satellite Systems Network, made over 51,000 telephone solicitations to a class of plaintiffs on the Registry in violation of the TCPA. *See* Doc. 341 at 1. The jury awarded $400.00 per call. Doc. 292 at 2. After finding the violations were willful, the Court trebled the damages to deter Dish from future violations and to give appropriate weight to the scope of the violations. *See* Doc. 338 at 30–31.

Dish filed numerous post-trial motions attempting to avoid the consequences of the verdict. It moved for judgment as a matter of law, contending that there was insufficient evidence. Doc. 318; Doc. 319. It moved for a new trial, contending that the jury's verdict was against the weight of the evidence and a miscarriage of justice. Doc. 320; Doc. 321. Finally, Dish moved to set aside the verdict and dismiss the action

---

[1] The Court also certified a second class of people whose numbers were on the internal do-not-call lists of Dish or its agent. *See* Doc. 111 at 4 (citing Doc. 47), 33. The parties later stipulated to dismiss this class from the lawsuit. Doc. 271.

because it maintained that the judgment of the United States District Court for the Central District of Illinois in *United States v. DISH Network, LLC*, No. 3:09-3073, 2017 WL 2427297 (C.D. Ill. June 5, 2017), barred overlapping claims, applying the doctrine of res judicata, Doc. 346; Doc. 347 at 9, and it renewed its motion for remitter based on due process grounds. Doc. 346; Doc. 347 at 18. The Court denied these motions in June and October 2017. Doc. 341; Doc. 370.

The Court initially delayed entering judgment to allow Dish to address issues it had raised about the identity of some class members. Doc. 351 at 26. Dish did not use the opportunity appropriately; instead of raising such potentially legitimate arguments in a productive and orderly fashion, it engaged in obstructive efforts to avoid or delay the consequences of the jury verdict. Specifically, Dish: (*i*) halfheartedly participated in meet-and-confer requirements; (*ii*) filed irrelevant and voluminous materials in connection with the plaintiff's motion for judgment, *see* Doc. 407 at 7–10, 12; (*iii*) repeated arguments the Court had rejected many times, *see*, *e.g.*, Doc. 351 at 5–6; Doc. 370 at 23; (*iv*) sought a second bite at the apple when it lost on grounds it could have raised the first time the apple was presented, *see*, *e.g.*, Doc. 423 (brief on motion for reconsideration); Doc. 428 at 5 (order denying same); and (*v*) continued to offer only cumbersome and inefficient methods of resolving purported challenges to class member identity that surpassed identity disputes. *See, e.g.*, Doc. 417 at 5–7, 10–24.

In April 2018, the Court determined that the time for entering judgment had come. Doc. 438. The Court entered judgment for the plaintiff class against Dish in the amount of $61,342,800. Doc. 439.

While the Court has entered final judgment, the case is not over. The claims process is proceeding pursuant to a management order and is not yet complete. Doc. 441. Dish has also filed a notice of appeal to the Fourth Circuit. Doc. 462.

Counsel for plaintiffs filed the pending motion for attorney's fees, supported by numerous declarations, on May 7, 2018, Doc. 460, pursuant to a schedule established by the Court. Doc. 439 at ¶ 4. Dish has filed nothing in opposition. Several class members have filed objections or comments. Doc. 470.

## II. ANALYSIS

### A. Fees

In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement. Fed. R. Civ. P. 23(h). In a common-fund case such as this, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Fourth Circuit "overwhelmingly" prefer the percentage method in common-fund cases, *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016), and "the vast majority of courts of appeals now permit or direct district courts to use" this method. Manual for Complex Litigation § 14.121 (4th ed. 2011); *id.* at n.483, n.484, n.485 (listing cases by circuit).

To determine the reasonableness of the fee award, the Court begins by considering the twelve factors identified in *Barber v. Kimbrell's, Inc.*: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in

4

pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases." 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)). The Court also has conducted a lodestar cross-check that compares the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) ("The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar.").

   1. ***Barber* Factors**

Class Counsel request attorney's fees of 33.33% of the total judgment amount at the time of distribution, including interest; as of the date of the motion, the requested fee would be $20,445,555, Doc. 460, and would increase as interest accrues. The Court finds it more appropriate to award a fee based on the judgment amount entered on April 5, 2018, $61,342,800, excluding interest. *See* Doc. 439. A fee of $20,447,600, which is one-third of the judgment, is reasonable.

Contingent fees of up to one-third are common in this circuit in similar cases. *Phillips*, 2016 WL 2636289, at *6; *see also Boyd*, 299 F.R.D. at 464 (noting attorney's fees awarded under the percentage of the fund method "are generally between twenty-five (25) and thirty (30) percent of the fund."). The Court is not aware of a comparable TCPA case that went to trial, but in cases where parties settled TCPA claims, and which necessarily required less work and risk as well as lower recoveries, courts have typically awarded one-third of the settlement fund to cover attorney's fees. *See, e.g.*, *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 8:11-cv-02467-PWG, Doc. 105-1 at ¶ 5, Doc. 110 at ¶ 13 (D. Md. Oct 21, 2014 and Feb. 12, 2015) (approving attorney's fees of $1.5 million plus costs from $4.5 million TCPA settlement fund); *Hageman v. AT&T Mobility, LLC*, No. 1:13-cv-00050-RWA, Doc. 68 at ¶ 14 (D. Mont. Feb. 11, 2015) (awarding attorney's fees equal to one-third of TCPA settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953, Doc. 146 at ¶¶ 9, 11 (N.D. Ill. Nov. 1, 2010) (same); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No.1:09cv00776, Doc. 98-2 at 7, Doc. 100 at ¶ 8 (same) (N.D. Ill. Jan. 7, 14, 2011). In this complex case with numerous contested issues, there is more than sufficient reason to support a one-third contingent fee.

Regardless of the underlying subject matter, it takes skilled counsel to successfully manage an 18,000-plus member class action. It takes a different set of highly developed skills to successfully achieve a jury verdict. Class Counsel here is particularly experienced and skilled in TCPA litigation, having settled numerous TCPA class actions including acting as co-lead counsel in a multidistrict TCPA case. Doc. 461-3 at ¶¶ 5, 6,

8. Class Counsel also successfully litigated complicated questions involving standing, class certification, agency, and res judicata in this matter. *See* Doc. 111; Doc. 113; Doc. 118; Doc. 218; Doc. 370. Class Counsel persisted in a case where Dish contested nearly every issue—frequently more than once and to such a degree that the Court eventually noted Dish's "repetition of long-rejected arguments, and its attempt to obfuscate the issues, confuse the record, and shift arguments and facts." Doc. 407 at 12.

Against this backdrop, Class Counsel achieved an excellent result on behalf of the class. The $61 million judgment results in an average payout of more than $3,000 per class member. The judgment applies to the entire class and does not exclude any trial class members. While certain claims were dropped along the way, those claims were largely duplicative of the claims that went to trial. *See* Doc. 264 at ¶ 6 (stipulation to dismissal of Count II, which was based on calls made to numbers on Dish's internal Do Not Call lists and that were likely duplicative of other counts based on calls made to the national Do Not Call Registry); Doc. 271 (order dismissing Count II without prejudice and modifying class definition consistent with the parties' stipulation).

Finally, the judgment is in the form of cash, which is more valuable than other forms of recovery, such as coupons. The claims process developed through Class Counsel's advocacy is also relatively easy for class members to navigate, despite requiring many steps for the Court and parties.

The class also appears satisfied with Class Counsel. Only 40 out of 18,000-plus class members objected to Class Counsel's fee and expense request. Doc. 470 at ¶ 5. The absence of a significant number of objections to the settlement indicates that

7

"counsel have achieved a superior result for the class and weighs in favor of their requested award." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (approving settlement and award where class members submitted no objections). Many of the class members objecting did so with factual or procedural misunderstandings. *See* Doc. 477 at 3–4; Doc. 470-4. The remaining objections, asking that the percentage of attorney's fees be reduced or that costs be excluded from the attorneys' share, are understandable but, in the Court's view, do not adequately consider the amount of work undertaken by Class Counsel, the significant success achieved, or the fact that, without the potential for fee awards, TCPA cases are unlikely to be brought and there would be no compensation at all for class members. *See generally* Doc. 470-4. In light of these considerations, the class member objections do not undermine the reasonableness of the requested fee.

The excellent result obtained is "the most critical factor in determining the reasonableness of a fee award" and further supports finding the requested fee reasonable. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (internal quotation omitted). Class members and their counsel were hardly assured the successful outcome achieved here at the outset of the case. While a jury may award between $0-500 per violative call on a TCPA claim, 47 U.S.C. § 227(c)(5)(B), Dish raised several defenses and recovery was not assured. Even with a win before the jury, courts have discretion on whether to treble damages after finding willful or knowing violations. § 227(c)(5). Class Counsel assumed significant risk in representing the plaintiff and the class and will continue to face that risk as it litigates issues on appeal.

As of April 17, 2018, Class Counsel has spent close to 8,500 hours prosecuting the case. Doc. 461-3 at 9–10. They also have expended almost $500,000 from their own pockets. *Id.* at 12. These are hours and money that Class Counsel could have put towards other simpler and less risky matters. Doc. 461-1 at 26. The time commitment and the risk is not over yet, as Class Counsel anticipates requiring an additional 1,000 hours to finalize the claims process and an additional 1,500 hours to defend the verdict on appeal. Doc. 461-3 at 10.

Class Counsel's prior work in *Donaca v. Dish, LLC*, No. 11-02910 (D. Colo.) illustrates the risk they assumed by litigating the present matter. In *Donaca*, Class Counsel spent over 5,000 hours on a TCPA case that the named plaintiff voluntarily dismissed after the court denied class certification. Doc. 461-3 at ¶¶ 8–10. While Class Counsel was able to leverage some of the *Donaca* work into the litigation of this case, it will not recover fees for the 5,000-plus hours it spent on that case. *Id.* at ¶¶ 8-11.

The Court finds that attorney's fees equal to one-third of the common fund amount when the Court entered judgment, $20,447,600, are reasonable based on the time and labor Class Counsel expended, the value of counsel's work and the results obtained, the risks and obstacles counsel faced, and the customary fee for TCPA cases and awards in similar cases.[2]

---

[2] The judgment amount will increase as post-judgment interest is applied, *see* Doc. 439 at ¶ 3, and therefore an award of attorney's fees fixed at $20,447,600 will ultimately be less than one-third the final judgment amount when it is executed.

**2. Lodestar Cross-check**

Courts often use the lodestar method to cross-check the reasonableness of a percentage fee. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 756, 759 (S.D.W. Va. 2009) (collecting cases). To determine the lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). When the lodestar method is used only as a cross-check, however, courts need not "exhaustively scrutinize[]" the hours documented by counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

"Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Phillips*, 2016 WL 2636289, at *8; *see also Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 689 (D. Md. 2013) (noting that the lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"); Doc. 461-2 at 31–34 (list of 54 cases with lodestar multipliers over 3.5); Doc. 461-2 at 22 (Rubenstein Decl. referencing same). Here, Class Counsel provided undisputed evidence of an hourly rate of between $325 to $760 per hour for attorneys, between $125 and $240 per hour for paralegals, and $85 per hour for legal assistants. Doc. 461-3 at 9–10. These rates are consistent with the rates used by Class Counsel in other TCPA cases. *See* Doc. 461-3 at 11 (listing cases with similar fees); Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement, *Kensington Physical Therapy*, No. 8:11-cv-02467-PWG, Doc. 108 at 30

(TCPA settlement in which Class Counsel sought fees based on rates of $450 for associates and $700 for partners). They are also comparable to local rates for complex litigation. Doc. 461-6 at ¶ 8. The contingent nature of the case also supports a higher hourly rate than might apply in ordinary complex litigation in this district.

The Court has reviewed Class Counsel's time summaries, which cover more than 8,000 hours. Doc. 461-3 at 9–10. Class Counsel testified that they "strived to work efficiently and perform only the work necessary for an outstanding result for the class." Doc. 461-3 at ¶ 13. This testimony is consistent with the Court's observation on the number of attorneys appearing before the Court. *Id.* (noting that "[a]t trial, for example, [Class Counsel] had two lawyers who handled all witnesses and argument, and three lawyers who supported the trial team . . . [,] no paralegal . . ., and no technical support staff."). The Court finds that the time Class Counsel spent on the case is reasonable considering the complexity and number of issues they addressed and considering that the case was tried before a jury. *See* Doc. 461-5 at ¶ 13 (affidavit of practicing North Carolina attorney stating that lodestar of 8500 hours is "extremely reasonable based on my experience with similar complex class action matters").

An award of one-third of the judgment amount at the time of entry, $20,447,600, represents a lodestar multiplier of just under 4.39, i.e., 4.39 times the $4,659,761.80 lodestar amount for work through April 17, 2018. This does not take into account hours Class counsel will spend on appeal and during the remainder of the claims process. *See* Doc. 461-3 at 10. Thus, the lodestar will ultimately be smaller. The 4.39 lodestar also does not account for Class Counsel's work in the *Donaca* case, which yielded significant

evidence that Counsel were able to use in this case but for which they were not compensated. *See* Doc 461-3 at ¶¶ 8–10. It is appropriate to consider, to some extent, the time Class Counsel spent litigating that case. Class Counsel's zealous advocacy, despite the increasingly high risk present as the case progressed, also supports a relatively high multiplier. In sum, a 4.39 multiplier is reasonable for this case.

### B. Expenses

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (internal quotation omitted). Here, Class Counsel requests reimbursement of expenses in the amount of $481,317.73. Doc. 461 at 24–25. Class Counsel have excluded from the expense request costs for meals, Westlaw research, and other expenses, which reduced expenses by $65,648.58. Doc. 461-3 at ¶ 20. The expenses are all for legitimate costs associated with prosecuting the case and the amounts are reasonable. The Court finds that Class Counsel's request is fair and reasonable and will approve it. *See Kensington Physical Therapy*, No. 8:11-cv-02467-PWG, Doc. 105-1 at ¶ 5, Doc. 110 at ¶ 13 (approving expenses in addition to a one-third common fund fee award).

### C. Class Representative

At the end of a successful class action, it is common for trial courts to compensate class representatives for the time and effort they invested to benefit the class. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, however, the class

representative, Dr. Krakauer, repeatedly stated before the jury that he was only seeking damages that were authorized under the TCPA, testifying that he "would receive only the same amount as every member of the class," Doc. 302 at 29, and he was "not expecting to get more than $500." *Id.* at 46. Class counsel similarly represented to the jury that "Dr. Krakauer . . . does not get to keep the money himself if you award any" and will be "treated like the other class members." Doc. 301 at 84. Based on Dr. Krakauer's representation and on Class Counsel's objection, the Court limited Dish's cross examination of Dr. Krakauer about what money he would receive from the lawsuit. *See* Doc. 302 at 46–48. The Court will hold Dr. Krakauer to his word and will deny the motion to the extent that it seeks a class representative award.

### III. CONCLUSION

Class Counsel achieved an excellent result for class members, assuming significant risk and overcoming numerous obstacles along the way. After considering the twelve *Barber* factors relevant to Class Counsel's request for attorney's fees and the lodestar amount, the Court will award an attorney's fee of one-third of the judgment at the time of entry, $20,447,600. The Court will also grant the request for expenses, finding this request fair and reasonable. The Court denies the class representative award to Dr. Krakauer consistent with his representations at trial.

It is **ORDERED** that:

1. Class counsel's motion for attorney's fees, expenses, and a class representative award, Doc. 460, is **GRANTED in part and DENIED in part.**

2. The Court awards Class Counsel an attorney's fee of $20,447,600, to be paid from the final judgment awarded to the class.

3. The Court awards Class Counsel expenses of $481,317.73, which are to be paid from the final judgment awarded to the class.

4. The Court denies the plaintiffs' motion to the extent it seeks a class representative award for Dr. Krakauer.

This the 3rd day of December, 2018.

_____
UNITED STATES DISTRICT JUDGE