# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT
## OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS KRAKAUER, | ) | |
| Plaintiff, | ) | CASE NO. 1:14-CV-00333-CCE-JEP |
| v. | ) | |
| DISH NETWORK L.L.C., | ) | |
| Defendant. | ) | |

## DEFENDANT DISH NETWORK L.L.C.'S CORRECTED
## PARTIAL OBJECTIONS
## TO THE SPECIAL MASTER'S REPORT

DISH Network L.L.C. ("DISH") respectfully submits this memorandum of law in support of its partial objections to the Special Master's Report Regarding Rulings On Objections to the Claims Administrator's Validity Determinations, dated November 30, 2018 (the "Report").

## PRELIMINARY STATEMENT

Pursuant to the Court's Order on Claim Procedures, the Special Master was charged with the task of ruling on the parties' objections to the Claims Administrator's validity determinations. Doc. 441 at ¶ 6(j) ("Rulings on objections to the Administrator's validity determinations will be made by the Special Master . . . ."). DISH respectfully submits that, in performing this task, the Special Master

upheld certain of the Claims Administrator's validity determinations over DISH's objections that did not meet the Court's validity standards. For those claims, DISH submits that the claimant did not meet his or her burden to show that the claimant is the appropriate person to receive the damages award. *Id.* at ¶ 6(e)(i) ("A valid claim is one that the Administrator determines, *using all available information*, was submitted by the person who had the number during the class period or resided in the household that had the number (or that person's representative).") (emphasis added).

DISH objects to the Special Master's findings in three specific respects: *First*, the Special Master overruled DISH's objections and found claims valid where the available information in the case record shows that individuals with completely different names and residing at different addresses than the claimant are associated with the telephone number *during the class period*. Under these circumstances, without any supporting documentation from the claimant to show that the claimant is the correct person to receive the damages award, as opposed to the other identified individuals, the Special Master and the Claims Administrator could not have reasonably determined that the claimant is more likely than not the person entitled to receive the jury's award. For that reason, the Special Master should have sustained DISH's objections.

*Second*, the Special Master issued inconsistent rulings on similarly situated claims. DISH objected to the Claims Administrator's validity findings where the claimant is not identified in any of the existing data and the existing data identifies people with different names at different addresses. For 37 claims in this category, the Special Master overruled the Claims Administrator to find the claims invalid. But for the remaining 9 similarly situated claims, the Special Master upheld the Claims Administrator's validity finding in his Report without explanation. As a matter of consistency, the Special Master should have treated all claims in this category the same way, finding all of them invalid.

*Third,* the Special Master found claims valid where the available information shows that the person who had the telephone number during the class period is deceased. A TCPA claim is a privacy claim that abates upon death. Even assuming that a claim could pass through a deceased person's estate, the claimant should be required to demonstrate that he or she has rights to represent that estate or inherit the deceased person's damages award. DISH submits that the Special Master should have found claims invalid in circumstances where the person otherwise entitled to the damages award is deceased. DISH further submits that the Special Master should have found claims invalid in circumstances where a claimant seeks to recover on behalf of a deceased person but has not demonstrated a legal right to do so.

## PROCEDURAL HISTORY

## I.    THE RELEVANT CLAIMS PROCEDURES

The Court established detailed procedures for the submission and review of claims in its Order on Claims Procedures dated April 5, 2018.  *See gen.*, Doc. 441.

First, the Claims Administrator must determine whether claims are complete.  *Id.* at ¶ 6(a).  "A complete claim is one that has been submitted with all relevant information, including a signed claim form."  *Id.* at ¶ 6(b).  The Court further stated that, for completeness purposes, "supporting information" from the claimant "is helpful, but not required, particularly where the data regarding the claimant is reasonably consistent and the claimant has attested that he or she had the number during the class period."  *Id.* at 6.

Second, the Claims Administrator must determine whether complete claims are valid or invalid.  *Id.* at ¶ 6(e).  The Court provided guidance to the Claims Administrator on what constitutes a valid claim, stating:  "a valid claim is one that the Administrator determines, *using all available information*, was submitted by the person who had the number during the class period or resided in the household that had the number (or that person's representative)."  *Id.* at ¶ 6(e)(i) (emphasis added).  The Court specified that the "available information" for the Claims Administrator to consider includes "documentation provided by the consumer, any records from telephone companies, *any evidence already in the record*, whether

4

there are other claimants to the same telephone number, and, if the parties agree, any other information or data regarding the consumer's claim that he or she is a class member." *Id.* at ¶ 6(e)(ii) (emphasis added).

The parties may object to the Claims Administrator's validity determinations, which objections are subject to the Special Master's review. *Id.* at 8-9. The objections must be submitted on a claim by claim basis, and are limited to two pages in length. *Id.* at ¶ 6(h). The objections are limited to the question of whether the claimant is the appropriate person to receive the damages award, under the standards articulated by the Court. *Id.*

"Rulings on objections to the Administrator's validity determinations will be made by the Special Master under procedures the Special Master deems appropriate and efficient." *Id.* at 6(j). In connection with that process, the Order on Claims Procedures authorized the Special Master to consider the documentation supplied to the Claims Administrator, as well as and any additional information submitted by the parties that he deems appropriate. *Id.*

## II.   THE CLAIMS ADMINISTRATOR MADE VALIDITY DETERMINATIONS WITHOUT "USING ALL AVAILABLE INFORMATION"

The Court's Order on Claims Procedures provides that "[a] valid claim is one that the Administrator determines, using all available information, was submitted by the person who had the number during the class period or who

5

resided in the household that had the number (or that person's representative)." Doc. 441, at ¶ 6(e)(i). The available information includes all evidence in the case record. *Id.* at 6(e)(ii).

As part of the Special Master's process of evaluating the parties' objections to the Claims Administrator's validity determinations, the Special Master requested information from the Claims Administrator on the standards it employed and the information it relied upon. In response, the Claims Administrator submitted a Declaration from Julie Swanson. *See* Declaration of Elyse D. Echtman (the "Echtman Decl."), Ex. G. In that Declaration, Ms. Swanson disclosed that the Claims Administrator *did not* consider the available information from LexisNexis, Experian, Microbilt or Five9 that Plaintiff's expert had relied upon to attempt to identify class members and remove business numbers unless the claim submission exhibited certain specific indicia of fraud. Specifically, the Claims Administrator only consulted those data sources if there were multiple claim submissions for a single number. *See id.* at ¶ 12 ("If any of any of these potential fraud indicators existed, then the name and address originally assigned to the phone number and/or the name and address included in the Five9, LexisNexis, Microbilt, and Experian data (the 'Third-Party Data') was also considered."). As a result, the Claims Administrator found claims valid without have considered "all available

6

information" and without taking note of contradictory information within the existing data that undermined a claim's validity.

## III. DISH'S OBJECTIONS TO THE CLAIMS ADMINSITRATOR'S VALIDITY DETERMINATIONS

The Claims Administrator issued approximately 2,000 validity determinations. Pursuant to the Order on Claims Procedures, as modified by the Court's September 12, 2018 Order (Doc. 485), DISH timely submitted objections to 350 claims that the Claims Administrator found valid for the Special Master's consideration. DISH objected to those claims primarily on the grounds that the Claims Administrator should not have ruled claims valid when: (1) individuals with completely different names and residing at different addresses than the claimant are identified in the existing data for the telephone number; or (2) the claimant or the individual who had the telephone number during the class period is deceased.

DISH did not object to claims where the claimant had provided supporting documentation showing that he or she had the telephone number before, during or after the class period, and also signed the claim form attesting to having the telephone number during the class period. Even if the claimant submitted no supporting documentation, DISH did not object if the existing data fairly consistently or reliably identified the claimant or an apparent household member,

7

notwithstanding that there may have been a name contradiction in some of that data.  As part of its analysis, following the Court's prior rulings, DISH accepted partial name matches and/or address matches as consistent with household membership or an apparent last name change.

DISH has further narrowed its objections at this stage.  DISH objects to the Special Master's validity determinations only to the extent that the Special Master ruled claims valid notwithstanding that:  (i) the claimant submitted no supporting documentation and the existing data identifies a different person at a different address for the telephone number within the class time period; or (ii) the ostensible class member is deceased.

## IV.   THE SPECIAL MASTER'S PROCESS AND HIS REPORT

Pursuant to the Joint Stipulation submitted to the Special Master, the parties consented to the Special Master's consideration of the following documentation in adjudicating the objections:

a) A spreadsheet containing any name, address, and applicable data information in Five9, LexisNexis, Microbilt and Experian data for the telephone numbers at issue in the parties' objections ("Spreadsheet #1") (Echtman Decl. Ex. A);

b) The Claims Administrator's spreadsheet of efforts to contact potential claimants for each telephone number at issue in the parties' objections ("Spreadsheet #2") (Echtman Decl. Ex. B);

8

c) The Claims Administrator's spreadsheet containing claims information and validity determinations for each claim and telephone number at issue in the parties' objections ("Spreadsheet #3") (Echtman Decl. Ex. C)[1]; and

d) All information in the Claims Administrator's files with respect to each telephone number at issue in the parties' objections, including all documents that claimants provided to the Claims Administrator in support of their claims.[2]

Doc. 494-1.

The Special Master filed his Report on November 30, 2018. *See* Doc. 494. In that Report, the Special Master sustained 37 of DISH's objections to the Claims Administrator's validity determinations. *See* Doc. 494-4. While the Special Master did not detail his reasoning or analysis within his Report, he apparently concluded that the Claims Administrator had an insufficient basis to determine that the claimant was the person entitled to the damages award for those telephone numbers. *See* Doc. 494 at 4. For most of those 37 claims, the claimant is not identified in any of the existing data and the existing data identifies individuals with completely different names and at different addresses from the claimant. However, for other claims that fit the same profile, the Special Master agreed with

---

[1] For the Court's convenience, Spreadsheet Nos. 1-3 that DISH is submitting to the Court include relevant information only for those claims that DISH is contesting at this stage.

[2] DISH provided to the Special Master along with its individualized objections the corresponding claim form and supporting documentation, if any, that it received.

the Claims Administrator's validity determinations. The Report does not explain the Special Master's basis for distinguishing between these claims.

The Special Master found that TCPA claims survive a claimant's death and, on that basis, overruled DISH's objections, even where the individuals who submitted the claims failed to establish a legal right to represent the deceased person's estate or inherit the deceased person's damages award. In all other respects, the Special Master summarily overruled DISH's objections.

The Special Master also overruled the objections Plaintiff filed to 26 claims that the Claims Administrator denied as untimely. For those claims, the Special Master recommended that the Claims Administrator's invalidity determinations be upheld because they were either postmarked or submitted online after the June 18, 2018 deadline for claim submissions. Doc. 494 at 4. DISH does not object to this aspect of the Report.

**ARGUMENT**

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 53(f) sets forth the applicable standard for the Court's review of a Special Master's Report. "The court must decide de novo all objections to findings of fact made or recommended" by a Special Master, unless the parties stipulate otherwise. Fed. R. Civ. P. 53(f)(3). The parties have not stipulated to a lesser standard of review in this case. Accordingly, the Court is

10

required to conduct a de novo review. Similarly, "the court must decide de novo all objections to conclusions of law made or recommended" by the Special Master. Fed. R. Civ. P. 53(f)(4). To assist in that de novo review, DISH is providing the Court with the information considered by the Special Master in connection with the claims to which DISH maintains its objections, including DISH's two-page objections for each of the claims. *See* Echtman Decl. Exs. D-F.

DISH respectfully submits that the Court should employ a "preponderance of the evidence" standard in reviewing the Special Master's findings. Each claimant, as an ostensible member of the plaintiff class, has the same burden of proof as any other individual plaintiff on a TCPA claim to show that he or she has legal rights with respect to the telephone number called. *See* 28 U.S.C. § 2072(b); *Lewis v. Casey*, 518 U.S. 343, 357-58, 360 n.7 (1996) (the foundational principle that "[c]ourts have no power to presume and remediate harm that has not been established" is "no less true with respect to class actions than with respect to other suits."). Accordingly, the Court should not find that any claimant is the person entitled to the damages award unless the record evidence demonstrates that the claimant is *more likely than not* "the person who had the number during the class period or resided in the household that had the number (or that person's representative)." Doc. 441 at ¶ 6(e)(i). DISH objects to the Special Master's

11

validity findings to the extent that the record evidence does not show that the claimant is more likely than not the person entitled to the damages award.

## II. DISH'S OBJECTIONS

### A. The Special Master Should Have Found Claims Invalid Where The Existing Data Identifies Individuals With Completely Different Names And At Different Addresses From the Claimant During The Class Time Frame

DISH objects to the Report to the extent that the Special Master overruled DISH's objections and found claims valid where the LexisNexis data identifies at least one entirely different individual, who is not an apparent household member, as associated with the telephone number *during the class time frame*. A list of the 135 claims that fall into this category, and DISH's corresponding individualized objections, are attached as Exhibit D to the Echtman Declaration. For these claims, the record evidence does not reasonably support a finding that the claimant is more likely than not the appropriate person to receive the damages award.

For the vast majority of these 135 claims, the claimant is identified only in the Five9 data. Plaintiff's expert has acknowledged that the Five9 data is the least reliable of the data sources that she relied upon. *See* Doc. 133-1 at ¶ 5 ("A.B. Data believes that the LexisNexis and Microbilt data is more reliable than the data available from Five9.") Nonetheless, the Five9 data was the primary data source that plaintiff used for class mailings and notices. When the LexisNexis data

identifies a different person at a different address than the Five9 data, particularly *during the class period*, that LexisNexis data should be given significantly more weight than the Five9 data. The LexisNexis data holds even more weight when the contradictory name information in that data is corroborated by another data source.

Below are representative examples of contradictions in the existing data for the class time frame that should have prevented the Special Master from finding claims valid:

- DISH objected to the Claims Administrator's validity finding for Lisa Targonski's claim, DKR-400477963, in connection with the telephone number ending in 2610. *See* Echtman Decl. Ex. C (Spreadsheet #3), Row 150. The LexisNexis data shows Jessica Mahoney associated with that telephone number during the class period. The Experian data corroborates the LexisNexis data, also identifying Ms. Mahoney. *Id.* at Ex. A (Spreadsheet #1), Rows 445-46. Ms. Targonski's name appears in the Five9 data only. *Id.* at Row 447. Moreover, none of the available addresses for Ms. Mahoney match the available addresses for Ms. Targonski, showing that they do not appear to be members of the same household. *Compare* Spreadsheet #1, Rows 445-46 *with* Spreadsheet #3, Row 150, Columns O-S. Ms. Targonski provided no supporting documentation to substantiate her claim. Based on this record, the Special Master should not have found Ms.

Targonski's claim valid, because the record evidence does not show that it is more likely than not that Ms. Targonski is the person entitled to the damages award.

- DISH objected to the Claims Administrator's validity finding for Josh Henning's claim, DKR-400127199, in connection with the telephone number ending in 7315. *See* Spreadsheet #3, Row 144. The LexisNexis data shows Russ Ferbrache associated with that telephone number during the class period. Mr. Henning's name appears in the Five9 data only. *See* Spreadsheet # 1, Rows 427-428. Moreover, none of the available addresses for Mr. Ferbache match the available addresses for Mr. Henning, showing that they do not appear to be members of the same household. *Compare* Spreadsheet #1, Row 427 *with* Spreadsheet #3, Row 144, Columns O-S. Mr. Henning provided no supporting documentation to substantiate his claim. Based on this record, the Special Master should not have found Mr. Henning's claim valid, because the record evidence does not show that it is more likely than not that Mr. Henning is the person entitled to the damages award.

- DISH objected to the Claims Administrator's validity finding for Jeff Martin's claim, DKR-100022855, in connection with the telephone number ending in 3427. *See* Spreadsheet #3, Row 11. The LexisNexis data shows three different individuals associated with that phone number, who all have the same last name: William Whitaker, James Whitaker, and Charles Whitaker. The LexisNexis data

14

further shows William Whitaker associated with that telephone number during the class period. Mr. Martin's name appears only in the Five9 and Experian data. *See* Spreadsheet #1, Rows 29-33. Moreover, none of the available addresses for any of the Whitakers match the available addresses for Mr. Martin, showing that they do not appear to be members of the same household. *Compare* Spreadsheet #3, Row 11, Columns O-S and Spreadsheet #1, Rows 32-32 *with* Spreadsheet #1, Rows 29-31. Mr. Martin provided no supporting documentation to substantiate his claim. Based on this record, the Special Master should not have found Mr. Martin's claim valid, because the record evidence does not show that it is more likely than not that Mr. Martin is the person entitled to the damages award.

- DISH objected to the Claims Administrator's validity finding for William Basto's claim, DKR-100065457, in connection with the telephone number ending in 2922. *See* Spreadsheet #3, Row 48. The LexisNexis data shows Maria Sackmann and Rem Sackmann associated with that telephone number during the class period. Mr. Basto's name appears in the Five9 data only. *See* Spreadsheet #1, Rows 146-148. Moreover, none of the available addresses for either of the Sackmanns match the available address for Mr. Basto, showing that they do not appear to be members of the same household. *Compare* Spreadsheet #3, Row 48, Columns O-S and Spreadsheet #1, Row 148 *with* Spreadsheet #1, Rows 146-47. Mr. Basto provided no supporting documentation to substantiate his claim. Based

15

on this record, the Special Master should not have found Mr. Basto's claim valid, because the record evidence does not show that it is more likely than not that Mr. Basto is the person entitled to the damages award.

The remaining claims in this category are identical in that: (1) one or more individuals with a completely different name from the claimant's name is associated with the telephone number in the existing data; (2) those other individuals are associated with the telephone number during the class period; and (3) the claimant and the other individuals do not have a matching address. Moreover, since the Plaintiff used Five9 data as the primary source to identify potential class members, a claimant who appears in Five9 presumably received a claim form, while the individual associated with that telephone number in the LexisNexis data did not. Thus, as the person who in all likelihood received a claim form, there is a significant possibility that the claimant may have submitted a claim to obtain a significant damages award ($2,400 minimum), despite not having had the telephone number during the class period. Without supporting documentation from the claimants, the Special Master could not reasonably resolve the significant inconsistencies in the existing data. Thus, the Special Master erred in finding that these claimants met their burden of proof.

16

**B.** **The Special Master Should Have Found *All* Claims Invalid Where the Claimant's Name Does Not Appear In The Existing Data And The Existing Data Identifies Individuals With Completely Different Names**

DISH objected to claims where the claimant is not identified in the existing data and the existing data identifies individuals with completely different names. The Special Master found 37 claims invalid, most of which fit within this category, but inconsistently found 9 other claims valid. A list of claims in this category, and DISH's corresponding individualized objections, are attached as Exhibit E to the Echtman Declaration.

For example, the Special Master sustained DISH's objection to the validity finding for Sharon Dicarolis's claim, DKR-400696819, in connection with the telephone number ending in 0005. *See* Doc. 494-4 at 14. Ms. Dicarolis is not identified in any of the existing data, but two other individuals are. The Five9 data identifies Bonita Williams and the LexisNexis data identifies Helene Poore. *See* Spreadsheet #1, Rows 467-68. Given the significant contradictions in the existing data, and the fact that Ms. Dicarolis did not provide any documentation to support her claim, the Special Master properly found that Ms. Dicarolis had not shown that she was more likely than not entitled to the damages award.

DISH also objected to the validity finding for Mark Kohl's claim, DKR-100098690, submitted in connection with telephone number ending in 3388. Mr.

Kohl is not identified in any of the existing data, but two other individuals are. The Five9 data identifies Christine Malans and the LexisNexis data identifies Sandra Kesler during the class period. *See* Spreadsheet #1, Rows 469-71. Given the significant contradictions between Mr. Kohl's claim form and the existing data, the Special Master appropriately found Mr. Kohl's claim invalid. *See* Doc. 494-4 at 6.

However, DISH lodged objections to 9 additional claims with similar fact patterns that the Special Master found valid. Under the logic applied to the claims described above, the Special Master should have similarly found these claims invalid, because the claimant did not meet the burden to show that he or she is more likely than not entitled to the damages award. For example, the Special Master overruled DISH's objection to the validity finding for Peter Blair's claim, DKR-900000155, in connection with the telephone number ending in 9790. *See* Spreadsheet #3, Row 156. Mr. Blair is not identified in any of the existing data, but two other individuals are. The Five9 data identifies Time O'Keefe, and the LexisNexis data identifies Floyd Grover. *See* Spreadsheet #1, Rows 465-66. In all material respects, Mr. Blair's claim mirrors the one submitted by Ms. Dicarolis, which the Special Master found invalid.

The Special Master also overruled DISH's objection to Krista Handy's claim, DKR-700008233, in connection with the telephone number ending in 3200.

18

*See* Spreadsheet #3, Row. 154. Ms. Handy is not identified in any of the existing data. Furthermore, the existing data identifies three other individuals, one of whom is identified with this telephone in LexisNexis during the class period. *See* Spreadsheet #1, Rows 459-61. In all material respects, Ms. Handy's claim mirrors the one submitted by Mr. Kohl, which the Special Master found invalid. Because there is no principled basis for treating the two claims differently, Ms. Handy's claim—along with the others in this category—should also have been found invalid.

### C. The Special Master Should Have Sustained DISH's Objections To Claims Submitted On Behalf of Deceased Class Members

The Special Master overruled DISH's objections and found claims valid, even though the claimant disclosed that the individual associated with the telephone number during the class period is deceased, and the claimant did not establish him or herself as the deceased person's legal representative. A list of claims that fall into this category, and DISH's corresponding individualized objections, are attached as Exhibit F to the Echtman Declaration.

It is DISH's position that neither a deceased claimant nor his or her estate may recover under the TCPA because TCPA claims do not survive a plaintiff's death. For example, in *Hannabury v. Hilton Grand Vacations Co.*, the Western District of New York, applying federal common law, held that TCPA claims "are

penal and abate upon the Plaintiff's death." 174 F. Supp. 3d 768, 776 (W.D.N.Y. 2016). Although two courts have disagreed with *Hannabury*,[3] the underpinning of their holdings—that the TCPA is primarily a remedial statute—conflicts with how other courts have construed the TCPA. *See e.g.*, *Ace Am. Ins. Co. v. DISH Network, LLC*, 883 F.3d 881, 891 (10th Cir. 2018) (treating the TCPA's statutory damages as penal in nature for purposes of determining insurance coverage); *Kruse v. McKenna*, 178 P.3d 1198, 1200-01 (Colo. 2008) (holding that TCPA claims are penal and, therefore, not assignable), overruled on other grounds by *Guar. Trust Life Ins. Co. v. Estate of Casper*, 178 P.3d 1198 (Colo. 2008); *U.S. Fax Law Ctr., Inc. v. T2 Techs., Inc.,* 183 P.3d 642, 648 (Colo. App. 2007) (holding that TCPA claims "were claims for penalties and, as such, not assignable").

*Hannabury* is also entirely consistent with the well-established principle that invasion of privacy claims may only be maintained by a living individual. *See U.S. Fax Law Center, Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 10th Cir. 2007) (recognizing that TCPA claims are in the nature of claims for invasion of privacy); *Martinez v. Green*, 212 Ariz. 320, 323 (Ariz. Ct. App. 2006) (identifying TCPA claims as invasion of privacy torts); Restatement (Second) of Torts § 652I (1977)

---

[3]*Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018); *Sharp v. Ally Financial, Inc.*, 6:15-CV-06520 EAW, 2018 WL 4300018 (W.D.N.Y. Sept. 10, 2018).

("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.").

Moreover, even if the Court were to conclude that a TCPA claim does not abate upon death, the claimant must establish that he or she is the appropriate person to submit the claim on behalf of a deceased person's estate. The claim should be denied where the claimant has not shown that he or she has legal authority as the representative of the deceased's estate or that person's legal heir.

Below are examples of claims that the Special Master should have found invalid because the person associated with the telephone number during the class period is deceased.

- DISH objected to the Claims Administrator's validity finding for Carl Lachey's claim, DKR-100050310, in connection with the telephone number ending in 1049. *See* Spreadsheet 3, Row 31. Mr. Lachey disclosed in his submission that the telephone number belonged to his deceased parents and he was not a member of the household that had the telephone number during the class period. *See* Echtman Decl. Ex. F at 43. Moreover, Mr. Lachey did not submit any information to show that he was a proper representative of his parents' estates. Based on this record, the Special Master could not have reasonably found that Mr. Lachey was the person who had the telephone number during the class period or a member of the household or that person's representative.

21

- DISH objected to the Claims Administrator's validity finding for Audrey Lasater's claim, DKR-100103782, in connection with the telephone number ending in 6504. *See* Spreadsheet #3, Row 77. The Claims Administrator's spreadsheet on its efforts to contact potential claimants shows that Ms. Lasater "inquired about eligibility if her mother is deceased now." Echtman Decl. Ex. B (Spreadsheet #2), Row 78. Notwithstanding the disclosure that her mother was deceased, the Special Master concluded that Ms. Lasater is a valid claimant for the telephone number, without receiving any information to show that Ms. Lasater is a proper representative of her mother's estate. Based on this record, the Special Master could not have reasonably found that Ms. Lasater was the person associated with the telephone number during the class period or that person's representative.

The Special Master should have sustained DISH's objections to claims where the person who had the telephone number during the class period is deceased, particularly if the claimant did not show a legal right to act as a representative of the person's estate.

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court sustain DISH's objections in their entirety and find the claims at issue invalid.

Dated:  January 2, 2019                   Respectfully submitted,

ORRICK, HERRINGTON &
SUTCLIFFE LLP

By:/s/ Elyse D. Echtman
Elyse D. Echtman
Peter A. Bicks
John L. Ewald
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com
jewald@orrick.com

/s/ Richard J. Keshian
Richard J. Keshian
North Carolina Bar No. 10681
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7322
rkeshian@kilpatricktownsend.com

*Attorneys for Defendant DISH Network
L.L.C.*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2019, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Elyse D. Echtman

Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
eechtman@orrick.com

*Attorney for Defendant DISH Network L.L.C.*

## **WORD COUNT CERTIFICATION**

Elyse D. Echtman, an attorney of record in the above captioned matter, hereby certifies that the foregoing brief contains 4,882 words, in compliance with the Court's word limitations as set forth in Local Rule 7.3(d), as calculated by the word count function of the word processing system used to prepare the foregoing brief.

　　　　　　　　/s/ Elyse D. Echtman
　　　　　　　　Elyse D. Echtman
　　　　　　　　ORRICK, HERRINGTON & SUTCLIFFE LLP
　　　　　　　　51 West 52nd Street
　　　　　　　　New York, NY 10019-6142
　　　　　　　　Telephone:  (212) 506-5000
　　　　　　　　eechtman@orrick.com

　　　　　　　　*Attorney for Defendant DISH Network L.L.C.*