IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| THOMAS H. KRAKAUER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

From 2010 to 2011, Dish Network LLC willfully violated the Telephone Consumer Protection Act by repeatedly calling over 18,000 class members on the Do-Not-Call registry. After a jury found Dish liable and awarded damages to individuals harmed by these telephone solicitation calls and after the Court trebled those damages for willfulness, the Court appointed a Special Master to resolve or narrow issues related to distributing the judgment funds to class members. The Court has reviewed the Special Master's final report and the objections by each party. Upon *de novo* review, the Court overrules all objections to the Special Master's determinations and adopts his recommendations in full.

## I.  Background

In January 2017, a jury found that Dish violated the TCPA when its agent made 51,119 telephone solicitations to 18,066 residential phone numbers on the Do Not Call Registry. Doc. 292; Doc. 351 at 1. The Court found these violations were willful, tripled

the jury's assessment of $400 per violative call, Doc. 338, and entered judgment against Dish and in favor of the plaintiff class for approximately $61 million. Doc. 439. The Fourth Circuit affirmed. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).

The Court held that there was no reasonable dispute as to the identities of approximately 11,000 class members who were named in the records establishing the TCPA violations and as to whom there was no contradictory identification data. Doc. 407. Accordingly, the Court did not require a claims procedure or claims forms for these 11,000 claims, *see* Doc. 441 at 1, and the parties eventually resolved the few technical issues related to a very small number of these class members. *See* Doc. 454. At the appropriate time, the Court will enter a disbursement order authorizing the Claims Administrator to take all reasonable steps to disburse judgment funds to these class members.

The identities and addresses of the remaining 7,000 class members were not as certain since either relevant records did not fully identify them or there were conflicts in the information available. Doc. 407 at 1, 11–12. As to these class members, the Court established a claims procedure to resolve claims distribution issues and to ensure the judgment is paid only to those individuals entitled to relief, i.e., those with valid claims. Doc. 441. In the Order setting forth this procedure, the Court defined a "valid claim" as

> one that the Administrator determines, using all available information, was submitted by the person who had the number during the class period or who resided in the household that had the number (or that person's representative).

*Id.* at ¶ 6(e)(i).

The Order on Claims Procedures required individuals to timely submit completed claims forms and appointed a Claims Administrator to make the initial decision as to whether the submitted claim was valid, using available data and records. *Id.* at ¶ 6(a)–(e). The Order allowed the parties to object to the Administrator's validity determinations, which would then be considered by the Special Master. *Id.* at ¶ 6(f)–(j). After the Special Master filed his recommended findings on the public docket, *id.* at ¶ 6(k), the Order permitted the parties to object to any specific decisions by the Special Master, which the Court would then review. *Id.* at ¶ 6(l)–(n).

Consistent with the Order on Claims Procedures, the Administrator made validity determinations on all claims submitted. *See* Doc. 494-2. The plaintiff and the defendant each objected to some of the Administrator's determinations. *See* Doc. 494 at 2. The Special Master reviewed the objections and issued a report recommending that the Court deny Class Counsel's objections and grant in part and deny in part Dish's objections. *See* Docs. 494, 494-3, 494-4. Both parties filed objections to parts of the Special Master's report. *See* Docs. 498–508.

The parties agree that the Court should consider *de novo* all objections to the Special Master's findings of fact or conclusions of law, *see* Fed. R. Civ. P. 53(f)(3)–(4), and that the Court must determine claim validity, i.e., whether the claimant is a class member entitled to relief, by a preponderance of the evidence. *See* Doc. 502 at 10–11; Doc. 507 at 1; *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 225–26 (4th Cir. 2002) (noting that courts may presume the preponderance-of-the-evidence standard applies unless particularly important individual interests or rights are at stake);

*Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *4 (M.D.N.C. July 27, 2017) (holding that the court should determine who is a class member).

## II. Plaintiffs' Objections

The plaintiffs object to the Special Master's recommendation that claims are invalid if postmarked or submitted after the June 18, 2018, deadline set by the Court. Doc. 498. Class Counsel acknowledge that the Court's Order on Claims Procedures set a claims submission deadline, but they contend that the late filings do not prejudice any party and thus allowing 26 claims filed after this deadline would be "appropriate under the circumstances." *Id.* at 1–2.

The Court finds upon a *de novo* review that claims submitted after the deadline are invalid. *See* Doc. 494-3 (list of 26 invalid claims). The Court extended the claims deadline and allowed approximately seven months for claim submissions. *See* Doc. 361 at ¶ 2 (providing an initial claims period of 120 days from the date of mailing of class notice); Text Order 03/21/2018 (extending claims period for three months until June 18, 2018). Class Counsel have not identified any problems with this length of time or with the notice procedure to class members that impeded the timely submission of claims. *See* William B. Rubenstein, 4 Newberg on Class Actions § 12:23 (5th ed. June 2019 update) (noting that whether delay was within the claimant's control is "typically [the] most important" factor in deciding whether to accept late claims); Doc. 499-10 at ¶¶ 5–6 (detailing notice efforts by the Administrator). Nor have they shown that any delay was due to excusable neglect such that the Court should exercise its equitable powers to accept late claims. *See* William B. Rubenstein, 4 Newberg on Class Actions § 12:23 (5th

4

ed. June 2019 update) (discussing the relevant factors when considering late claims). Class Counsel's objection is overruled.

## III. Dish's Objections

Dish objects to certain of the Special Master's validity determinations for relatively small groups of claims. Doc. 502. These objections fall into three categories. As to 135 claims, Dish contends the evidence is insufficient and not persuasive enough to prove the claim is valid. *Id.* at 12. As to nine claims, Dish contends that the Special Master's validity determinations were inconsistent with thirty-seven other "similarly situated" claims he found invalid. *Id.* at 3, 17. Finally, as to fourteen claims, Dish contends that TCPA claims abate upon the death of class members, and that even if they do not, the individuals who filed the claims have not shown a legal right to recover on behalf of a claimant's estate. *Id.* at 19. Dish also asserts, without referencing any specific claims, that the Administrator did not comply with the Court's Order on Claims Procedures when making the initial validity determinations. *Id.* at 5–7.

For the reasons set forth below, the Court on *de novo* review agrees with the Special Master's validity determinations and will overrule Dish's objections.

### a. The Administrator's Process

Dish asserts that the Administrator's claims evaluation process, as described in a declaration from a senior project manager, violated the Court's Order on Claims Procedures because the Administrator used certain data sources for only some claims. *See* Doc. 502 at 5–7 (citing Swanson decl., Doc. 499-10). According to Dish, this

procedure violated the provisions of the Order requiring the Administrator to "use all available information." *Id.* at 5–6 (quoting Doc. 441 at ¶ 6(e)(i)).

First, to the extent this is a general objection not linked to a particular claim, it is overruled. The Court's Order on Claims Procedures was clear that all objections must be specific. Doc. 441 at ¶ 6(h).

To the extent this objection is linked to specific claims, it is without merit. While the Order on Claims Procedures did require the Administrator to "us[e] all available information" when making validity determinations, *id.* at ¶ 6(e)(i), the Court did not limit the Administrator's discretion in how that information was weighed, *see id.* at ¶ 6(e)(ii) (ordering that the "Administrator may consider" various kinds of information), nor did the Court state that any particular information was dispositive. Rather, the Court's order required the Administrator to use all available information and apply its experience and judgment in weighing that information to make validity determinations. *See id.* at ¶ 6(e).

The process described by the Administrator's senior project manager complies with these requirements. The Administrator initially evaluated timely, completed claims by considering the name and address filed on the claim, the original name and address assigned to the phone number, and supporting documentation provided by the claimant. Doc. 499-10 at ¶ 11. The Administrator then used a set of "fraud indicators" to decide whether to consider additional names and addresses present in third-party data. *Id.* at ¶ 12. The Administrator did not consider additional data for single claims without fraud indicators because it found that "the absence of fraud indicators or other reasons for suspicion,

6

combined with the protections built into the online filing process and the small population of numbers a claimant would need to identify, is compelling evidence of validity." *Id.* This was a reasonable and efficient process to evaluate claims, to identify potential fraud, and to use all available information in a logical and sensible manner. *See id.* at ¶¶ 2–4, 10–12.

In any event, if Dish disagreed with a particular result on a particular claim, it had the right to seek review by the Special Master and this Court, pointing out information which indicated that the claim was not valid so the Special Master and the Court could make an independent decision. Thus, even if there was a defect in the procedure used by the Administrator, Dish was not harmed by it.

The procedure set forth in the Order on Claims Procedures was intended to provide a fair, efficient, and accurate process for resolving claim validity disputes. *See* Doc. 351 at 10. The process implemented by the Administrator is consistent with these objectives and did not violate the Court's order, as Dish contends. To the extent Dish objects to a specific claim on this procedural basis, that objection will be overruled.

### b. No Corroborating Evidence from the Claimant

In its first enumerated objection, Dish says the Special Master improperly found 135 claims to be valid even though (*i*) claimants did not submit evidence corroborating their association with the relevant telephone number and (*ii*) other data associated different individuals at different addresses with the same phone number. *See* Doc. 502 at 12–16 (discussing claims listed in Doc. 501-3, redacted at Doc. 499-7). Dish also says that the Five9 data identifying many of these claimants was not reliable. *Id.* at 12.

The Court will overrule Dish's objections. First, the Court did not require corroborating evidence in its Order on Claims Procedures, which stated that supporting documentation would be "helpful, but not required," Doc. 441 at ¶ 6(b), nor did it state that any specific data source would be dispositive of any claims. The Five9 data, which identifies the claimant in most of the 135 claims, was the "original data used by Dish's agent to make the telephone calls at issue in this matter." Doc. 382-2 at ¶ 5. It was both a perfectly reasonable starting point for the Administrator's claims evaluations and reliable.[1] Second, the Court agrees with the Administrator's determination, which was also implicitly adopted by the Special Master, that single claims for one phone number without fraud indicators give rise to "compelling evidence of validity." Doc. 499-10 at ¶ 12. The telephone numbers at issue were sealed from public disclosure, *see, e.g.*, Doc. 439 at ¶ 1 (noting that the description of all 18,066 class members would be filed under seal), there was only a "small population of numbers a claimant would need to identify" to assert a claim, Doc. 499-10 at ¶ 12, and the Administrator implemented fraud protection measures to prevent individuals or entities from inputting numbers *en mass* into the Telephone Lookup Form on the claim website. *See id.* at ¶ 8.

---

[1] The Court has discussed the Five9 data in previous opinions. *See, e.g.*, Doc. 341 at 11–15 (denying Dish's motion for judgment as a matter of law on the grounds of insufficient evidence and discussing the reliance on Five9 records by the plaintiffs' expert to show numbers were residential and not current customers of Dish); Doc. 233 at 3, 5; Doc. 111 at 10; Doc. 110 at 4, 6. The Fourth Circuit also referenced this data in the opinion affirming class certification here, noting that class members could be identified and notified as required under Rule 23 since "[t]he court was presented with data showing whether a number was residential and connecting the number to particular names and addresses." *Krakauer*, 925 F.3d at 658. The Court will therefore not go into detail here about that data.

A claim form in which a claimant attests he is entitled to relief for a specific telephone number he provides is strong evidence that this person is a proper claimant for that number. The lack of any credible indicia of fraud further supports the claim.

Dish did identify some contrary evidence undermining the Administrator's validity determinations as to these 135 claims. *See, e.g.*, Doc. 501-3. The Court has considered the objections and weighed the underlying evidence. By a preponderance of the evidence, the Court finds that each of these claimants have established that they are entitled to a share of the judgment and have valid claims.

The Court will overrule this objection.

### c. Inconsistent Validity Decisions

In its second objection, Dish contends that the Special Master issued inconsistent rulings for 46 "similarly situated" claims because the Special Master confirmed that nine claims were valid but disagreed with the Administrator to find thirty-seven claims invalid. Doc. 502 at 3, 17 (discussing claims listed in Doc. 501-4, redacted at Doc. 499-8). Dish asserts that all forty-six claims are invalid because the existing data did not identify the claimant and instead identified individuals with different names. *Id.* at 17. Dish therefore objects as to the nine claims that the Special Master found to be valid. *Id.*

The Special Master did not provide a claim-specific explanation for his invalidity determinations, but he did state that "the information received by the [Special Master] from counsel does not sufficiently support the Administrator's determination that [certain] claims are valid." Doc. 494 at 4. As to these thirty-seven invalidity decisions, Class Counsel has not objected to this determination. The Court has evaluated *de novo*

9

the data relevant to each of the nine claims to which Dish objects. *See* Doc. 501-4; Doc. 501 at 2–3, 7, 10. The Court finds by a preponderance of the evidence that these claims are valid and will overrule Dish's objections.

Each of these nine claimants submitted a claim for a class telephone number and attested that the number belonged to him or her during the class period. *See* Doc. 499-10 at ¶¶ 8–10. Dish has not identified any indication of fraud. While the data sources do identify other individuals associated with those phone numbers, the data either (*i*) identify other individuals before the class period or without information as to the date, thus not associating any other individual with the number during the class period,[2] or (*ii*) identify another individual in the class period but with the same or a similar address as the claimant, tending to show individuals in the same household.[3]

Dish contends that all 46 claims are "similarly situated" and thus the Special Master's rulings were inconsistent. But as noted above, the information relevant to the nine claims to which Dish objects is not uniform, and each claim had unique characteristics. Dish's objection on this ground is overruled.

### d. Estate Claimants

---

[2] These claims include: DKR-100003958; DKR-100012825; DKR-100038964; DKR-100140424; DKR-700004149; DKR-900000147; and DKR-900000155. *See* Doc. 501 at rows 1, 16, 63, 325, 457, 462, 465; Doc. 501-1 at rows 1, 6, 21, 110, 153, 155, 156.

[3] These claims include: DKR-100009735 and DKR-700008233. *See* Doc. 501 at rows 10, 459; Doc. 501-1 at row 4; Doc 501-2 at row 154.

In its final objection to the Special Master's determination, Dish contends that TCPA claims abate upon death and that the Special Master should have found fourteen claims invalid because they were either filed on behalf of an estate or data indicates the claimant is deceased. Doc. 502 at 3, 19–22 (discussing claims listed in Doc. 501-5, redacted at Doc. 499-9). This objection is overruled.

Under federal common law,[4] "[i]t is well-settled that remedial actions survive the death of the plaintiff, while penal actions do not." *NEC Corp.*, 11 F.3d at 137; *see also Case of One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854*, 889 F.2d 1317, 1319 (4th Cir. 1989). "To determine the nature of the action, courts consider three factors: '(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.'" *Green ex rel. Estate of Green v. City of Welch*, 467 F. Supp. 2d 656, 665–66 (S.D.W. Va. 2006) (quoting *Murphy Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977)).

There does not appear to be a Fourth Circuit decision considering whether TCPA claims abate at death. But the Sixth Circuit has recently held that TCPA claims are remedial and survive a plaintiff's death under federal law. *See Parchman v. SLM Corp.*,

---

[4] "Where a federal question is presented, a federal law, rather than state law, governs survival." *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 n.3 (4th Cir. 1985); *see also United States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law.").

896 F.3d 728, 738–41 (6th Cir. 2018). When considering the appropriate pleading standard for TCPA claims, the Fourth Circuit has noted that "the TCPA is a remedial statute." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 474 (4th Cir. 2018), *vacated and remanded on other grounds by* 139 S. Ct. 2051, 2019 WL 2527470 (June 20, 2019). Similarly, when affirming the judgment here the Fourth Circuit pointed out that the TCPA is a "remedial scheme" with a "remedial purpose" that "affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer*, 925 F.3d at 650, 654, 656.

Overall, the relevant factors confirm the Fourth Circuit's repeated characterization of the TCPA as a remedial statute. "The TCPA creates a private right of action for injunctive and monetary relief" for individuals who received violative calls, *Krakauer v. Dish Network LLC*, No. 14-CV-333, 2017 WL 2242952, at *1 (M.D.N.C. May 22, 2017), and thus its "primary purpose" is to protect individuals from "harms associated with unsolicited, automated calls." *Parchman*, 896 F.3d at 738. Recovery in this matter compensated class members for individual harms, including "invasions of privacy, unwanted interruptions of and disruptions to time at home, tied-up phone lines, and wasted time spent answering unwanted solicitation calls or listening to unwanted voice messages." *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2455095, at *14 (M.D.N.C. June 6, 2017).[5] And while "[t]he reality is that the TCPA's damages

---

[5] Dish's violations here were undeniably widespread, including "over 50,000 connected calls to over 18,000 private individuals." *Krakauer*, 2017 WL 2242952, at *13. However, "that the harm is widely shared does not mean it is a general public wrong. These are harms felt by

12

provision is specifically designed to be disproportional to the harm suffered," *Krakauer*, 2017 WL 2242952, at *13 (quoting *Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 776 (W.D.N.Y. 2016)), "the TCPA should not be found to be penal merely because one remedy authorized by the statute may be disproportionate to the harm suffered." *Parchman*, 896 F.3d at 740.

Dish relies on *Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768 (W.D.N.Y. 2016), in which the district court found that a consumer's TCPA claims for money damages were penal in nature and thus abated upon the plaintiff's death. This authority is far from persuasive. A court in the same district has since declined to follow *Hannabury*, holding that the TCPA private right-to-action provision is remedial and rejecting the defendant's argument on summary judgment that the TCPA claim abated upon the plaintiff's death. *See Sharp v. Ally Fin. Inc.*, 328 F. Supp. 3d 81, 97 (W.D.N.Y. 2018). And, as previously noted, the Sixth Circuit has held in a persuasive opinion that TCPA claims are remedial and survive a plaintiff's death under federal law. *See Parchman*, 896 F.3d at 738–41.

These claims are remedial in nature and do not abate at death. *See NEC Corp.*, 11 F.3d at 137; *cf. Case of One 1985 Nissan*, 889 F.2d at 1319. The objection is overruled.

In its brief, Dish also contends that the Special Master should have found these claims to be invalid because the "claimant has not shown that he or she has legal authority as the representative of the deceased's estate or that person's legal heir." Doc.

---

identifiable individuals, as individuals. They are not harms felt by the general public, as a community." *Parchman*, 896 F.3d at 739.

502 at 21. However, only one of Dish's objections specifically relies on this contention. *See* Doc. 501-5 at 101–02 (contending that claim DKR-100166237 should be denied because, *inter alia*, the individual submitting the claim "has not shown that he is the proper beneficiary of" of the claimant's estate). The evidence as to this claim shows that the person whose name was on the phone bill attested before her death that she or someone in her household had the relevant telephone number during the relevant time frame, Doc. 501-5 at 131, and documentation further shows she was married to the claimant at the time the phone calls were made and received. *Id.* at 109–11. This is sufficient to prove that her husband is entitled to receive the relevant share of the judgment, either directly as a member of the household or as her surviving spouse.

As to the other thirteen claims, Dish did not specifically object based on the claimant's lack of authority to recover on behalf of a deceased class member,[6] and the Court therefore need not evaluate the evidence. *See* Doc. 441 at ¶ 6(l) (ordering that objections not included are waived).[7] In any event, to the extent the documentary

---

[6] *See, e.g.*, Doc. 501-5 at 3 (claim DKR-100019102), 16 (claim DKR-100025145), 23 (claim DKR-100036635), 42 (claim DKR-100050310), 47–48 (claim DKR-100058957), 63 (claim DKR-100074529), 65 (claim DKR-100085598); 70 (claim DKR-100087400); 75–76 (claim DKR-100103782), 77 (claim DKR-100109560), 96 (claim DKR-100129943), 132 (claim DKR-100170315), 139 (claim DKR-100176011).

[7] A cursory review of the evidence shows that for at least some of these claims, the claimant has the legal authority to file the claim and receive damages on behalf of the deceased's estate. *See, e.g.*, Doc. 501-5 at 3–15 (showing claimant in DKR-100019102 was appointed executor in the deceased class member's will), 23–28 (showing claimant in DKR-100036635, the daughter of individual that Dish contends is the proper class member, was appointed administrator of her mother's estate by court order), 47–53 (showing claimant in DKR-100058957 was appointed administrator of class member's estate by court order), 77–88 (showing claimant in DKR-100109560 was appointed class member's power of attorney and named executor of her estate in her will).

evidence is incomplete as to the administrator or executor of an estate, Dish has not explained why it would be improper to pay the damages to the estate itself.

## IV. Conclusion

Following a *de novo* review, the Court overrules all objections to the Special Master's validity determinations. The Court finds that claims submitted after the deadline are invalid; that claims are not automatically invalid when another name is associated with the number but there are no other indicia of fraud; that the preponderance of the evidence supports the validity of nine claims for which the claimants are not identified in the data available; and that TCPA claims do not abate at death.

Accordingly, it is **ORDERED** as follows:

1. Plaintiffs' objection to the Special Master's final report, Doc. 498 is **OVERRULED**;

2. Dish's objections to the Special Master's final report, Doc. 502, are **OVERRULED**.

3. A disbursement order will be entered at the appropriate time.

This the 10th day of July, 2019.

UNITED STATES DISTRICT JUDGE