UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER,
on behalf of a class of persons,

    Plaintiff,

v.                                       Civil Action No. 1:14-cv-00333-CCE-JEP

DISH NETWORK, L.L.C.,

    Defendant.

### Plaintiff's Brief Regarding the Allocation Issue

### Argument Summary

On several occasions, the Court has remarked upon Dish's attempts to "[seek] a second bite at the apple when it lost on grounds it could have raised the first time the apple was presented." Doc. 495 at 3 (citing Docs. 423 & 428). Dish is at it again, this time with a twist: it was offered a bite at the apple, passed, and now wants another chance.

Fifteen months ago, this Court held that the final judgment created a $61.3 million common fund, and that the attorney's fees to class counsel should be one-third that amount – $20,447,600. Doc. 495. Dish had every opportunity to state a contrary view; the Court issued this ruling in response to Plaintiff's motion for attorney's fees and costs, Doc. 461, which generated no objection or response at all from Dish.

Now, in its brief on the allocation issue, Dish is mounting a backdoor challenge to the Court's fee order. According to Dish, the final judgment did not create a common

fund, and the attorney's fees should be limited to a percentage of what class members receive in payment, rather than the $20.4 million the Court awarded.

The Court should reject this position for several reasons. First, it is law of the case that this is a common fund case and the fee award is $20.4 million. Second, the Court was correct in its finding that this is a common fund case, and the Supreme Court's decision in *Boeing v. Van Gemert* holds that attorney's fees in common fund cases should be assessed against the entire fund because all class members – even those who do not receive payment – "are at least the equitable owners of their respective shares in the recovery" and therefore have "an equitable obligation to share the expenses of the litigation." 444 U.S. 472, 472 (1980). And third, Dish's argument rests on Seventh Circuit precedent that no other appeals court has adopted and should not be adopted here.

## Question & Answer

**Question:** Should the Court reduce every class member's per-call payment ($1,200 per call, less attorney's fees and expenses) by an equal share of the total attorney's fees and costs, regardless of whether the class member has been identified? Text Order, July 26, 2019.

**Answer:** Yes.

## Argument

1. **It is law of the case that the affirmed final judgment creates a common fund, and the attorney's fee award is $20,447,600.**

On April 5, 2018, this Court entered final judgment against Dish, "for an aggregate award in favor of the class of $61,342,800.00," plus post-judgment interest.

Doc. 439 ¶¶ 2–3. Krakauer moved for an award of attorney's fees and expenses, the sole basis of which was application of the common fund doctrine. Doc. 461. Krakauer argued that "[a]lthough the Fourth Circuit has not required a particular method for calculating attorney's fees in common fund cases," the percentage-of-the-recovery method is the preferred approach to determine attorney's fees, and was the appropriate means to determine the fee award here. *Id.* at 6. Krakauer further argued that the proper fee was one-third of the common fund, and supported the argument with a declaration from the author of the leading class action treatise, Professor William B. Rubenstein, who explained in great detail the propriety of using the common fund doctrine to determine the fee award, and the propriety of the fee sought by counsel given the results obtained, contingent risk assumed, and other factors. Doc. 461-1.

Dish filed no response in opposition to Krakauer's motion. It did not challenge the application of the common fund doctrine, or the characterization of the aggregate judgment as a common fund, or the attorney's fee request of one-third the amount of the common fund. In its fee order, the Court held this is a common fund case and awarded fees "based on a percentage of the fund bestowed on the class," in the amount of $20,447,600. Doc. 495 at 4.

The Court's decision is law of the case. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 619 (1983). *See also Columbus America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000) (same). As noted in one treatise, "law-of-the-case principles . . . are a matter of practice that rests on

3

Case 1:14-cv-00333-CCE-JEP   Document 526   Filed 08/29/19   Page 3 of 12

Doc. 439 ¶¶ 2–3. Krakauer moved for an award of attorney's fees and expenses, the sole basis of which was application of the common fund doctrine. Doc. 461. Krakauer argued that "[a]lthough the Fourth Circuit has not required a particular method for calculating attorney's fees in common fund cases," the percentage-of-the-recovery method is the preferred approach to determine attorney's fees, and was the appropriate means to determine the fee award here. *Id.* at 6. Krakauer further argued that the proper fee was one-third of the common fund, and supported the argument with a declaration from the author of the leading class action treatise, Professor William B. Rubenstein, who explained in great detail the propriety of using the common fund doctrine to determine the fee award, and the propriety of the fee sought by counsel given the results obtained, contingent risk assumed, and other factors. Doc. 461-1.

Dish filed no response in opposition to Krakauer's motion. It did not challenge the application of the common fund doctrine, or the characterization of the aggregate judgment as a common fund, or the attorney's fee request of one-third the amount of the common fund. In its fee order, the Court held this is a common fund case and awarded fees "based on a percentage of the fund bestowed on the class," in the amount of $20,447,600. Doc. 495 at 4.

The Court's decision is law of the case. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 619 (1983). *See also Columbus America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000) (same). As noted in one treatise, "law-of-the-case principles . . . are a matter of practice that rests on

good sense and the desire to protect both the court and parties against the burdens of repeated reargument by indefatigable diehards." 18B Wright & Miller, *Federal Practice & Procedure* § 4478 (2d ed. 2010).

Dish cannot relitigate an issue on which this Court has already ruled, particularly when it sat in silence when the Court was deciding that issue. The fee is $20.4 million, not one-third of whatever class members collect.

**2. In a common fund case, attorney's fees must be apportioned across the entire class, and based on the entire judgment amount.**

The Court was correct that this is a common fund case. Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing,* 444 U.S. at 478. The doctrine is "a well-recognized exception" to the American Rule, which holds that every litigant must bear his or her own attorney's fees. *Id.*

Professor Rubenstein unequivocally opined that this case was a common fund case, an opinion entirely consistent with his treatise: "[t]he most straightforward common fund situation is that in which the defendant is ordered to pay . . . a set amount of money to a group of litigants. The lump sum that the defendant pays constitutes the common fund." William B. Rubenstein, *5 Newberg on Class Actions* § 15:56.

This case presents one of those straightforward common fund situations. And in common fund cases, attorney's fees are assessed against the entire fund, not simply against those who get paid. *Boeing,* 444 U.S. at 478. In *Boeing,* the defendant contended

4

otherwise, arguing that "attorney's fees could not be awarded from the unclaimed portion of the judgment . . . because the money in the judgment fund would not benefit those class members who failed to claim it [and,] because [the defendant] had a colorable claim for the return of the unclaimed money, awarding attorney's fees from those funds might violate the American rule against shifting fees to the losing party." *Id.* at 477. The Court disagreed, explaining that class members who do not assert their rights "are at least the equitable owners of their respective shares in the recovery," and the defendant's "latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of the litigation." *Id.* at 481-82.

*Boeing* is dispositive on the allocation issue. Dish's "latent claim against unclaimed money" – which has nothing to do with the allocation issue, and is not before the Court – does not overcome the rule of *Boeing*, which requires that the expenses of the litigation be allocated from the entire common fund. Requiring all class members to share these expenses is consistent with the American rule, because "lawyers for the class would receive their fees from the amount for which [the defendant] has already been held liable. There is no surcharge on the defeated litigant." *Id.* (internal quotation marks omitted).

Under this Court's ruling on the fee order, the Fourth Circuit's affirmance of the aggregate final judgment, and *Boeing,* this is a common fund case in which all class members must share the expenses of the litigation.

5

### 3. *Holtzman* is inapplicable because the Court has already decided this is a common fund case, and *Holtzman* is wrong because it is irreconcilable with *Boeing*'s equal share rule.

Dish urges the Court to follow a non-binding decision, *Holtzman v. Turza*, 828 F.3d 606 (7th Cir. 2016) ("*Holtzman II*"). In the underlying litigation, an attorney sent thousands of unsolicited advertising faxes in violation of the TCPA, the court certified a class, and granted summary judgment in its favor. *Holtzman v. Turza*, 728 F. 3d 682, 683–84 (7th Cir. 2013) ("*Holtzman I*"). The district judge ordered the defendant to "post a fund of about $4.2 million, stating that he planned to distribute this sum to the class members and donate any remainder to charity." *Holtzman II*, 828 F.3d 608.

The first appeal challenged class certification, the merits of the summary judgment award, and the remedy. *Holtzman I*, 728 F. 3d at 683–84. Despite the fact that the district court "contemplated that [the defendant] would pay a lump sum to (or for) the class as a whole," the panel held – in a single paragraph without citation to *Boeing*'s rule on shared common-fund fees – that "this action stems from discrete injuries suffered by each recipient of the faxes; it does not create a common fund." *Id.* at 688 (citing *Travelers Prop. Casualty v. Good*, 689 F.3d 714 (7th Cir. 2012)). The panel thus remanded with "instructions to enter a judgment requiring [the defendant] to remit to the registry or to a third-party administrator. Once the court knows what funds are available for distribution, it should (if necessary) reconsider how any remainder will be applied." *Holtzman I,* at 690.

On remand, the defendant deposited the full judgment amount ($4.2 million) into the court's registry. Invoking the common fund doctrine, the district court "decided that

6

class counsel gets a third of this money" and that the remainder of any unclaimed funds would revert to the defendant rather than be paid to charity as *cy pres*. *Holtzman II*, 828 F.3d at 608–09. The *Holtzman II* panel rebuffed that decision, explaining that "*Boeing* holds that counsel are entitled to be compensated from a common fund, but our 2013 opinion held that this is not a common-fund case. Class counsel maintain that our decision is mistaken, but it is the law of the case." *Id.*

Based on the limited analysis in *Holtzman I* as law of the case, the *Holtzman II* panel opined that awarding class counsel one-third of each class member's claim even "when the class member gets nothing would be equivalent to treating the [TCPA] as a fee-shifting statute and requiring [the defendant] to pay the class's attorneys just because he lost the suit." *Id.* at 608–09. Ultimately, *Holtzman II* couched its ruling in its "conclusion that the class members have suffered discrete rather than undifferentiated losses, [therefore], the money represents security for payment rather than a common fund. And once a debt has been satisfied, a security interest is released."

The Court should not follow *Holtzman II,* for several reasons. First, *Holtzman II* has no application here, where the Court has already held, correctly, that this is a common fund case, and the appropriate fee amount is $20.4 million, not one-third of whatever class members are paid. Second, the decision is irreconcilable with *Boeing*. *Holtzman II* holds that the attorney's fee is paid only by those class members who receive payment, while *Boeing* holds that fees are apportioned across the class "as equitable owners in their respective shares of the recovery," regardless of whether the class members receive payment. Third, no other appeals court outside the Seventh Circuit has

7

followed the fee ruling in *Holtzman II*, and there is no reason for this Court to do so. Fourth, adopting *Holtzman II* would undermine enforcement of the TCPA through private class action litigation and reward defendants like Dish for the fact that, over time, class members may become difficult to locate.

In the end, Dish wants the Court to depart from its fee order and follow *Holtzman II* to serve Dish's true, latent purpose: it wants undistributed money, as much of it as possible, to be returned to Dish. But under *Boeing*, where a court's judgment orders a defendant "to pay a specified sum to the entire class" and the court then assesses attorney's fees *to be paid by the class* from the "entire fund created by the judgment," a defendant like Dish here "has no interest in any part of the fund," and "no cognizable interest in further litigation between the class and its lawyers over the amount of fees ultimately awarded from money belonging to the class." *Boeing*, 444 U.S. at 481 & n.7.

There will be a time for Dish to weigh in on the disposition of unclaimed funds. There are several possibilities: distribution through *cy pres* doctrine, *see, e.g.*, 107 ALR Fed. 800, or escheat to the federal government under 28 U.S.C. §§ 2041-2042, or distribution to state unclaimed property funds, or reversion. But how to distribute unclaimed funds is not the issue before the Court. How to assess attorney's fees is. By its fee order, the Court has already answered that question, consistent with *Boeing*: the fee is $20.4 million under the common fund doctrine, not one-third of whatever class members actually receive.

8

## Conclusion

If adopted, DISH's position would effectively have the Court transfer a portion of the fee award back to Dish, a *de facto* reversionary fund which would reward Dish with an undeserved windfall and reduce the awarded fee by millions, a perverse outcome. A significant aspect of class counsel's trial victory here is the deterrent effect it has on Dish and other bad actors, a fact the Fourth Circuit expressly recognized in affirming this Court's judgment: "[i]n enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 656 (4th Cir. 2019); *see also* Doc. 46-1, Rubenstein Decl. ¶ 28 (deterrent effect of Class counsel's trial victory is significant factor in fee analysis); *see also 5 Newberg on Class Actions* § 15:70.

For these and the other reasons stated above, the Court should reduce every class member's per-call payment by an equal share of the total attorney's fees and costs, regardless of whether the class member has been identified.

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett
Brian A. Glasser
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

/s/ J. Matthew Norris
J. Matthew Norris
Norris Law Firm, PLLC
1033 Bullard Court, Suite 207
Raleigh, NC 27615
(919) 981-4775
(919) 926-1676 facsimile
jmn@ncconsumerlaw.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

# CERTIFICATE OF SERVICE

I certify that on August 28, 2019, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notifications of such filing to all counsel of record.

                                              /s/ John W. Barrett
                                              John W. Barrett

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule 7.3, the undersigned verifies that, using the Microsoft Word count tool, the word count for Plaintiff's Brief Regarding the Allocation Issue is 2,347 words. This word count does not include the caption, signature lines, certificate of service, cover page, table of contents or table of authorities.

Respectfully submitted,

/s/ John W. Barrett
John W. Barrett