IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H. KRAKAUER, on behalf )
of a class of persons, )
 )
              Plaintiff, )
 )
v. ) 1:14-CV-333
 )
DISH NETWORK, L.L.C., )
 )
              Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

After a jury trial, the Court entered final judgment of $61,342,800 against defendant Dish Network, LLC in favor of the class, based on 51,119 telephone solicitations to 18,066 residential phone numbers on the Do Not Call list, in willful violation of the Telephone Consumer Protection Act. The Court awarded attorney's fees of one-third of the judgment to Class Counsel, as well as repayment of costs.

After the judgment was upheld by the United States Court of Appeals for the Fourth Circuit, Dish questioned how the attorney's fee and costs would be allocated among identified class members who receive part of the judgment funds and unidentified class members who never receive part of the judgment. The Court requested briefing from the parties in order to enter appropriate orders disbursing the judgment. *See* Minute Entry 07/26/2019; Docs. 522, 526, 529. Because the Court's judgment is a common fund and attorney's fees are properly assessed against the entire fund, each class member is

appropriately responsible for a share of the attorney's fees and costs, whether he or she claims a share of the judgment or not.

## OVERVIEW OF THE ISSUE

As has been discussed in more detail in many previous orders and as is relevant here *infra*, Dish's agent made 51,119 violative phone calls to 18,066 phone numbers. Thus, there are 18,066 class members, many of whom received more than one violative call. Approximately 11,000 class members were identified fully and without contradiction in the existing data. The remaining 7000 were subject to a claims process, and 1958 valid claims were submitted by class members. Doc. 536 at 1. This leaves approximately 5000 class members who were not identified fully in the existing data and who have not submitted claims; they will not receive any part of the judgment. The question newly posed by Dish is whether attorney's fees and costs should be paid only out of the judgment amounts paid to the class members who have been fully identified plus those who submitted valid claims, or whether those fees and costs should be paid by all class members, regardless of whether they have filed a claim or cashed their check.

The Court has already approved payment from the $61,342,800 judgment of attorney's fees of $20,447,600 and costs of $481,317.73, for a total of $20,928,917.73. The plaintiff contends that this amount should be paid from the judgment, and the remaining $40,413,882.27 should be divided between all the class members, pro rata per phone call, so that each class member receives approximately $790 (out of the trebled amount of $1200) for each violative call. Beyond its opposition to the plaintiff's method, Dish's specific mechanism for allocating payment of fees and costs is not entirely clear.

2

But it is clear that any of the possibilities would result in a much smaller per-call recovery for successful claimants, a substantially larger amount of unclaimed funds (which Dish has previously contended, in an issue not before the Court, should revert to Dish), or both.

## BACKGROUND

In April 2014, Dr. Thomas Krakauer, the plaintiff and class representative, sued Dish under the Telephone Consumer Protection Act, 47 U.S.C. § 227(c), alleging that he and others on the "Do Not Call Registry" received more than one telephone call within a 12-month period, in violation of the TCPA, and that the calls were made on behalf of Dish. Doc. 1 at 10. In September 2015, the Court certified the class, Doc. 111 at 4, 34. Doc. 439 at ¶ 1. After a six-day trial in January 2017, the jury returned a verdict finding that Dish had made over 51,000 telephone solicitations to a class of some 18,066 persons on the Registry in violation of the TCPA. *See* Doc. 341 at 1. The jury awarded $400 per call, Doc. 292 at 2, and the Court—finding the violations were willful—trebled the damages to $1200 per call, so as to deter Dish from future violations and to give appropriate weight to the scope of the violations. *See* Doc. 338 at 30–31.

After post-trial motions were resolved, Doc. 341, the Court began the process of considering entry of judgment and determining who would receive the judgment proceeds. Initially, the Court noted that judgment against Dish in a lump sum amount was appropriate, but it decided against such a judgment for the time being. Doc. 351 at 11–15. The Court contemplated entry of judgment in favor of those class members who

had already been "identified fully and without contradiction in the existing data," Doc. 351 at 16, 21, 26, with a claims process for remaining class members. Doc. 351.

Dish failed to provide meaningful suggestions to address questions of class member identity,[1] continued to delay the proceedings, and inserted unreasonable obstacles to this process by, *inter alia*, persistently returning to decided issues. *See, e.g.*, Doc. 495 at 2–3. Over time, the Court entered orders to deal with these problems, eventually entering final judgment in favor of the class and establishing a claims process.

First, the Court entered judgment for the plaintiff class against Dish in the amount of $61,342,800. Doc. 439. The judgment stated:

> [E]ach member of the class shall recover from the Defendant, DISH Network, LLC, the amount of $1,200 per call made in violation of the Telephone Consumer Protection Act, for an aggregate award in favor of the class of $61,342,800.00.

*Id.* at 1. As explained in a separate order, the Court calculated the amount of the judgment based on the damages found by the jury and trebled by the court, per violative call: 51,119 violations x $1200. Doc. 438 at 1–2. "The phone numbers are known, the number of calls are known, the jury established the amount of damages due for each violation, and the Court trebled those damages upon a finding of willfulness, as authorized by statute." *Id.* at 2.

Second, the Court held there was no reasonable dispute as to the identities of approximately 11,000 named class members who were named in the records establishing

---

[1] The Court does not use the word "identity" in the ordinary sense; it is a shorthand to cover a variety of uncertainties.

the TCPA violations and as to whom there was no contradictory identification. Doc. 407. Accordingly, the Court did not require a claims procedure or claims forms for these 11,000 claims, *see* Doc. 441 at 1, and the parties eventually resolved the few technical issues related to a very small number of these class members. Doc. 454; *see* Docs. 475, 475-1 (final list in two subgroups, totaling 11,239 individuals).

Third, the Court established a claims procedure to resolve claims distribution issues related to the remaining 7000 class members whose identities and addresses were not as certain. Doc. 407 at 1, 11–12. The Court held that those class members could only receive a share of judgment if they filed a valid claim, which the Court defined. The Court directed the Claims Administrator to make the initial decision as to whether a submitted claim was valid, Doc. 441 at ¶ 6(a)–(e), and appointed a Special Master to hear any objections to the Claims Administrator's decisions and to make a recommendation to the Court. *Id.* at ¶¶ 4, 6(f)–(j).

Dish appealed the judgment. Doc. 456.

While the case was on appeal, Class Counsel filed a motion for attorney's fees and costs. Doc. 460. In the motion, Class Counsel asked to pay litigation expenses and the Claims Administrator from the common fund, and in briefing, Class Counsel repeatedly referenced the way attorney's fees are calculated in common fund cases. *See id.* at 1; Doc. 461 at 6, 10–14, 20–21, 24–25; *see also* Doc. 461-1 at 3 (expert declaration on calculating attorney's fees in this case, indicating "Counsel seek 33.3% of the common fund" and referring throughout to common fund cases). Dish filed nothing in opposition to the motion. The Court awarded Class Counsel attorney's fees of $20,447,600, which

was one-third the judgment amount, plus costs of $481,317.73. Doc. 495 at 5, 14. The order required the fees and costs "to be paid from the final judgment awarded to the class." *Id.* at 14. Dish did not appeal.

The claims process for the approximately 7,000 class members was also completed while the matter was on appeal. The Special Master agreed with the Claims Administrator and made recommendations to the Court. Doc. 494. Both sides objected. Docs. 498–508. According to the parties, 1,958 valid claims were approved for class members who were subject to the claims process, leaving roughly 5,000 such class members who did not make claims and thus would not receive their share of the judgment. *See* Doc. 536.

While the parties' objections were pending, the Fourth Circuit affirmed the $61,342,800 judgment against Dish in May 2019, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). Soon after the Fourth Circuit mandate issued, the Court adopted the Special Master's recommendations in full. Doc. 515.

After that decision, and well after the ruling on attorney's fees had become final, the Court conducted a status conference with counsel to discuss winding up the case. *See* Doc. 513; Minute Entry 07/11/19. During that conference, Dish raised questions about which class members would pay the attorney's fees and costs and how that might affect disbursement orders. Doc. 518 at 21–28. The Court requested briefing. Minute Entry 07/26/2019.

While this issue was pending, the Supreme Court denied Dish's petition for certiorari. Doc. 537.

## DISCUSSION AND ANALYSIS

Under Fed. R. Civ. P. 23(h), in a class action a court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The court has discretion to determine what is reasonable. *In re Hatteras Fin., Inc., Shareholder Litig.*, 286 F. Supp. 3d 727, 735 (M.D.N.C. 2017).

When the judgment is a common fund, all class members share responsibility for payment of attorney's fees and costs from that fund, before damages are distributed to the class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). As the Supreme Court made clear in *Boeing*, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* Since those who benefit from a lawsuit should contribute to its cost, courts assess attorney's fees against the entire fund so as to "spread[] fees proportionately among those benefited by the suit." *Id.* Claimants need only prove their membership in the class in order to receive part of a common fund settlement or judgment, but their attorneys' right to fees does not depend on whether all potential class members come forward. "Their right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480 (emphasis added).

When the judgment is not a common fund, attorney's fees are determined differently. In a claims-made settlement, for example, "the defendant will pay claims of class members who file them, usually up to some fixed ceiling." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:7 (5th ed. June 2019 Update). "[C]ourts are split on

what to take a percentage of" in a claims-made case: "the full amount available to the class or the smaller amount actually claimed by the class. Given the complexity, some simply revert to using a lodestar fee approach." *Id. See, e.g., Gray v. BMW of N. Am., LLC*, No. 13-cv-3417 (WJM), 2017 WL 3638771, at *5 (D.N.J. Aug. 24, 2017) (a claims-made settlement "usually calls for application of the lodestar method" since "the nature of the settlement evades the precise evaluation needed for the percentage of recovery").[2]

In their motion and brief asking for attorney's fees and costs, Class Counsel repeatedly referenced the common fund doctrine and asked the Court to set a percentage fee based on the entire judgment amount, as opposed to some other method of calculating an appropriate fee. When it had the opportunity to object to Class Counsel's request for payment of attorney's fees and costs from a common fund, Dish stood silent. It filed no response or objection to the motion for fees and expenses, and it did not advise the Court that it believed, or might argue in the future, that the judgment was not a common fund.

When the Court granted the motion for fees and costs, the Court described the judgment as a common fund, Doc. 495 at 4, a decision that was important to the Court's assessment of how to calculate fees. The Court observed that district courts in the Fourth Circuit "overwhelmingly" prefer the percentage method in common-fund cases. *Id.* (citing *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016)).

---

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Had the Court decided the judgment was not a common fund, it is highly unlikely it could have awarded a percentage fee based on the total amount of the judgment. Some other method of determining an appropriate fee would have been necessary, such as a lodestar plus a multiplier, or perhaps a percentage fee from each identified class member. After the Court decided the method and amount of the fee, Dish did not move to reconsider, nor did it appeal the fee award.

Dish now for the first time contends that the judgment is not a common fund. Dish long ago chose not to present this argument to the Court when it failed to object to the plaintiff's request for a determination of attorney's fees under the common fund doctrine, however, and it is now the law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Metro. Reg'l Inf. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 550 (D. Md. 2013) (citing *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)) (law-of-the-case doctrine "applies to those questions actually decided and those decided by necessary implication").[3]

Courts may reconsider "previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Liberty Ins. Underwriters, Inc. v. Beaufurn, LLC*, No. 1:16CV1377, 2019 WL

---

[3] Dish has a long history of seeking a second bite at the apple when a court decision does not go its way. *See, e.g.*, Doc. 495 at 2–3. Here, however, Dish did not even take a bite the first time around; it simply passed on its opportunity to raise this question. It does not get another chance merely because it has realized the implications of a decision, months after it chose not to address the issue.

4600226, at *5 (M.D.N.C. Sept. 23, 2019). Dish does not argue that any of these circumstances apply here.

Indeed, a different decision on the common fund question at this point would itself create manifest injustice. It would place the entire burden of a fees and costs award approaching $21 million on only some of the class members, even though the Court set the amount of those fees and costs based on the entire judgment obtained in favor of all class members. It would thus force some of the class members to shoulder the burden intended for all class members. Dish has not explained why this manifestly unfair and unjust result should be adopted by the Court.[4]

Even if the Court were inclined to reconsider the matter, *Metro. Reg'l Info. Sys., Inc.*, 948 F. Supp. 2d at 550 (citing *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000), and noting that the law-of-the-case doctrine "is a rule of discretion, not a jurisdictional requirement"), the result would not change, as the

---

[4] As noted *supra*, Dish has been remarkably unclear, even now, as to how it contends the fees and costs should be allocated. In different parts of their briefing, they seem to say that only the identified class members should pay. Doc. 529 at 1. Elsewhere they seem to be saying that only those class members who actually receive funds from the judgment should be responsible for the fees and expenses, Doc. 522 at 2, 5; Doc. 529 at 2–3, but this would require the Court to know how many people will both receive and cash their checks before knowing how much the check amount should be, and Dish offers absolutely no suggestions for how the Court could do this. In yet another place, they seem to suggest that the attorney's fee should be reduced to some unspecified amount, calculated with some unspecified method. Doc. 529 at 2. This unwillingness to be specific is particularly noteworthy since Dish is the party asking the Court to allocate the fees and costs in an unexpected way and since it is completely consistent with Dish's history of making every issue and problem more complicated than it has to be. Also consistent with the Court's past experience, this lack of clarity by Dish has caused the Court to spend a significant amount of time trying to figure out Dish's arguments on its own, work the Court chooses not to include in this opinion. *See Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.").

judgment here easily meets the requirements for a common fund. The classes of beneficiaries must be small in number and easily ascertainable; the benefits must be traced with some accuracy; and there must be reason for confidence that the costs can be shifted with some exactitude to those benefitting. *Brzonkala v. Morrison*, 272 F.3d 688, 691 (4th Cir. 2001) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 265 n.39 (1975)). These criteria "are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 479.

Here, the beneficiaries are limited to the 18,066 class members, and the jury found Dish had made over 51,000 unlawful calls to phone numbers belonging to each of these class members. Each class member's per-call "mathematically ascertainable claim" is established by the jury's award of $400, trebled as authorized by statute to $1200. The Court calculated the "lump-sum judgment" based on these numbers. *See Boeing Co.*, 444 U.S. at 479; *see also* Doc. 461-1 at 3 (declaration from national expert describing the judgment here as a common fund). The attorney's fees and expenses will be borne by the class members themselves, not a broader category of people. *Cf. Brzonkala*, 272 F.3d at 691 (finding no common fund under *Alyeska* standard for classes as broad as all United States taxpayers, or those who would otherwise have been prosecuted under an invalidated statutory provision). This case's judgment satisfies the criteria for a common fund under *Boeing*.

In urging the Court not to assess fees based on the portion of the judgment that is unclaimed, Dish correctly notes that the TCPA is not a fee-shifting statute. Doc. 522 at 3.

But that is not a relevant point, as it inappropriately conflates attorney's fees under the common fund doctrine with attorney's fees awarded pursuant to a fee-shifting statute. While both fee models "facilitate suit by plaintiffs who may otherwise lack the means to hire counsel, they operate in distinct ways and serve distinct purposes." *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 786 (4th Cir. 2019). "A common fund recovery places the plaintiffs' cost of litigation on the *recovering beneficiaries of a lawsuit*, whereas a fee-shifting statute places this burden on the *losing party*." *Id.*

In this case, the Court has awarded a lump-sum judgment against Dish to the plaintiff class. That judgment has been entered and affirmed, and Dish has already paid it. Doc. 520; Minute Entry 07/31/2019. The attorney's fees and costs will come from that money, which no longer belongs to Dish. The fact that the TCPA is not a fee-shifting statute does not affect whether the judgment here is a common fund.

Dish relies on opinions by the United States Court of Appeals for the Seventh Circuit in *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013), and *Holtzman v. Turza*, 828 F.3d 606 (7th Cir. 2016), two appeals arising from the same case. Those decisions arose in a different procedural context and do not apply to the facts here.

First, in *Holtzman*, there was not an aggregate judgment in favor of the class, entered, affirmed on appeal, and paid, as is the situation here. Dish had many chances before judgment was entered to ask for judgment on a per-class-member basis, and it took that position repeatedly before the appeal. Yet the Fourth Circuit upheld the judgment as entered in favor of the class, the Supreme Court denied certiorari, and that judgment is final. This case is more like *Boeing,* which also involved a final judgment in

favor of a class that the defendant had paid. The Supreme Court noted that the defendant "presently has no interest in any part of the fund," and "its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." *Boeing*, 444 U.S. at 481–82. This case is the same.

Second, the defendant in *Holtzman* did not pass up opportunities to object to the finding of a common fund, as Dish did here. Indeed, the defendant there repeatedly raised the issue before the trial court and the appellate court.

Third, the trial court in *Holtzman* decided that any unclaimed funds would revert to the defendant in that case, and this decision influenced the Seventh Circuit: the court framed attorney's fees that were assessed against the remaining funds as impermissible fee-shifting, since those fees would be deducted from what the defendant would otherwise receive. 828 F.3d at 608–09. That is not the case here, where Dish—like the defendant in *Boeing*—has no current interest in the judgment fund.[5]

---

[5] *Holtzman* is also unpersuasive because the court in 2013 relied on cases interpreting the phrase "common fund" in an entirely different context: the "common fund exception" that permits class action plaintiffs' claims to be "aggregated to reach the minimum required for diversity jurisdiction," 728 F.3d at 688, only if the parties "have a common, undivided interest and a single title or right is involved." *Gilman v. BHC Secs., Inc.*, 104 F.3d 1418, 1422–23 (2d Cir. 1997); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (no common fund for jurisdictional purposes where class members' claims "all arose from separate transactions"). *Holtzman* does not address why the common fund jurisdiction doctrine, which has a very different test, applies to whether there is a common fund for purposes of awarding attorney's fees and costs. Nor does Dish. The *Holtzman* court in 2016 then found its judgment fell in a category that the *Boeing* Court did not reach, 828 F.3d at 608–09, whereas, as discussed *supra*, the judgment here falls directly within *Boeing*. A subsequent Seventh Circuit panel did not apply *Holtzman*'s broad rule that a TCPA cash fund is not a common fund; instead, the court decided that case's particular settlement was not controlled by *Boeing*. *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 831–32 (7th Cir. 2018).

13

Dish contends *Holtzman* should apply as it is "the only case to DISH's knowledge that squarely addressed this issue in the context of a contested TCPA judgment." Doc. 522 at 2. However, courts nationwide have administered settlement funds under the TCPA as common funds, and Dish has not explained why a jury-rendered verdict and ensuing judgment should be different. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 884 (3d Cir. 2016) (district court in TCPA case "properly relied on the entire fund as the appropriate benchmark for assessing the size of the fund created" to calculate a fee award); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949–50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund"). No district courts outside the Seventh Circuit have adopted *Holtzman*'s categorical approach to TCPA settlement or judgment funds. For instance, within the Fourth Circuit, and after both *Holtzman* decisions, a Virginia court treated a TCPA cash settlement as a common fund in awarding attorney's fees. *See Hooker v. Sirius XM Radio, Inc.*, No. 4:13–cv–003, 2017 WL 4484258, at *5 (E.D. Va. May 11, 2017).

## CONCLUSION

It is the law of the case that the judgment in this case is a common fund, and the situation here is the same that the Supreme Court faced in *Boeing*. Dish chose not to address the common fund issue when it was before the Court last year; it has offered no

14

good reason to revisit that decision; and making only some class members responsible for the fees and expenses when they were calculated based on the amount recovered to benefit the entire class would be markedly unfair. Accordingly, the attorney's fees and litigation expenses will be assessed against its entire value and paid out of the fund itself, not divided up among a subset of class members.

It is **ORDERED** that the attorney's fee of $20,447,600 and costs of $481,317.73 that were previously awarded, Doc. 495, should be paid from the judgment, and the remaining $40,413,882.27, less any intervening expenses, should be divided between all the class members, pro rata per phone call.

It is further **ORDERED** that Class Counsel shall share with counsel for Dish a proposed order directing the Clerk to disburse these funds to Class Counsel and the parties shall confer as to form. After conferring and narrowing areas of disagreement, each party may submit a proposed order to the Clerk no later than January 3, 2020, or, if there is no disagreement as to form, Class Counsel shall submit the proposed order. No further briefing is authorized as to the form of the Order.

This the 23rd day of December, 2019.

_____
UNITED STATES DISTRICT JUDGE