# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THOMAS KRAKAUER, on behalf of a class of persons, ) ) | CASE NO. 1:14-CV-00333-CCE-JEP |
| Plaintiff, ) ) | |
| v. ) ) | |
| DISH NETWORK L.L.C., ) ) | |
| Defendant. ) | |

**DISH NETWORK L.L.C.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF DISH'S MOTION FOR REVERTER OF UNCLAIMED FUNDS**

## PRELIMINARY STATEMENT

DISH's reverter proposal stands on firm legal ground. Plaintiff concedes as much, admitting "[i]t is well-established that unclaimed class action funds may be disbursed through . . . reversion." Reply [Doc. 584] at 7. Plaintiff's response – that reversion would improperly "reward" DISH and undermine the judgment's deterrent effect (*id.* at 7-8)– is badly misplaced. DISH has been severely punished and fully deterred. The permanent injunction entered in *U.S. v. DISH* provides the most effective deterrence. In addition, reversion of a relatively small percentage of the $62.5 million that DISH paid into the Court is no reward. Even with such a reverter, DISH's approximate net payment will exceed $50 million, which is a severe consequence.

Moreover, Plaintiff has not offered any viable alternative. Plaintiff acknowledges that the Fourth Circuit has soundly rejected fluid recovery for class actions. Reply at 9. And *cy pres* is a form of fluid recovery flatly contrary to the law of this circuit. In addition, Plaintiff's escheat proposal is unworkable. Plaintiff improperly seeks state law escheat for federal class action funds that are not subject to state escheat, and that have no rightful owners. Reverting unclaimed funds to DISH is the only legally acceptable approach that preserves foundational constitutional principles.

## ARGUMENT

### I. REVERTER IS THE ONLY APPROPRIATE OPTION

As detailed in DISH's moving papers, reversion is the "superior," and the only legally permissible, approach for the unclaimed funds in this case. DISH Br. [Doc. 581] at 7-13. Any other result is inconsistent with the basic legal tenet that "damages should

do no more than compensate a victim for their injury." *Augustin v. Jablonsky*, 819 F.Supp.2d 153, 177 (E.D.N.Y. 2011); *see also Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984). Conceding that reverter is an appropriate option for unclaimed funds (Reply at 7), Plaintiff nonetheless argues that it would improperly "reward" DISH and "undermine the deterrence function of class actions." *Id.* at 8. But, those arguments have no application to the facts here.

Reverter provides DISH with no reward. DISH still will be severely punished for the telephone calls that SSN made. DISH seeks reverter of certain net judgment proceeds that amount to a mere 17% of the $62.5 million that DISH paid into the Court, as well as some small unknown amount left over from the judgment distribution process. Based on the level of participation in the claims process, and because class members have significant claims, one reasonably may expect that identified individuals generally will take steps to claim the money in full.

Reverter will not undermine deterrence. A payment of more than $50 million is a robust deterrent to future telemarketing violations. Moreover, the permanent injunction imposed in *U.S. v. DISH* ensures that DISH will be effectively deterred from tolerating future retailer telemarketing violations. Pursuant to that injunction, DISH strictly regulates its retailers' telemarketing activities and must terminate non-compliant retailers. The federal government and four state attorneys general actively monitor DISH's injunction compliance, with substantial enforcement powers. Plaintiff minimizes the import of this injunction, characterizing it as meaning that "DISH promises to be good from now on, at least so long as someone is watching." Reply at 8. But someone indeed

2

is watching, and will be watching for twenty years. This, on top of an award of more than $50 million, has a very strong deterrent effect.

Plaintiff has not offered any legitimate basis for the Court to deny reverter.

## II. THE PROPRIETY OF REVERTER IS REINFORCED BY THE FATAL FLAWS IN PLAINTIFF'S PROPOSALS

The fatal flaws in Plaintiff's proposals reinforce the propriety of DISH's reverter request. Plaintiff proposes that the bulk of unclaimed funds be given to unidentified charities through *cy pres*. However, *cy pres* is a form of improper fluid recovery that cannot be awarded over DISH's objection.

Plaintiff concedes that the Fourth Circuit "expressly disapproved of fluid recovery" in *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 72 (4th Cir. 1977). Reply at 9. The Fourth Circuit explained that fluid recovery is "'illegal, inadmissible as a solution to the manageability problems of class actions and wholly improper.'" *Id.* (quoting *Windham*, 565 F.2d at 72). Plaintiff seeks to evade this ban on fluid recovery by incorrectly asserting that *cy pres* is not actually fluid recovery. *Id.* at 8.

Numerous courts and commentators have recognized that *cy pres* is fluid recovery. *See, e.g.*, *Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 84 F.3d 451, 455 (D.C. Cir. 1996) ("In the context of class actions, the cy pres doctrine is referred to as 'fluid recovery.'"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2003); *S.E.C. v. Bear, Stearns & Co. Inc.*, 626 F.Supp.2d 402, 414 (S.D.N.Y. 2009). Indeed, Plaintiff's own authority acknowledges that "[c]ourts and commentators sometimes use the terms interchangeably[.]" Reply at 8-9 (citing Newberg on Class

3

Actions, § 12:27).

And properly so. Fluid recovery occurs when: "First, defendant's aggregate liability is determined in a single, class-wide adjudication . . . . Second, individual class members are afforded an opportunity to collect their individual shares . . . . Third, any residue remaining after individual claims have been paid is distributed to the class benefit under cy pres or other doctrines." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (quotation marks and citation omitted); *see also Augustin*, 819 F.Supp.2d at 177 (quoting Newberg on Class Actions § 10:5 n.3 (4th ed. 2002) (defining fluid recovery as "'distribution of an aggregate class recovery or an unclaimed portion thereof under cy pres principles to the next best class of persons'").

Thus, an impermissible fluid recovery occurs when judgment funds are distributed other than to identified class members commensurate with their proven right to recover. For instance, fluid recovery applies to excess distributions to known class members. *See, e.g., Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir. 1977) (rejecting proposal for pro rata excess distributions to identified class members). Fluid recovery also applies to distributions to non-class members whose interests approximate the class, such as in *Daar v. Yellow Cab Co.* (Reply at 9), where a settlement provided taxi fare discounts to future riders, regardless of whether they previously had been overcharged.

In *Windham*, the Fourth Circuit noted that the antitrust "statute . . . leaves no room for awarding damages to some amorphous 'fluid class' rather than, or in addition to, one or more actually injured persons. It likewise does not permit any person to recover damages sustained not by him, but by someone else who happens to be a member of such

4

class." *Windham*, 565 F.2d at 66. Adopting the Second Circuit's decision in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), the Fourth Circuit concluded that fluid recovery cannot take the place of individualized proof with respect to each putative class member's right to recover. *Id.* at 72. Plaintiff argues that *Windham*'s holding only applies to the *computation* of damages. Reply at 9. But, the Fourth Circuit has expressly recognized that the holding applies to the *distribution* of damages. *Am. Int'l Pictures, Inc. v. Price Enterprises, Inc.*, 636 F.2d 933, 936 (4th Cir. 1980) (*Windham* rejected fluid recovery that "would distribute damages to unspecified parties rather than to specific class members who were actually injured.").

Plaintiff claims that *cy pres* differs from fluid recovery because "fluid recovery allocates class funds to 'a group of individuals that closely approximates the class itself,'" while *cy pres* recipients are charities, not individuals. Reply at 8-9 (*quoting* Newberg on Class Actions, § 12:27). That purported distinction makes no difference. First, class actions are not limited to individuals, and neither is fluid recovery. Second, *cy pres* operates in precisely the same way as Plaintiff's own understanding of fluid recovery, with charities substituted as the group that approximates the class. *See Bear, Stearns & Co.*, 626 F.Supp.2d at 414 ("The purpose of the cy pres distribution is to 'put the unclaimed funds to its *next best* compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'") (quoting Newberg on Class Actions § 10:17 (4th ed. 2002)). Plaintiff acknowledges that a *cy pres* recipient generally is a charity "whose work facilitates the interests of the class[.]" Reply at 8. Most fundamentally, *cy pres* amounts to a fluid recovery because it is just the sort of forbidden situation in which

5

damages are distributed to persons not legally entitled to them, *see Am. Int'l Pictures, Inc.*, 636 F.2d at 936, in an effort to apply "the unclaimed portion to the 'next best' class." *Van Gemert*, 553 F.2d at 815.

Plaintiff asserts that Judge Jones observed *cy pres* to be distinct from fluid recovery in a footnote in the *Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 481 n.1 (5th Cir. 2011) concurrence. However, the fluid recovery plan implemented in the case Judge Jones relied upon was rejected by the Second Circuit in *McLaughlin.* 522 F.3d at 231-32. The Second Circuit concluded that permitting "any residue remaining after individual claims have been paid [to be] distributed to the class' benefit under cy pres or other doctrines" would impermissibly "alter defendants' substantive right to pay damages reflective of their actual liability," in violation of the Rules Enabling Act and Due Process. *Id.* at 231-32. Because "any residue would be distributed to the class's benefit on the basis of *cy pres* principles rather than returned to defendants, defendants would be paying [an] inflated total estimated amount of damages[.]" *Id.* at 232.

Plaintiff incorrectly claims that "[n]o court has ever held cy pres distribution unconstitutional as violative of the Seventh Amendment or of due process" and "no court . . . has invalidated a *cy pres* award as contrary to the [Rules Enabling] Act." Reply at 5, 6. Plaintiff is wrong on both counts. *McLaughlin*, described above, held that *cy pres* violates both Due Process and the Rules Enabling Act. And *McLaughlin* is not alone. *Eisen*, followed by the Fourth Circuit, similarly held that fluid recovery (which includes *cy pres*) is "an unconstitutional violation of due process of law" forbidden by Rule 23. 479 F.2d at 1017-18.

6

In addition, Article III requires that those who recover must have been injured by the defendant. DISH Br. at 9-10. Plaintiff argues that Article III is not violated if *cy pres* is ordered because "*cy pres* recipients are not litigants. . . ; they are part of the remedy imposed to ameliorate the effects of the defendant's misconduct." Reply at 4. For the reasons set forth above, non-litigants may not participate in a class action recovery. Moreover, unascertained class members have not established an individual injury, and no *cy pres* recipients may stand in their shoes. It would be inconsistent with Article III to take funds from a defendant on behalf of an absent party who never claims them—or who never established the right to claim them—and give them to a non-party.

Finally, Plaintiff's escheat proposal violates escheat principles and the law of this case. Plaintiff refers generally to states having statutes addressing unclaimed property, including proceeds from a class action judgment. But, again, he offers no legal basis for applying state escheat laws in *this* case. As DISH has explained, Plaintiff's own authority establishes that state escheat laws do not apply to federal class actions. Moreover, Category 3 funds do not constitute abandoned property, subject to state escheat laws, because no rightful owner has been ascertained for those funds. DISH Br. at 19-20. Similarly, Plaintiff's proposed approach would improperly circumvent the Court's post-trial identification process. It would allow individuals to extra-judicially claim judgment funds notwithstanding that they are not identified class members. Plaintiff's sole response is that individuals will likely receive less through state unclaimed property laws than through the Court's established claims procedures. Reply at 12. He ignores that these individuals have no right to any award whatsoever under the

7

Court's procedures.

## **CONCLUSION**

DISH respectfully requests that the Court enter an order authorizing reverter of all unclaimed funds.

Dated:   June 2, 2020

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: /s/ Elyse D. Echtman
Peter A. Bicks
Elyse D. Echtman
51 West 52nd Street
New York, NY 10019-6142
Telephone:  (212) 506-5000
pbicks@orrick.com
eechtman@orrick.com


/s/ Richard J. Keshian
Richard J. Keshian
North Carolina Bar No. 10681
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7322
rkeshian@kilpatricktownsend.com

*Attorneys for Defendant DISH Network L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2020, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Elyse D. Echtman
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
eechtman@orrick.com

*Attorney for Defendant DISH Network L.L.C.*

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing motion contains 1,997 words, in compliance with the word limitation set forth in the Court's April 5, 2018 Order on Claims Procedures (Doc. 441 at 11), as calculated by the word count function of the word processing system used to prepare the foregoing memorandum of law.

/s/ Elyse D. Echtman
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
eechtman@orrick.com

*Attorney for Defendant DISH Network L.L.C.*