IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, on behalf of a class of persons,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK LLC,<br><br>Defendant. | ) | 1:14-CV-333 |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In April 2018, the Court entered final judgment in favor of members of a class who received unwanted and illegal telephone solicitations made by agents of Dish Network, LLC. In 2021, the Court decided that unclaimed judgment funds should be distributed to *cy pres* recipients and approved a first round of distributions to recipients chosen based on an investigation by and recommendations from a special master. Distribution was then put on hold while Dish appealed. Recently, the parties notified the Court of a proposed settlement, which the Court has approved.

At the Court's request, the special master re-evaluated the *cy pres* distributions approved two years ago. The initial round of *cy pres* distributions along the lines suggested by the special master is appropriate. The Court will enter a disbursement order to that end.

## I. Background and Relevant Procedural History

At trial, the jury found Dish responsible for over 50,000 telephone solicitations to residential phone numbers on the Do Not Call Registry in willful violation of the Telephone Consumer Protection Act (TCPA). Doc. 292; Doc. 538 at 1. Based on the jury's award and the Court's trebling for willfulness, a total judgment of over $61,000,000 for the class members was entered. Doc. 439 at 1. The Fourth Circuit affirmed the final judgment, *see* Doc. 509; *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 663 (4th Cir. 2019), and the Supreme Court denied certiorari. Doc. 537.

Dish satisfied the judgment, Doc. 453, and there have since been a number of disbursements from the judgment funds. The Court ordered disbursement of attorney's fees and litigation costs to the plaintiffs' counsel in January 2020. *See* Doc. 540; Doc. 541. In February 2020, the Court approved the claims submitted by many class members, Doc. 560, and in February 2021, judgment funds were distributed to the claims administrator to satisfy those claims. *See* Doc. 607. The claims administrator has also been paid periodically from the judgment funds. *See, e.g.*, Doc. 657.

As is common for class actions requiring a claims process, the final judgment was expected to result in undispersed judgment funds. *See Krakauer v. Dish Network, LLC*, No. 14-CV-333, 2020 WL 6292991, at *1 (M.D.N.C. Oct. 27, 2020). When considering what should happen to these funds, the Court appointed a special master to evaluate candidates for a possible *cy pres* distribution. Doc. 594.

In March 2021, the special master filed a report and recommendation, identifying proposed *cy pres* recipients and amounts. Doc. 617 at 7–9.[1] The special master recommended two rounds of funding: a first round totaling $11,042,671 and a later round once the final amount available for distribution was known. *Id.* at 7–8.

The Court found that *cy pres* distribution was the best use of unclaimed funds, as it serves both the interest of the class members and the goals of the TCPA. Doc. 620 at 8–9. The Court deviated from the special master's recommendations only by reducing the recommended amount as to one of the *cy pres* recipients because of uncertainty over the amount of unclaimed judgment funds at that point. *Id.* at 10–11. This resulted in an approved distribution of $10,550,000. *Id.* at 10. Aside from this reduction, the Court approved the special master's recommendations for the first round of *cy pres* distributions, Doc. 620, and ordered the claims administrator to distribute funds accordingly. Doc. 622 at ¶ 2.

Before any *cy pres* distributions were made, Dish appealed the decision, Doc. 623 at 1, and the Court stayed distribution to *cy pres* recipients. Doc. 628 at 6. The appeal remained pending in the Fourth Circuit for a little over two years. *See* Doc. 668.

In June 2023, the parties moved for the approval of a class action settlement. Doc. 662. As part of the settlement, the parties agreed that $6,000,000 of the remaining funds would be returned to Dish, leftover funds would go to *cy pres* recipients as determined by the Court, and Dish would ask the Fourth Circuit to dismiss the appeal. *Id.* at 7–8. On

[1] The Court has used the pagination appended by the CM/ECF system for this and other record citation, not the internal pagination used by the special master when creating her report.

limited remand, the Court approved the settlement, Doc. 667 at 5, and the appeal was dismissed by the Fourth Circuit on August 28, 2023. Doc. 668. The Clerk distributed $6,000,000 to Dish in accordance with the settlement on August 23, 2023. *See* Docket Entry 08/23/23.

Before settlement and while the appeal was pending, the claims administrator distributed judgment funds to the class members. *See, e.g.*, Doc. 656. That process continued through July 31, 2023, Doc. 658 at 4, and has now been completed. Doc. 670 at ¶ 3. After paying all claims and stopping payment on all uncashed checks, the claims administrator reports it holds $11,892,603.27 in judgment funds. *Id.* at ¶ 4. As of September 29, 2023, the clerk of court held an additional $5,176,148.56 of judgment funds.[2] Thus, a little over $17,000,000 is available for *cy pres* distribution.

Given the agreement between the parties, the Court asked the special master to evaluate whether there were any changed circumstances requiring modification to the original order directing the first round of distribution to *cy pres* recipients and to file a supplemental report with her recommendations. Doc. 665 at ¶ 3. The Court also asked for recommendations for a second round of distribution for all remaining funds to be filed no later than November 30, 2023. *Id.* at ¶ 4.

On September 15, 2023, the special master filed her report, recommending an initial distribution of $11,042,671 to the same recipients. Doc. 671 at 3. The only significant change suggested to the Court's initial distribution order is an increase in the

[2] The clerk of court reported this amount to the Court informally.

total amount distributed, in line with the special master's original recommendation, now that it is clear funds are available. Otherwise, the recommendations are consistent with the Court's initial distribution order entered in 2021.

**II. Applicable Law**

Unclaimed judgment funds are commonly distributed in four possible ways: reversion to the defendant, *pro rata* redistribution to class members who filed claims, escheating funds to the state or federal government, or *cy pres*. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). The propriety of a *cy pres* distribution has previously been discussed by the Court, *see Krakauer*, No. 14-CV-333, at *3; Doc. 620 at 5, and that discussion is adopted by reference.

In sum, to be awarded *cy pres* distributions, charities and nonprofit organizations must have goals and objectives that benefit the class members and align with the underlying statutes. *Krakauer*, No. 14-CV-333, at *3. *Cy pres* distribution is often included in the terms of a settlement agreement. *Id.* (collecting cases). While this was not initially the case here, the parties have now agreed to a *cy pres* distribution as part of their settlement. Doc. 662 at 7; Doc. 664.

**III. The Special Master's Report and Recommendation**

In 2021, the special master recommended distributing $11,042,671 to first round recipients, followed by a second-round distribution once a final available amount was determined. Doc. 617 at 7–9. Each *cy pres* recipient requested funding for projects ranging in length from two to four years. *See, e.g.*, *id.* at 18. The special master

recommended distributing the first-round funding in yearly installments depending on each *cy pres* recipient's project. *See, e.g.*, *id.*

The Court reduced the initial amount to $10,550,000 because the then-available amount for *cy pres* distribution was less than $11,000,000 and a final amount was not yet known. Doc. 620 at 10. The Court otherwise approved the distribution to the 12 organizations identified by the special master as having specific projects that addressed one or more of the objectives of the TCPA and that targeted the interests of the plaintiff class. *Id.* at 12–13.

To identify these organizations, the special master originally relied upon an extensive selection process, discussed in-depth in her first report and recommendation. Doc. 617 at 4–7. During her re-evaluation, she contacted each organization, requesting updates about the organization and its projects. Doc. 671 at 3–4. After receiving the organization's answers, the special master grouped the organizations into two categories: organizations with no or no significant modifications to their original proposals, and organizations that requested the same distribution amount, but proposed modifications to their projects. *Id.* at 3. Because the amount of unclaimed funds is now much more settled, the special master recommends distribution of $11,042,671, split between the two groups. *Id.*

The organizations that had no significant modifications, *id.* at 5, and their recommended funding are:

| Organization Name | Recommendation |
|---|---|
| Attorneys General/National Association of | 2,000,000 |

| Attorneys General[3] | |
|---|---|
| San Francisco Consumer Action | 675,000 |
| Columbia University – Technical Research | 254,223 |
| National Association of Consumer Advocates Charitable Fund, Inc. | 450,000 |
| Public Justice Foundation | 369,000 |
| Consumer Reports, Inc. | 1,000,000 |
| Consumer Federation of America, Inc. | 79,000 |
| **Total** | **$4,827,223** |

The remaining organizations asked for modifications to their projects to reflect "changes in staffing, changes in robocall technology and the regulatory environment, and changes that reflect work that has already been done." *Id.* After reviewing these modifications, the special master recommends distributions to the same recipients in the same amounts she previously recommended in 2021. Doc. 617 at 7 (2021 recommendation); Doc. 671 at 6.

| Organization Name | Recommendation |
|---|---|
| National Legal Aid and Defender Association (NLADA) | 3,454,238 |
| National Consumer Law Center | 1,708,810 |
| Electronic Privacy Information Center | 700,000 |
| United States Public Interest Research Group Education Fund | 250,000 |
| Public Knowledge | 102,400 |
| **Total** | **$6,215,448** |

In 2021, the special master recommended a distribution of $3,454,238 to National Legal Aid and Defender Association (NLADA). Doc. 617 at 7. While the Court reduced

[3] The Attorneys General/National Association of Attorneys General requested a modification to reflect a change in its internal administrative structure, but this modification does not impact the use of funds or the special master's recommendation. *See* Doc. 671 at 5.

this distribution to $2,961,567, it also held that NLADA would receive the full amount recommended by the special master if funds were available and once a final amount of funding was determined. Doc. 620 at 10–12. Now, the special master again recommends $3,454,238 go to NLADA in her current report. Doc. 671 at 7.

In total, the special master recommends distribution of $11,042,671 to the 12 named organizations. *Id.* at 3. Other than the one change as to NLADA, the special master's recommendations are consistent with the Court's 2021 order. Doc. 620.

**IV. Analysis and Discussion**

Each organization was first selected because it does work to address one or more of the objectives of the TCPA and targets the interests of the plaintiff class. *See* Doc. 617 at 13–32; Doc. 620 at 9–10. When the special master made her initial recommendations in 2021, she created an impartial and transparent selection process and provided compelling explanations to support her recommendations. Doc. 617 at 4–7, 13–32. After a similarly impartial and thorough re-assessment, the special master believes that the proposed projects from these organizations still serve the interests of the class and will strengthen the TCPA's legal framework and safeguards. Doc. 671 at 3–11.

The special master originally engaged in a careful, impartial, and in-depth selection process. Doc. 620 at 9–10. Her re-evaluation was similarly thorough; she asked each organization to confirm that (1) their original projects were still on-going; (2) the organizations had the personnel to carry out the projects; (3) the projects still constituted an effective use of resources; and, if any modifications had been made, (4) the projects still aligned with the goals of the TCPA and benefited the class members. *See*

Doc. 671 at 3–4. The special master then evaluated every proposed modification and confirmed that funding the projects aligned with her original recommendations and the purposes of *cy pres*. *Id.* at 7–11.

For example, National Consumer Law Center's proposed modifications expand the scope of its work beyond advocacy and education to address consequences and causes of calls that violate the TCPA. *Id.* at 8. Public Knowledge advocates before the FCC for more transparent definitions of the technology covered by the TCPA and proposes a modification to allow allocation of funding toward its advocacy efforts. *Id.* at 11.

The special master found that each organization's modification would support the goals of the TCPA and benefit the *Krakauer* class. *Id.* at 6. The Court agrees with the special master's findings and conclusions. For the reasons stated in more detail in the special master's original report, Doc. 617, the Court's previous order, Doc. 620 at 8–10, and the special master's updated report, Doc. 671, as summarized and supplemented here, *cy pres* distribution to the recommended recipients for the recommended projects is appropriate.

**V. Distribution**

Now that distribution to class members has been completed, the total amount available for *cy pres* distribution is approximately $17,000,000. *See supra* note 2, at 4; Doc. 667 (order estimating approximately $16,500,00 remaining funds); Doc. 670 at 2 (report of claims administrator). As the special master's recommendations are well under the available funds, the Court will, by separate order, direct disbursement of $11,042,671

of the unclaimed funds, on the timeline suggested by the Special Master, to the following recipients in the following amounts:

| Organization Name | Cy Pres Amount |
|---|---|
| Attorneys General/National Association of Attorneys General | 2,000,000 |
| San Francisco Consumer Action | 675,000 |
| Columbia University – Technical Research | 254,223 |
| National Association of Consumer Advocates Charitable Fund, Inc. | 450,000 |
| Public Justice Foundation | 369,000 |
| Consumer Reports, Inc. | 1,000,000 |
| Consumer Federation of America, Inc. | 79,000 |
| National Legal Aid and Defender Association | 3,454,238 |
| National Consumer Law Center | 1,708,810 |
| Electronic Privacy Information Center | 700,000 |
| United States Public Interest Research Group Education Fund | 250,000 |
| Public Knowledge | 102,400 |
| **Total** | **$11,042,671** |

As a condition of the distribution, each *cy pres* beneficiary must: (1) agree to spend the funds in the manner proposed in the application submitted to the special master, (2) file on the public docket an annual report confirming that use and explaining in summary fashion how the distributed *cy pres* funds were spent during the previous year, and (3) otherwise agree to answer the Court's questions about the spending of the money.

Because the recipients proposed using the funds over a specified period of years, the Court will order disbursement in annual amounts, over the term of years requested. Each approved project ranges in length from two to four years. For four-year and two-year projects, distributions will be made in equal yearly installments based on the length

of each project. For recipients with three-year long projects, the first distribution will cover 40% of the total approved funding, followed by two distributions of 30% the following two years. This schedule can be modified for good cause shown by a particular recipient.

After accounting for these distributions, there will remain approximately $6,000,000 for *cy pres* distribution. Some will need to be spent on administration. The Court will decide the recipients and amounts for distribution of these remaining funds after receiving a recommendation from the special master in late November. *See* Doc. 665 at ¶ 4.

**VI. Conclusion**

*Cy pres* distribution of the unclaimed judgment funds is appropriate and provides the clearest and most direct benefit to the class members. The special master's recommendations are the product of a meticulous selection process, and the recommended groups will use the funds in appropriate ways.

It is **ORDERED** that unclaimed judgment funds of $11,042,671 will be disbursed to *cy pres* recipients, as recommended by the special master. A separate Disbursement Order will be entered shortly. The remaining unclaimed judgment funds will be disbursed to appropriate *cy pres* recipients by later orders after the special master files further recommendations.

This the 11th day of October, 2023.

UNITED STATES DISTRICT JUDGE