IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS H. KRAKAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-333 |
| | ) | |
| DISH NETWORK LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief Judge.

In April 2018, the Court entered final judgment in favor of a class whose members received illegal telephone solicitations from agents of defendant Dish Network, LLC. In 2021, the Court held that the judgment funds unclaimed by class members should be distributed to *cy pres* recipients. Following recommendations of a special master, the Court approved a first round of disbursements. The special master has recommended distribution of the rest of the unclaimed judgment funds. Her recommendations are, overall, reasonable and in the interests of the class. The Court agrees that the proposed recipients and amounts are appropriate, with some adjustments as to timing, and will enter a supplemental disbursement order.

**I. Procedural Background**

The Court reviewed the relevant procedural history in an earlier order approving initial recommendations from the special master. *See* Doc. 673 at 2–5. That discussion is adopted in full by reference and summarized here.

At a 2017 trial, a jury found Dish willfully violated the Telephone Consumer Protection Act. Doc. 292; Doc. 538 at 1. After trebling the jury's award for willfulness, the total judgment for the class members was over $61,000,000. Doc. 439 at ¶ 2. Dish satisfied that judgment, Doc. 453, and there have since been several disbursements from the judgment funds. *See* Doc. 673 at 2, 4 (summarizing disbursements for class members, attorneys' fees, and claims administration).

After reviewing the report and recommendation of the appointed special master and other briefing, Doc. 617, the Court found a *cy pres* distribution to be the best use of unclaimed judgment funds. Doc. 620 at 8–9. The Court ordered an initial distribution generally along the lines recommended, *id.* at 10–11; Doc. 622 at ¶ 2, with a second distribution to issue after class members received disbursements and the final amount of unclaimed judgment funds was determined. Doc. 620 at 13.

Before any *cy pres* distributions were made, Dish appealed, Doc. 629, and the Court stayed the disbursements. Doc. 628 at 6 (staying the 2021 Disbursement Order at Doc. 622). In June 2023, the parties sought approval of a class action settlement. Doc. 662. As part of the settlement, the parties agreed that $6,000,000 of the remaining funds would revert to Dish, leftover funds would go to *cy pres* recipients as determined by the Court, and Dish would ask the Fourth Circuit to dismiss the appeal. *Id.* at 7–8.

On limited remand, the Court approved the settlement, Doc. 667 at 5, and the Fourth Circuit dismissed the appeal in August 2023. Doc. 668. The Clerk distributed $6,000,000 to Dish in accordance with the settlement on August 23, 2023. *See* Docket Entry 08/23/2023.

After distributions to class members, *see, e.g.*, Doc. 656, for claims administration and attorneys' fees, and the $6,000,000 disbursement to Dish under the settlement, a little over $17,000,000 was available for *cy pres*. Doc. 673 at 4. The Court asked the special master to file a supplemental report and recommendation, suggesting any changes to the 2021 Disbursement Order. Doc. 665 at ¶ 3. The Court also asked the special master to file a second report, recommending a final round distribution of all remaining funds, no later than November 30, 2023. *Id.* at ¶ 4.

On September 15, 2023, the special master filed the first of these reports, recommending modest adjustments to the 2021 Order and suggesting an initial distribution of $11,042,671 to the same recipients. *See* Doc. 671 at 3.[1] The Court generally approved of these recommendations and amended the 2021 Disbursement Order, ordering disbursements in that amount. Doc. 673 at 9–11. In this Amended Disbursement Order, the Court directed the claims administrator to make yearly distributions, beginning on January 2, 2024, for a set number of years to 12 public interest organizations, Doc. 674 at ¶ 2, and to file yearly consolidated reports documenting distributions and any issues. *Id.* at ¶ 3.

In early March, the claims administrator filed the first consolidated report, showing distributions to all but two of the recipients and informing the Court that two organizations did not provide the claims administrator with agreements necessary to

---

[1] The Court has used the pagination appended by the CM/ECF system for this and other citations to the special master's reports, not the internal pagination used by the special master.

3

receiving funding until after a court-ordered deadline. Doc. 679. The Court found that distribution to these organizations was still appropriate and ordered the claims administrator to disburse funding to these organizations despite the late submissions. Doc. 680 at 2. The claims administrator has now done so, Doc. 681 at ¶ 2, and the first round of funding approved under the Amended Disbursement Order, Doc. 673, has now been distributed.

After all the disbursements are made under the Amended Disbursement Order, there will still be several million dollars in unclaimed judgment funds. Currently, the Clerk holds approximately $5,200,000, Doc. 676 at 6,[2] and the claims administrator holds approximately $850,000 not subject to the Amended Disbursement Order. *Id.*

On November 29, 2023, the special master filed her second report recommending *cy pres* recipients and supplemental award amounts. Doc. 676. The special master also included recommended disbursement timelines for each recipient. *Id.* at 23–24.

## II. Applicable Law

Unclaimed judgment funds are commonly distributed in four possible ways: reversion to the defendant, *pro rata* redistribution to class members who filed claims, escheating funds to the state or federal government, or *cy pres* distributions. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). The Court has already discussed the propriety of a *cy pres* distribution, *see* Doc. 590 at 14–16; Doc. 620 at 5, and adopts those discussions and holdings by reference.

---

[2] This money is accruing interest at approximately $20,000 per month. Doc. 676 at 6.

In summary, to be awarded *cy pres* distributions, an organization must have goals and objectives that benefit the class members and align with the underlying statutes. Doc. 590 at 14–15. *Cy pres* distribution is often included in the terms of a settlement agreement. *Id.* at 5–6 (collecting cases). While not initially the case, the parties have now agreed to a *cy pres* distribution as part of their settlement. *See* Doc. 662 at 7.

**III. The Special Master's Report and Recommendation**

The Court previously summarized the process the special master followed during her work in 2021, as well as her initial and revised recommendations for the amended first-round distribution. *See* Doc. 673 at 5–8. It adopts that discussion by reference.

The special master has now filed a second report recommending distribution of all remaining unclaimed judgment funds, Doc. 676, and no party has objected. Before making her recommendations, the special master again required interested organizations to submit applications, and she conducted a detailed review of their proposals. *See id.* at 4–5. Nine organizations submitted applications, seven of which the Court has already approved for *cy pres* distributions and two of which are new. *Id.* at 4.

The special master recommends distributing $5,998,135 to eight of the nine organizations that applied: the seven original *cy pres* recipients and one new applicant, the National Consumers League. *Id.* at 6–7.[3] Her recommendations as to amounts,

---

[3] On page six of her second report, the special master recommends that the Court distribute $5,998,353 in *cy pres* funds to the eight organizations, Doc. 676 at 6, but that appears to be a clerical error. On page seven she recommends a total final round distribution of $5,998,135, and the total of the individual suggested amounts for each organization adds up to $5,998,135. *Id.* at 7. The Court will use $5,998,135.

5

including the amounts already ordered to be disbursed in the Court's Amended Disbursement Order, Doc. 674 at ¶ 2, are summarized here:

| Organization Name | Amended Disbursement | Recommended Supplemental Disbursement | Total Disbursement |
|---|---|---|---|
| National Legal Aid and Defender Association | $3,454,238 | $2,452,182 | $5,906,420 |
| National Consumer Law Center | $1,708,810 | $503,099 | $2,211,909 |
| Electronic Privacy Information Center | $700,000 | $491,000 | $1,191,000 |
| Public Justice Foundation | $369,000 | $234,254 | $603,254 |
| United States Public Interest Research Group Education Fund | $250,000 | $1,062,000 | $1,312,000 |
| Public Knowledge | $102,400 | $257,600 | $360,000 |
| Consumer Reports, Inc. | $1,000,000 | $598,000 | $1,598,000 |
| National Consumers League[4] | $0 | $400,000 | $400,000 |
| Attorneys General/ National Association of Attorneys General | $2,000,000 | $0 | $2,000,000 |
| San Francisco Consumer Action | $675,000 | $0 | $675,000 |
| Columbia University – Technical Research | $254,223 | $0 | $254,223 |

---

[4] National Consumers League is a new *cy pres* recipient that was not included by the special master in her first report and recommendation. *See* Doc. 676 at 20–21.

6

| | | | |
|---|---|---|---|
| National Association of Consumer Advocates Charitable Fund, Inc. | $450,000 | $0 | $450,000 |
| Consumer Federation of America, Inc. | $79,000 | $0 | $79,000 |
| **Total** | **$11,042,671** | **$5,998,135** | **$17,040,806** |

*See* Doc. 676 at 6–7; 9–21. She also made recommendations about the timing of the disbursements, but some of those recommendations would have required modifications to the Amended Disbursement Order, Doc. 674, and did not account for the distributions already made.

## IV. Recipients

The Court previously approved *cy pres* disbursement awards for all the recommended organizations except the National Consumers League. *See* Doc. 673 at 10; Doc. 674 at ¶ 2. For the reasons stated by the special master in her current, Doc. 676, and past reports, *see, e.g.*, Doc. 671, and discussed in the Court's amended order, *see* Doc. 673 at 8–9, the Court finds again that these organizations are appropriate *cy pres* recipients, so long as they timely comply with reporting and documentation requirements. The projects for which they will use the additional funds support the goals of the TCPA and benefit the *Krakauer* class. As discussed *infra*, some recipients have modified their proposals based on the availability of more funds and other reasons, and those modified and updated proposals continue to support the purpose of the TCPA and benefit the class.

The Court also agrees with the special master that the proposed distribution to the National Consumers League is appropriate. That organization sends fraud alerts about

7

robocalls and robotexts to consumer protection organizations and law enforcement agencies. Doc. 676 at 7. It will use the *cy pres* funds to maintain its public website offering resources to consumers and to compile a database of consumer complaints for use in advocacy efforts. *Id.* at 20–21. Use of the funds for these projects supports the goals of the TCPA and benefits the *Krakauer* class.

Finally, the Court agrees with the special master that the other new organization that applied for funding is not an appropriate recipient. Among other concerns, it is not a 501(c)(3) nonprofit, and it did not demonstrate that it has the capacity to implement its proposed project. *See id.* at 22.

## V. Distribution

The Court finds the amounts recommended by the special master are appropriate for the reasons explained by the special master. While her suggestions as to timing were also generally appropriate, they would require changes to the first round of distributions already made in 2024 under the Court's Amended Disbursement Order. Doc. 674. Another amended order is likely to be confusing, especially if it reduces amounts already paid out to recipients, and for this and other logistical reasons, the Court will not modify the Amended Disbursement Order. Instead, it will order supplemental disbursements in amounts and at times that have the same general effect as the special master's recommendations.

### A. National Legal Aid and Defender Association

Under the Amended Disbursement Order, NLADA will receive $3,454,238 in four equal annual installments of $863,559.50. Doc. 674 at ¶ 2; the first of these annual

8

distributions has now been made. *See* Doc. 681 at ¶ 2. The special master now recommends adding $2,452,182 to that amount for a total of $5,906,420, still to be distributed over four years. Doc. 676 at 9. Dividing the total disbursement by four results in four payments of $1,476,605. The Court will order the claims administrator to disburse an additional $613,045.50 per year beginning in 2024 and continuing through 2027. Together with the funds originally ordered disbursed, this is consistent with the special master's recommendation.

### B. National Consumer Law Center

Under the Amended Disbursement Order, NCLC will receive $1,708,810 in equal installments over a four-year period. Doc. 674 at ¶ 2. The special master now recommends adding $503,099 in funding for a total of $2,211,909 to be distributed in varying amounts over four years. Doc. 676 at 11.

The special master recommends distributing $496,440 in 2024. *Id.* The claims administrator already distributed $427,202.50 in January. *See* Doc. 679-1 at ¶ 5. The Court will order the claims administrator to disburse an additional $69,237.50 in 2024. The Court will further order the claims administrator to disburse $154,880.50 in 2025, $148,425.50 in 2026, and $130,555.50 in 2027. These disbursements plus the disbursements ordered in the Amended Disbursement Order add up to the recommended yearly distributions in the special master's most recent report. *See* Doc. 676 at 11.

### C. Electronic Privacy Information Center

Under the Amended Disbursement Order, EPIC will receive $700,000 in funding to be distributed over a three-year period. Doc. 674 at ¶ 2. The special master

recommends approving EPIC for an additional $491,000 and changing the funding timeline to four years. Doc. 676 at 12–13.

For 2024, the special master recommends a reduced total disbursement of $240,000. *Id.* at 13. Because the claims administrator already distributed $280,000 to EPIC pursuant to the Amended Disbursement Order, *see* Doc. 679-1 at ¶ 5, this aspect of the recommendation cannot be followed. Instead, the Court will reduce the 2025 amount from that in the recommendation by $40,000. The Court will order the claims administrator to disburse an additional $66,000 in 2025 to get to $276,000 total in 2025, an additional $150,000 in 2026, and $275,000 in 2027 to reflect the total yearly disbursements recommended by the special master. *See id.* In total EPIC is approved for $1,191,000 in *cy pres* distributions.

### D. Public Justice Foundation

Under the Amended Disbursement Order, Public Justice Foundation will receive $369,000 in funding over a three-year period. Doc. 674 at ¶ 2. The first distribution has already been made. *See* Doc. 679-1 at ¶ 5. The special master recommends approving Public Justice Foundation for an additional $234,254 over three years, for a total of $603,254. Doc. 676 at 14.

For simplicity, the Court will use the same distribution percentages used in its Amended Disbursement Order and will order the claims administrator to disburse an additional $93,701.60 in 2024, $70,276.20 in 2025, and $70,276.20 in 2026. This will result in the same total disbursement to the Foundation as recommended by the special master.

### E. U.S. Public Interest Research Group Education Fund (PIRG)

Under the Amended Disbursement Order, PIRG will receive $250,000 divided into two equal annual installments of $125,000 in 2024 and 2025. Doc. 674 at ¶ 2. The special master now recommends adding $1,062,000 to that original amount for a total of $1,312,000 and distributing the funds over four years in varying amounts. *See* Doc. 676 at 15. The special master recommends increasing the award amount and changing the distribution timeline because PIRG has now requested funding for two different projects. She recommends funding one project for three years and the other for four, *id.* at 16, and thus suggests giving PIRG more money in the first three years of funding. *See id.* at 15. The claims administrator has already distributed $125,000 in 2024. Doc. 679-1 at ¶ 4. The Court will order the claims administrator to disburse an additional $273,000 in 2024, $270,000 in 2025, $394,500 in 2026, and $124,500 in 2027, in line with the special master's recommendations.

### F. Public Knowledge

Under the Amended Disbursement Order, Public Knowledge will receive $102,400 in four equal annual installments of $25,600. Doc. 674 at ¶ 2. The first installment has been disbursed. Doc. 679-1 at ¶ 5. The special master suggests adding an additional $257,600 and shortening the disbursement to two years. Doc. 676 at 17.

It is not clear to the Court why Public Knowledge waited until the second round of submissions to change the timing of its spending plan, and the Court is not inclined to modify the Amended Disbursement Order. That would unnecessarily complicate this

11

case. But the Court will order the claims administrator to split the additional $257,600 over two years, disbursing $128,800 in 2024 and the same in 2025. The bulk of funds will thus be available to Public Knowledge during the first two years, with some funds available the last two years for transition and, if necessary, winding down the project.

### G. Consumer Reports, Inc.

The Court ordered the claims administrator to disburse $1,000,000 to Consumer Reports split evenly over two years in its Amended Disbursement Order. Doc. 674 at ¶ 2. The first installment has been disbursed. *See* Doc. 679-1 at ¶ 5.

The special master recommends disbursing an additional $598,000 in funding to Consumer Reports in 2026, after it has received its first two years of funding. *See* Doc. 676 at 18–19. This third year of funding will further Consumer Report's ongoing project focused on educating and supporting consumers in protecting their personal data. *Id.* That is appropriate, and the Court will order the claims administrator to disburse $598,000 in 2026.

### H. National Consumers League

The Court has not previously awarded *cy pres* funding to National Consumers League. The special master recommends $400,000 in funding to be split evenly over two years. *Id.* at 20. The Court will order the claims administrator to disburse $200,000 in 2024 and $200,000 in 2025.

### I. National Association of Attorneys General

Under the Amended Disbursement Order, NAAG will receive $2,000,000 in equal installments of $500,000 over four years. Doc. 674 at ¶ 2. The first installment has been

disbursed. *See* Doc. 679-1 at ¶ 5. The special master suggests changing the funding timeline for NAAG to disburse the entire $2,000,000 in one lump sum in 2024. Doc. 676 at 24.

NAAG plans to use the *cy pres* distribution to set up a fund for multistate, collaborative efforts between Attorneys General focused on investigating and litigating TCPA issues. *Id.* NAAG represents that it is difficult to predict when expenditures will be necessary and suggests that the entire amount be made available immediately to substantially boost the beginning of the project, which, on an ongoing basis, will be funded by recoveries from successful cases. *See id.*

The special master suggests one lump sum distribution is the best option. *Id.* The Court finds it better to spread out the disbursements to ensure that the funds received are used for approved purposes before disbursing more funds. *See* discussion i*nfra*, at 15.

### J. Any Remaining Funds

The special master estimates that after the supplemental disbursement, there will be approximately $81,700 remaining to pay the claims administrator and the special master and to cover any unforeseen expenses.[5] *See* Doc. 676 at 6. She recommends that any funds that are unspent as of September 30, 2028, by any organization other than NAAG, revert to the claims administrator. *Id.* at 25. She also recommends that the

---

[5] The Court calculates approximately $81,700 by subtracting the special master's recommended disbursement of $5,998,135 from the special master's estimate of total remaining judgment funds, $6,079,932.27. Doc. 676 at 6–7. The Court rounded down to be conservative with fund estimates.

claims administrator distribute all unspent *cy pres* funds to NAAG to support its ongoing fund. *Id.*

Distributing unspent *cy pres* funds to NAAG is appropriate, though the Court will modify the distribution date. The last distributions are scheduled for the first business day of January 2027, and the Court expects organizations to spend their *cy pres* funding in the calendar year it is received. *See* Doc. 674 at ¶ 4. As discussed *infra*, the Court will require all funds to be spent no later than 120 days after the end of the calendar year. Any funds that are unspent as of May 30, 2028, by any organization other than NAAG will revert to the claims administrator. After approval of the claims administrator's final fee, and subject to further court order should circumstances change, the claims administrator will distribute the remaining unspent funds to NAAG and the Clerk will do the same with any remaining judgment funds in his custody.

## VI. Administrative Matters

The Court required the previously approved *cy pres* recipients to submit a written agreement to the claims administrator by December 15, 2023. *See id.* at ¶ 1. The only new recipient, National Consumers League, will have until May 1, 2024, to submit the necessary agreement. The Court also previously ordered each organization to provide an annual report explaining how it used funding. *Id.* at ¶ 4. Each recipient will be required to include information about the use of these additional funds in its annual reports, and the National Consumers League must also file such reports.

The special master recommends that "recipients be allowed to carry forward unspent funds" and that "they be allowed [to] expend funds flexibly among their

14

submitted budgeted line items so long as the funds are spent to further their funded projects and to further the purposes of the TCPA." Doc. 676 at 24.  She also recommends that NAAG be exempt from spending all allocated funds by 2028, because of its intended use of the *cy pres* funds, discussed *supra*.  *See id.* at 24–25.

The Court understands that these projects and the funding decisions made by the organizations will change around the margins over time.  As the special master notes, nonprofits can face unique hurdles with contractors, employees, and time constraints. *See id.* at 23.  In its Amended Disbursement Order, the Court recognized this, requiring recipients to file annual reports that contain, among other things, information about any funds that have not been spent and when they will be spent.  Doc. 674 at ¶ 4.  While it is not necessary for each recipient to spend every dollar within a calendar year, neither is it appropriate to give recipients free rein to spend the money on new or different projects not approved by the Court or to take substantially longer to spend the money.

The Court will require all organizations named in the Amended Disbursement Order, Doc. 674, and this Order, to use any unspent funds included in their yearly reports within 120 days of the start of the following year.  It is not in the interest of the class for any organization to delay spending this money.  However, the final "leftover" distribution approved for NAAG is likely to be relatively small, and the Court appreciates that the NAAG project will be ongoing.  Assuming no problems between now and then, and given NAAG's experience managing these kinds of funds, there is no need for court oversight of the leftover funds disbursed in 2028.

15

The claims administrator is not currently holding enough money to make all disbursements ordered under this Order and the Amended Disbursement Order.  The Court will order the Clerk of Court to transfer $3,000,000 to the claims administrator in 2025 and $2,500,000 in 2026 so that the claims administrator will have sufficient funds to make the 2026 and 2027 disbursements.  The claims administrator should notify the Court if it does not have enough funding to pay disbursements.

## VII. Conclusion

*Cy pres* distribution of the unclaimed judgment funds is appropriate and provides the clearest and most direct benefit to the class members.  The special master's recommendations are the product of a meticulous process, and the recommended recipients will use the funds in appropriate ways.

It is **ORDERED** that unclaimed judgment funds in the amount of $5,998,135 will be disbursed to *cy pres* recipients along the lines recommended by the special master.  A separate Supplemental Disbursement Order will be entered.

This the 29th day of March, 2024.

_____
UNITED STATES DISTRICT JUDGE